UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

| | |
|---|---|
| LEESTMA MANAGEMENT, LLC | Case No.: 8:26-bk-02696-CED [Lead Case] |
| ADELAIDE POINTE QOZB, LLC | Case No.: 8:26-bk-02698-CED |
| ADELAIDE POINTE BOATERS | |
| SERVICES, LLC | Case No.: 8:26-bk-02699-CED |
| ADELAIDE POINTE BUILDING 1, LLC | Case No.: 8:26-bk-02700-CED |
| WATERLAND BATTLE CREEK, LLC | Case No.: 8:26-bk-02701-CED |

Chapter 11

Debtors.

*Jointly Administered*

_____/

**STATE COURT APPOINTED RECEIVER'S COMBINED RESPONSE TO DEBTORS' EMERGENCY MOTION FOR PARTIAL TURNOVER AND ENGAGEMENT OF MANAGER**

NOW COMES State Court Appointed Receiver, John W. Polderman of Stevenson & Bullock, P.L.C., and submits the following as his Response to Debtors' Emergency Motion for Partial Turnover and to Engage a Property Manager [Dkts. 89 and 90].

**PRELIMINARY RESPONSE**

Debtors seek to engage a campus-wide property manager because of the alleged deficiencies of the Receiver and to compel turnover to allow for the manager to take control. However, these motions misstate basic facts about the Receiver's actions, and the Receiver must correct the record regarding the negative assertions. It is noteworthy that prepetition, the Receiver had suggested engaging a property manager for Adelaide Pointe - Bradley Management, which currently manages two of the other debtor entities. Bradley Management is currently performing its duties and under the Receiver's supervision. Mr. Leestma objected to expanding its role so the Receiver did not pursue it at that time. The Receiver had also filed a motion in the state court seeking campus-wide authority given the difficulties associated with

1

bifurcated control.  The Receiver is aware he has limited standing in this issue, but does not object, conceptually, to a campus-wide property manager.  The Receiver has engaged property managers for two of the other debtors and has no issue cooperating with or engaging a property manager that the Court or parties agree to.  There is no need, however, to compel turnover or lift the stay as part of that process.  The Receiver can promptly sign a management agreement upon approval of the Court or the parties.

**RESPONSE TO SPECIFIC ASSERTIONS RAISED IN THE MOTIONS**

1. Cash Collateral

[1]Pursuant to the *Order Appointing Receiver* entered by the Court on January 30, 2026 (the "Order"), John W. Polderman was appointed as receiver (the "Receiver") over Adelaide Pointe Building I, LLC, Adelaide Pointe QOZB, LLC, Adelaide Pointe Boaters Services, LLC, Leestma Management, LLC, and Waterland Battle Creek Properties, LLC (the "Receivership Defendants"), including the real and personal property of the Receivership Defendants.

Adelaide Pointe QOZB ("Warehouse Building") and Adelaide Pointe Boaters Services ("Services") are part of a larger marina operation known as Adelaide Pointe, which includes a "wet" marina ("Wet Marina") and "dry" marina ("Dry Marina") and a multi-use building ("Multi-Use"), none of which are part of the receivership or bankruptcy estate.   The Wet Marina (4Front Credit Union), Dry Marina (Choice One Bank), Multi-Use (Westshore Bank) and Warehouse Building (Independent Bank) are encumbered by mortgages and financing statements in favor of separate lenders, as noted in the foregoing parentheticals.

Historically, revenue for the Wet Marina, Dry Marina and Warehouse Building was all being deposited into an Adelaide Pointe QOZB bank account at Choice One Bank ("QOZB Account").   The deposits were made through an Intuit billing program, through which the

---

[1] This section substantially repeats the facts set forth in the Receiver's Response to Motion for Enforcement of Stay.

Adelaide Pointe staff would issue invoices via email to tenants and customers, and then those customers could pay online through Intuit. The Receiver further determined that mortgage payments for Westshore Bank/Multi-Use Building were being automatically debited from the QOZB Account, and that Mr. Leestma was transferring funds from the QOZB Account to another account at Choice One Bank titled in the name of Leestma Management.  The Receiver initially requested that Mr. Leestma segregate the billing between Wet Marina, Dry Marina and the Warehouse Building, but was told that could not be done, because there was only one Intuit license and it couldn't be used to be tied to multiple accounts.

Given the commingling of funds, transfers between accounts, and payment of creditors of multiple non-receivership entities from the QOZB Account, in mid-March the Receiver took a number of actions.  First, he directed counsel for Westshore Bank to cease and desist from withdrawing funds from the QOZB Account. He then began issuing invoices to Warehouse tenants with payment instructions for a receivership bank account established at Independent Bank.  Finally, he put a hold on the QOZB Account which prevented any further transfers out of the account or withdrawals, absent the Receiver's express approval.  The QOZB Account can still accept deposits, however.

Despite the issuance of the invoices with new payment instructions for the Warehouse tenants, some have paid into the QOZB Account, and some persons who received boat repair services, have also paid into the QOZB Account.  As a result, the Receiver and Ms. Glick, the CEO and COO of the Adelaide Pointe campus, have been in routine contact to ensure that Warehouse funds and boat repair funds are transferred from the QOZB Account and deposited into the Independent Bank account, and that the Dry Marina and Wet Marina income remains

Case 8:26-bk-02696-CED   Doc 117   Filed 05/06/26   Page 4 of 8

deposited into the QOZB Account. The Receiver has also provided accountings and details to the Wet Marina lender regarding the allocation of that lender's funds in the QOZB Account.

Furthermore, the Receiver has prepared an accounting showing the receipts from the wet marina and dry marina during the month of April 2026, and which totals $41,427.31. At the same time, at the end of the month of April, there was $48,689.75 in the account (See **Exhibit A**, Accounting and bank statement). In sum, the Receiver has not used funds generated by the Wet Marina or Dry Marina, and those funds remain in the Choice One QOZB Account. Debtors appear to have failed to conduct a basic factual investigation and instead have made inaccurate representations to the Court.

2. Payment of Bills

Debtors also claim that the Receiver has failed to pay various bills which led to the cessation of services. That is inaccurate. There are 25 separate Consumers Energy accounts/meters on the campus and metered in the name of Adelaide Pointe QOZB. However, a number of those meters supply service to non-receivership property. Furthermore, one of the meters is located on non-receivership property but provides service to receivership property ("Boaters Services Account"). Based on the service address on the Boaters Services Account listing non-receivership property (See **Exhibit B**, Invoice), the Receiver did not change the Boaters Services Account into the receivership estate's name. However, upon receiving a shutoff notice from Consumer's as to the Boater's Services account, the Receiver was able to determine that it in fact serviced receivership property and transferred the account into the receivership estate's name.

Regarding health insurance, after Mr. Leestma failed to pay premiums for several months, he forwarded the bill to the Receiver one week before it was due, for pre-receivership

4

billings, for a policy that included Mr. Leestma's family members as well as unidentified third parties (See **Exhibit C**, Invoice).  The Receiver advised Mr. Leestma that he would only pay for the two employees' premiums, which totaled approximately $2,000, and not the $10,000 for Mr. Leestma's family.  Mr. Leestma refused to contribute his share of the premium and then placed the entities into bankruptcy.  Thereafter, the Receiver spoke with Debtor's counsel who indicated that Mr. Leestma would reimburse the estate for this amount, and the Receiver agreed to pay the bill to avoid a complete cancellation of the health insurance policy.

Similarly, the property insurance premium is for the entire campus, not just the Receivership estate.  The premium was due five (5) days after the bankruptcy filing. The Receiver had to make a business judgment as to paying the entire premium and later seek reimbursement, and while complying with his duties both not to dissipate income and to preserve and protect the estate.  The Receiver also had this conversation with Debtor's counsel.  It is absurd that the Receiver is now being accused of "almost" letting the insurance lapse, when in fact the Receiver paid the bill on time and any delay was due to the bankruptcy filing and the fact that the premium included non-receivership property.

3.  Condo Sale

Upon his appointment, the Receiver discovered that Mr. Leestma had signed two purchase agreements for the sale of condominiums at a price of $500,000 each (See Exhibits **D & E**, Signed Purchase Agreements).  The Receiver further had another prospective purchaser submit an offer for $500,000.  In response, the Receiver called Mr. Leestma and indicated that $500,000 seemed like a reasonable offer based on the other two offers that Mr. Leestma had signed.  Mr. Leestma and the Receiver then agreed that the price should be countered at

$750,000 as a low price should not be set and influence future condominium sales.  The Receiver did, in fact, counter the offer at that price (See **Exhibit F**, Email Counter).

Additionally, it should be noted that the Debtor's budget at Dkt. 24, pg. 16 of 21, proposes the sale of condos at a price of $500,000.00.  It simply is not truthful that the Receiver signed an offer at $500,000 (or any offer for that matter) or that Mr. Leestma "saved" the Receiver from accepting a low offer.  Mr. Leestma is the one who has signed two purchase agreements at $500,000 and the Receiver met and conferred with him after receiving a third offer during which they discussed the pros and cons of pricing, after which the Receiver ultimately countered.

4. Budgets

Debtor also raises the issue of a discrepancy between budgets prepared by the Receiver. That is due simply to the fact that the Receiver has, on a week to week or bi-weekly basis set forth the amounts he would need to pay, given the limited time frame on the cash collateral orders.  That is distinct from the budgets which show month by month revenue and expenses. Also, the Receiver has focused his request for protective advances to just those critical items such as utilities and life safety repair rather than installments payments for those creditors who are stayed by the automatic stay, regardless, or payment of real property taxes which can be dealt with in a receivership or bankruptcy proceeding.

**CONCLUSION**

The assertions made by Debtors against the Receiver simply lack any factual backing or documentary evidence.  The Wet and Dry Marina income has been left in the QOZB Account, the Receiver has paid those bills which he believes are related to the receivership estate and has been tasked with separating assets and accounts that were commingled and operated together.  At

6

every turn, when a business decision needed to be made, the Receiver has erred on the side of caution and paid the bill to avoid interruption of service or preserve the estate.

Furthermore, the alleged actions or inactions of the Receiver are irrelevant in deciding whether to hire a property manager.  The Receiver, as a general proposition, has no objection to hiring a property manager, and has done so for two of the other Debtors.  Revenue and expenses, however, should be fairly allocated between and among the relevant entities.

Dated: May 6, 2026.

Respectfully submitted,

STEVENSON & BULLOCK, P.L.C.

/s/ John W. Polderman
John W. Polderman, P65720
Court Appointed Receiver
26100 American Drive, Suite 500
Southfield, MI 48034
(248) 354-8175
jpolderman@sbplclaw.com

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Alberto F. Gomez, Jr.
Alberto F. Gomez, Jr. (FBN: 784486)
400 North Ashley Drive
Suite 3100
Telephone:     813-225-2500
Facsimile:     813-223-7118
Email: AL@JPFirm.com
*Attorneys for John Polderman, Receiver*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Response has been furnished either by the Court's CM/ECF system or by regular U.S. Mail to the **Office of the United States Trustee**,

7

501 E. Polk Street, Suite 1200, Tampa, FL 33602; **David S Jennis**, Jennis Morse, 606 East Madison Street, Tampa, FL 33602; Email: djennis@jennislaw.com; **Kathleen DiSanto,** Bush Ross, P.A., PO Box 3913, Tampa, FL 33601, Email: kdisanto@bushross.com; **Jeffrey Warren**, Email: jwarren@bushross.com; all parties registered to receive electronic notices via CM/ECF in this case and via U.S. Mail to: **Leestma Management, LLC**, 1900 Gulf Drive North, Unit 7, Bradenton, FL 34217 on May 6, 2026.

JOHNSON, POPE, BOKOR,
RUPPEL & BURNS, LLP

/s/ Alberto F. Gomez, Jr.
Alberto F. Gomez, Jr. (FBN: 784486)
400 North Ashley Drive
Suite 3100
Telephone:    813-225-2500
Facsimile:    813-223-7118
Email: AL@JPFirm.com
*Attorneys for John Polderman, Receiver*