**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

| | |
|---|---|
| LEESTMA MANAGEMENT, LLC | Case No.: 8:26-bk-02696-CED [Lead Case] |
| ADELAIDE POINTE QOZB, LLC | Case No.: 8:26-bk-02698-CED |
| ADELAIDE POINTE BOATERS SERVICES, LLC | Case No.: 8:26-bk-02699-CED |
| ADELAIDE POINTE BUILDING 1, LLC | Case No.: 8:26-bk-02700-CED |
| WATERLAND BATTLE CREEK, LLC | Case No.: 8:26-bk-02701-CED |

     Debtors.                            *Jointly Administered*

_____/

**INDEPENDENT BANK'S RESPONSE IN OPPOSITION TO**
**DEBTORS' EMERGENCY MOTION FOR AN ORDER (I)**
**EXTENDING THE AUTOMATIC STAY UNDER 11 U.S.C. §362(a)**
**TO RYAN LEESTMA, OR ALTERNATIVELY (II) GRANTING A**
**PRELIMINARY INJUNCTION UNDER 11 U.S.C. §105(a) ENJOINING**
**INDEPENDENT BANK FROM PURSUING PERSONAL LIABILITY ACTIONS**

Independent Bank ("**Bank**"), by and through undersigned counsel, responds  to the Debtors' Emergency Motion for an Order (I) Extending the Automatic Stay Under 11 U.S.C. §362(a) to Ryan Leestma, or Alternatively (II) Granting a Preliminary Injunction Under 11 U.S.C. §105(a) Enjoining Independent Bank from Pursuing Personal Liability Actions (Doc. No. 94) (the "**Motion**"), and in support of denial of the Motion (the "**Objection**") states as follows:

**PRELIMINARY STATEMENT**

It should be noted at the outset that the Debtors concede the automatic stay imposed by § 362 does not generally protect non-debtors and was designed to protect a debtor who

seeks relief under any operating chapter of the Bankruptcy Code.[1] Despite this long-standing general rule, Leestma Management, LLC, Adelaide Pointe QOZB, LLC, Adelaide Pointe Boaters Services, LLC, Addelaide Pointe Building 1, LLC and Waterland Battle Creek, LLC (collectively, the "**Debtors**") are asking this Court to extend the automatic stay to Ryan Leestma ("**Mr. Leestma**"), the very person who created the confusion, chaos, and conflicts that permeate these Chapter 11 cases and who is contractually obligated to the Bank under separate, unconditional payment guaranties.[2]

The Debtors do not dispute the default, and Mr. Leestma does not dispute the execution of the unconditional and absolute guaranty agreements and personal direct obligations to the Bank. For the reasons set forth herein, the Motion should be denied as the automatic stay does not extend to the actions against the non-debtor, Mr. Leestma, and the Debtors' request (on behalf of Mr. Leestma) is contrary to well-established federal and state law.

### Factual and Procedural Posture

1.    A complete summary of the Debtors' relationship with the Bank, the Debtors' inability to fund their ongoing operations and completion of the Adelaide Pointe project, and the Debtors' actions under the direction of Mr. Leestma that have jeopardized the very existence of the Adelaide Pointe project while casting blame on any lender, contractor, vendor, professional, or governmental agency that has attempted to assist with the project is

---

[1] *See* Motion at ¶15; *see also In re Colony Beach and Tennis Club, Inc.*, Case No. 8:13-bk-00348-KRM, 2015 WL 1281825, at \*7 (Bankr. M.D. Fla, Mar. 18, 2015) ("Guarantors of a debtor's obligations, for example, are not usually protected by the automatic stay, which only protects the debtor and bankruptcy estate.")

[2] Mr. Leestma also has direct personal obligations to the Bank that are unrelated to the Debtors. To the extent the Motion attempts to shield Mr. Leestma from those obligations, for the reasons stated in this Objection, the Motion should be denied.

provided in (a) the Bank's Concurrence and Joinder in State Court Appointed Receiver's Motion to: (1) Excuse Receiver from Turnover Provisions; and (2) Suspend the Bankruptcy Case (Doc. No. 21) and (b) the Bank's Omnibus Objection to Debtors' Emergency Application to Employ a Marina Manager, Emergency Motion for Turnover, and Emergency Motion for Automatic Stay filed contemporaneously with this Objection.

2.      In their Motion, the Debtors assert, "IBCP, the principal secured creditor, has elected to pursue Mr. Leestma personally on multiple fronts simultaneously and in retaliation for filling *[sic]* chapter 11.  One day after the commencement of these cases IBCP filed a motion to enforce Mr. Leestma's personal guarantee and reduce those obligations to judgement *[sic]*."

3.      The Debtors made this statement with the obvious intent of influencing the Court that the Bank has engaged in retaliatory attacks against Mr. Leestma.  Unfortunately for the Debtors and Mr. Leestma, the truth reveals otherwise.  Independent Bank filed its Motion for Summary Disposition on the breach of personal guaranties of Mr. Leestma and the Ryan M. Leestma Domestic Asset Protection Trust dated November 30, 2018 (the "**Guarantors**") on March 26, 2026.  *See* **Exhibit 1**.

4.      The Debtors filed their bankruptcy petitions on April 1, 2026. *See* **Exhibit 2**. On April 3, 2026, in acknowledgement that the bankruptcies were filed after the Bank's motion was filed, state court counsel for Mr. Leestma and his entities sent an email to the Bank's counsel inquiring whether the Bank would withdraw its motion "given the bankruptcy filing." *See* **Exhibit 3**.

5.      It is impossible, as the Debtors allege, for the Bank's Motion for Summary Disposition to have been retaliatory when it was filed nearly a week prior to the bankruptcy filings.  The Debtors are being dishonest to the Court.[3]

6.      The Bank did not withdraw its motion on the personal guaranties because neither of the Guarantors had filed for bankruptcy protection and, therefore, were not subject to the automatic stay.  The Guarantors filed a Response to Independent Bank's Motion for Summary Disposition on April 9, 2026 (the "**Guarantors' Response**"), in advance of the hearing scheduled on April 16, 2026.  The Guarantors' Response requested the state court to administratively close the state court matter or hold the case in abeyance pending resolution of these bankruptcy proceedings.  Notably, the Guarantors did not deny liability, contest the amount of the guaranteed indebtedness, or offer any defense to the Bank's Motion.  A copy of the Guarantors' Response is attached as **Exhibit 4**.

7.      As a result of the Guarantors' Response, along with the notice of these bankruptcy proceedings, the state court cancelled the scheduled hearing and set the matter for a Status Conference on April 29, 2026.

8.      At that Status Conference, Circuit Court Judge Curt Benson made it clear that he did not intend to stay the proceedings against the Guarantors as they had not filed bankruptcy and were not otherwise afforded the protection of the automatic stay.  Judge Benson further indicated that due to Guarantors' failure to substantively defend the Motion

---

[3] The Debtors have also stated in other filings that the Order Appointing Receiver was entered *ex parte* on the day the lawsuit was filed.  In fact, the Order Appointing Receiver was entered more than four months after the lawsuit was originally filed, Mr. Polderman was the Debtors' proposed receiver, and the Debtors' state court counsel negotiated and stipulated to the Order Appointing Receiver that was entered.

for Summary Disposition, pursuant to Michigan Court Rules he intended to rule on the Bank's motion without further hearing.

### A.    Mr. Leestma's Involvement

9.     In the Motion, the Debtors go to great lengths to convince this Court of the great importance of Mr. Leestma and how he, and he alone, is critical to the Debtors' operations. The Debtors' Motion states that Mr. Leestma is "the only individual who leads and manages every function across every entity, every asset, every operation of Debtors, ANDE, NPAE, and every business line that the enterprise comprises." The Motion continues, "Every company, every asset, every job throughout the Leestma Management enterprise is dependent on Mr. Leestma."

10.     However, Mr. Leestma's role is best evidenced by the Declarations of Aubrey Glick filed in these cases. Unfortunately for Mr. Leestma, Ms. Glick's Sworn Declaration filed in these matters states as follows:

> **I [Aubrey Glick] am the Chief Operating Officer and Chief Executive Officer of Adelaide Pointe Development, LLC and Leestma Management, LLC**. I have served in these roles for approximately 2 years and in that capacity **I have direct, comprehensive, day-to-day operational oversight and management responsibility for all business units comprising the Adelaide Pointe campus and the Lease Management commercial real estate portfolio**. **My responsibilities encompass** the wet marina, dry marina, warehouse facilities, boater services operations, commercial real estate properties including Hall Street and other Lease Management assets, **employee management, vendor relationships, financial operations, and all other aspects of the enterprise's ongoing business activities**.

*See* Declarations of Aubrey Glick, Doc. No. 29 (emphasis added).

11.     Indeed, Mr. Leestma publicly stepped down as CEO of Adelaide Pointe in May 2025 and promoted Ms. Glick into that role. Mr. Leestma's public statement cited by local media was:

Effective immediately I have chosen to step down from my role as the CEO of Adelaide Pointe for an undetermined amount of time for personal reasons. I have placed Aubrey Glick into the role of interim CEO. I have full faith in her abilities. This has no impact on the leadership and management of Muskegon Brewing Company, Bear Lake Tavern, and Adelaide Events as I am not in a leadership or management role in these organizations.

12. The Adelaide Pointe website identifies Mr. Leestma (along with his wife) simply as "Owner" with only a description of his experience and background – no mention of any involvement in operations. Conversely, the Adelaide Pointe website identifies Aubrey Glick as the Chief Operating Officer who "oversees all on-site operations, ensuring everything runs smoothly and efficiently."

13. In addition to the clear transition of operational leadership to Ms. Glick, the Receiver is currently in possession and control of the Debtors' assets and managing those aspects of Adelaide Pointe. The Debtors are seeking the appointment of a Chief Restructuring Officer and a Marina Manager. Accordingly, going forward the Debtors' assets will be actively managed by either the Receiver with the assistance of Ms. Glick, a CRO, and a Marina Manager, or some combination. Mr. Leestma, despite the Debtors' statements of his importance, is not critical to the ongoing operations of the Debtors.

### B. Independent Bank's Actions

14. The Debtors also assert that the Bank "has taken multiple predatory actions against the Leestma Management enterprise and against Mr. Leestma personally." In support of this, the Debtors restate the claim that the Bank filed a motion for judgment against Mr. Leestma in his individual capacity, "in retaliation the day after Mr. Leestma filed the petitions for these cases." As previously shown, that allegation is demonstrably false. *See* **Exhibits 1 and 2**.

6

15.     Indeed, the Bank did seek a judgment against Mr. Leestma (and his Trust) for their guarantor liability of the obligations owing to the Bank after Circuit Court Judge Benson had determined the loans to be in default.  However, that motion was filed nearly a week before the bankruptcy filings and, therefore, could not be in retaliation for a future event.

16.      The Debtors next assert that the Bank's so-called predatory actions included, "liens on his personal property including a $28,000,000 lien on his $3,000,000 Florida condo and an additional $4,000,000 lien on his $2,000,000 residence in Michigan."

17.     Indeed, the Bank has a third-position mortgage on Mr. Leestma's Florida condo securing an obligation of Adeliade Pointe QOZB, LLC, in the amount of $1,500,000 along with "all loans, advances, indebtedness and each and every other obligation of liability of Mortgagor owed to Mortgagee." *See* **Exhibit 5**. Accordingly, the mortgage on Mr. Leestma's condo is security for Mr. Leestma's entire indebtedness owing to the Bank, which is more than $29,000,000.[4]

18.     The Bank also has a second-position mortgage on Mr. Leestma's Michigan residence, which secures obligations of Waterland Battle Creek Properties, LLC, and Leestma Management, LLC, in the amounts of $3,350,000 and $700,000 along with "all loans, advances, indebtedness and each and every other obligation of liability of Mortgagor owed to Mortgagee." *See* **Exhibit 7**.  As with the Florida condo, the Michigan residence secures Mr. Leestma's entire indebtedness owing to the Bank, which is more than $29,000,000.[5]  This is

---

[4] Mr. Leestma transferred this property from himself to himself and his wife, Emily Leestma, on September 24, 2025, which is the day after the Bank filed its lawsuit against Debtors and Mr. Leestma.  The deed is attached as **Exhibit 6**.

[5] Mr. Leestma transferred this property from himself to himself and his wife, Emily Leestma, on September 3, 2025, which was after Mr. Leestma executed a forbearance agreement in

not a predatory action by the Bank, it is simple cross-collateralization.  In fact, Mr. Leestma (and the Debtors) executed Cross-Collateralization and Cross-Default Agreements in favor of the Bank clearly articulating this very arrangement.  *See* **Exhibit 9**.

19.     The final alleged "predatory action" of the Bank was to declare default of a personal loan to Mr. Leestma for his half-million-dollar recreational vehicle.  As is the Bank's right under the loan documents, the Bank declared default and accelerated Mr. Leestma's personal loan with the Bank due to nonpayment, among other defaults. *See* **Exhibit 10**.

20.     The consumer loan action (against Mr. Leestma) was filed nearly six (6) months after the commercial loan action was filed (against Debtors and Mr. Leestma) and Bank has obtained an Order of Possession requiring Mr. Leestma to turnover the RV to the Bank.[6]  *See* **Exhibit 11**.

## ARGUMENT

### A.       The Automatic Stay Does Not Extend to Non-Debtors.

21.     "It is universally acknowledged that an automatic stay proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the… debtor." *In re Colony Beach*, 2015 WL 1281825, at *7, n. 31 (Bankr. M.D. Fla. Mar. 18, 2015)(*quoting Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983)).

22.     Although the scope of the automatic stay is broad, it only applies to actions taken with respect to a debtor, not with respect to actions or inactions affecting other parties. *Pride*

---

favor of the Bank and less than three weeks before the Bank filed its lawsuit against Debtors and Mr. Leestma.  The deed is attached as **Exhibit 8**.

[6] After learning of the impending consumer loan action, Mr. Leestma flew to Michigan to retrieve the RV and drive it back to Florida with him to frustrate the Bank's collection efforts.

*Family Brands, Inc. v. Carls Patio, Inc.*, No. 12-21783-CIV, 2013 WL 4647216, at *3 (S.D. Fla. Aug. 29, 2013) (citations omitted) (reasoning "there is nothing contained in this Court's Order staying this matter or in § 362 that expressly prohibits the Plaintiff from obtaining discovery pertaining to Plaintiff's claims against the solvent [parties]"). Under unusual circumstances, the bankruptcy court may enter an injunction to protect non-debtors through an adversary proceeding under Section 105, but the automatic stay does not extend to non-debtors. *In re Hillsborough Holdings Corp.*, 130 B.R. 603, 606 (Bankr. M.D. Fla. 1991).

23.     The debtor in *In re Hillsborough Holdings Corp.* argued to "extend the automatic stay" to protect non-debtors in actions brought against officer, directors and former employees of the debtor. *Id*. at 606.  The debtor argued that the prosecution of the action would not only place an undue burden on the debtor, but would, in effect, materially aid the creditor in enforcing its claim against the debtor. *Id.* at 605. The court rejected the debtor's argument that the automatic stay extended – or could be extended – to non-debtors as the relief sought by the debtor – the extension of the automatic stay – was necessarily not automatic. *Id.* at 606. Instead, the court held that the debtor needed to commence an adversary proceeding under Section 105 and bear the heavy burden of establishing the traditionally accepted principles governing injunctive relief: a substantial likelihood of success, irreparable injury outweighing the damage caused and showing that the injunction, if issued, would not be adverse to public interest. *Id.*

24.     Here, the Motion impermissibly seeks to enforce the automatic stay for actions against the non-debtor Guarantors. As discussed at length in *Hillsborough Holdings*, the automatic stay simply does not apply to non-debtors. *In re Hillsborough Holdings Corp*., 130 B.R. at 606. To attempt to obtain an injunction in favor of the non-debtor Guarantors, the Debtors must prove that unusual circumstances give rise to the necessity of an injunction through an adversary

proceeding under Section 105. *Id.* The Motion must, therefore, be denied because it seeks relief that is contrary to the plain language of Section 362, procedurally improper under the Federal Rules of Bankruptcy Procedure, and entirely without merit.

**B.        The Debtors' Argument Fails to Support an Injunction**.

25.     The Motion clearly attempts to avoid the high burden associated with injunctive relief while simultaneously obtaining the same result – an injunction in favor of non-debtors. *In re Regency Realty Assocs.*, 179 B.R. 717, 720 (Bankr. M.D. Fla. 1995) (holding that preliminary injunctions are "extraordinary and drastic remedies which may be granted only upon a clear and convincing showing that the movant has carried its heavy burden on each element required by Federal Rule of Civil Procedure 65 as adopted by Federal Rules of Bankruptcy Procedure 7065").

26.     The Debtors' attempt to circumvent the Federal Rules of Bankruptcy Procedure and standard for injunctions should not go unnoticed by this Court – especially since the Debtors, Mr. Leestma and Mr. Leestma's Domestic Asset Protection Trust have, in fact, filed a Complaint seeking injunctive relief against the Bank.

27.     It should also not go unnoticed  that the non-debtor Guarantors, via the Debtors, are seeking to avoid the bedrock *quid pro quo* of such injunctions – a co-extensive prohibition of the transfer of non-exempt assets outside the ordinary course of business by those who benefit from such an injunction, the foundation for which, of course, is the preparation and delivery of a current and accurate financial statement by such persons. *See In re Alpharock, LLC,* Case No. 8:09-bk-11888-CPM, Order Granting Emergency Motion for Preliminary Injunction (Doc. No. 7) (Bankr. M.D. Fla. July 8, 2009); *see also Safety Harbor Resort & Spa,* 456 B.R. 703, 719 (Bankr. M.D. Fla. 2011).

28.     While courts have occasionally entered a stay with respect to non-debtor parties with indemnification claims, the debtor bears the burden of showing: (i) the non-debtor and debtor enjoy such identity of interest that the suit against the non-debtor is a suit against the debtor; or (ii) the third party action will have an adverse impact on the debtor's ability to accomplish reorganization. *In re Intern. Home Prods. Inc.*, 491 B.R. 607, 628 (Bankr. D.P.R. 2013) (citing *In re Philadelphia Newspapers, LLC*, 407 B.R. 606,616 (E.D. Pa. 2009)).

29.     However, there is not an identity of interest between a debtor and its guarantor where the guarantee provides for a direct action against the guarantor. *See In re Intern. Home Prods. Inc*, 491 B.R. at 631.

30.     The Debtors are unable to make the required showing to extend the stay to the non-debtor Guarantors based on identity of interests or adverse effect on the reorganization. The Guarantors do not share an identity of interest with the Debtors as they are investors having limited management over the Debtors. Moreover, the underlying guaranty agreements – admitted execution by the Guarantors – are joint and several, unconditional and absolute, and ensure payment and performance. As a result, the Bank is entitled to pursue collection against the Guarantors, jointly and severally, without first proceeding against the Debtors or any property securing payment of the obligations to the Bank. Thus, the Debtors cannot claim identity of interests because the Guarantors are investors and the claims against them are legally recognized as being completely separate and distinct from any claims against the Debtors.

31.     The state court litigation will not have an adverse impact on the reorganization as the Guarantors have no role in managing the affairs of the Debtors – the Debtors are managed by the Receiver and Debtors' CEO, Aubrey Glick. The Debtors therefore cannot argue that they need the Guarantors' undivided attention to attempt reorganization.

11

32.     The Debtors' argument that the absence of an injunction will prevent the Guarantors from funding a plan of reorganization presents a logical absurdity. If the Guarantors intend to contribute funds otherwise payable to the Bank to the Debtors, the Debtors will then use the funds to pay the Bank. In other words, the Debtors seek an injunction to prevent the Bank from timely collecting from the Guarantors personally – as provided by the guaranty agreements and Michigan law. The irrationality of the proposal is readily apparent.

33.     In reality, the Guarantors are not funding a plan directly and the continued litigation by the Bank will not have an adverse affect on these bankruptcy cases. *See In re Intern. Home Prods.*, 491 B.R. at 632 (holding that the "intention to devote personal assets to the reorganization of the debtor does not automatically shield him from suit in his personal obligations."); *see also In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 367 (Bankr. D. Mas. 2005).

### C.      The Debtors Cannot Carry Their Burden Under Rule 7065.

34.     "It is well established that a preliminary injunction is an extraordinary and drastic remedy which may be granted only upon a clear and convincing showing that the movant has carried its heavy burden on each element under F.R.B.P. 7065." *In re Steven P. Nelson, D.C., P.A.*, 140 B.R. 814, 816 (M.D. Fla. 1992). "In order to obtain the relief sought, the Debtor must show with requisite degree of proof: (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury unless an injunction issues; (3) that the threatened injury to the movant outweighs any damage the injunction may cause the opposing party; and (4) that the injunction would not adversely affect the public interest." *Id.*

35.     "Due to the extraordinary nature of the remedy sought, a temporary restraining order and preliminary injunction may only be granted if the Debtor has shown each of the above elements both clearly and convincingly." *Angram Bus. Servs., Inc. v. City of Waterbury*,

12

250 B.R. 144, 146 (Bankr. S.D. Fla. 2000). Injunctions should be issued "cautiously and infrequently" and limited to "those unusual cases in which such an order is necessary for the success of the reorganization, and only in situations in which such an order is fair and equitable under all of the facts and circumstances." *In re Seaside Engineering & Surveying, Inc.*, 780 F.3d 1070, 1078-79 (11th Cir. 2015) (emphasis added).

36.    Assuming *arguendo* that this Court entertains the Debtor's request for an injunction by the Complaint contemporaneous with the Motion, which the Bank notes is procedurally improper, the Debtors cannot carry their heavy burden of showing by clear and convincing evidence that an injunction should be issued as this is not an "unusual case." This is nothing more than a routine instance of the equity participants guaranteeing their investment entity's debt: there is nothing "unusual" about that.  To the contrary, nothing could be more routine and run-of-the-mill.

37.    The Debtors have failed to allege any facts that would prove otherwise. As acknowledged by the Debtors, the automatic stay under Section 362(a) of the Bankruptcy Code only applies to the debtor and property of the estate.  Extending the automatic stay is regarded as extraordinary relief to be granted only under unusual circumstances.

38.    The matter before this Court does not constitute unusual circumstances that warrant extraordinary relief.  Mr. Leestma, as detailed above, has relinquished his role of CEO of Adelaide Pointe and has turned over the "comprehensive, day-to-day operational oversight and management responsibility for all business units comprising the Adelaide Pointe campus and the Lease Management commercial real estate portfolio" to his CEO, Aubrey Glick.  Mr. Leestma will not be distracted from these bankruptcy proceedings by the Michigan state court matters against Mr. Leestma because those matters have been mostly

resolved.  The action against Debtors has been stayed and Circuit Court Judge Benson has already suggested that he intends to enter a judgment against the Guarantors for their guarantor liability.  Additionally, Circuit Court Judge Hoopes has already entered an Order of Possession Pending Final Judgment against Mr. Leestma for his personal RV loan.

39.     Simply put, the Debtors are not Mr. Leestma and Mr. Leestma is not a debtor. Not only did Mr. Leestma, by his own admission, appoint Aubrey Glick as CEO of the Debtors in May 2025, Ms. Glick's own sworn declaration clearly states that she is in full operational control of Debtors.  Beyond that, Debtors' assets are presently under the control of the Receiver who will continue to operate and manage Debtors unless Debtors' Motion to Compel Turnover is granted, in which case the Debtors propose that their assets will be controlled by a Chief Restructuring Officer and/or a Marina Manager who will work in concert with Ms. Glick and Debtors' staff.  The facts and circumstances of this case do not constitute the sort of "unusual circumstances" that may otherwise compel a court to extend the protections of the automatic stay to a non-debtor.

(1) <u>Doubtful Likelihood of Successful Reorganization</u>.

40.     The Debtors have failed to meet their obligations as estate fiduciaries to timely fulfil the requirements of the Bankruptcy Code by filing their Schedules and Statements of Financial Affairs which preclude the Court, creditors, and parties in interest from obtaining the information they need to fully evaluate the Debtors' status.

41.     The Debtors have yet to disclose who even owns each of the Debtor entities, let alone their assets.  Without even a scintilla of fact-based support, the Debtors toss around astounding numbers as the value of an enterprise that cannot even make its payroll without protective advances by the Bank. More importantly, the operational chaos caused by Mr.

Leestma and the commingling of resources and inadequate accounting and recording keeping preclude meaningful allocations of value among the Debtors and non-debtor entities.

42.     Currently, the likelihood of a successful reorganization is in extreme doubt. Speculative and unsubstantiated numbers confirm that the Debtors are unable to evidence a substantial likelihood of success on the merits.

(2) No Irreparable Harm.

43.     The Debtors are likewise unable to show that an irreparable harm will result from the continuation of the state court litigation against the Guarantors. The measure for the relief requested is not the harm or consequences to Mr. Leestma or his family as a lawful result of Mr. Leestma's failure to satisfy his obligations, but irreparable harm to the Debtors. The preposterous theories advanced by the Debtors of possible harmful actions by the Bank ignore the reality that the Bank has almost $30 million in reasons to preserve and maximize the value of the Debtors and has incurred substantial expenses to protect the Debtors from Mr. Leestma. No irreparable harm can be shown because none exists and therefore the Motion should be denied.

(3) Balance of Harms Favors the Bank.

44.     When balancing the harm between parties, courts must take into account that if a creditor is enjoined from pursuing a non-debtor, it is banned under the bankruptcy court's equitable powers from realizing on the expressly committed collateral of a guaranty. *See In re Costa and Head Land Co.*, 68 B.R. 296, 302 (N.D. Ala. 1986).

45.     An injunction forces the creditor to bear the risk of the non-debtors moving, encumbering, or exempting assets available to pay the debt they guaranteed. *See Costa*, 68 B.R. at 302, 303 (suggesting that if the letter of the automatic stay is not implicated, then courts

15

should tread lightly in using § 105(a) to impose the stay to non-debtors because "banking and commercial communities have a legitimate right to expect that contracts will be honored and enforced unless the borrower himself seeks the legitimate protection of the bankruptcy laws").

46.     As such, if an injunction is issued, the Bank bears the substantial risk that the Guarantors – not subject to the jurisdiction of this Court – will further encumber, dissipate, exempt or otherwise transfer assets beyond the reach of the Bank without recourse. *See Id.*

### (4) Public Intertest is Not Served.

47.     "Under the label of a requirement of good faith, the bankruptcy courts have scrutinized bankruptcy filings and dismissed those filed for improper purposes." *In re North Vermont Assoc., L. P*, 165 B.R. at 342; citing *In re Franklin Mortg. & Invest. Co., Inc.*, 143 B.R. 295, 298 (Bankr. D.D.C. 1992). Where the "goal of the filing is to cushion the amount of liabilities under guarantees, that is not a purpose justifying a filing under the Bankruptcy Code." *In re North Vermont Assoc., L.P.,* 165 B.R. at 343; *citing In re Humble Place Joint Venture*, 936 F.2d 814 (5th Cir. 1991) (holding that bankruptcy filing to cleanse partners of their liabilities as guarantors was impermissible casting doubt on good faith).

48.     Here, the public interest is served by denial of the Motion.

WHEREFORE, Independent Bank respectfully requests that the Court enter an order (i) sustaining the Objection, (ii) denying the Motion, and (iii) granting such other relief deemed just and proper.

Dated: May 7, 2026                          */s/Kathleen L. DiSanto*
                                            BUSH ROSS P.A.
                                            Jeffrey W. Warren
                                            Florida Bar No.150024
                                            Kathleen L. DiSanto
                                            Florida Bar No. 58512
                                            1801 North Highland Avenue

Tampa, Florida 33602-2656
Phone: (813) 224-9255
Email: kdisanto@bushross.com
Counsel for Independent Bank

*/s/Marc M. Bakst*
BODMAN PLC
Marc M. Bakst (P41575)
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, Michigan 48226
Phone: (313) 393-7530
Email: mbakst@bodmanlaw.com
Counsel for Independent Bank

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 7, 2026, I electronically filed a true and correct copy of the foregoing Independent Bank's Independent Bank's Response in Opposition To Debtors' Motion For Order Extending the Automatic Stay with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system, and I furnished a copy of the foregoing document(s) to the following parties in the manner of service indicated below:

**Via the CM/ECF system which will send a Notice of Electronic Filing to:**

- **Kathleen DiSanto**   kdisanto@bushross.com, bnkecf@bushross.com;bankruptcy.eservice@bushross.com;kdisanto@ecf.courtdrive.com

- **Alberto F Gomez**    al@jpfirm.com,
  al@jpfirm.com;andrenaw@jpfirm.com;katherineb@jpfirm.com
- **David S Jennis**    djennis@jennislaw.com,
  ecf@jennislaw.com;karon@jennislaw.com;aschaefer@jennislaw.com
- **Stephanie C Lieb**    slieb@trenam.com,
  mmosbach@trenam.com;mwoods@trenam.com;dvaldes@trenam.com;slieb@ecf.co
  urtdrive.com;mmosbach@ecf.courtdrive.com;mwoods@ecf.courtdrive.com;dvaldes
  @ecf.courtdrive.com
- **United States Trustee - TPA**    USTPRegion21.TP.ECF@USDOJ.GOV
- **Jeffrey W. Warren**    jwarren@bushross.com,
  bankruptcy.eservice@bushross.com;jwarren@ecf.courtdrive.com
- **Nathan A Wheatley**    nathan.a.wheatley@usdoj.gov
- All parties who receive electronic service via the CM/ECF system

**<u>Via U.S. Mail, Postage Prepaid to:</u>**

Leestma Management, LLC, c/o Ryan M. Leestma, Member, 1900 Gulf Drive North, Unit 7, Bradenton Beach, FL 34217

Adelaide Pointe QOZB, LLC, Ryan M. Leestma, Manager, 1204 W. Western Avenue, Muskegon, MI 49441

Adelaide Pointe Boaters Services, LLC, Ryan M. Leestma, Manager, 400 Adelaide Circle, Muskegon, MI 49441

Adelaide Pointe Building 1, LLC, Ryan M. Leestma, Manager, 901 Adelaide Circle, Muskegon, MI 49441

Waterland Battle Creek, LLC, Ryan M. Leestma, Manager, 77 East Michigan Avenue, Battle Creek, MI 49017

 */s/ Kathleen L. DiSanto*
Kathleen L. DiSanto

# EXHIBIT "1"

# STATE OF MICHIGAN
# IN THE CIRCUIT COURT FOR KENT COUNTY

INDEPENDENT BANK, a Michigan banking corporation,

      Plaintiff,

v.

ADELAIDE POINTE BOATERS SERVICES, LLC, a Michigan limited liability company, ADELAIDE POINTE QOZB LLC, a Michigan limited liability company, ADELAIDE POINTE BUILDING 1, LLC, a Michigan limited liability company, LEESTMA MANAGEMENT, LLC, a Florida limited liability company, WATERLAND BATTLE CREEK PROPERTIES, LLC, a Michigan limited liability company, RYAN LEESTMA, an individual, and the RYAN M. LEESTMA DOMESTIC ASSET PROTECTION TRUST DATED NOVEMBER 30, 2018, EDWIN J. VANDERPLOEG, JR., as Trustee of the Ryan M. Leestma Domestic Asset Protection Trust u/a/d November 30, 2018, jointly and severally,

      Defendants.

Case No.  25-20760-CBB

Hon. Curt A. Benson

---

BODMAN PLC
Darren J. Burmania (P68240)
J. Grant Semonin (P86855)
99 Monroe Ave. NW, Suite 300
Grand Rapids, Michigan 49503
Phone: (616) 205-4330
dburmania@bodmanlaw.com
gsemonin@bodmanlaw.com
Counsel for Plaintiff

TAFT STETTINIUS & HOLLISTER LLP
R. Christopher Cataldo (P35393)
27777 Frankin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@taftlaw.com
Counsel for Defendants

RHOADES McKEE PC
David E. Bevins (P48955)
Credit Union
55 Campau N.W., Ste. 300
Grand Rapids, MI 49503
(616) 235-3500
debevins@rhoadesmckee.com
Counsel for Intervenor Lake Michigan

STEVENSON & BULLOCK, P.L.C.
John Polderman (P65720)
26100 American Drive, Suite 500
Southfield, MI 48034
(248) 354-8175
jpolderman@sbplclaw.com
Court Appointed Receiver

4936-4857-1267_3

MI DEPT OF ATTY GENERAL ENVIRONMENT,
NATURAL RESOURCES & AGRICULTURAL
DIVISION
Laura R. LaMore (P79943)
Assistant Attorney General
525 W. Ottawa Street, 6th Floor
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
Lamorel1@michigan.gov
Counsel for EGLE

PLUNKETT COONEY
Peter D. Cronk (P60172)
Matthew Boettcher (P40929)
101 N. Washington Square, Suite 1200
Lansing, MI 48933
(517) 324-5611
pcronk@plunkettcooney.com
mboettcher@plunkettcooney.com
Counsel for Intervenor 4Front Credit Union

WARNER NORCROSS + JUDD LLP
Elisabeth M. Von Eitzen (P70183)
Emily R. Rucker (P79228)
180 East Water Street, Suite 7000
Kalamazoo, MI 49007
(269) 276-8118
evoneitzen@wnj.com
erucker@wnj.com
Counsel for non-party West Shore Bank

KREIS, ENDERLE, HUDGINS & BORSOS PC
Nicholas J. Spigiel (P72526)
P.O. Box 4010
750 Trade Centre Way, Suite 250
Portage, MI 49002
(269) 324-3000
nspigiel@kreisenderle.com
Counsel for non-party ChoiceOne Bank

**PLAINTIFF'S MOTION FOR SUMMARY DISPOSITION PURSUANT TO MCR 2.116(C)(9) AND/OR MCR 2.116(C)(10) AS TO COUNT II (BREACH OF GUARANTIES) OF ITS FIRST AMENDED VERIFIED COMPLAINT AGAINST DEFENDANTS RYAN LEESTMA AND THE RYAN M. LEESTMA DOMESTIC ASSET PROTECTION TRUST**

Plaintiff Independent Bank ("Independent Bank" or "Lender") moves for the Court's entry of an order granting summary disposition as to Count II (Breach of Guaranties) of its First Amended Verified Complaint against Defendants Ryan Leestma ("Leestma") and the Ryan M. Leestma Domestic Asset Protection Trust Dated November 30, 2018 ("Trust") under MCR 2.116(C)(9) and/or MCR 2.116(C)(10). In support of its Motion, Lender relies upon the accompanying Brief.

WHEREFORE, and for the reasons set forth in the accompanying Brief, Lender respectfully requests that the Court enter the proposed Judgment attached as **Exhibit 9** to its Brief, granting its Motion for Summary Disposition as to Count II (Breach of Guaranties) of its First

2

4936-4857-1267_3

Amended Verified Complaint and entering a Judgment in favor of Lender and against Leestma and the Trust, jointly and severally, (i) for the amount of Defendants' outstanding indebtedness, together with attorney's fees, letter of credit obligations, bank fees, expenses and costs, and contractual interest until the Judgment is satisfied and (ii) granting such other relief as the Court deems proper.

Respectfully submitted,

By:   Darren J. Burmania (P68240)
99 Monroe Ave. NW, Ste. 300
Grand Rapids, MI 49503
(616) 205-4330
dburmania@bodmanlaw.com
*Attorney for Plaintiff*

Dated: March 26, 2026

3

4936-4857-1267_3

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR KENT COUNTY**

INDEPENDENT BANK, a Michigan banking corporation,

       Plaintiff,

v.

ADELAIDE POINTE BOATERS SERVICES, LLC, a Michigan limited liability company, ADELAIDE POINTE QOZB LLC, a Michigan limited liability company, ADELAIDE POINTE BUILDING 1, LLC, a Michigan limited liability company, LEESTMA MANAGEMENT, LLC, a Florida limited liability company, WATERLAND BATTLE CREEK PROPERTIES, LLC, a Michigan limited liability company, RYAN LEESTMA, an individual, and the RYAN M. LEESTMA DOMESTIC ASSET PROTECTION TRUST DATED NOVEMBER 30, 2018, EDWIN J. VANDERPLOEG, JR., as Trustee of the Ryan M. Leestma Domestic Asset Protection Trust u/a/d November 30, 2018, jointly and severally,

       Defendants.

Case No.  25-020760-CBB

Hon. Curt A. Benson

---

BODMAN PLC
Darren J. Burmania (P68240)
J. Grant Semonin (P86855)
99 Monroe Ave. NW, Suite 300
Grand Rapids, Michigan 49503
Phone: (616) 205-4330
dburmania@bodmanlaw.com
gsemonin@bodmanlaw.com
Counsel for Plaintiff

TAFT STETTINIUS & HOLLISTER LLP
R. Christopher Cataldo (P35393)
27777 Frankin Road, Suite 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@taftlaw.com
Counsel for Defendants

RHOADES McKEE PC
David E. Bevins (P48955)
Credit Union
55 Campau N.W., Ste. 300
Grand Rapids, MI 49503
(616) 235-3500
debevins@rhoadesmckee.com
Counsel for Intervenor Lake Michigan

STEVENSON & BULLOCK, P.L.C.
John Polderman (P65720)
26100 American Drive, Suite 500
Southfield, MI 48034
(248) 354-8175
jpolderman@sbplclaw.com
Court Appointed Receiver

4

4936-4857-1267_3

MI DEPT OF ATTY GENERAL ENVIRONMENT, NATURAL RESOURCES & AGRICULTURAL DIVISION
Laura R. LaMore (P79943)
Assistant Attorney General
525 W. Ottawa Street, 6th Floor
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
Lamorel1@michigan.gov
Counsel for EGLE

PLUNKETT COONEY
Peter D. Cronk (P60172)
Matthew Boettcher (P40929)
101 N. Washington Square, Suite 1200
Lansing, MI 48933
(517) 324-5611
pcronk@plunkettcooney.com
mboettcher@plunkettcooney.com
Counsel for Intervenor 4Front Credit Union

WARNER NORCROSS + JUDD LLP
Elisabeth M. Von Eitzen (P70183)
Emily R. Rucker (P79228)
180 East Water Street, Suite 7000
Kalamazoo, MI 49007
(269) 276-8118
evoneitzen@wnj.com
erucker@wnj.com
Counsel for non-party West Shore Bank

KREIS, ENDERLE, HUDGINS & BORSOS PC
Nicholas J. Spigiel (P72526)
P.O. Box 4010
750 Trade Centre Way, Suite 250
Portage, MI 49002
(269) 324-3000
nspigiel@kreisenderle.com
Counsel for non-party ChoiceOne Bank

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY DISPOSITION PURSUANT TO MCR 2.116(C)(9) AND/OR MCR 2.116(C)(10) AS TO COUNT II (BREACH OF GUARANTIES) OF ITS FIRST AMENDED VERIFIED COMPLAINT AGAINST RYAN LEESTMA AND THE RYAN M. LEESTMA DOMESTIC ASSET PROTECTION TRUST**

## I.   INTRODUCTION.

Plaintiff Independent Bank ("Independent Bank" or "Lender") moves for the Court's entry of an order granting summary disposition as to Count II (Breach of Guaranties) of its First Amended Verified Complaint ("Complaint") against Defendants Ryan Leestma ("Leestma") and the Ryan M. Leestma Domestic Asset Protection Trust dated November 30, 2018 (the "Trust") under MCR 2.116(C)(9) and/or MCR 2.116(C)(10). Leestma and the Trust have failed to state a valid defense to Lender's claims for breach of guaranties asserted against them. Further, there is no genuine issue of material fact and Lender is entitled to judgment as a matter of law.

The Borrower Defendants executed numerous promissory notes in favor of Independent

5

Bank evidencing indebtedness owing to Independent Bank. Copies of the promissory notes are attached to Independent Bank's Complaint as Exhibits A, B, C, D, E, F, G, H, and I. *A composite exhibit including all the notes is attached as **Exhibit 1***. Leestma and the Trust executed guaranties of all indebtedness owing to Independent Bank by the Borrower Defendants in which they each guaranteed the full repayment of all indebtedness owing to Independent Bank by the Borrower Defendants.  Copies of the guaranties of Leestma and the Trust are attached to Independent Bank's Complaint as Exhibits B-2, C-5, D-4, F-2, G-5, H-3, and I-3. *A composite exhibit including all the guaranties is attached as **Exhibit 2***.

After Defendants defaulted on their obligations to Lender, the parties executed a Forbearance Agreement acknowledging the loan documents, the indebtedness owing to Independent Bank ($27,925,979.99 as of the Forbearance Agreement dated August 25, 2025), and the defaults that occurred. *A copy of the Forbearance Agreement is attached as **Exhibit 3***. The Forbearance Agreement, by its terms, expired on November 25, 2025, and required Defendants to repay the entire indebtedness upon its expiration.[1]  Defendants have failed to pay the indebtedness when due, which they have repeatedly admitted in court filings. Additionally, the loan documents and Forbearance Agreement required the Defendants to timely pay all taxes on the Lender's collateral. Defendants admit they have failed to timely pay taxes. *See Defendants' Objection to Plaintiff's Motion for Appointment of Receiver; a copy of which is attached as **Exhibit 4***. Clearly, Defendants defaulted under the terms of loan documents and the Forbearance Agreement, as recognized by this Court in its January 9, 2026, Opinion and Order.

As set forth below, the clear and unambiguous language of the loan documents and the Forbearance Agreement warrant the Court's immediate grant of summary disposition under MCR

---

[1] Independent Bank terminated the Forbearance Agreement on September 22, 2025, as a result of Defendants' failure to timely pay real estate taxes on Independent Bank's collateral, among other reasons.

4936-4857-1267_3

2.116(C)(9) and/or MCR 2.116(C)(10) as to Count II (Breach of Guaranties) of its Complaint.

## II.   UNDISPUTED FACTS.

### A.   The Borrower Defendants Executed Promissory Notes Evidencing the Indebtedness to Lender and Leestma and the Trust Guaranteed the Indebtedness.

Defendants Adelaide Pointe Boaters Services, LLC, Adelaide Pointe QOZB, LLC, Adelaide Pointe Building 1, LLC, Leestma Management, LLC, and Waterland Battle Creek Properties, LLC (collectively, "Borrower Defendants"), each executed and delivered to Independent Bank certain promissory notes for the benefit of Independent Bank. *Copies of the Notes are attached as composite Exhibit 1*.  As part of the security for the indebtedness to Lender, Leestma and the Trust executed and delivered Guaranties in which they guaranteed payment to Lender of all the outstanding indebtedness (the "Guaranties"). *Copies of the Guaranties are attached as composite Exhibit 2*.  As an accommodation to the Borrower Defendants and guarantors following Defendants default, the parties entered into a Forbearance Agreement dated August 25, 2025 (the "Forbearance Agreement"), which, among other items, affirmed the loan documents (including the Notes and Guaranties), the indebtedness owing, the defaults, and Defendants' waiver of claims or defenses against Independent Bank. *A copy of the Forbearance Agreement is attached as Exhibit 3*.  The Forbearance Agreement expired by its terms on November 25, 2025.

Under the Notes, it shall be a default if "Borrower fails to make any payment under this Note within five (5) days of the date when due." *See, e.g., Exhibit A to the First Amended Verified Complaint, para 9(a)*.  A payment default cannot be cured.  Upon the expiration of the forbearance period, which was the earlier of November 25, 2025, the occurrence of a default under the Forbearance Agreement, or a default or Event of Default under any of the other

7

4936-4857-1267_3

Loan Documents, the entire indebtedness was owing to Independent Bank.  Defendants have failed to pay Independent Bank the entire indebtedness owed.

On September 3, 2025 (while under forbearance), Mr. Leestma executed a quitclaim deed in which he transferred his interests in real property located at 1599 Westwind Ct., Muskegon, Michigan ("Westwind Property") to Ryan M. Leestma and Emily S. Leestma, married to each other, joint tenants with full rights of survivorship.  *A copy of the recorded Quit Claim Deed is attached as **Exhibit 5***.  Prior to the recording of the Quit Claim Deed, the title of the Westwind Property was vested in Ryan M. Leestma and Mr. Leestma had granted a mortgage to Lender as security for the indebtedness. *A copy of the mortgage is attached as **Exhibit 6***.  The mortgage on the Westwind Property provides that, "If, without the prior written consent of Mortgagee, a portion of the Property, or any beneficial interest therein, is…transferred…then the Mortgagee may declare all sums secured by this Mortgage to be immediately due and payable." *See Exhibit 6, § 3.7(d)*.  The transfer of Mr. Leestma's interests in the Westwind Property constitutes a default of the mortgage (and likely also constitutes a voidable transaction under Michigan law).

Among other defaults, Defendants failed to pay the indebtedness when due and impermissibly transferred ownership of the Westwind Property.  Accordingly, in its Opinion and Order dated January 9, 2026, this Court confirmed that Defendants are in default.  Upon an event of default, "Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount." *See **Exhibit 1**, para. 10.* In addition to the unpaid principal and interest, the Notes allow Lender to collect its attorney's fees and expenses, bank fees, expenses and costs, and contractual interest until the debt is satisfied. *Id*.  As a result of the defaults, under the Guaranties, Leestma and the Trust are liable for the outstanding indebtedness to Lender, jointly and severally.

4936-4857-1267_3

**B. Lender Filed this Action After Defendants Failed to Comply with Their Contractual Obligations.**

Following default of the Forbearance Agreement, Lender filed its Complaint against Defendants for, among other relief, breach of the Notes and the Guaranties. *See, generally, First Amended Verified Complaint*. Contemporaneous with the filing of the Complaint, Lender filed an Ex Parte Motion for Appointment of Receiver.

To date, Defendants have failed to repay the outstanding indebtedness due to Lender pursuant to the terms of the Notes. *An Affidavit of Independent Bank Vice President Denise Geers is attached hereto as Exhibit 7*. As of March 25, 2026, the outstanding indebtedness under the Notes was $29,678,688.37 ("Indebtedness"), plus attorney's fees, letter of credit obligations, bank fees, expenses, and costs and contractual interest until the debt is satisfied.  As set forth above, Defendants agreed to pay Lender's attorney's fees, bank fees, expenses and costs, and contractual interest under the parties' loan agreements.

## III.   ARGUMENT.

### A. Standards Governing Lender's Motion.

Lender moves for summary disposition under MCR 2.116(C)(9) and/or MCR 2.116(C)(10). Summary disposition under both subsections is warranted in this case because Defendants have failed to raise a valid defense (and waived any defense to repayment in the Forbearance Agreement) and there is no genuine issue of material fact.

Under MCR 2.116(C)(9), summary disposition is appropriate when the opposing party has failed to state a valid defense to the claims asserted by the plaintiff.  A motion under MCR 2.116(C)(9) tests the sufficiency of a defendant's pleadings. When ruling upon an MCR 2.116(C)(9) motion, the Court "must accept as true all well-pleaded allegations and properly grant summary disposition where a defendant fails to plead a valid defense to a claim." *Slater v Ann*

9

*Arbor Public Schools Bd of Ed*, 250 Mich App 419, 425-26; 648 NW2d 205 (2002); *Village of Dimondale v Grable*, 240 Mich App 553, 564; 618 NW2d 23 (2000). In particular, "[s]ummary disposition under MCR 2.116(C)(9) is proper when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Slater*, 250 Mich App at 425-26. Here, because Defendants have failed to plead a valid defense to any claim and have waived any defense to repayment of the indebtedness under the Forbearance Agreement, Lenders are entitled to summary disposition.

Lender also moves for summary disposition under MCR 2.116(C)(10). Summary disposition is warranted in this case because there is no genuine issue of material fact as to the Guaranty obligations. A motion under MCR 2.116(C)(10) is proper when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." In reviewing a motion for summary disposition under MCR 2.116(C)(10), the Court may consider "affidavits . . . pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties . . . ." MCR 2.116(G)(5); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). The Michigan Court Rules provide that evidence offered to support or oppose a motion based on MCR 2.116(C)(10) "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion." MCR 2.116(G)(6). In *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999), the Michigan Supreme Court clarified that a court "should evaluate a motion for summary disposition under MCR 2.116(C)(10) by considering the substantively admissible evidence actually proffered in opposition [and] may not employ a standard citing the mere possibility that the claim might be

10

4936-4857-1267_3

supported by evidence produced at trial." *Id*.  Thus, it is not sufficient for Defendants merely to rest on their pleadings in response to Lender's Motion.

**B. Lender is Entitled to Summary Disposition as to Count II of its First Amended Verified Complaint (Breach of Guaranties) Because Leestma and the Trust Have Failed to Repay the Indebtedness Due and Owing to Lender.**

In Count II of its Complaint (Breach of Guaranties), Lender asserted claims for breach of guaranty against Leestma and the Trust, among others.  It is undisputed that Leestma and the Trust executed the Guaranties in favor of Lender.  It is further undisputed that an event of default has occurred under the Notes.  The indebtedness remains due and owing to Lender. Because Leestma and the Trust have admittedly failed to repay the Indebtedness as required by the Guaranties, Lender is entitled to summary disposition in its favor as to Count II.

In order to establish a breach of guaranty, Lender must establish (1) the existence of a contract, (2) that Leestma and the Trust breached that contract, and (3) that Lender suffered damages. See *Comerica Bank v Cohen*, 291 Mich App 40, 54; 805 NW2d 544 (2010) (stating that a guaranty is construed like any other contract); *Stoken v JET Electronics & Tech, Inc*, 174 Mich App 457, 463; 436 NW2d 389 (1988) (stating the elements of a breach of contract).

In this case, Defendants do not deny that they executed the Notes and the Guaranties attached to Lender's Complaint and that they failed to make the requisite payments pursuant to the Notes and Guaranties. *See composite **Exhibits 1 and 2***. Additionally, Defendants failed to timely pay real property taxes, transferred mortgaged property, and failed to comply with the terms of the Forbearance Agreement, which are also events of default.  Defendants, therefore, cannot dispute that Leestma and the Trust defaulted on and breached the Guaranties when they failed to pay the entire indebtedness upon default of the Forbearance Agreement.

Moreover, in Defendants' Response, Defendants clearly admit that they defaulted under

4936-4857-1267_3

the loan documents and that the default persisted when the Complaint was filed. ***Exhibit 4***.  In an apparent attempt to create a factual dispute, Defendants' Answer and Affirmative Defenses to the Complaint directly contradicts their Response by denying that they defaulted upon the terms of the loan documents – which is untrue. *See generally Defendants' Answer and Affirmative Defenses*. A party or witness may not create a factual dispute by submitting a writing that contradicts his or her own testimony or conduct. *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 396; 729 NW2d 277 (2006); *Bergen v Baker*, 264 Mich App 376, 389; 691 NW2d 770 (2004); *Aetna Cas & Surety Co v Ralph Wilson Plastics Co*, 202 Mich App 540, 548; 509 NW2d 520 (1993).  This principle is widely applied to preclude the filing of last-minute affidavits. *Id.* Judgment rendered in favor of a non-moving party cannot be had by conclusory assertions that are at odds with prior testimony of a party. See *Aetna Cas & Surety Co*, 202 Mich App at 548. When rejecting the contradictory assertion (and recognizing that this Court already found Defendants in default under the loan documents), there is clearly no genuine issue of material fact and judgment should be rendered in Lender's favor.

The guarantor Defendants do not dispute that they guaranteed the outstanding Indebtedness to Lender in the event that the Borrower Defendants failed to pay. *See generally composite **Exhibit 2***. Thus, guarantor Defendants' current failure to pay the Indebtedness constitutes a breach of their obligations to Lender.

Under Michigan law, the Court must enforce the clear and unconditional terms of the parties' loan agreements that require the payment of the Indebtedness, plus Lender's attorney fees and expenses. *See, e.g., McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008) ("courts cannot rewrite the parties' contracts if the terms are expressly stated"). "The cardinal rule in the interpretation of contracts is to *ascertain the intention of the parties*. Where the

12

language of the contract is clear and unambiguous, the intent of the parties will be ascertained according to its plain sense and meaning." *Amtower v William C Roney & Co d/b/a Roney & Co*, 232 Mich App 226, 234; 590 NW2d 580 (1998) (emphasis in original and citations omitted). Moreover, "[c]ontracts of guaranty are to be construed like other contracts and the intent of the parties, as collected from the whole instrument and the subject-matter to which it applies, is to govern." *First Nat'l Bank v Redford Chevrolet Co*, 270 Mich 116, 121; 270 NW 221 (1935); *see also Comerica Bank v Cohen*, 291 Mich App 40; 805 NW2d 544 (2010) (court enforced the plain language of the guaranty when it held the guarantor liable for the borrower's outstanding indebtedness and did not require the plaintiff the proceed against other collateral before seeking payment from the guarantor).

Under Michigan law, defendants cannot claim that their written loan agreements do not express the parties' intentions. Michigan law is clear:

> This court has many times held that one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms. *Farm Bureau Mut Ins Co of Mich v Nikkel*, 460 Mich 558, 567; 596 NW2d 915 (1999) (citations omitted).

Similarly, in *Zurcher v Herveat*, 238 Mich App 267; 605 NW2d 329 (1999), the court concluded that "[i]t is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms. Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Id*. at 299 (citations omitted).

Here, the "import of [Defendants'] written contract[s]" shows that the Court's immediate award of summary disposition is warranted as to Count II of Lender's Complaint (Breach of Guaranties). In executing the Guaranties, Defendants agreed to repay the Notes upon default. *See Exhibit 2*. Defendants further agreed that an event of default would include the failure to make

13

any payment when due under the Notes and that it would pay Lender's attorney's fees and expenses. *See Exhibits 1 and 2*. All the obligations of Defendants were affirmed in the Forbearance Agreement. *See Exhibit 3*. Defendants' liability cannot be disputed.

Importantly, the Defendants also expressly waived all defenses in signing the Forbearance Agreement. *See Exhibit 3, paras F, 22(C)*. In executing the Forbearance Agreement, Defendants "acknowledge[d] and agree[d] that the Obligations are due and owing to Lender without setoff, recoupment, defense or counterclaim, in law or in equity, of any nature or kind." *Id. para F*. Courts in Michigan have held that agreements that contain such waivers of defenses are binding and strictly enforced. *See, e.g., Flagstar Bank v Dilorenzo*, unpublished per curiam opinion of the Court of Appeals, issued July 6, 2010 (Docket No. 289856), pp 3-6. *See Exhibit 8*.

Given the clear and unambiguous terms of the Notes, Guaranties, and the Forbearance Agreement, Defendants' liability cannot be disputed, and they are without a valid defense to Lender's claims. Despite Defendants' boilerplate and conclusory Affirmative Defenses to the contrary, there is no genuine issue of material fact and Lender is entitled to judgment as a matter of law. Defendants cannot allege any action or inaction by Lender to avoid their obligations.

Further, as set forth in the attached Affidavit of Denise Geers, Lender has accounted for the outstanding Indebtedness. *See Exhibit 7*. Defendants cannot dispute that they owe the total outstanding Indebtedness amount of $29,678,688.37 plus attorney's fees, letter of credit obligations, bank fees, expenses and costs, and ongoing contractual interest to Lender. Defendants also cannot state any facts or produce any evidence supporting their purported Affirmative Defenses under MCR 2.111(F)(3). *Horvath v Delida*, 213 Mich App 620, 629 (1995) ("The party asserting an affirmative defense has the burden to produce evidence to support it"). Thus, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law.

14

Accordingly, the Court's immediate award of summary disposition as to Count II of Lender's Complaint (Breach of Guaranties) against Defendants Leestma and the Trust is appropriate, and the Court should enter Judgment in favor of Lender and against Defendants Leestma and the Trust, jointly and severally, for the outstanding Indebtedness, together with Lender's attorney's fees, letter of credit obligations, bank fees, expenses, and costs and contractual interest until the judgment is satisfied.

## IV. CONCLUSION.

For the reasons set forth above, Lender respectfully requests that the Court enter the proposed Judgment attached as **Exhibit 9**, granting its Motion for Summary Disposition as to Count II (Breach of Guaranties) of its First Amended Verified Complaint and entering a Judgment in favor of Lender and against Leestma and the Trust, jointly and severally, (i) for the amount of Defendants' outstanding Indebtedness, together with Lender's attorney's fees, letter of credit obligations, bank fees, expenses, and costs, and contractual interest until the Judgment is satisfied and (ii) granting such other relief as the Court deems proper.

Respectfully submitted,

By: Darren J. Burmania (P68240)
99 Monroe Ave. NW, Ste. 300
Grand Rapids, MI 49503
(616) 205-4330
dburmania@bodmanlaw.com
*Counsel for Plaintiff*

Dated: March 26, 2026

15

4936-4857-1267_3

# EXHIBIT "2"

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Middle District of Florida

Case number (*If known*): _____ Chapter _____ 11

☐ Check if this is an amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy      04/25

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | Adelaide Pointe Boaters Services, LLC |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | _____<br>_____<br>_____<br>_____<br>_____ |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 93-4626374 |

**4. Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 400 Adelaide Circle | |
| Number       Street | Number       Street |
| | P.O. Box |
| Muskegon        MI    49441 | |
| City          State    ZIP Code | City          State    ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Muskegon County | |
| County | Number       Street |
| | City          State    ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | _____ |

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding  LLP)
☐ Other. Specify: _____

| Debtor | Adelaide Pointe Boaters Services, LLC | Case number *(if known)* | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .

7139

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
MM / DD / YYYY

District _____ When _____ Case number _____
MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☑ Yes. Debtor Adelaide Pointe QOZB, LLC Relationship Affiliate

District Middle District of Florida, Tampa Divisic When 04/01/2026
MM / DD / YYYY

Case number, if known 8:26-bk-02698

| Debtor | Adelaide Pointe Boaters Services, LLC | Case number (if known)_____ |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☐ No

☑ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☑ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? Foundry fill soil erosion into waterway not being managed by Receiver

☑ It needs to be physically secured or protected from the weather.

☑ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

Where is the property? 1204 W. Western Avenue
_____
Number          Street

_____

Muskegon                              MI          49441
City                                         State       ZIP Code

**Is the property insured?**

☐ No

☑ Yes. Insurance agency Gallagher Insurance Company

Contact name    John Chiazza

Phone           616-581-4402

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☑ 1-49          ☐ 1,000-5,000          ☐ 25,001-50,000
☐ 50-99         ☐ 5,001-10,000         ☐ 50,001-100,000
☐ 100-199       ☐ 10,001-25,000        ☐ More than 100,000
☐ 200-999

**15. Estimated assets**

☐ $0-$50,000              ☑ $1,000,001-$10 million       ☐ $500,000,001-$1 billion
☐ $50,001-$100,000        ☐ $10,000,001-$50 million      ☐ $1,000,000,001-$10 billion
☐ $100,001-$500,000       ☐ $50,000,001-$100 million     ☐ $10,000,000,001-$50 billion
☐ $500,001-$1 million     ☐ $100,000,001-$500 million    ☐ More than $50 billion

---

Official Form 201                 Voluntary Petition for Non-Individuals Filing for Bankruptcy                 page **3**

| Debtor | Adelaide Pointe Boaters Services, LLC | Case number (*if known*) |
|---|---|---|
| | Name | |

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☑ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

---

### Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 04/01/2026
MM / DD / YYYY

✖ /s/ Ryan M. Leestma

Signature of authorized representative of debtor

Ryan M. Leestma

Printed name

Title Manager

**18. Signature of attorney**

✖ /s/ David Jennis

Signature of attorney for debtor

Date 04/01/2026
MM / DD / YYYY

David Jennis
Printed name

Jennis Morse
Firm name

606 East Madison Street
Number        Street

Tampa
City

FL
State

33602
ZIP Code

813-229-800
Contact phone

djennis@jennislaw.com
Email address

775940
Bar number

FL
State

Adelaide Pointe Boaters Services, LLC

Debtor _____    Case number (*if known*)_____
         First Name    Middle Name    Last Name

## Continuation Sheet for Official Form 201

**10) Pending Bankruptcies**

| | | | |
|---|---|---|---|
| **Leestma Management, LLC** | **Middle District of Florida, Tampa Division** | **04/01/2026** | **8:26-bk-02696** |

Official Form 201                    **Voluntary Petition for Non-Individuals Filing for Bankruptcy**

**Fill in this information to identify the case:**

Debtor name ___Adelaide Pointe Boaters Services, LLC___

United States Bankruptcy Court for the: __Middle District of Florida__

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim — If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Ryan Leestma 1900 Gulf Drive North Unit 7 Bradenton Beach, FL, 34217 | | | | | | 12,000,000.00 |
| 2 | Taft Stettinius & Hollister LLP 27777 Franklin Road Suite 2500 Southfield, MI, 48034 | | Legal Fees | | | | 508,492.10 |
| 3 | Brickley DeLong 316 Morris Avenue Suite 500 Muskegon, MI | | Services | | | | 155,680.67 |
| 4 | Smith Haughey 900 3rd St. Suite 204 Muskegon, MI, 49440 | | Legal Fees | | | | 110,092.45 |
| 5 | Freed & Viereck 1061 N. Robinhood Drive Muskegon, MI, 49445 | | | | | | 96,980.51 |
| 6 | Accurate Income Tax 3105 Henry Street Muskegon, MI, 49441 | | | | | | 74,341.92 |
| 7 | American Express PO Box 981535 El Paso, TX, 79998 | | | | | | 40,301.77 |
| 8 | State of Michigan PO Box 30458 Lansing, MI, 48909 | | | | | | 25,500.00 |

Official Form 204          **Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims**          page 1

Debtor  Adelaide Pointe Boaters Services, LLC
Name

Case number (*if known*)

| # | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | Soils & Structures<br>6480 Grand Haven Road<br>Muskegon, MI | | | | | | 21,314.00 |
| 10 | Versatile Fabrication<br>2708 9th Street<br>Muskegon, MI, 49444 | | | | | | 14,500.00 |
| 11 | EXXEL Engineering<br>5252 Clyde Park Ave SW<br>Grand Rapids, MI, 49509 | | | | | | 13,254.00 |
| 12 | Public Finance Authority<br>22 E. Mifflin Street<br>Suit 900<br>Madison, WI | | | | | | 12,432.51 |
| 13 | Forklift Exchange<br>116 W. Hubbard Street<br>Chicago, IL, 60654 | | | | | | 11,924.68 |
| 14 | Oscar Larson<br>Adelaid Pointe QOZB<br>10100 Dixie Hwy<br>Clarkston, MI, 48348 | | | | | | 11,162.52 |
| 15 | Waterway Guide<br>PO Box 419<br>Midothian, VA, 23113 | | | | | | 8,750.00 |
| 16 | Greenridge Realty<br>3115 Orchard Vista Dr. SE<br>Grand Rapids, MI, 49546 | | | | | | 5,880.00 |
| 17 | ICW - Workers Comp Ins.<br>15025 Innovation Drive<br>San Diego, CA, 92128 | | | | | | 5,312.00 |
| 18 | AF Group<br>200 N. Grand Avenue<br>Lansing, MI, 48933 | | | | | | 4,049.00 |
| 19 | Dockwa<br>1 Commercial Wharf<br>Newport, RI, 02840 | | | | | | 3,976.00 |
| 20 | Sanisweep<br>3450 River Hill Drive NW<br>Grand Rapids, MI, 49534 | | | | | | 3,240.00 |

Accurate Income Tax
3105 Henry Street
Muskegon, MI 49441

AF Group
200 N. Grand Avenue
Lansing, MI 48933

American Express
PO Box 981535
El Paso, TX 79998

Brickley DeLong
316 Morris Avenue
Suite 500
Muskegon, MI

Dept. of Environment, Great Lakes
and Energy
PO Box 30458
Lansing, MI 48909

Dockwa
1 Commercial Wharf
Newport, RI 02840

EXXEL Engineering
5252 Clyde Park Ave SW
Grand Rapids, MI 49509

Forklift Exchange
116 W. Hubbard Street
Chicago, IL 60654

Freed & Viereck
1061 N. Robinhood Drive
Muskegon, MI 49445

Greenridge Realty
3115 Orchard Vista Dr. SE
Grand Rapids, MI 49546

ICW - Workers Comp Ins.
15025 Innovation Drive
San Diego, CA 92128

Independent Bank Corporation
4200 East Beltline Avenue
Grand Rapids, MI 49525

Oscar Larson
Adelaid Pointe QOZB
10100 Dixie Hwy
Clarkston, MI 48348

Public Finance Authority
22 E. Mifflin Street
Suit 900
Madison, WI

Ryan Leestma
1900 Gulf Drive North
Unit 7
Bradenton Beach, FL 34217

Sanisweep
3450 River Hill Drive NW
Grand Rapids, MI 49534

Smith Haughey
900 3rd St.
Suite 204
Muskegon, MI 49440

Soils & Structures
6480 Grand Haven Road
Muskegon, MI

State of Michigan
PO Box 30458
Lansing, MI 48909

Taft Stettinius & Hollister LLP
27777 Franklin Road
Suite 2500
Southfield, MI 48034

Versatile Fabrication
2708 9th Street
Muskegon, MI 49444

Waterway Guide
PO Box 419
Midothian, VA 23113

Westmaas
3025 Sangra Avenue SW
Grandville, MI 49418

United States Bankruptcy Court

Middle District of Florida

In re:  Adelaide Pointe Boaters Services, LLC

Case No.

Chapter    11

Debtor(s)

**Verification of Creditor Matrix**

The above-named Debtor(s) hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date:      04/01/2026

/s/ Ryan M. Leestma
Signature of Individual signing on behalf of debtor

Manager
Position or relationship to debtor

AMENDED

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Middle District of Florida

Case number (*If known*): 8:26-bk-02700    Chapter 11

☑ Check if this is an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy    04/25

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | |
|---|---|
| 1. **Debtor's name** | Adelaide Pointe Building 1, LLC |
| 2. **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | |
| 3. **Debtor's federal Employer Identification Number** (EIN) | 93-1358783 |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 901 Adelaide Circle | |
| Number        Street | Number        Street |
| | P.O. Box |
| Muskegon        MI        49441 | |
| City        State        ZIP Code | City        State        ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Muskegon County | |
| County | Number        Street |
| | |
| | City        State        ZIP Code |

5. **Debtor's website** (URL)    www.adelaidepointe.com

6. **Type of debtor**
☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding  LLP)
☐ Other. Specify:

---

| Debtor | Adelaide Pointe Building 1, LLC | Case number (*if known*) | 8:26-bk-02700 |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .

2361

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
　　　　　　　　　　　　　MM / DD / YYYY

　　　　District _____ When _____ Case number _____
　　　　　　　　　　　　　MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☑ Yes. Debtor Leestma Management, LLC　Relationship Parent Entity

District Middle District of Florida, Tampa Divisio　When 04/01/2026
　　　　　　　　　　　　　　　　　　　　　　　　　　　MM / DD / YYYY

Case number, if known 8:26-bk-02696

| Debtor | Adelaide Pointe Building 1, LLC | Case number (if known) | 8:26-bk-02700 |
|---|---|---|---|
| | Name | | |

**11. Why is the case filed in *this district*?**

Check all that apply:

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☐ No

☑ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☑ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? Foundry fill soil erosion into waterway not being managed by Receiver

☑ It needs to be physically secured or protected from the weather.

☑ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other

Where is the property?  1204 W. Western Avenue

Number          Street

Muskegon                                      MI          49441

City                                                 State      ZIP Code

**Is the property insured?**

☐ No

☑ Yes. Insurance agency  Gallaher Insurance Company

Contact name  John Chiazza

Phone  616-581-4402

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

Check one:

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**15. Estimated assets**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million

☐ $1,000,001-$10 million
☑ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million

☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

---

| Debtor | Adelaide Pointe Building 1, LLC | Case number (*if known*) | 8:26-bk-02700 |
|---|---|---|---|
| | Name | | |

**16. Estimated liabilities**

- ❏ $0-$50,000
- ❏ $50,001-$100,000
- ❏ $100,001-$500,000
- ❏ $500,001-$1 million

- ❏ $1,000,001-$10 million
- ☑ $10,000,001-$50 million
- ❏ $50,000,001-$100 million
- ❏ $100,000,001-$500 million

- ❏ $500,000,001-$1 billion
- ❏ $1,000,000,001-$10 billion
- ❏ $10,000,000,001-$50 billion
- ❏ More than $50 billion

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 04/01/2026
MM / DD / YYYY

✖ /s/ Ryan M. Leestma

Signature of authorized representative of debtor

Ryan M. Leestma

Printed name

Title Manager

**18. Signature of attorney**

✖ /s/ David Jennis

Signature of attorney for debtor

Date 04/01/2026
MM / DD / YYYY

David Jennis
Printed name

Jennis Morse
Firm name

606 East Madison Street
Number          Street

Tampa                          FL          33602
City                                State      ZIP Code

813-229-800
Contact phone

djennis@jennislaw.com
Email address

775940
Bar number

FL
State

Adelaide Pointe Building 1, LLC

Debtor

First Name        Middle Name        Last Name

Case number *(if known)*_____

## Continuation Sheet for Official Form 201

**10) Pending Bankruptcies**

| | | | |
|---|---|---|---|
| Adelaide Pointe Boaters Services, LLC | Middle District of Florida, Tampa Division | 04/01/2026 | 8:26-bk-02699 |
| Adelaide Pointe QOZB, LLC | Middle District of Florida, Tampa Division | 04/01/2026 | 8:26-bk-02698 |

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Middle District of Florida

Case number (*If known*): _____ Chapter __11__

☐ Check if this is an amended filing

# Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy     04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | Adelaide Pointe QOZB, LLC |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names, and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 86-2549829 |

**4. Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 1204 W. Western Avenue | |
| Number        Street | Number        Street |
| | P.O. Box |
| Muskegon        MI        49441 | |
| City        State        ZIP Code | City        State        ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Muskegon County | |
| County | Number        Street |
| | |
| | City        State        ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | www.adelaidepointe.com |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) <br> ☐ Partnership (excluding LLP) <br> ☐ Other. Specify: _____ |

| Debtor | Adelaide Pointe QOZB, LLC | Case number (if known) |
|---|---|---|
| | Name | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .

7139

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
MM / DD / YYYY

District _____ When _____ Case number _____
MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☑ Yes. Debtor Leestma Management, LLC Relationship Parent Entity

District Middle District of Florida, Tampa Division When 04/01/2026
MM / DD / YYYY

Case number, if known 8:26-bk-02696

| Debtor | Adelaide Pointe QOZB, LLC | Case number (if known) |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☐ No

☑ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☑ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? Foundry fill soil erosion into waterway not being managed by Receiver

☑ It needs to be physically secured or protected from the weather.

☑ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

Where is the property? 1204 W. Western Avenue
Number            Street

_____

Muskegon                                    MI          49441
City                                              State       ZIP Code

**Is the property insured?**

☐ No

☑ Yes. Insurance agency Gallagher Insurance Company

Contact name    John Chiazza

Phone              616-581-4402

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

☑ 1-49
☐ 50-99
☐ 100-199
☐ 200-999
☐ 1,000-5,000
☐ 5,001-10,000
☐ 10,001-25,000
☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**15. Estimated assets**

☐ $0-$50,000
☐ $50,001-$100,000
☐ $100,001-$500,000
☐ $500,001-$1 million
☐ $1,000,001-$10 million
☑ $10,000,001-$50 million
☐ $50,000,001-$100 million
☐ $100,000,001-$500 million
☐ $500,000,001-$1 billion
☐ $1,000,000,001-$10 billion
☐ $10,000,000,001-$50 billion
☐ More than $50 billion

---

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page **3**

| Debtor | Adelaide Pointe QOZB, LLC | Case number (*if known*) |
|---|---|---|
| | Name | |

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☑ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

---

### Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  04/01/2026
　　　　　　　MM / DD / YYYY

✗ /s/ Ryan M. Leestma
Signature of authorized representative of debtor

Ryan M. Leestma
Printed name

Title  Manager

**18. Signature of attorney**

✗ /s/ David Jennis
Signature of attorney for debtor

Date  04/01/2026
　　　　MM / DD / YYYY

David Jennis
Printed name

Jennis Morse
Firm name

606 East Madison Street
Number　　Street

Tampa
City

FL
State

33602
ZIP Code

813-229-800
Contact phone

djennis@jennislaw.com
Email address

775940
Bar number

FL
State

---

**Fill in this information to identify the case:**

Debtor name ___Adelaide Pointe QOZB, LLC___

United States Bankruptcy Court for the:__Middle District of Florida___

Case number (If known): _____

☐ Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders 12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Ryan Leestma 1900 Gulf Drive North Unit 7 Bradenton Beach, FL, 34217 | | | | | | 12,000,000.00 |
| 2 | Taft Stettinius & Hollister LLP 27777 Franklin Road Suite 2500 Southfield, MI, 48034 | | Legal Fees | | | | 508,492.10 |
| 3 | Brickley DeLong 316 Morris Avenue Suite 500 Muskegon, MI | | Services | | | | 155,680.67 |
| 4 | 2025 Winter Property Taxes 173 E. Apple Avenue Muskegon, MI, 49442 | | no_sub_type | | | | 123,676.80 |
| 5 | Smith Haughey 900 3rd St. Suite 204 Muskegon, MI, 49440 | | Legal Fees | | | | 110,092.45 |
| 6 | Freed & Viereck 1061 N. Robinhood Drive Muskegon, MI, 49445 | | Services | | | | 96,980.51 |
| 7 | Red Line Excavating 4277 1/2 Blue Star Highway Holland, MI, 49423 | | Services | | | | 78,915.74 |
| 8 | Westmaas 3025 Sangra Ave. SW Grandville, MI, 49418 | | Court ordered obligation | | | | 76,839.93 |

Debtor     Adelaide Pointe QOZB, LLC      Case number (*if known*)_____
         Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim — If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | Accurate Income Tax 3105 Henry Street Muskegon, MI, 49441 | | Services | | | | 74,341.92 |
| 10 | American Express PO Box 981535 El Paso, TX, 79998 | | Credit Card Debt | | | | 40,301.77 |
| 11 | State of Michigan PO Box 30458 Lansing, MI, 48909 | | | | | | 25,500.00 |
| 12 | Soils & Structures 6480 Grand Haven Road Muskegon, MI | | | | | | 21,314.00 |
| 13 | Moore & Bruggink 2020 Monroe Ave NW Grand Rapids, MI, 49505 | | Services | | | | 15,287.72 |
| 14 | Versatile Fabrication 2708 9th Street Muskegon, MI, 49444 | | | | | | 14,500.00 |
| 15 | EXXEL Engineering 5252 Clyde Park Ave SW Grand Rapids, MI, 49509 | | | | | | 13,254.00 |
| 16 | Pubic Finance Authority 22 E. Mifflin Street Suit 900 Madison, WI | | | | | | 12,432.51 |
| 17 | Forklift Exchange 116 W. Hubbard Street Chicago, IL, 60654 | | | | | | 11,924.68 |
| 18 | Citizen Financial Services One Citizens Plaza Providence, RI, 02903 | | Unsecured Loan Repayments | | | | 11,528.64 |
| 19 | Oscar Larson Adelaid Pointe QOZB 10100 Dixie Hwy Clarkston, MI, 48348 | | | | | | 11,162.52 |
| 20 | Source One Digital 1137 N. Gateway Blvd. Muskegon, MI, 49441 | | | | | | 10,465.48 |

2025 Winter Property Taxes
173 E. Apple Avenue
Muskegon, MI 49442

Accurate Income Tax
3105 Henry Street
Muskegon, MI 49441

AF Group
200 N. Grand Avenue
Lansing, MI 48933

Ally Financial
500 Woodward Aenue
Detroit, MI 48226

American Express
PO Box 981535
El Paso, TX 79998

Brickley DeLong
316 Morris Avenue
Suite 500
Muskegon, MI

Chulski's Salt Service
945 Comstock St
Marne, MI 49435

Citizen Financial Services
One Citizens Plaza
Providence, RI 02903

Citizens Financial Services, Inc.
JCB210
PO Box 42002
Providence, RI 02940

Dockwa
1 Commercial Wharf
Newport, RI 02840

EGLE
525 W. Allegan St
Lansing, MI 48933

EGLE
PO Box 30458
Lansing, MI 48909

EXXEL Engineering
5252 Clyde Park Ave SW
Grand Rapids, MI 49509

Forklift Exchange
116 W. Hubbard Street
Chicago, IL 60654

Freed & Viereck
1061 N. Robinhood Drive
Muskegon, MI 49445

Greenridge Realty
3115 Orchard Vista Dr. SE
Grand Rapids, MI 49546

Hoesch & Vander Ploeg
9 E. Main Ave
Zeeland, MI 49464

ICW - Workers Comp Ins.
15025 Innovation Drive
San Diego, CA 92128

Independent Bank
4200 East Beltline Avenue
Grand Rapids, MI 49525

J&H Oil
1619 Chicago Drive SW
Wyoming, MI 49519

John Polderman
26100 American Drive
Suite 500
Southfield, MI 48034

LEAF
2005 Market Street
Philadelphia, PA 19103

Moore & Bruggink
2020 Monroe Ave NW
Grand Rapids, MI 49505

Netvantage
1345 Monroe Avenue NW
Suite 204
Grand Rapids, MI 49505

Oscar Larson
Adelaid Pointe QOZB
10100 Dixie Hwy
Clarkston, MI 48348

Pubic Finance Authority
22 E. Mifflin Street
Suit 900
Madison, WI

Red Line Excavating
4277 1/2 Blue Star Highway
Holland, MI 49423

Ryan Leestma
1900 Gulf Drive North
Unit 7
Bradenton Beach, FL 34217

Sanisweep
3450 River Hill Drive NW
Grand Rapids, MI 49534

Sheffield
6010 Golding Center Drive
Winston-Salem, NC 27103

Smith Haughey
900 3rd St.
Suite 204
Muskegon, MI 49440

Soils & Structures
6480 Grand Haven Road
Muskegon, MI

Source One Digital
1137 N. Gateway Blvd.
Muskegon, MI 49441

State of Michigan
PO Box 30458
Lansing, MI 48909

State of Michigan
430 W. Allegan Street
Lansing, MI 48922

Taft Stettinius & Hollister LLP
27777 Franklin Road
Suite 2500
Southfield, MI 48034

Team Financial Group, Inc.
650 - 3 Mile Road NW
Suite 200
Grand Rapids, MI 49544

Versatile Fabrication
2708 9th Street
Muskegon, MI 49444

Waterway Guide
PO Box 419
Midothian, VA 23113

Westmaas
3025 Sangra Ave. SW
Grandville, MI 49418

United States Bankruptcy Court

Middle District of Florida

In re: Adelaide Pointe QOZB, LLC

Case No.

Chapter   11

Debtor(s)

**Verification of Creditor Matrix**

The above-named Debtor(s) hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date:   04/01/2026

/s/ Ryan M. Leestma

Signature of Individual signing on behalf of debtor

Manager

Position or relationship to debtor

| Fill in this information to identify the case. |

United States Bankruptcy Court for the:

Middle District of Florida

Case number (*If known*): _____ Chapter **11** _____

☐ Check if this is an
amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy   04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | Leestma Management, LLC |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | _____<br>_____<br>_____<br>_____<br>_____ |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 81-4727282 |

| | | |
|---|---|---|
| 4. | **Debtor's address** | |

**Principal place of business**

1900 Gulf Drive North
_____
Number          Street

Unit 7
_____

Bradenton Beach          FL        34217
_____
City                          State      ZIP Code


Manatee County
_____
County

**Mailing address, if different from principal place of business**

_____
Number          Street

_____
P.O. Box

_____
City                          State      ZIP Code

**Location of principal assets, if different from principal place of business**

_____
Number          Street

_____

_____
City                          State      ZIP Code

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | www.leestmamanagement.com |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding LLP)<br>☐ Other. Specify: _____ |

Official Form 201                     Voluntary Petition for Non-Individuals Filing for Bankruptcy                     page 1

| Debtor | Leestma Management, LLC | | Case number (if known) | |
|---|---|---|---|---|
| | Name | | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .

5511

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
MM / DD / YYYY

District _____ When _____ Case number _____
MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☑ No

☐ Yes. Debtor _____ Relationship _____

District _____ When _____
MM / DD / YYYY

Case number, if known _____

| Debtor | Leestma Management, LLC | Case number (*if known*)_____ |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

❑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

❑ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

❑ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

❑ It needs to be physically secured or protected from the weather.

❑ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

❑ Other _____

**Where is the property?** _____
Number        Street

_____

_____
City                                        State        ZIP Code

**Is the property insured?**

❑ No

❑ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

❑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☑ 1-49 | ❑ 1,000-5,000 | ❑ 25,001-50,000 |
| ❑ 50-99 | ❑ 5,001-10,000 | ❑ 50,001-100,000 |
| ❑ 100-199 | ❑ 10,001-25,000 | ❑ More than 100,000 |
| ❑ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ❑ $0-$50,000 | ❑ $1,000,001-$10 million | ❑ $500,000,001-$1 billion |
| ❑ $50,001-$100,000 | ❑ $10,000,001-$50 million | ❑ $1,000,000,001-$10 billion |
| ❑ $100,001-$500,000 | ☑ $50,000,001-$100 million | ❑ $10,000,000,001-$50 billion |
| ❑ $500,001-$1 million | ❑ $100,000,001-$500 million | ❑ More than $50 billion |

---

| Debtor | Leestma Management, LLC | Case number (*if known*) |
|---|---|---|
| | Name | |

| **16. Estimated liabilities** | ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
|---|---|---|---|
| | ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| | ☐ $100,001-$500,000 | ☑ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| | ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

### Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  04/01/2026
MM / DD / YYYY

✘ /s/ Ryan M. Leestma
Signature of authorized representative of debtor

Ryan M. Leestma
Printed name

Title  Member

---

**18. Signature of attorney**

✘ /s/ David Jennis
Signature of attorney for debtor

Date  04/01/2026
MM / DD / YYYY

David Jennis
Printed name

Jennis Morse
Firm name

606 East Madison Street
Number      Street

Tampa
City

FL
State

33602
ZIP Code

813-229-800
Contact phone

djennis@jennislaw.com
Email address

775940
Bar number

FL
State

---

| Official Form 201 | Voluntary Petition for Non-Individuals Filing for Bankruptcy | page **4** |
|---|---|---|

**Fill in this information to identify the case:**

Debtor name ___Leestma Management, LLC_____

United States Bankruptcy Court for the:__Middle District of Florida_____

Case number (If known): _____

☐ Check if this is an amended filing

## Official Form 204

### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
**12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| 1 | | | | | | | |
| 2 | | | | | | | |
| 3 | | | | | | | |
| 4 | | | | | | | |
| 5 | | | | | | | |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |

| Debtor | Leestma Management, LLC | Case number (*if known*) |
|---|---|---|
| | Name | |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |

Official Form 204 **Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims** page 2

Independent Bank
230 W. Main Street
Ionia, MI

Independent Bank
230 W. Main Street
Ionia, MI 48846

Independent Bank

Kent County Tax Collector
PO Box Y
Grand Rapids, MI 49501

Lake Michigan Credit Union
PO Box 2848
Grand Rapids, MI 49501

Waterland Battle Creek Properties, LLC
1204 W. Western Avenue
Muskegon, MI 49441

United States Bankruptcy Court

Middle District of Florida

In re: Leestma Management, LLC

Case No.

Chapter 11

Debtor(s)

**Verification of Creditor Matrix**

The above-named Debtor(s) hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date: _____04/01/2026_____

/s/ Ryan M. Leestma
_____
Signature of Individual signing on behalf of debtor

Member
_____
Position or relationship to debtor

Fill in this information to identify the case.

United States Bankruptcy Court for the:

Middle District of Florida

Case number (*If known*): _____ Chapter ____11____

☐ Check if this is an
amended filing

## Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy   04/25

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.**

| | | |
|---|---|---|
| 1. | **Debtor's name** | Waterland Battle Creek, LLC |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | _____<br>_____<br>_____<br>_____<br>_____ |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 38-3400070 |

**4.  Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| 77 East Michigan Avenue | _____ |
| Number          Street | Number          Street |
| _____ | _____ |
| | P.O. Box |
| Battle Creek        MI      49017 | _____ |
| City                State    ZIP Code | City            State      ZIP Code |
| | **Location of principal assets, if different from principal place of business** |
| Calhoun County | _____ |
| County | Number          Street |
| | _____ |
| | _____ |
| | City            State      ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | www.leestmamanagement.com |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br>☐ Partnership (excluding  LLP)<br>☐ Other. Specify: _____ |

Debtor ___Waterland Battle Creek, LLC_____  Case number (if known)_____
              Name

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☑ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.naics.com/search/ .

1190

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check one:*

☐ Chapter 7

☐ Chapter 9

☑ Chapter 11. *Check **all** that apply*:

☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,424,000 (amount subject to adjustment on 4/01/28 and every 3 years after that).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☑ No

☐ Yes. District _____ When _____ Case number _____
                                              MM / DD / YYYY

District _____ When _____ Case number _____
                                              MM / DD / YYYY

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list.

☐ No

☑ Yes. Debtor ___Leestma Management, LLC_____  Relationship ___Parent Entity_____

District ___Middle District of Florida, Tampa Divisi___  When ___04/01/2026___
                                                                                    MM / DD / YYYY

Case number, if known ___8:26-bk-02696___

Official Form 201                    Voluntary Petition for Non-Individuals Filing for Bankruptcy                    page 2

| Debtor | Waterland Battle Creek, LLC | Case number (if known) |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

❑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☑ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☑ No

❑ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

❑ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

❑ It needs to be physically secured or protected from the weather.

❑ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

❑ Other _____

**Where is the property?** _____
Number          Street

_____

_____
City                                                          State        ZIP Code

**Is the property insured?**

❑ No

❑ Yes. Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds**

*Check one:*

☑ Funds will be available for distribution to unsecured creditors.

❑ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☑ 1-49 | ❑ 1,000-5,000 | ❑ 25,001-50,000 |
| ❑ 50-99 | ❑ 5,001-10,000 | ❑ 50,001-100,000 |
| ❑ 100-199 | ❑ 10,001-25,000 | ❑ More than 100,000 |
| ❑ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ❑ $0-$50,000 | ☑ $1,000,001-$10 million | ❑ $500,000,001-$1 billion |
| ❑ $50,001-$100,000 | ❑ $10,000,001-$50 million | ❑ $1,000,000,001-$10 billion |
| ❑ $100,001-$500,000 | ❑ $50,000,001-$100 million | ❑ $10,000,000,001-$50 billion |
| ❑ $500,001-$1 million | ❑ $100,000,001-$500 million | ❑ More than $50 billion |

---

| Debtor | Waterland Battle Creek, LLC | Case number (*if known*) |
|---|---|---|
| | Name | |

**16. Estimated liabilities**

- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☑ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☐ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

## Request for Relief, Declaration, and Signatures

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __04/01/2026__
MM / DD / YYYY

✖ /s/ Ryan M. Leestma
Signature of authorized representative of debtor

Ryan M. Leestma
Printed name

Title __Manager__

**18. Signature of attorney**

✖ /s/ David Jennis
Signature of attorney for debtor

Date __04/01/2026__
MM / DD / YYYY

David Jennis
Printed name

Jennis Morse
Firm name

606 East Madison Street
Number          Street

Tampa
City

FL
State

33602
ZIP Code

813-229-800
Contact phone

djennis@jennislaw.com
Email address

775940
Bar number

FL
State

Waterland Battle Creek, LLC

Debtor _____    Case number (*if known*)_____
First Name    Middle Name    Last Name

## **Continuation Sheet for Official Form 201**


**10) Pending Bankruptcies**

| | | | |
|---|---|---|---|
| Adelaide Pointe Boaters Services, LLC | Middle District of Florida, Tampa Division | 04/01/2026 | 8:26-bk-02699 |
| Adelaide Pointe Building 1, LLC | Middle District of Florida, Tampa Division | 04/01/2026 | 8:26-bk-02700 |
| Adelaide Pointe QOZB, LLC | Middle District of Florida, Tampa Division | 04/01/2026 | 8:26-bk-02698 |

Official Form 201                    **Voluntary Petition for Non-Individuals Filing for Bankruptcy**

**Fill in this information to identify the case:**

Debtor name ___Waterland Battle Creek, LLC___

United States Bankruptcy Court for the:___Middle District of Florida___

Case number (If known): _____

☐ Check if this is an
amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider,* as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Clean Team Inc. 224 N. 30th St Battle Creek, MI, 49015 | | Services | | | | 2,343.00 |
| 2 | Bradley Company 220 Lyon Street NW Suite 400 Grand Rapids, MI, 49503 | | Services | | | | 1,330.00 |
| 3 | Indusco Supply Company, Inc. 3645 E. Cork Street Kalamazoo, MI, 49001 | | | | | | 485.00 |
| 4 | Griffin Pest Solutions, Inc. 2700 Stadium Drive Kalamazoo, MI, 49008 | | Services | | | | 129.00 |
| 5 | Independent Bank 4200 East Beltline Avenue Grand Rapids, MI, 49525 | | | | | | 0.00 |
| 6 | US Department of Interior 1849 C Street, N.W. Washington, DC, 20240 | | For Notice Purposes | | | | 0.00 |
| 7 | Battle Creek City Treasurer 10 N. Division Street Battle Creek, MI, 49014 | | Taxes & Other Government Units | | | | 0.00 |
| 8 | | | | | | | |

Debtor  Waterland Battle Creek, LLC                              Case number (*if known*)_____
_____
Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | **Total claim, if partially secured** | **Deduction for value of collateral or setoff** | **Unsecured claim** |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |

Official Form 204        **Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims**        page 2

Battle Creek City Treasurer
10 N. Division Street
Battle Creek, MI 49014


Bradley Company
220 Lyon Street NW
Suite 400
Grand Rapids, MI 49503


Clean Team Inc.
224 N. 30th St
Battle Creek, MI 49015


Griffin Pest Solutions, Inc.
2700 Stadium Drive
Kalamazoo, MI 49008


Independent Bank
4200 East Beltline Avenue
Grand Rapids, MI 49525


Independent Bank Corporation
4200 East Beltline Avenue
Grand Rapids, MI 49525


Indusco Supply Company, Inc.
3645 E. Cork Street
Kalamazoo, MI 49001


Leestma Management, LLC
1900 Gulf Drive North
Unit 7
Bradenton Beach, FL 34217


Ryan Leestma
1900 Gulf Drive North
Unit 7
Bradenton Beach, FL 34217


US Department of Interior
1849 C Street, N.W.
Washington, DC 20240

United States Bankruptcy Court

Middle District of Florida

In re: Waterland Battle Creek, LLC

Case No.

Chapter 11

Debtor(s)

**Verification of Creditor Matrix**

The above-named Debtor(s) hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date: _____04/01/2026_____

/s/ Ryan M. Leestma
_____
Signature of Individual signing on behalf of debtor

Manager
_____
Position or relationship to debtor

# EXHIBIT "3"

## Burmania, Darren

| | |
|---|---|
| **From:** | Cataldo, R. Christopher <ccataldo@taftlaw.com> |
| **Sent:** | Friday, April 3, 2026 10:09 AM |
| **To:** | Burmania, Darren |
| **Subject:** | Automatic stay. |

---

**CAUTION: External Sender.**

---

Darren, please advise if you are withdrawing the notice of hearing on the Bank's motion for summary disposition of Count II given the bankruptcy filing.



**R. Christopher Cataldo**
Partner
ccataldo@taftlaw.com
Dir: 248.727.1389
Tel: 248.351.3000
27777 Franklin Rd
Suite 2500
Southfield, Michigan 48034

**Taft Bio**
**Download vCard**
**taftlaw.com**

**Now over 1,250 attorneys strong.**

Taft has expanded its service offerings by combining with Morris, Manning & Martin (Atlanta and Washington, D.C.), Mrachek Law (Florida), and Sherman & Howard (Mountain West).  Learn more **here.**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT "4"

**STATE OF MICHIGAN**
**IN THE BUSINESS COURT FOR COUNTY OF KENT**

INDEPENDENT BANK, a Michigan banking
corporation,

      Plaintiff,

v.

ADELAIDE POINTE BOATERS SERVICES,
LLC, a Michigan limited liability company,
ADELAIDE POINTE QOZB LLC, a Michigan
limited liability company, ADELAIDE
POINTE BUILDING 1, LLC, a Michigan
limited liability company, LEESTMA
MANAGEMENT, LLC, a Florida limited
liability company, WATERLAND BATTLE
CREEK PROPERTIES, LLC, a Michigan
limited liability company, RYAN LEESTMA,
an individual, and the RYAN M. LEESTMA
DOMESTIC ASSET PROTECTION TRUST
DATED NOVEMBER 30, 2018, EDWIN J
VANDERPLOEG, JR., as Trustee of the Ryan
M. Leestma Domestic Asset Protection Trust
u/a/d November 30, 2018, jointly and severally,

      Defendants.

Case No. 25-20760-CBB
Hon. Curt A. Benson

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY DISPOSITION -- REQUEST FOR ADMINISTRATIVE CLOSURE UNDER MCR 2.421(E)**

---

| | |
|---|---|
| BODMAN PLC<br>Darren J. Burmania (P68240)<br>J. Grant Semonin (P86855)<br>*Attorneys for Plaintiff*<br>99 Monroe Ave. NW, Suite 300<br>Grand Rapids, Michigan 49503<br>Phone: (616) 205-4330<br>dburmania@bodmanlaw.com<br>gsemonin@bodmanlaw.com | TAFT STETTINIUS & HOLLISTER LLP<br>R. Christopher Cataldo (P39353)<br>*Attorneys for Defendants*<br>27777 Franklin Rd., Ste. 2500<br>Southfield, MI 48034<br>(248) 351-3000<br>ccataldo@taftlaw.com |
| RHOADES McKEE PC<br>David E. Bevins (P48955)<br>*Attorneys for Intervenor*<br>*Lake Michigan Credit Union*<br>55 Campau N.W., Ste. 300<br>Grand Rapids, MI 49503<br>(616) 235-3500<br>debevins@rhoadesmckee.com | STEVENSON & BULLOCK, PLC<br>John W. Polderman (P65720)<br>*Court-Appointed Receiver*<br>26100 American Drive, Ste. 500<br>Southfield, MI 48034<br>(248) 354-7906<br>jpolderman@sbplclaw.com |

199604875v1

| | |
|---|---|
| Laura R. LaMore (P79943)<br>Assistant Attorney General<br>*Attorney for State Intervenor*<br>Michigan Department of Attorney General<br>Environment, Natural Resources<br>and Agriculture Division<br>P.O. Box 30755<br>Lansing, MI 48909<br>(517) 335-7664<br>LaMoreL1@michigan.gov | Peter D. Cronk (P60172)<br>Matthew Boettcher (P40929)<br>Plunkett Cooney<br>*Attorneys for Intervenor 4Front Credit Union*<br>101 N. Washington Square, Ste. 1200<br>Lansing, MI 48933<br>(517) 324-5611<br>pcronk@plunkettcooney.com<br>mboettcher@plunkettcooney.com |
| Elisabeth M. Von Eitzen (P70183)<br>Emily R. Rucker (P79228)<br>Warner Norcross + Judd LLP<br>Attorneys for non-party West Shore Bank<br>180 E. Water St., Ste. 7000<br>Kalamazoo, MI 49007<br>(269) 276-8118<br>evoneitzen@wnj.com<br>erucker@wnj.com | Nicholas J. Spigiel (P73526)<br>Kreis, Enderle, Hudgins & Borso, PC<br>Attorneys for non-party ChoiceOne Bank<br>PO Box 4010<br>Kalamazoo, MI 49003<br>(269) 324-3000<br>nspigiel@kehb.com |

**RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY DISPOSITION
AND REQUEST FOR ADMINISTRATIVE CLOSURE UNDER MCR 2.421(E)**

**OVERVIEW.**

On September 23, 2025, Plaintiff Independent Bank filed this lawsuit alleging that it was the lender to Defendants Adelaide Pointe Boater Services, LLC ("Boater Services"), Adelaide Pointe QOZB, LLC ("QOZB"), Adelaide Pointe Building 1, LLC ("Building 1"), Leestma Management, LLC ("LM"); and Waterland Battle Creek Properties, LLC ("Waterland"). Boater Services, QOZB, Building 1, LM and Waterland shall be jointly referred to as the Borrower Defendants.

Independent Bank's Complaint also alleges that Ryan Leestma and the Ryan M. Leestma Domestic Asset Protection Trust were the guarantors on the loans made by Independent Bank to the Borrower Defendants. On April 2, 2026, the five Borrower Defendants filed a notice pursuant to MCR 2.421 that they had filed for Chapter 11 bankruptcy protection in the middle district of

2

Florida. A copy of the notice is attached hereto as Exhibit A. The purpose of the Chapter 11 bankruptcy is for the Borrower Defendants to obtain reorganization as to the Independent Bank loans.

Notwithstanding the Chapter 11 filing and the Borrower Defendants attempt to reorganize the debt to Independent Bank, Independent Bank is moving forward with a motion for summary disposition on the guarantees as to Ryan Leestma and the Ryan M. Leestma Domestic Asset Protection Trust (the "Leestma Defendants"). The Leestma Defendants file this response to the motion for summary disposition filed by Independent Bank as to Count II of the First Amended Complaint and request that the Court either: i) administratively close this case pursuant to MCR 2.421(E) or ii) defer proceedings until after holding the status conference to consider the administrative closure of this case as referenced in MCR 2.421(E) before taking any further action on Plaintiff's motion for summary disposition.

### LEGAL STANDARD

MCR 2.421(E) states that "[I]f a notice is filed under this rule, the court may hold in abeyance any further proceedings and may schedule a status conference to consider the administrative closure of all or a portion of the state court action." Further, "[w]hen deciding whether to stay proceedings, courts generally consider how a stay would affect (1) judicial economy, (2) the public welfare, and (3) the risk of prejudice to the parties." *Putnam v. Cnty of Tuscola*, Case No. 1:23-cv-10427, 2025 U.S. Dist. LEXIS 48100 (E.D.MI. March 17, 2025 **(Exhibit B).**

### ARGUMENT

An administrative closure of this action pending a lift of the automatic stay or the resolution of the bankruptcy proceeding filed by the Borrower Defendants would promote judicial economy

3

which benefits the parties, the Court, and the public welfare. The alternative is that this matter would proceed to trial against only the Leestma Defendants, who are guarantors of the debt owed to Independent Bank by the Borrower Defendants, and who are seeking in the bankruptcy to reorganize that very same debt, this creating with a potential duplicative trial against these other defendants at a later time, which would create unnecessary and burdensome inefficiencies in multiple litigations. It may require this Court to schedule two separate trials over the same issues and would result in piecemeal litigation. Moreover, allowing this case to go forward as to the Leestma Defendants will undermine the Borrower Defendants ability to reorganize the Independent Bank debt, which was the very purpose for which the Chapter 11 was filed.

The question of whether to stay a case against all defendants when at least one, but not all, have filed for bankruptcy was very recently addressed by the United States District Court for the Eastern District of Michigan in *Putnam v. Cnty of Tuscola*, Case No. 1:23-cv-10427, 2025 U.S. Dist. LEXIS 48100 (E.D. MI. March 17, 2025)(***See* Exhibit B**). In *Putnam*, the court was tasked with addressing a motion to stay the entirety of a litigation matter even though only one of the various named defendants in the litigation matter was subject to an automatic stay. *Id.* The *Putnam* court held that the matter at hand was stayed until either 1) the bankruptcy court lifted the automatic stay or 2) the insolvent defendant's bankruptcy proceedings were resolved, whichever occurred first. *Id.* at * 13; *see also Barnes & Sweeney Enterprises, Inc v Hazel Park*, 169 Mich App 422, 424 (1988) ("Because [two of the parties] were involved in bankruptcy proceedings, the circuit court action was stayed *against all defendants*")(emphasis added). The *Putnam* court recognized that it possessed the "inherent power" to stay proceedings to further judicial economy. *Putnam*, at * 6.

199604875v1

Many courts have ruled in line with the *Putnam* Court's take on judicial economy as it noted "these factors, courts faced with automatic bankruptcy stays that affect only one of several codefendants often elect to stay all claims in the case to avoid inefficient, piecemeal litigation." *Putnam*, at *9 (referring to *Winthrop Intel. LLC v. Harvard Cider Co., LLC*, 2019 U.S. Dist. LEXIS 103378, at *2 (D. Colo. June 20, 2019); *Rodriguez v. Xtreme Mfg., LLC*, 2012 U.S. Dist. LEXIS 191800, at *2 (D.N.M. Mar. 20, 2012); *Wordtech Sys., Inc. v. Integrated Network Sol., Inc.*, 2012 U.S. Dist. LEXIS 172789, at *2–3 (E.D. Cal. Dec. 5, 2012); *J & J Sports Prods. Inc. v. Brar*, 2012 U.S. Dist. LEXIS 143447, at *1–2 (E.D. Cal. Oct. 3, 2012); and *Beardsley v. All Am. Heating, Inc.*, 2007 U.S. Dist. LEXIS 37210 (W.D. Wash. May 22, 2007)).

Staying these proceedings will also serve the public welfare, which is fostered when judicial resources are prudently expended. *See Univ. of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986)(acknowledging that the public has an "interest in conserving judicial resources"). Furthermore, Independent Bank will not be prejudiced by a stay of these proceedings as it has been given notice of the bankruptcy proceedings and has the right to participate in the bankruptcy regarding the potential reorganization of its debt.  Also, it is in Independent Bank's interest to avoid the duplication of efforts and significant costs involved in litigating the same issues over the court of two trials instead of one.

MCR 2.421 ("Rule 2.421") is a new court rule that was adopted by the Supreme Court of Michigan in 2024 in order to establish a formal procedure by which state courts were noticed with the commencement of a bankruptcy proceeding involving a party subject to a pending state court matter. Prior to the adoption of this new rule, there was no specific procedure governing how notice was given to the state court.

199604875v1

Rule 2.421 now provides a procedure by which a state court receives notice the commencement of a bankruptcy proceeding by a party to a case pending in the state court. The new rule also provides the state court with discretion to determine whether the entire case or, alternative, a portion of the case, should be administratively closed while the automatic stay issued by the Bankruptcy Court remains in effect. Rule 2.421(E) provides:

> If a notice is filed under this rule, the court may hold in abeyance any further proceedings and may schedule a status conference to consider the administrative closure of all or a portion of the state court action. To the extent that all or a portion of the state court action is administratively closed under this subrule or otherwise, it may be reopened if, on the motion of a party or on the court's own initiative, the court determines that the automatic stay has been lifted, removed, or otherwise no longer impairs adjudication of all or a portion of the state court action. *Id*.

However, Rule 2.421 contains no guidance, nor does Michigan state court case law since its adoption, as to how a court weighs its discretionary decision whether to administratively stay a state court action involving non-debtor defendants. Accordingly, this Court should look to the guidance which does exist as laid out in *Putnam*. When measured against those factors, there is no question that allowing this case to proceed is not in the interest of judicial economy, could produce inconsistent outcomes, and could prejudice non-debtor defendants, and interfere with the pending reorganization under Chapter 11. In the alternative, and given the numerous other parties that have recently intervened in this case, at a minimum the Court should stay all proceedings in the case for at least 21 days after conducting the status conference referenced in MCR 2.421, which will give all parties the opportunity to have a say regarding whether this case should be stayed pending conclusion of the bankruptcy.

WHEREFORE, the Leestma Defendants request that this Court grant relief under MCR 2.421 and either stay this case until the bankruptcy is resolved, or at a minimum, stay proceedings in this case for a minimum of 21 days after conducting the status conference with all parties as

199604875v1

referenced in MCR 2.421. In the event that the Court does not grant relief under MCR 2.421, the Leestma Defendants request that the Court grant them an additional 21 days to respond to Plaintiff's motion for summary disposition as to Count II of its First Amended Complaint.

Dated: April 9, 2026

Respectfully Submitted,

/s/ R. Christopher Cataldo
R. Christopher Cataldo (P39353)
Taft Stettinius & Hollister LLP
*Attorneys for Defendants*
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@taftlaw.com

7

# EXHIBIT A

**STATE OF MICHIGAN**
**IN THE BUSINESS COURT FOR COUNTY OF KENT**

INDEPENDENT BANK, a Michigan banking
corporation,

      Plaintiff,

v.

ADELAIDE POINTE BOATERS SERVICES,
LLC, a Michigan limited liability company,
ADELAIDE POINTE QOZB LLC, a Michigan
limited liability company, ADELAIDE
POINTE BUILDING 1, LLC, a Michigan
limited liability company, LEESTMA
MANAGEMENT, LLC, a Florida limited
liability company, WATERLAND BATTLE
CREEK PROPERTIES, LLC, a Michigan
limited liability company, RYAN LEESTMA,
an individual, and the RYAN M. LEESTMA
DOMESTIC ASSET PROTECTION TRUST
DATED NOVEMBER 30, 2018, EDWIN J
VANDERPLOEG, JR., as Trustee of the Ryan
M. Leestma Domestic Asset Protection Trust
u/a/d November 30, 2018, jointly and severally,

      Defendants.

Case No. 25-20760-CBB
Hon. Curt A. Benson

**SUGGESTION OF BANKRUPTCY**

| | |
|---|---|
| BODMAN PLC<br>Darren J. Burmania (P68240)<br>J. Grant Semonin (P86855)<br>*Attorneys for Plaintiff*<br>99 Monroe Ave. NW, Suite 300<br>Grand Rapids, Michigan 49503<br>Phone: (616) 205-4330<br>dburmania@bodmanlaw.com<br>gsemonin@bodmanlaw.com | TAFT STETTINIUS & HOLLISTER LLP<br>R. Christopher Cataldo (P39353)<br>*Attorneys for Defendants*<br>27777 Franklin Rd., Ste. 2500<br>Southfield, MI 48034<br>(248) 351-3000<br>ccataldo@taftlaw.com |
| RHOADES McKEE PC<br>David E. Bevins (P48955)<br>*Attorneys for Intervenor*<br>*Lake Michigan Credit Union*<br>55 Campau N.W., Ste. 300<br>Grand Rapids, MI 49503<br>(616) 235-3500<br>debevins@rhoadesmckee.com | STEVENSON & BULLOCK, PLC<br>John W. Polderman (P65720)<br>*Court-Appointed Receiver*<br>26100 American Drive, Ste. 500<br>Southfield, MI 48034<br>(248) 354-7906<br>jpolderman@sbplclaw.com |

199382224v1

<table>
<tr><td>

Laura R. LaMore (P79943)
Assistant Attorney General
*Attorney for State Intervenor*
Michigan Department of Attorney General
Environment, Natural Resources
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
LaMoreL1@michigan.gov

</td><td>

Peter D. Cronk (P60172)
Matthew Boettcher (P40929)
Plunkett Cooney
*Attorneys for Intervenor 4Front Credit Union*
101 N. Washington Square, Ste. 1200
Lansing, MI 48933
(517) 324-5611
pcronk@plunkettcooney.com
mboettcher@plunkettcooney.com

</td></tr>
<tr><td>

Elisabeth M. Von Eitzen (P70183)
Emily R. Rucker (P79228)
Warner Norcross + Judd LLP
Attorneys for non-party West Shore Bank
180 E. Water St., Ste. 7000
Kalamazoo, MI 49007
(269) 276-8118
evoneitzen@wnj.com
erucker@wnj.com

</td><td>

Nicholas J. Spigiel (P73526)
Kreis, Enderle, Hudgins & Borso, PC
Attorneys for non-party ChoiceOne Bank
PO Box 4010
Kalamazoo, MI 49003
(269) 324-3000
nspigiel@kehb.com

</td></tr>
</table>

## SUGGESTION OF PENDING BANKRUPTCY

PLEASE BE ADVISED that voluntary petitions regarding the entities listed below have been filed under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for the Middle District of Florida, Tampa Division, on April 1, 2026:

| DEBTOR | CASE NUMBER |
|---|---|
| Leestma Management, LLC<br>1900 Gulf Drive North, Unit 7<br>Bradenton Beach, FL 34217 | 8:26-bk-02696 |
| Waterland Battle Creek, LLC<br>77 East Michigan Ave.<br>Battle Creek, MI 49017 | 8:26-bk-02701 |
| Adelaide Pointe QOZB, LLC<br>1204 W. Western Ave.<br>Muskegon, MI 49441 | 8:26-02698 |
| Adelaide Pointe Building 1, LLC<br>901 Adelaide Circle<br>Muskegon, MI 49441 | 8:26-02700 |

199382224v1

| Adelaide Pointe Boaters Services, LLC<br>400 Adelaide Circle<br>Muskegon, MI 49441 | 8:26-02699 |
|---|---|

Dated:  April 2, 2026

Respectfully Submitted,

/s/ R. Christopher Cataldo
R. Christopher Cataldo (P39353)
Taft Stettinius & Hollister LLP
*Attorneys for Defendants*
27777 Franklin Rd., Ste. 2500
Southfield, MI 48034
(248) 351-3000
ccataldo@taftlaw.com

199382224v1

# EXHIBIT B

# Putman v. Cnty. of Tuscola

United States District Court for the Eastern District of Michigan, Northern Division

March 17, 2025, Decided; March 17, 2025, Filed

Case No. 1:23-cv-10427

**Reporter**
2025 U.S. Dist. LEXIS 48100 *; 2025 LX 199847; 2025 WL 838434

WILLIAM E. PUTMAN, II, Plaintiff, v. COUNTY OF TUSCOLA, et al.; Defendants.

**Counsel:** **[\*1]** For William E. Putman, II, Plaintiff: Patrick Logghe Klida, Mantese Honigman, PC, Troy, MI.

For Tuscola, County of, Defendant: Holly S. Battersby, Rosati Schultz Joppich & Amtsbuechler PC, Farmington Hills, MI; Michael T Berger, Rosati Schultz Joppich & Amtsbuechler, PC, Farmington Hills, MI.

For Correctional Healthcare Companies, LLC, Joseph Natole, M.D., Defendants: Devlin K. Scarber, Nicholas Pillow, Chapman Law Group, Troy, MI.

For Jane Doe, LPN, Defendant: Devlin K. Scarber, Chapman Law Group, Troy, MI.

For Glen Skrent, Robert Baxter, Brian Harris, Kyle Nordstrom, Ryker Maurer, Defendants: Holly S. Battersby, Rosati Schultz Joppich & Amtsbuechler PC, Farmington Hills, MI; Michael T Berger, Rosati Schultz Joppich & Amtsbuechler, PC, Farmington Hills, MI.

**Judges:** Patricia T. Morris, United States Magistrate Judge. Thomas L. Ludington, United States District Judge.

**Opinion by:** Patricia T. Morris

# Opinion

## ORDER ON DEFENDANTS JOSEPH NATOLE AND JANE DOE'S MOTION TO STAY (ECF No. 60)

## I. INTRODUCTION

While serving a thirty-day sentence in the Tuscola County Jail, Plaintiff William Putman alleges that officials withheld his prescription medication, causing him to suffer a heart attack. (ECF No. 1, PageID.1, 9, ¶¶ 1, 27). Putman **[\*2]** now brings this action under 42 U.S.C. § 1983, alleging medical malpractice and violations of his Eighth Amendment right to be free of cruel and unusual punishment. (ECF No. 48, PageID.719). In addition to Tuscola County, Putman's complaint names the following three Defendants: Correctional Healthcare Companies ("CHC")—a private company that provided healthcare services for the jail—and two of its employees, Doctor Joseph Natole and an unidentified nurse, "Jane Doe." (*Id.*)

After Putman brought this action, CHC filed for Chapter 11 Bankruptcy in the Southern District of Texas. Because of CHC's bankruptcy filing, all civil claims against it have been automatically stayed under the Bankruptcy Code pending resolution of the company's bankruptcy proceedings.

The upshot here is that the Court can adjudicate Putman's claims against each remaining defendant except for CHC. Yet rather than allow this case to proceed in a piecemeal fashion, the Court will instead **STAY** the entire case until the automatic bankruptcy stay is lifted.

## II. BACKGROUND

Last November, CHC filed a voluntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. (*In re Correctional Healthcare Companies, LLC*, No. 24-90546, ECF No. 1 (Bankr. S.D. Tex. Nov. 11, 2024)). Under 11 U.S.C. § 362(a)(1), the filing of a bankruptcy petition **[\*3]** automatically stays any "judicial . . . action or proceeding against the debtor that was or could have been commenced before the" petition was filed. A day after CHC filed its petition, the Bankruptcy Court entered an order "extending the application of the automatic stay" to all "claims against . . . non-debtor defendants" in cases in which Wellpath "is named as one of the defendants." (ECF No. 55-2, PageID.831-32). The Bankruptcy Court reasoned that its authority to "extend" the stay came from § 362. (*Id.*)

A few days later, counsel for CHC and its employees notified this Court of the Bankruptcy Court's order. (ECF No. 55). Referencing the Bankruptcy Court's order, their notice stated that that the Bankruptcy Court had extended the stay to all other Defendants in this matter under § 362. (*Id.*)

This Court disagreed. In response to the CHC Defendants' notice, this Court recognized that under § 362, all actions against CHC were automatically stayed when CHC filed its Chapter 11 petition on November 11. (ECF No. 58, PageID.886). But the Court declined to recognize that the Bankruptcy Court's order extended the stay to any other Defendant. *See In re Wohleber*, 596 B.R. 554, 571 (B.A.P. 6th Cir. 2019) (recognizing that although district courts cannot lift an **[*4]** automatic bankruptcy stay, they hold concurrent jurisdiction with the bankruptcy court to determine its reach). Section "362(a)(1) does not automatically give rise to a general stay of creditors' rights to pursue nondebtor codefendants, even those with some relationship to the debtor." *In re Johnson*, 548 B.R. 770, 787 (Bankr. S.D. Ohio. 2016) (citing *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir.1983)); s*ee also Am. Imaging Servs., Inc. v. Eagle-Picher Indus., Inc.*, 963 F.2d 855, 861 (6th Cir. 1992). Although bankruptcy courts may stay proceedings against nondebtors under "unusual circumstances," bankruptcy courts must do so by entering an injunction under § 105(a) of the Bankruptcy Code: claims against nondebtor parties are never "automatically" stayed when a debtor files a bankruptcy petition. *In re Johnson*, 548 B.R. at 788 (citing *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993)).

But here, the Bankruptcy Court did not enter its stay under § 105(a). (ECF No. 55-2, PageID.831-32). Indeed, the Bankruptcy Court purported to "extend" the stay under § 362 without ever referring to § 105(a). (*Id.*) Because § 362 did not authorize it to "'extend' the automatic stay to non-debtor defendants," this Court found that the Bankruptcy Court's order did not apply to any Defendant other than CHC. (ECF No. 58, PageID.888-89).

The CHC Defendants have responded to that order with what is, in essence, a motion for reconsideration. (ECF No. 60). The motion is far from a model of clarity. But read generously, they are arguing that this Court has **[*5]** discretion to extend the automatic stay under § 362 or § 105 of the Bankruptcy Code. (*See id.* at PageID.900-02). In the alternative, CHC Defendants argue that the Court has the inherent "power to stay proceeding[s]" to further judicial economy. (*Id.* at PageID.903). The individual CHC Defendants move the Court to exercise this discretion, explaining that before CHC's bankruptcy proceedings, they were "promised complete defense and indemnity coverage for any lawsuits arising . . . out of their employment with CHC." (*Id.* at PageID.888, 901). But since CHC's Chapter 11 petition, the company has stopped paying for insurance coverage, and it is unclear whether, following the conclusion of the bankruptcy proceedings, the company will be able to pay for their legal defense or indemnify them for any damages awarded in this action. (*Id.* at PageID.901, 903-04). Importantly, the CHC Defendants move the Court to stay the entire case, not just the claims against them. (ECF No. 60, PageID.906).

Tuscola County concurs with the CHC Defendants' motion insofar as they request to stay the entire matter rather than just the claims against Natole and Nurse Doe. (ECF No. 62, PageID.963). Putman, on the other hand, opposes the CHC Defendants' **[*6]** motion and requests that the Court decline to extend the stay to any other Defendant. (ECF No. 61).

## III. <u>DISCUSSION</u>

Read generously, the CHC Defendants' motion asserts three distinct bases for the Court stay this matter: 11 U.S.C. § 105(a), 11 U.S.C. § 362(a), and the Court's "inherent" powers. But as discussed in other cases involving CHC's affiliates, the only legitimate basis for this Court to stay proceedings lies in the Court's inherent powers. (*E.g., Bowser v. Watson*, 2:23-cv-10568 (E.D. Mich. Feb. 10, 2025) (first citing *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997); and then citing *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936))).

Putman argues that the Court should not exercise its inherent authority to stay this matter for two reasons. First, the CHC Defendants filed their motion in violation of this District's local rules. And second, even if the motion were properly before this Court, it should decline to exercise its inherent powers because a stay would harm Putman more than it would benefit Defendants. While Putman's arguments are well taken, the Court finds that the best course of action is to stay the entire case.

## A. Local Rules

Putman argues that Defendants' motion violates two local rules.

First, he argues that the moving Defendants violated Local Rule 7.1(d)(1)(A) by "embed[ing] their arguments" within their "motion" rather than presenting them in a "stand-alone brief." (ECF **[\*7]** No. 61, PageID.937).

A motion is nothing more than "a request for a court to enter an order." *Doe I v. Exxon Mobil Corp.*, No. 1:01-cv-1357, 2021 U.S. Dist. LEXIS 90416, 2021 WL 1910892, at \*4 (D.D.C. May 12, 2021). Local Rule 7.1(d)(1)(A) requires "each motion" to be "accompanied by a single brief" that may be "separate from" or "contained within" the motion. But if the brief is "contained within the motion," then it "must begin on a new page and be clearly identified as the brief." E.D. Mich. LR 7.1(d)(1)(A).

Even if the CHC Defendants' filing violated this rule, Local Rule 7.1(d)(1)(A) allows the Court to excuse a party's failure to properly separate a brief from a motion. And under these circumstances, the Court will not deny the CHC Defendants' motion on the grounds that they violated Rule 7.1(d)(1)(A).

Their requested order—that is, their "motion"—is articulated in the last paragraph of their filing. (ECF No. 60, PageID.906). And their briefing, although perhaps not labeled or separated in the manner envisioned by Local Rule 7.1(d)(1)(A), explains the basis for their motion in reasonable detail. (*Id.* at PageID.898-906). Thus, requiring the CHC Defendants to reformat their filing to comply with the Local Rules would not help to clarify their requested relief or the rationale underlying their motion. The Court, therefore, will excuse any failure to comply with Local Rule 7.1(d)(1)(A).

Putman also argues that the CHC Defendants violated **[\*8]** Local Rule 7.1(a)(2)(A) by not making a genuine effort to "resolve [the] disputed issues" regarding the stay before filing their motion. Rule 7.1(a)(2)(A) requires parties to "confer" with all "persons entitled to be heard on the motion" in a "good faith . . . manner that reasonably explains the basis for the motion and allows for an interactive process aimed at reaching agreement on the matter . . . without court intervention."

But Rule 7.1 applies only to motions "relating to discovery." E.D. Mich. LR 7.1(a)(1). And even if the Rule applied here, the Court does not find sanctions—such as "denying" or "striking" the filing—to be appropriate. *See* ED Mich. LR 7.1(a)(3) (providing that the Court

"may," but need not, sanction failures to seek concurrence). Before filing the motion, Counsel for the CHC Defendants emailed Putman's and Tuscola County's attorneys to explain the basis for his forthcoming motion and to seek their concurrence. (ECF No. 61-3). To be sure, counsel could have put more effort into seeking concurrence. He did not respond to Putman's attorney's rationale for opposing concurrence. (*See id.* at PageID.952). And counsel may have had more success discussing the matter in-person or over the phone. But the Court will not decline to reach the merits of the motion **[\*9]** because of these minor shortcomings. *See Decorative Panels Int'l, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers Local Lodge W-260*, 996 F. Supp. 2d 559, 568 (E.D. Mich. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 181, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)) ("[T]he Federal Rules encourage courts to decide each claim on its merits rather than on procedural technicalities.").

**B. Whether the Court should Exercise its Discretion to Stay Proceedings**

Moving past those threshold issues, the Court turns to the merits of the CHC Defendants' motion to stay. When deciding whether to stay proceedings, courts generally consider how a stay would affect (1) judicial economy, (2) the public welfare, and (3) the risk of prejudice to the parties. *See AES-Apex Emp'r Servs., Inc. v. Rotondo*, No. 13-CV-14519-DT, 2015 U.S. Dist. LEXIS 96468, 2015 WL 12990376, at \*1 (E.D. Mich. July 24, 2015). And weighing these factors, courts faced with automatic bankruptcy stays that affect only one of several codefendants often elect to stay all claims in the case to avoid inefficient, piecemeal litigation.[1]

So too here. Adjudicating Putman's remaining claims in a piecemeal fashion would impose a burden on both Defendants and this Court that outweighs any harm that

---

[1] *E.g., Winthrop Intel. LLC v. Harvard Cider Co.*, LLC, No. 18-cv-02205-CMA-STV, 2019 U.S. Dist. LEXIS 103378, 2019 WL 2544075, at \*2 (D. Colo. June 20, 2019); *Rodriguez v. Xtreme Mfg.*, LLC, No. 11cv626, 2012 U.S. Dist. LEXIS 191800, 2012 WL 12819336, at \*2 (D.N.M. Mar. 20, 2012); *Wordtech Sys., Inc. v. Integrated Network Sol., Inc.*, No. 04-1971, 2012 U.S. Dist. LEXIS 172789, 2012 WL 6049592, at \*2-3 (E.D. Cal. Dec. 5, 2012); *J & J Sports Prods. Inc. v. Brar*, 09-3394, 2012 U.S. Dist. LEXIS 143447, 2012 WL 4755037, at \*1-2 (E.D. Cal. Oct. 3, 2012); *Beardsley v. All Am. Heating, Inc.*, C05-1962P, 2007 U.S. Dist. LEXIS 37210, 2007 WL 1521225 (W.D. Wash. May 22, 2007).

a stay could impose on Putman. Starting with the Court's interest in judicial economy, entering the Putman's proposed stay would require the Court to undergo duplicitous litigation, proceeding through dispositive motion practice and, potentially, trial on Putman's claims against Tuscola, Natole, **[*10]** Nurse Doe, just to repeat those same, lengthy processes against CHC once the automatic stay is lifted.

Putman correctly notes that the Court has become "well-versed in the legal and factual issues" involved in this case over the last two years. (ECF No. 61, PageID.938). But Putman overstates the effort that it will take for the Court to refamiliarize itself with this matter once the bankruptcy stay is lifted. On balance, staying the entire case to avoid piecemeal litigation is the most efficient path forward, even though the Court recognizes that this decision risks some degree of prejudice to Putman.

Conversely, the inefficiencies inherent in piecemeal litigation would prejudice Defendants. As the Court previously noted, Putman's claim against Tuscola County centers on its "contract" with CHC. (ECF No. 48, PageID.714). If the case were to proceed on Putman's claims against Tuscola County, then Tuscola County "and its employees" may still "be necessary witnesses" even after the claims against Tuscola County are resolved. (ECF No. 62, PageID.964). Tuscola would also be precluded from calling on CHC or its representatives as witnesses until the bankruptcy stay is lifted. Likewise, Natole **[*11]** and Doe face a similar risk of being called as witnesses in a trial on Putman's claims against Tuscola County and then again in a trial on Putman's claims against CHC.

Declining to enter a stay might prejudice Natole and Nurse Doe in a couple of other ways. First, proceeding on Putman's individual capacity claims may prevent Natole and Nurse Doe from obtaining discovery that would show CHC shared liability for Putman's Eighth Amendment claims. Employees in a § 1983 action can "partially" shift liability onto their employers by showing that they acted "pursuant to an official policy." *Dunton v. Cnty. of Suffolk*, 729 F.2d 903, 907 (2d Cir. 1984). Accordingly, employee-defendants in many § 1983 cases also have an incentive to mitigate their potential liability by arguing in the alternative that whatever actions they took were in-line with their employer's official policies. *See id.* But here, CHC would likely possess most of the evidence of its "official polic[ies]" that would be necessary for Natole and Nurse Doe to pursue this strategy.

Second, the uncertainty surrounding Natole and Nurse Doe's indemnification might hinder their ability to litigate this matter. Natole and Nurse Doe are creditors in Wellpath's bankruptcy proceedings. (*See* ECF No. 60, PageID.888, 901 (asserting **[*12]** that CHC's employees are "entitled to complete defense and indemnity from" CHC)). *See generally In re H & S Transp. Co., Inc.*, 939 F.2d 355, 358-59 (6th Cir. 1991) (holding that entities with contingent—but not yet realized—rights to indemnity are creditors under the bankruptcy code). And until CHC's bankruptcy matter is resolved, Natole and Nurse Doe cannot know whether CHC will provide funds for their legal defense or indemnification. Yet that information is crucial for them to make informed decisions regarding their defense. For instance, the extent to which they will have to satisfy a monetary judgment at their own expense will likely have a substantial impact on their willingness to settle Putman's claims. Likewise, it would be difficult for Natole and Nurse Doe to prepare for trial without a definite budget.

Declining to enter a stay may also prejudice the CHC Defendants' counsel. Counsel explains that CHC pays his legal fees. (ECF No. 60, PageID.901). And although not entirely clear from his briefing, there appears to be a risk that the bankruptcy proceedings may interfere with CHC's ability to pay costs associated with litigation involving its employees. Staying proceedings may allow counsel to ascertain whether and how he will be paid for **[*13]** his services.

In all, adjudicating Putman's claims in a piecemeal fashion would not only hinder the orderly disposition of this case at the time and expense of this Court and the public who funds it, but it could also severely prejudice the remaining Defendants. *See Univ. of Tennessee v. Elliott*, 478 U.S. 788, 798, 106 S. Ct. 3220, 92 L. Ed. 2d 635 (1986) (acknowledging that the public has an "interest in conserving judicial resources"). By contrast, staying this entire matter for the duration of the automatic stay would likely cause Putman comparatively little harm. It will also save Putman and his attorney the expense of litigating this matter twice. Further, staying this matter until the Chapter 11 proceedings have concluded would allow Putman to ensure that Natole and Nurse Doe are insured and therefore not judgment proof. Therefore, under its inherent authority, the Court will stay the entire action until the bankruptcy proceedings are terminated or the Bankruptcy Court lifts the stay as to this matter.

## IV. **CONCLUSION**

For these reasons, this case is **STAYED** until the Bankruptcy Court lifts the automatic stay or CHC's bankruptcy proceedings are resolved, whichever occurs first.[2] Further, CHC's counsel is **ORDERED** to notify this Court if the Bankruptcy Court for the Southern **[*14]** District of Texas extends, lifts, or otherwise modifies its stay as to any Defendant in this action.

**IT IS SO ORDERED**.

Date: March 17, 2025

/s/ Patricia T. Morris

Patricia T. Morris

United States Magistrate Judge

---

**End of Document**

---

[2] *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60, 62 (6th Cir. 1983) ("The legislative history of § 362(d) unambiguously identifies the bankruptcy court as the exclusive authority to grant relief from the stay.").

# EXHIBIT "5"

Inst. Number: 202441090255 Page 1 of 22 Date: 8/27/2024 Time: 11:10 AM
Angelina "Angel" Colonneso Clerk of Courts, Manatee County, Florida Doc Mort: 5,250.00 Int Tax: 3,000.00 Doc Deed: 0.00

29205032530

After Recording Return to:
Dan M. Challa
McShane & Bowie PLC
99 Monroe Ave NW, Suite 1100
Grand Rapids, Michigan 49503
616.732.5000

Prepared By:

Dan M. Challa
McShane & Bowie PLC
99 Monroe Ave NW, Suite 1100
Grand Rapids, Michigan 49503
616.732.5000

---

## SUBORDINATED MORTGAGE

Leestma
Loan # 29205032530
Lender Phone: 1-800-355-0641
Parcel ID: 30-31-16-66964-004-0208

THIS SUBORDINATED MORTGAGE (the "**Mortgage**") made as of August 15, 2024, by RYAN M. LEESTMA, a married man, of 1599 Westwind Court, Muskegon, MI 49445 (the "**Mortgagor**") in favor of INDEPENDENT BANK, a Michigan banking corporation, of 230 W. Main Street, PO Box 158, Ionia, Michigan 48846 (the "**Mortgagee**").

### WITNESSETH:

WHEREAS, Adelaide Pointe QOZB, LLC, a Michigan limited liability company ("**Borrower**") is or will be indebted to Mortgagee in the principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) pursuant to a Promissory Note executed by Borrower coincident herewith and made payable to the order of Mortgagee, in the principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) (the "**Note**"), and all agreements, instruments and documents executed or delivered in connection with any of the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "**Loan Documents**"); and

WHEREAS, Mortgagor is a member of Borrower and, as such, shall be benefited directly by the transaction contemplated by the Loan Documents, and shall execute this Mortgage in order to induce Mortgagee to enter into such transaction; and

WHEREAS, Mortgagor desires to grant herein a third priority mortgage to Mortgagee encumbering the real estate described below.

E-RECORDED   simplifile

ID: 202441090255
County: Manatee
Date: 8/27/24   Time: 11:10 am

After Recording Return to:
Dan M. Challa
McShane & Bowie PLC
99 Monroe Ave NW, Suite 1100
Grand Rapids, Michigan 49503
616.732.5000

Prepared By:

Dan M. Challa
McShane & Bowie PLC
99 Monroe Ave NW, Suite 1100
Grand Rapids, Michigan 49503
616.732.5000

## SUBORDINATED MORTGAGE

**Leestma**
Loan # 29205032530
Lender Phone: 1-800-355-0641
Parcel ID: 30-31-16-66964-004-0208

THIS SUBORDINATED MORTGAGE (the "**Mortgage**") made as of August 15, 2024, by RYAN M. LEESTMA, a married man, of 1599 Westwind Court, Muskegon, MI 49445 (the "**Mortgagor**") in favor of INDEPENDENT BANK, a Michigan banking corporation, of 230 W. Main Street, PO Box 158, Ionia, Michigan 48846 (the "**Mortgagee**").

## WITNESSETH:

WHEREAS, Adelaide Pointe QOZB, LLC, a Michigan limited liability company ("Borrower") is or will be indebted to Mortgagee in the principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) pursuant to a Promissory Note executed by Borrower coincident herewith and made payable to the order of Mortgagee, in the principal amount of One Million Five Hundred Thousand and 00/100 Dollars ($1,500,000.00) (the "**Note**"), and all agreements, instruments and documents executed or delivered in connection with any of the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "**Loan Documents**"); and

WHEREAS, Mortgagor is a member of Borrower and, as such, shall be benefited directly by the transaction contemplated by the Loan Documents, and shall execute this Mortgage in order to induce Mortgagee to enter into such transaction; and

WHEREAS, Mortgagor desires to grant herein a third priority mortgage to Mortgagee encumbering the real estate described below.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to secure (i) the payment of the Indebtedness and Impositions (as defined below) and the interest thereon, (ii) the payment of any advances or expenses of any kind incurred by Mortgagee pursuant to the provisions of or on account of the Loan Documents or this Mortgage, (iii) the repayment of future advances disbursed by Mortgagee to Mortgagor in excess of the principal of the Indebtedness, and (iv) the performance of the obligations of the Mortgagor under the Loan Documents, the parties hereby agree as follows:

## ARTICLE 1
## GRANTING PROVISIONS

The Mortgagor does hereby grant, mortgage, bargain, sell, release, convey, assign, transfer, grant a security interest in, mortgage and warrant to Mortgagee, its successors and assigns forever, (a) the real estate located in Manatee County, Florida, more particularly described in **Exhibit A** attached hereto (hereinafter the "Site"), and (b) all of the estate, title and interest of Mortgagor, in law or equity, of, in and to such real estate and the buildings and improvements now existing, being constructed, or hereafter constructed or placed thereon, all of the rights, privileges, licenses, easements and appurtenances belonging to such real estate (including all heretofore or hereafter vacated streets or alleys which are about such real estate), and all fixtures of every kind whatsoever located in or on, or attached to, and used or intended to be used in connection with or with the operation of such real estate, buildings, structures or other improvements thereon or in connection with any construction now or to be conducted or which may be conducted thereon, together with all building materials and equipment now or hereafter delivered to such real estate and intended to be installed therein; any rental revenues, payments, repayments, income, profits, charges, accounts, general intangibles, and moneys derived by Mortgagor from the lease, sublease, sale, rental or other disposition of the Property (the "Rents") and the proceeds from any insurance proceeds or condemnation award pertaining thereto (the foregoing provisions shall constitute an absolute and present assignment of the Rents and other benefits derived from the Property, subject however to the conditional permission given to Mortgagor to collect and use such rentals, revenues and other benefits that are hereinabove provided until the occurrence of an Event of Default and the existence or exercise of such right shall not operate to subordinate this assignment to any subsequent assignment, in whole or in part, by the Mortgagor); and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing, and the proceeds of any of the foregoing (all of the foregoing, including the Site, being hereinafter collectively called the "Property").

The Mortgagor further hereby grants, conveys, and assigns to Mortgagee, its successors and assigns all rents, issues and profits of any of the foregoing and all proceeds of the conversion (whether voluntary or involuntary) of any of the same into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards.

TO HAVE AND TO HOLD the Property hereby conveyed, granted and assigned, unto Mortgagee, and its successors and assigns forever, for the uses and purposes herein set forth.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES

2

**2.1    In General.** Mortgagor represents and warrants that it is the sole lawful owner in fee simple of the Property, that its title in and to the Property is free, clear and unencumbered except for real estate taxes and assessments not yet due and payable and the Prior Mortgage (defined below); that it has good legal right, authority, and full power to sell and convey the same and to execute this Mortgage; that Mortgagor will make any further assurances of title that Mortgagee may reasonably require; that Mortgagor will warrant and defend the Property against all claims and demands whatsoever, and that Mortgagor will keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

**2.2    No Proceedings.** Mortgagor represents, covenants and warrants that there are no suits or proceedings pending, or, to the knowledge of Mortgagor, threatened against or affecting Mortgagor which, if adversely determined, would have an adverse effect on the Property or financial condition or business of Mortgagor.

## ARTICLE 3
## COVENANTS

Mortgagor hereby covenants and agrees with Mortgagee as follows:

**3.1    Indebtedness.** Mortgagor will promptly pay and perform, or promptly cause to be paid and performed, when due, the following obligations (hereinafter collectively called the **"Indebtedness"**):

(a)    each and every term, provision, condition, obligation, covenant, and agreement of Mortgagor set forth in this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing;

(b)    all future advances disbursed by Mortgagee to Mortgagor under Section 6.12 (Future Advances) of this Mortgage; and

(c)    all loans, advances, indebtedness and each and every other obligation or liability of Mortgagor owed to Mortgagee, however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, due or to become due, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease, overdraft, agreement, or otherwise, whether or not secured by additional collateral, whether originated with Mortgagee or owed to others and acquired by Mortgagee by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and every obligation arising under the Loan Documents, all obligations to perform or forbear from performing acts, all amounts represented by letters of credit now or hereafter issued by Mortgagee for the benefit of or at the request of Mortgagor, all agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, and all expenses and attorneys' fees incurred or other sums disbursed by Mortgagee under this Mortgage or any other document, instrument or agreement related to any of the foregoing; and

3

(d)     all Protective Advances. The words "**Protective Advance**" mean an indebtedness or obligation that is secured by this Mortgage and that arises because Mortgagee makes an expenditure or expenditures (i) to fulfill or perform an obligation of Mortgagor under this Mortgage, with respect to the Property, that Mortgagor has failed to fulfill or perform, (ii) to preserve the priority of this Mortgage and the value of the Property, or (iii) for attorney fees or other expenses that are incurred in exercising a right or remedy under this Mortgage or that Mortgagor has agreed in this Mortgage to reimburse to Mortgagee.

**3.2     Impositions.** Mortgagor will pay, or cause to be paid, before the same become delinquent, all of the following (hereinafter collectively called the "**Impositions**"): all real estate taxes, personal property taxes, assessments, water and sewer rates and charges, and all other governmental levies and charges, of every kind and nature whatsoever, general and special, ordinary and extraordinary, which are assessed, levied, confirmed, imposed or become a lien upon or against the Property or any portion thereof, and all taxes, assessments and charges upon the rents, issues, income or profits of the Property, or which become payable with respect thereto or with respect to the occupancy, use or possession of the Property, whether such taxes, assessments or charges are levied directly or indirectly. Mortgagor shall deliver proof of payment of all such Impositions to Mortgagee upon the request of Mortgagee. Notwithstanding any provision to the contrary in this Section 3.2, any tax or special assessment which is a lien on the Property may be paid in installments, provided that each installment is paid on or prior to the date when the same is due without the imposition of any penalty.

**3.3     Compliance with Laws.** Mortgagor will comply with all federal, state and local laws, regulations and orders to which the Property or the activities conducted on the Property are subject.

**3.4     Condition of Property.** Mortgagor will maintain the Property in good order and condition and make all repairs necessary to that end, will suffer no waste to the Property, and will cause all repairs and maintenance to the Property to be done in a good and workmanlike manner, normal wear and tear excepted.

**3.5     Improvements.** Mortgagor will not remove or materially change any improvements once installed or placed on the Property, or suffer or permit others to do so.

**3.6     Insurance.**

(a)     Mortgagor at its sole cost and expense shall provide and keep in force at all times for the benefit of Mortgagee, in accordance with the Loan Documents, with respect to the Property (with such deductibles as may be satisfactory to Mortgagee, from time to time, in its reasonable discretion): (i) insurance against loss of or damage to the Improvements by fire and other hazards covered by so-called "extended coverage" insurance, with a replacement cost endorsement, and such other casualties and hazards as Mortgagee shall reasonably require from time to time; (ii) earthquake insurance; (iii) flood insurance in the maximum available amount if the Improvements are located in a flood hazard area; (iv) business interruption insurance; (v) boiler and machinery insurance; (vi) comprehensive general public liability insurance against claims for bodily injury, death or property damage in customary and adequate amounts, or, in Mortgagee's discretion, in such amounts as may be reasonably satisfactory or desirable to Mortgagee, from time to time, in its reasonable discretion; (vii) during the course of any construction or repair of the

4

Property, workers' compensation insurance for all employees involved in such construction or repair, (provided, however, that the Mortgagor may self-insure with respect to worker's compensation in accordance with the laws of the State of Michigan), and builder's risk completed value insurance against "all risks of physical loss," covering the total value of work performed and equipment, supplies and materials furnished, and containing the "permission to occupy upon completion of work or occupancy" endorsement; and (viii) such other insurance on the Property (including, without limitation, increases in amounts and modifications of forms of insurance existing on the date hereof), as Mortgagee may reasonably require from time to time. The policies of insurance required by this Section 3.6(a) shall be with such companies, in such forms and amounts, and for such periods, as Mortgagee shall require from time to time, and shall insure the respective interests of Mortgagor and Mortgagee. Such insurance may be provided in umbrella policies which insure any and all real or personal property in which Mortgagor has an interest in addition to the Property, any property encumbered by any other deed of trust or mortgage given by Mortgagor for the benefit of Mortgagee, or any personal property in which a security interest in favor of Mortgagee has been granted under the Loan Documents. The insurance proceeds from all such policies of insurance (other than the proceeds from the comprehensive general public liability policy required under clause (vi) above) shall be payable to Mortgagee pursuant to noncontributing first mortgagee and loss payee endorsements satisfactory in form and substance to Mortgagee. Certificates of the original policies and renewals thereof covering the risks provided by this Mortgage to be insured against, and bearing satisfactory evidence of payment of all premiums thereon, shall be delivered to and held by Mortgagee on demand. Without limiting the generality of the foregoing, Mortgagor shall deliver to Mortgagee all insurance policies and certificates that are requested by Mortgagee. At least thirty (30) days prior to the expiration of each policy required to be provided by Mortgagor, Mortgagor shall deliver certificates of renewal policies to Mortgagee with appropriate evidence of payment of premiums therefore. All insurance policies required by this Mortgage shall (1) include effective waivers by the insurer of all rights of subrogation against any named insured and any other loss payee; and (2) provide that any losses shall be payable to Mortgagee notwithstanding:

      (i)     any act, failure to act or negligence of or violation of warranties, declarations or conditions contained in such policy by any named insured or other loss payee,

      (ii)     the occupation or use of the Improvements or the Site for purposes more hazardous than permitted by the terms thereof,

      (iii)     any foreclosure or other action or proceeding taken by Mortgagee pursuant to any provisions of this Mortgage, or

      (iv)     any change in title to or ownership of the Property;

(3) provide that no cancellation, reduction in amount or material change in coverage thereof shall be effective until at least thirty (30) days after receipt by Mortgagee of written notice thereof; and (4) be satisfactory in all other respects to Mortgagee. Mortgagor shall not permit any activity to occur or condition to exist on or with respect to the Property that would wholly or partially invalidate any of the insurance thereon. Mortgagor shall give prompt written notice to Mortgagee of any damage to, destruction of or other loss in respect of the Property, irrespective of whether any such damage, destruction or loss gives rise to an insurance claim. Mortgagor shall not carry

5

additional insurance in respect of the Property unless such insurance is endorsed in favor of Mortgagee as loss payee.

(b)     Mortgagor irrevocably makes, constitutes and appoints Mortgagee (and all officers, employees or agents designated by Mortgagee) as Mortgagor's true and lawful attorney-in-fact and agent coupled with an interest, with full power of substitution, for the purpose of making and adjusting claims under such policies of insurance, endorsing the name of Mortgagor on any check, draft, instrument or other item or payment for the proceeds of such policies of insurance and for making all determinations and decisions with respect to such policies of insurance required above or to pay any premium in whole or in part relating thereto. Mortgagee, without waiving or releasing any obligations or default by Mortgagor hereunder, may (but shall be under no obligation to do so) at any time maintain such action with respect thereto which Mortgagee deems advisable.  Notwithstanding the foregoing, prior to the occurrence of an Event of Default, Mortgagor shall have the right to adjust and compromise any such claims, subject to Mortgagee's prior consent thereto, which consent shall not be unreasonably withheld.  All sums disbursed by Mortgagee in connection therewith, including attorneys' fees, court costs, expenses and other charges relating thereto, shall be payable, on demand, by Mortgagor to Mortgagee and shall be additional Indebtedness secured by this Mortgage.

(c)     All proceeds of the insurance required to be obtained by Mortgagor hereunder, other than those relating to the comprehensive general public liability insurance, shall be held in trust for and paid promptly to Mortgagee, and Mortgagee may deduct from such proceeds any expenses, including, without limitation, legal fees, incurred by Mortgagee in connection with adjusting and obtaining such proceeds (the balance remaining after such deduction being hereinafter referred to as the "**Net Insurance Proceeds**"). Mortgagee may, at its option, either: (1) apply the Net Insurance Proceeds in reduction or satisfaction of all or any part of the Indebtedness, whether then matured or not, in which event Mortgagor shall be relieved of its obligation to maintain and restore the property relating to such proceeds to the extent that Mortgagee so applies such Net Insurance Proceeds; or (2) release the Net Insurance Proceeds to Mortgagor in whole or in part upon conditions satisfactory to Mortgagee.

(d)     The application of any insurance proceeds toward the payment or performance of the Indebtedness shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the rest of the Indebtedness in accordance with the provisions of this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing.

(e)     Notwithstanding the foregoing, Mortgagee shall make the Net Insurance Proceeds, available to Mortgagor to apply towards payment of the cost of restoration of the Property provided that the release of funds shall be subject to the following conditions: (1) there shall be no outstanding Event of Default hereunder, under the Note or under any other Loan Documents and no event shall have occurred and be continuing which, but for the giving of notice and passage of time, or both, would constitute such an Event of Default; (2) Mortgagee shall approve the plans and specifications for any such restoration in advance of commencement thereof; (3) there shall be sufficient funds upon deposit at all times with Mortgagee to complete the restoration, as certified by an architect approved by Mortgagee; (4) the insurer shall not have asserted any defense against Mortgagor or any tenant pursuant to the insurance policy covering the Improvements; (5) Mortgagor reasonably demonstrates to Mortgagee's satisfaction that

6

Mortgagor has the financial ability to continue to pay the indebtedness evidenced by the Note during restoration; and (6) Mortgagor shall comply with such other conditions as would customarily be required by a prudent construction lender, or are otherwise reasonable.

(f)     In the event of a foreclosure under this Mortgage, the purchaser of the Property shall succeed to all of the rights of Mortgagor, including any right to unearned premiums, in and to all policies of insurance which Mortgagor is required to maintain under this Section 3.6 and to all proceeds of such insurance.

(g)     Without limiting Mortgagee's rights under Section 3.9 of this Mortgage, if Mortgagor shall fail to keep the Property insured in accordance with this Mortgage and the other Loan Documents, Mortgagee may, but shall not be obligated to, do so. Mortgagor shall reimburse Mortgagee on demand for amounts incurred or expended therefore, with interest thereon pursuant to Section 3.9 hereof, and all such amounts incurred or expended, and all such interest thereon, shall be additional Indebtedness of Mortgagor secured hereby.

### 3.7     Sale, Transfer or Encumbrance.

(a)     Notwithstanding anything to the contrary under this Section 3.7, Mortgagor and Mortgagee acknowledge (i) that certain Mortgage dated June 10, 2024 and recorded in Manatee County, Florida records on June 11, 2024 as Instrument No. 202441061325 and (ii) that certain Mortgage dated May 21, 2021 and recorded in Manatee County, Florida records on May 21, 2021 as Instrument No. 202141068231 (collectively, the "**Prior Mortgage**").

(b)     Mortgagor shall pay and discharge promptly, at Mortgagor's cost and expense, all liens, encumbrances, and charges upon any part of the Property or any interest therein. If Mortgagor shall fail to discharge any such lien, encumbrance, or charge, then, in addition to any other right or remedy of Mortgagee, Mortgagee may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond or the amount claimed or otherwise giving security for such claim, or in such manner as is or may be prescribed by law.

(c)     Mortgagor will not institute or cause to be instituted any proceedings that could change the permitted use of the Property from the use presently zoned, and shall not grant any easements or licenses with respect to the Property.

(d)     If, without the prior written consent of Mortgagee, a portion of the Property, or any beneficial interest therein, is sold, conveyed, transferred, encumbered, or full possessory rights therein transferred, whether voluntarily, involuntarily, or by operation of law, then the Mortgagee may declare all sums secured by this Mortgage to be immediately due and payable, whether or not the Mortgagee has consented or waived its rights in connection with any previous transaction of the same or a different nature.

### 3.8     Eminent Domain.

(a)     Mortgagor shall give immediate notice to Mortgagee upon Mortgagor's obtaining knowledge of (i) any interest on the part of any person possessing or who has expressed the intention to possess the power of eminent domain to purchase or otherwise acquire the Property

7

or (ii) the commencement of any action or proceeding to take the Property by exercise of the right of condemnation or eminent domain or of any action or proceeding to close or to alter the grade of any street on or adjoining the Site. At its option Mortgagee may participate in any such actions or proceedings in the name of Mortgagee or, whenever necessary, in the name of Mortgagor, and Mortgagor shall deliver to Mortgagee such instruments as Mortgagee shall request to permit such participation. Mortgagor shall not settle any such action or proceeding, whether by voluntary sale, stipulation or otherwise, or agree to accept any award or payment without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld. The total of all amounts awarded or allowed with respect to all right, title and interest in and to the Property or the portion or portions thereof taken or affected by such condemnation or eminent domain proceeding and any interest thereon (herein collectively called the "Award") is hereby assigned to, and shall be paid upon receipt thereof, to Mortgagee and the amount received shall be retained and applied as provided in Paragraph 3.8(b) below.

(b)     Upon Mortgagee's receipt of any Award, Mortgagee may, at its option, either: (i) retain and apply the Award toward the Indebtedness; or (ii) subject to such escrow provisions as Mortgagee may require, pay the Award over in whole or part to pay or reimburse Mortgagor for the cost of restoring or reconstructing the Property remaining after such taking (the "Remaining Property"). If Mortgagee elects to pay the Award, or any part thereof, over to Mortgagor upon the completion of the restoration or reconstruction of the Remaining Property, any portion of the Award not used for the restoration or reconstruction of the Remaining Property shall, at the option of Mortgagee, be applied in reduction of the Indebtedness; provided, however, that to the extent that such portion of the Award shall exceed the amount required to satisfy in full the Indebtedness, Mortgagee shall pay the amount of such excess to Mortgagor or otherwise as required by law. In no event shall Mortgagee be required to release this Mortgage until the Indebtedness is fully paid and performed, nor shall Mortgagee be required to release from the lien of this Mortgage any portion of the Property so taken until Mortgagee receives the Award for the portion so taken.

(c)     The application of the Award toward payment or performance of any of the Indebtedness shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the balance of the Indebtedness in accordance with the provisions of this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing. Mortgagee shall have the right, but shall be under no obligation, to question or appeal the amount of the Award, and Mortgagee may accept same without prejudice to the rights that Mortgagee may have to question or appeal such amount. In any such condemnation or eminent domain action or proceeding Mortgagee may be represented by attorneys selected by Mortgagee, and all sums paid by Mortgagee in connection with such action or proceeding, including, without limitation, attorneys' fees, court costs, expenses and other charges relating thereto shall, on demand, be immediately due and payable from Mortgagor to Mortgagee and the same shall be added to the Indebtedness and shall be secured by this Mortgage.

(d)     Notwithstanding any taking by condemnation or eminent domain, closing of, or alteration of the grade of, any street or other injury to or decrease in value of the Property by any public or quasi-public authority or corporation, the Indebtedness shall continue to bear interest until the Award shall have been actually received by Mortgagee, and any reduction in the Indebtedness resulting from the application by Mortgagee of the Award shall be deemed to take effect only on the date of such receipt thereof by Mortgagee.

8

**3.9** **Rights of Mortgagee.** If Mortgagor fails to pay when due any Impositions when so required by this Mortgage, or if an Event of Default occurs under this Mortgage, Mortgagee at its option may pay such Impositions. If Mortgagor fails to perform any of its obligations under this Mortgage with respect to the Property, Mortgagee at its option may (but shall not be obligated to) perform any such obligations of Mortgagor. Subject to the rights of tenants under leases, Mortgagee may enter upon the Property for the purpose of performing any such act, or to inspect the Property. All Impositions paid by Mortgagee and all monies expended by Mortgagee in performing any such obligations of Mortgagor (including legal expenses and disbursements), shall bear interest at a floating rate per annum equal to six percent (6%) in excess of the Interest Rate under the terms of the Note then in effect, and such interest shall be paid by Mortgagor upon demand by Mortgagee and shall be additional Indebtedness secured by this Mortgage.

**3.10** **Conflict Among Agreements.** In the event of any conflict between the provisions of this Mortgage and the provisions of the Loan Documents, the provisions of the Note shall prevail.

**3.11** **Notifications.** Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

(a)     a fire or other casualty causing damage to the Property in excess of $50,000;

(b)     receipt of written notice of condemnation of the Property or any part thereof;

(c)     receipt of written notice from any governmental authority relating to the structure, use or occupancy of the Property;

(d)     receipt of any written notice of alleged default from the holder of any lien or security interest in the Property;

(e)     the commencement of any litigation affecting the Property; or

(f)     any change in the occupancy of the Property, other than occupancy by tenants in the ordinary course of Mortgagor's business.

## ARTICLE 4
## EVENTS OF DEFAULT

Any of the following events shall be an Event of Default:

**4.1** **Cross-Default.** An Event of Default occurs under any default of the Loan Documents, or other documents, including without limitation, the Note, Promissory Note A delivered to Mortgagee from Adelaide Pointe Building 1, LLC on July 12, 2023 in the original principal amount of Seventeen Million and 00/100 Dollars ($17,000,000) ("**Note A**"), Promissory Note C delivered to Mortgagee from Borrower on July 12, 2023 in the original principal amount of Four Million and 00/100 Dollars ($4,000,000) ("**Note C**"), or in any amendments, modifications or restatements to any of the foregoing.

9

**4.2     Breach of Covenants.** Mortgagor defaults in the performance or observance of any of the following covenants:

(a)     to maintain in force the insurance required by Section 3.6 (Insurance) of this Mortgage;

(b)     to comply with any of the notice requirements set forth in Section 3.6 (Insurance), Section 3.8 (Eminent Domain) or Section 3.11 (Notifications) of this Mortgage; or

(c)     any other covenant or agreement contained in this Mortgage and such default continues for 30 days following written notice from Mortgagee.

**4.3     Representation or Warranty Untrue.** Any representation or warranty of the Mortgagor under this Mortgage, the Note, Note A, Note C, or any other Loan Document is untrue or misleading in any material respect.

**4.4     Foreclosure.** A foreclosure proceeding (whether judicial or otherwise) is instituted with respect to any mortgage or lien of any kind encumbering any portion of the Property.

**4.5     Other Obligations.** Any default occurs under any other obligation of Mortgagor to Mortgagee or otherwise described herein as Indebtedness.

**4.6     Waste.** Mortgagor shall fail to pay taxes and/or assessments assessed against the Property or any installment thereof, or any insurance premiums or policies covering the Property, or any part thereof shall constitute waste (although the meaning of the term "**waste**" shall not necessarily be limited to such nonpayment), as provided by Act No. 236 of the Public Acts of Michigan of 1961, as amended, and shall entitle Mortgagee to all remedies provided for therein. Mortgagor further agrees to and does hereby consent to the appointment of a receiver under such statute, should Mortgagee elect to seek such relief thereunder.

ARTICLE 5
REMEDIES

**5.1     Remedies.** Upon the occurrence, and until the waiver by Mortgagee or permitted cure by Mortgagor, of an Event of Default:

(a)     Mortgagee may declare the entire balance of the Indebtedness to be immediately due and payable, and upon any such declaration, the entire unpaid balance of the Indebtedness shall become and be immediately due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by Mortgagor.

(b)     Mortgagee may institute a proceeding or proceedings, judicial or otherwise, for the complete or partial foreclosure of this Mortgage under any applicable provision of law.

(c)     Mortgagee may institute a proceeding or proceedings to eject Mortgagor from possession of the Property and to obtain possession of the Property by Mortgagee, with or without instituting a foreclosure proceeding.

10

(d)     Mortgagee may sell (the power of sale, if permitted and provided by applicable law, being expressly granted by Mortgagor to Mortgagee) the Property, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property, and at such time and place and upon such terms as Mortgagee may deem expedient, or as may be required by applicable law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property. Mortgagee is hereby authorized and empowered to sell the Property, or cause the same to be sold and to convey the same to the purchaser in any lawful manner.

(e)     WAIVER: BY CONFERRING THIS POWER OF SALE UPON THE MORTGAGEE, THE MORTGAGOR, FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, AFTER AN OPPORTUNITY FOR CONSULTATION WITH ITS LEGAL COUNSEL, HEREBY VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY WAIVES ALL RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES AND UNDER THE CONSTITUTION AND LAWS OF THE STATE OF MICHIGAN, BOTH TO A HEARING ON THE RIGHT TO EXERCISE AND THE EXERCISE OF THE POWER OF SALE, AND TO NOTICE EXCEPT AS REQUIRED BY THE MICHIGAN STATUTE WHICH PROVIDES FOR FORECLOSURE OF MORTGAGES BY ADVERTISEMENT.

(f)     Mortgagee may institute an action, suit or proceeding in equity for the specific performance of any of the provisions contained in this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing.

(g)     Mortgagee may apply for the appointment of a receiver, custodian, trustee, liquidator or conservator of the Property and the Rents to be vested with the fullest powers permitted under applicable law, as a matter of right and, if permitted under applicable law, without regard to, or the necessity to disprove, the adequacy of the security for the Indebtedness or the solvency of Mortgagor or any other person liable for the payment of the Indebtedness, and Mortgagor and each such person liable for the payment of the Indebtedness consents or shall be deemed to have consented to such appointment. Nonpayment of any taxes, assessments, insurance or any utility rates levied, assessed or imposed on all or any part of the Property shall constitute waste and entitle the Mortgagee to exercise the remedies afforded to it, as now or hereafter amended, or by any other statute or law now or hereafter in effect.

(h)     Subject to the rights of tenants under leases, Mortgagee may enter upon the Property, and exclude Mortgagor and its agents and servants wholly therefrom, without liability for trespass, damages or otherwise, and take possession of all books, records and accounts relating thereto and all other Property; and having and holding the same Mortgagee may use, operate, manage, preserve, control and otherwise deal therewith and conduct the business thereof, without interference from Mortgagor; and upon each such entry and from time to time thereafter Mortgagee may, at the expense of Mortgagor and the Property, without interference by Mortgagor and as Mortgagee may deem advisable, (i) insure or reinsure the Property, (ii) make all necessary repairs, renewals, replacements, alterations, additions, betterments and improvements thereto and thereon and (iii) in every such case in connection with the foregoing have the right to exercise all rights and powers of Mortgagor with respect to the Property, either in Mortgagor's name or otherwise.

(i)     Mortgagee may, with or without entering upon the Property, collect, receive, sue for and recover in its own name all Rents and cash collateral derived from the Property, and may deduct therefrom all costs, expenses and liabilities of every character incurred by Mortgagee in controlling the same and in using, operating, managing, preserving and controlling the Property, and otherwise in exercising Mortgagee's rights under this Mortgage or the Loan Documents, including, but not limited to, all amounts disbursed to pay Impositions, insurance premiums and other charges in connection with the Property, as well as compensation for the services of Mortgagee and its respective attorneys, agents and employees.

(j)     Mortgagee may release any portion of the Property for such consideration as Mortgagee may require without, as to the remainder of the Property, in any way impairing or affecting the position of Mortgagee with respect to the balance of the Property; and Mortgagee may accept by assignment, pledge or otherwise any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lien holder.

(k)     Mortgagee may take all actions, or pursue any other right or remedy, permitted under the Uniform Commercial Code in effect in the State in which the Property is located , under any other applicable law or in equity.

5.2     **Mortgagee's Cause of Action.** Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage or the Loan Documents, as the same become due, without regard to whether or not the principal indebtedness or any other sums secured by this Mortgage or the Loan Documents shall be due, and without prejudice to the right of Mortgagee thereafter to institute foreclosure or otherwise dispose of the Property or any part thereof, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

5.3     **Costs and Expenses.** There shall be allowed and included as additional Indebtedness secured by the lien of this Mortgage, to the extent permitted by law, all expenditures and expenses of Mortgagee for reasonable attorneys' fees, court costs, appraisers' fees, sheriff's fees, documentary and expert evidence, stenographers' charges, publication costs and such other costs and expenses as Mortgagee may deem reasonably necessary to exercise any remedies or to evidence to bidders at any sale of the Property the true condition of the title to or the value of the Property. All such expenditures and expenses shall bear interest at a floating rate per annum equal to three percent (3%) in excess of the Interest Rate then in effect under the terms of the Note, and such interest shall be paid by Mortgagor upon demand by Mortgagee and shall be additional Indebtedness secured by this Mortgage.

5.4     **Proceeds.** The proceeds received by Mortgagee in any foreclosure sale of the Property shall be distributed and applied in the following order of priority: first, on account of all costs and expenses incident to the foreclosure proceedings, including all such items as are mentioned in Section 5.3; second, to all other items which under the terms hereof constitute Indebtedness or Impositions; and, third, any surplus to Mortgagor, its legal representatives or assigns, or to third persons with rights to the proceeds, as their rights may appear.

5.5     **Receiver.** Without limiting the application of Section 5.1 of this Mortgage, upon, or at any time after, the filing of a suit to foreclose this Mortgage, Mortgagee shall be entitled to

12

have a court appoint a receiver of the Property. Such appointment may be made either before or after sale, with notice to Mortgagor but without notice to any other person, without regard to the solvency of the person or persons, if any, liable for the payment of the Indebtedness and without regard to the then value of the Property, and Mortgagee may be appointed as such receiver. The receiver shall have the power to collect the rents, issues and profits of the Property during the pendency of such foreclosure suit, as well as during any further times when Mortgagee, absent the intervention of such receiver, would be entitled to collect such rents, issues and profits, and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of such period. The court from time to time may authorize the receiver to apply net income in the Receiver's hands in payment in whole or in part of the Indebtedness, or in payment of any tax, assessment or other lien that may be or become superior to the lien hereof or superior to a decree foreclosing this Mortgage, provided such application is made prior to foreclosure sale.

      **5.6**    **Rights Cumulative.** The rights of Mortgagee arising under the provisions and covenants contained in each of the Mortgage and the Loan Documents shall be separate, distinct and cumulative, and none of them shall be exclusive of the others. In addition to the rights set forth in this Mortgage or any other Loan Documents, Mortgagee shall have all rights and remedies now or hereafter existing at law or in equity or by statute. Mortgagee may pursue its rights and remedies concurrently or in any sequence, and no act of Mortgagee shall be construed as an election to proceed under any one provision herein or in such other documents to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding. Without notice to or consent of Mortgagor and without impairment of the lien and rights created by this Mortgage, the Mortgagee may accept from Mortgagor or from any other person or persons, additional security for the indebtedness secured by this Mortgage. Neither the giving of this Mortgage nor the acceptance of any such additional security shall prevent the Mortgagee from resorting, first, to such additional security, or second, to the security created by this Mortgage, in either case without affecting the lien hereof and the rights conferred hereunder. If Mortgagor fails to comply with this Mortgage, no remedy of law will provide adequate relief to Mortgagee, and Mortgagee shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages.

      **5.7**    **No Merger.** If Mortgagee shall at any time hereafter acquire title to any of the Property, then the lien of this Mortgage shall not merge into such title, but shall continue in full force and effect to the same extent as if the Mortgagee had not acquired title to any of the Property. Furthermore, if the estate of the Mortgagor shall be a leasehold, unless the Mortgagee shall otherwise consent, the fee title of the Property shall not merge with such leasehold, notwithstanding the union of said estates either in the ground lessor or in the fee owner, or in a third party, by purchase or otherwise. If, however, the Mortgagee shall be requested to and/or shall consent to such merger or such merger shall nevertheless occur without its consent, then this Mortgage shall attach to and cover and be a lien upon the fee title or any other estate in the Property demised under the ground lease acquired by the fee owner and the same shall be considered as mortgaged to the Mortgagee and the lien hereof spread to cover such estate with the same force and effect as though specifically herein granted.

      **5.8**    **Waivers of Mortgagor.** Mortgagor hereby waives the benefit of any stay, moratorium, valuation or appraisal law or judicial decision, any defects in any proceeding instituted by Mortgagee with respect to this Mortgage or any Loan Documents, and any right of

13

redemption with respect to the Property. Mortgagor waives any right to require marshalling of assets in connection with enforcement of Indebtedness and any right to require the sale of the Property in parcels or in a single parcel to select the order in which parcels are to be sold or to require a minimum bid or "upset" price. Mortgagor waives the right to all notices to which Mortgagor may otherwise be entitled, except those expressly provided for herein.

THE UNDERSIGNED AND THE MORTGAGEE ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS MORTGAGE OR THE INDEBTEDNESS.

## ARTICLE 6
## MISCELLANEOUS

6.1     **Uniform Commercial Code Security Agreement.** This Mortgage is intended to be a security agreement pursuant to the Uniform Commercial Code as adopted in the state where the Property is located for any of the items specified above as part of the Property which may be subject to a security interest pursuant to the applicable version of the Uniform Commercial Code, and Mortgagor hereby grants Mortgagee a security interest in such items. Mortgagor agrees that Mortgagee may file this mortgage instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Mortgage shall be sufficient as a financing statement. In addition, Mortgagor agrees to execute and deliver to Mortgagee upon Mortgagee's request any financing statements that Mortgagee may require to perfect a security interest with respect to said items. Mortgagor shall pay all costs of filing such financing statement and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Mortgagee may require. Without the prior written consent of Mortgagee, Mortgagor shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in such items, including replacements and additions thereto. Upon any Event of Default under this Mortgage, Mortgagee shall have the remedies of a secured party under the Uniform Commercial Code and, at Mortgagee's option, may also invoke the remedies provided in this Mortgage. In exercising any of said remedies, Mortgagee may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Mortgagee's remedies under the Uniform Commercial Code or of the remedies in this Mortgage. Mortgagor further authorizes Mortgagee to File UCC Financing Statements on behalf of Mortgagor and Mortgagee with respect to the property.

6.2     **Waiver.** No delay or omission by Mortgagee to exercise any right shall impair any such right or be a waiver thereof, but any such right may be exercised from time to time and as often as may be deemed expedient. Each waiver must be in writing and executed by Mortgagee to be effective, and a waiver on one occasion shall be limited to that particular occasion.

14

**6.3    Amendments in Writing.** No change, amendment, or modification hereof, or any part hereof, shall be valid unless in writing and signed by the parties hereto or their respective successors and assigns.

**6.4    Notices.** All notices, demands and requests given or required to be given by either party hereto to the other party shall be in writing and shall be deemed to have been properly given if sent by U.S. registered or certified mail, postage prepaid, return receipt requested, or by overnight delivery service, addressed as follows:

To Mortgagor:      Ryan Leestma
                   1599 Westwind Court
                   Muskegon, Michigan 49445

To Mortgagee:      Independent Bank
                   Attn: Dan Plumert
                   12368 Riley Street
                   Holland, Michigan 49423

or to such other address as Mortgagor or Mortgagee may from time to time designate by written notice.

**6.5    Interpretation.** The titles to the Sections and Paragraphs hereof are for reference only and do not limit in any way the content thereof. Any words herein which are used in one gender shall be read and construed to mean or include the other gender wherever they would so apply. Any words herein which are used in the singular shall be read and construed to mean and to include the plural wherever they would so apply, and vice versa.

**6.6    Covenant Running With the Land.** Any act or agreement to be done or performed by Mortgagor shall be construed as a covenant running with the land and shall be binding upon Mortgagor and its successors and assigns as if they had personally made such agreement.

**6.7    Complete Agreement; Counterparts.** This Mortgage and the Exhibits are the complete agreement of the parties hereto and supersede all previous understandings relating to the subject matter hereof. This Mortgage may be amended only by an instrument in writing which explicitly states that it amends this Mortgage, and is signed by the party against whom enforcement of the amendment is sought. This Mortgage may be executed in several counterparts, each of which shall be regarded as an original and all of which shall constitute but one and the same instrument.

**6.8    Validity.** The provisions of this Mortgage are severable. If any term, covenant or condition of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, the remainder of this Mortgage shall not be invalidated thereby, and this Mortgage shall be construed without such provision.

**6.9    Governing Law.** This Mortgage for all purposes shall be construed and enforced in accordance with the domestic laws of the State of Michigan.

**6.10    Binding Effect; Assignment.** This Mortgage shall be binding upon and inure to the benefit of the respective legal representatives, successors and assigns of the parties hereto;

15

however, Mortgagor may not assign any of its rights or delegate any of its obligations hereunder. Mortgagee may assign this Mortgage to any other person, firm, or corporation provided all of the provisions hereof shall continue in force and effect and, in the event of such assignment, any advances made by any assignee shall be deemed made in pursuance and not in modification hereof and shall be evidenced and secured by, the Loan Documents and this Mortgage.

**6.11    Interest.** In no event shall the interest rate and other charges related to the Indebtedness exceed the highest rate permissible under any law which a court of competent jurisdiction shall, in a final determination, deem applicable hereto. In the event that a court determines that Mortgagee has received interest and other charges hereunder in excess of the highest permissible rate applicable hereto, such excess shall be deemed received on account of, and shall automatically be applied to reduce, the principal balance of the Indebtedness, and the provisions hereof shall be deemed amended to provide for the highest permissible rate. If there is no Indebtedness outstanding, Mortgagee shall refund to Mortgagor such excess.

**6.12    Future Advances.** The parties hereto intend and agree that this Mortgage shall secure unpaid balances of any loan advances or future advances, whether obligatory or not, and whether made pursuant to the Loan Documents or not, made by Mortgagee after this Mortgage is delivered to the Register of Deeds for record. Mortgagor further covenants and agrees to repay all such loan advances with interest, and that the covenants contained in this Mortgage shall apply to such loan advances as well.

**6.13    Mortgagee's Status.** Mortgagor hereby acknowledges and agrees that the undertaking of Mortgagee under this Mortgage is limited as follows:

Mortgagee shall not act in any way as the agent for or trustee of Mortgagor. Mortgagee does not intend to act in any way for or on behalf of Mortgagor with respect to disbursement of the proceeds of the indebtedness secured hereby. Mortgagee's intent in imposing the requirements set forth herein and in the Loan Documents is that of a lender protecting the priority of its mortgage and the value of its security. Mortgagee assumes no responsibility for the completion of any Improvements erected or to be erected upon the Property; the payment of bills or any other details in connection with the Property; any plans and specifications in connection with the Property; or Mortgagor's relations with any contractors. This Mortgage is not to be construed by Mortgagor or anyone furnishing labor, materials, or any other work or product for improving the Property as an agreement upon the part of the Mortgagee to assure anyone that such person will be paid for furnishing such labor, materials, or any other work or product; any such person must look entirely to Mortgagor for such payment. Mortgagee assumes no responsibility for the architectural or structural soundness of any improvements on or to be erected upon the Property or for the approval of any plans and specifications in connection therewith or for any improvements as finally completed.

## ARTICLE 7
## DEFEASANCE

**7.1    Defeasance.** If Mortgagor shall pay or cause to be paid, all of the Indebtedness whether now outstanding or hereafter arising, including all extensions and renewals thereof, and all of the other Indebtedness, then Mortgagee shall release this Mortgage upon the request and at the expense of Mortgagor, otherwise this Mortgage shall remain in full force and effect.

16

## ARTICLE 8
## SUBORDINATION

**8.1** **Subject to Senior Loans.** Notwithstanding any provision herein to the contrary, this Mortgage and the covenants contained herein are subject and subordinate to the lien of and the terms, covenants and conditions contained in the Prior Mortgage. To the extent that any of the covenants or conditions of the Mortgage conflict with any of the covenants or conditions of the Prior Mortgage, the covenants and conditions of the Prior Mortgage shall govern.

*[SIGNATURE PAGE TO FOLLOW]*

17

IN WITNESS WHEREOF, the undersigned party has executed this instrument as of the date first above written.

**MORTGAGOR:**

**RYAN LEESTMA**

By: _____

Ryan Leestma
Its: Member

STATE OF MICHIGAN )
                          ) ss.
COUNTY OF *Muskegon* )

The foregoing instrument was acknowledged before me this 15th day of August, 2024, by Ryan Leestma.

_____
Rashelle Montney
Notary Public, *Newaygo* County, MI
My Commission Expires: 01/10/2028
Acting in *Muskego* County, Michigan

> Rashelle Montney
> Notary Public State of Michigan
> Newaygo County
> My Commission Expires 1/10/2028
> Acting in the County of *Muskegon*

18

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 15th day of August 2024, and is incorporated into and amends and supplements the Mortgage, Mortgage Deed, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Indebtedness (as defined in the above Mortgage) owed to the Lender defined in the above Mortgage (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**1900 Gulf Dr N Unit 7, Bradenton Beach, FL 34217-2384**

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

**Marbella Condominium**

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds, and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the representations, warranties, covenants, and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. **Condominium Obligations.** Borrower will perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower will promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. **Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes, winds, and floods, for which Lender requires insurance, then (i) Lender waives the provision in Section 3 for the portion of the Periodic Payment made to Lender consisting of the yearly premium installments for property insurance on the Property, and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

19

Borrower will give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and will be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower will take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and will be paid to Lender. Such proceeds will be applied by Lender to the sums secured by the Security Instrument as provided in Section 12.

**E. Lender's Prior Consent.** Borrower will not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents unless the provision is for the

express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F will become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts will bear interest from the date of disbursement at the Note rate and will be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

---

Mortgagor, Ryan M. Leestma – Date

## SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 15th day of August, 2024, and is incorporated into and amends and supplements the Mortgage, Mortgage Deed, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Indebtedness (as defined in the above Mortgage) owed to the Lender defined in the above Mortgage (the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

**1900 Gulf Dr N Unit 7, Bradenton Beach, FL 34217-2384**
[Property Address]

In addition to the representations, warranties, covenants, and agreements made in the Security Instrument, Borrower and Lender further agree to the following:

**Occupancy.** Borrower must occupy and use the Property as Borrower's second home. Borrower will maintain exclusive control over the occupancy of the Property, including short-term rentals, and will not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person or entity any control over the occupancy or use of the Property. Borrower will keep the Property available primarily as a residence for Borrower's personal use and enjoyment for at least one year after the date of this Security Instrument, unless Lender otherwise agrees in writing, which consent will not be unreasonably withheld, or unless extenuating circumstances exist that are beyond Borrower's control.

**Borrower's Loan Application.** Borrower will be in Default if, during the Loan application process, Borrower or any persons or entities acting at Borrower's direction or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan, including, but not limited to, overstating Borrower's income or assets, understating or failing to provide documentation of Borrower's debt obligations and liabilities, and misrepresenting Borrower's occupancy or intended occupancy of the Property as Borrower's second home.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Second Home Rider.

8-15-24

Mortgagor, Ryan M. Leestma – Date

21

## EXHIBIT A
## LEGAL DESCRIPTION

The following described property, situated in Manatee County, Florida:

UNITS 7 AND 9 OF MARBELLA CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, RECORDED IN OFFICIAL RECORDS BOOK 1642, PAGE 7321, AS THEREAFTER AMENDED, AND AS PER PLAT THEREOF RECORDED IN CONDOMINIUM BOOK 29, PAGE 179, AS THEREAFTER AMENDED, OF THE PUBLIC RECORDS OF MANATEE COUNTY, FLORIDA.

Parcel ID: 30-31-16-66964-004-0208

Commonly known as: 1900 Gulf Dr N Unit 7, Bradenton Beach, Florida 34217

The property address and Assessor's parcel are provided solely for informational purposes, without warranty as to accuracy or completeness. If inconsistent in any way with the legal description listed above, the legal description listed shall control.

915024_3

# EXHIBIT "6"

# QUIT CLAIM DEED

THIS QUIT CLAIM DEED made this 24th day of September, 2025 by Ryan M. Leestma, a married man, hereinafter referred to as Grantor, of 1900 Gulf Drive North, Unit 7, Bradenton Beach, FL 34217, quitclaims to RYAN M LEESTMA and EMILY LEESTMA, husband and wife, as tenants of the entireties, hereinafter referred to as Grantees, of 1900 Gulf Drive North, Unit. 7, Bradenton Beach, FL 34217, all of the Grantor's interest in the premises described below:

## WITNESSETH:

THAT Grantor, for and in consideration of the sum of One and 0/100 Dollars ($1) and other valuable considerations, in hand paid by Grantees, the receipt whereof is hereby acknowledged, hereby grants, bargains, sells, aliens, remises, releases, conveys and confirms unto the Grantees, their heirs and assigns forever, the following described land situated, lying and being in the County of Manatee, State of Florida to wit:

Units 7 and 9 of Marbella Condominium, according to the Declaration of Condominium thereof, recorded in Official Records Book 1642, page 7321, as thereafter amended, and as per Plat thereof recorded in Condominium Book 29, Page 179, as thereafter amended, of the Public Records of Manatee County, Florida.

Property Address is: 1900 Gulf Drive North, Unit 7 and 9, Bradenton Beach, FL 34217

Tax ID No. 7694000659

The preparer of this instrument was neither furnished with, nor requested to review, an abstract on the described property and therefore expresses no opinion as to condition of title.

TO HAVE AND TO HOLD the same together with all and singular the appurtenances thereunto belonging or in anywise appertaining, and all the estate, right, title, interest, lien, equity and claim whatsoever of grantor, either in law or equity, for the use, benefit and profit of the said grantees forever.

1

IN WITNESS WHEREOF, the said Grantor has hereunto set his hand and seal the day and year above written.

Witnesses:

Edwin J. Vander Ploeg, Jr.

By: _____
Ryan M. Leestma

Kristen K. Roorda

STATE OF MICHIGAN    )
                     ) ss.
COUNTY OF OTTAWA     )

The foregoing instrument was acknowledged before me this 24th day of September, 2025, by Ryan M. Leestma.

[print] Kristen K. Roorda
Notary Public, Ottawa County, Michigan
My commission expires: 10-31-2029

| When recorded return to: | Send subsequent tax bills to: | Drafted by: |
|---|---|---|
| Ryan and Emily Leestma<br>1900 Gulf Drive North, Unit 7<br>Bradenton Beach, FL 34217 | Ryan and Emily Leestma<br>1900 Gulf Drive North, Unit 7<br>Bradenton Beach, FL 34217 | Ryan M. Leestma<br>1900 Gulf Drive North, Unit 7<br>Bradenton Beach, FL 34217 |
| Parcel No. 7694000659 | Recording Fee: $18.50 | Transfer Tax: $0.70 |

2

# EXHIBIT "7"

**Received & Sealed for Record**
**William A. Moulatsiotis Register of Deeds**
**Muskegon County Michigan**
**04/08/2025 09:34:52 AM  Liber: 4383 Page: 592**

William A. Moulatsiotis            Liber: 4383 Page: 592
Register of Deeds                          Page: 1 of 19
Muskegon County Michigan      04/08/2025 09:34:52 AM
5849140    M10

# SUBORDINATED MORTGAGE

THIS SUBORDINATED MORTGAGE (the "**Mortgage**") made as of April 4, 2025, by RYAN M. LEESTMA, of 1204 West Western Avenue, Muskegon, Michigan 49441 (the "**Mortgagor**") in favor of INDEPENDENT BANK, a Michigan banking corporation, of 230 W. Main Street, PO Box 158, Ionia, Michigan 48846 (the "**Mortgagee**").

## WITNESSETH:

WHEREAS, WATERLAND BATTLE CREEK PROPERTIES, L.L.C., a Michigan limited liability company and LEESTMA MANAGEMENT LLC, a Florida limited liability company (collectively, the "**Borrower**") are or will be indebted to Mortgagee in the principal amount of Four Million Fifty Thousand and 00/100 Dollars ($4,050,000.00) pursuant to (i) a Promissory Note executed by Borrower coincident herewith and made payable to the order of Mortgagee, in the principal amount of Three Million Three Hundred Fifty Thousand and 00/100 Dollars ($3,350,000.00) ("**Note A**"), and (ii) a Promissory Note executed by Borrower coincident herewith and made payable to the order of Mortgagee, in the principal amount of Seven Hundred Thousand and 00/100 Dollars ($700,000.00) ("**Note B**", and collectively, with Note A, the "**Notes**"), and all agreements, instruments and documents executed or delivered in connection with any of the foregoing or otherwise related thereto (together with any amendments, modifications, or restatements thereof, the "**Loan Documents**"); and

WHEREAS, Mortgagor is a member of Borrower and, as such, shall be benefited directly by the transaction contemplated by the Loan Documents, and shall execute this Mortgage in order to induce Mortgagee to enter into such transaction; and

WHEREAS, Mortgagor desires to grant herein a second priority mortgage to Mortgagee encumbering the real estate described below.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to secure (i) the payment of the Indebtedness and Impositions (as defined below) and the interest thereon, (ii) the payment of any advances or expenses of any kind incurred by Mortgagee pursuant to the provisions of or on account of the Loan Documents or this Mortgage, (iii) the repayment of future advances disbursed by Mortgagee to Mortgagor in excess of the principal of the Indebtedness, and (iv) the performance of the obligations of the Mortgagor under the Loan Documents, the parties hereby agree as follows:

William A. Moulatsiotis                Liber: 4383 Page: 592
Register of Deeds                            Page: 2 of 19
Muskegon County Michigan          04/08/2025 09:34:52 AM
5849140    M10

## ARTICLE 1
## GRANTING PROVISIONS

The Mortgagor does hereby grant, bargain, sell, release, convey, assign, transfer, grant a security interest in, mortgage and warrant to Mortgagee, its successors and assigns forever, (a) the real estate located in Muskegon County, Michigan, more particularly described in **Exhibit A** attached hereto (hereinafter the "**Site**"), and (b) all of the estate, title and interest of Mortgagor, in law or equity, of, in and to such real estate and the buildings and improvements now existing, being constructed, or hereafter constructed or placed thereon, all of the rights, privileges, licenses, easements and appurtenances belonging to such real estate (including all heretofore or hereafter vacated streets or alleys which are about such real estate), and all fixtures of every kind whatsoever located in or on, or attached to, and used or intended to be used in connection with or with the operation of such real estate, buildings, structures or other improvements thereon or in connection with any construction now or to be conducted or which may be conducted thereon, together with all building materials and equipment now or hereafter delivered to such real estate and intended to be installed therein; any rental revenues, payments, repayments, income, profits, charges, accounts, general intangibles, and moneys derived by Mortgagor from the lease, sublease, sale, rental or other disposition of the Property, including, but not limited to, all rights conferred by Act No. 115 of the Michigan Public Acts of 2022 (MCLA 554.1051 et seq.), as amended (the "**Rents**"), and the proceeds from any insurance proceeds or condemnation award pertaining thereto (the foregoing provisions shall constitute an absolute and present assignment of the Rents and other benefits derived from the Property, subject however to the conditional permission given to Mortgagor to collect and use such rentals, revenues and other benefits that are hereinabove provided until the occurrence of an Event of Default and the existence or exercise of such right shall not operate to subordinate this assignment to any subsequent assignment, in whole or in part, by the Mortgagor); and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to any of the foregoing, and the proceeds of any of the foregoing (all of the foregoing, including the Site, being hereinafter collectively called the "**Property**").

The Mortgagor further hereby grants, conveys, and assigns to Mortgagee, its successors and assigns all rents, issues and profits of any of the foregoing and all proceeds of the conversion (whether voluntary or involuntary) of any of the same into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards.

TO HAVE AND TO HOLD the Property hereby conveyed, granted and assigned, unto Mortgagee, and its successors and assigns forever, for the uses and purposes herein set forth.

## ARTICLE 2
## REPRESENTATIONS AND WARRANTIES

**2.1    In General.** Mortgagor represents and warrants that it is the sole lawful owner in fee simple of the Property, that its title in and to the Property is free, clear and unencumbered except for real estate taxes and assessments not yet due and payable; that it has good legal right, authority, and full power to sell and convey the same and to execute this Mortgage; that Mortgagor will make any further assurances of title that Mortgagee may reasonably require; that Mortgagor will warrant and defend the Property against all claims and demands whatsoever, and that Mortgagor will keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed.

2

William A. Moulatsiotis      Liber: 4383 Page: 592
Register of Deeds      Page: 3 of 19
Muskegon County Michigan      04/08/2025 09:34:52 AM
5849140   M10

**2.2** **No Proceedings.** Mortgagor represents, covenants and warrants that there are no suits or proceedings pending, or, to the knowledge of Mortgagor, threatened against or affecting Mortgagor which, if adversely determined, would have an adverse effect on the Property or financial condition or business of Mortgagor.

## ARTICLE 3
## COVENANTS

Mortgagor hereby covenants and agrees with Mortgagee as follows:

**3.1** **Indebtedness.** Mortgagor will promptly pay and perform, or promptly cause to be paid and performed, when due, the following obligations (hereinafter collectively called the **"Indebtedness"**):

    (a) each and every term, provision, condition, obligation, covenant, and agreement of Mortgagor set forth in this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing;

    (b) all future advances disbursed by Mortgagee to Mortgagor under Section 6.12 (Future Advances) of this Mortgage; and

    (c) all loans, advances, indebtedness and each and every other obligation or liability of Mortgagor owed to Mortgagee, however created, of every kind and description, whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, due or to become due, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease, overdraft, agreement, or otherwise, whether or not secured by additional collateral, whether originated with Mortgagee or owed to others and acquired by Mortgagee by purchase, assignment or otherwise, and including, without limitation, all loans, advances, indebtedness and every obligation arising under the Loan Documents, all obligations to perform or forbear from performing acts, all amounts represented by letters of credit now or hereafter issued by Mortgagee for the benefit of or at the request of Mortgagor, all agreements, instruments and documents evidencing, guarantying, securing or otherwise executed in connection with any of the foregoing, together with any amendments, modifications, and restatements thereof, and all expenses and attorneys' fees incurred or other sums disbursed by Mortgagee under this Mortgage or any other document, instrument or agreement related to any of the foregoing; and

    (d) all Protective Advances. The words **"Protective Advance"** mean an indebtedness or obligation that is secured by this Mortgage and that arises because Mortgagee makes an expenditure or expenditures (i) to fulfill or perform an obligation of Mortgagor under this Mortgage, with respect to the Property, that Mortgagor has failed to fulfill or perform, (ii) to preserve the priority of this Mortgage and the value of the Property, or (iii) for attorney fees or other expenses that are incurred in exercising a right or remedy under this Mortgage or that Mortgagor has agreed in this Mortgage to reimburse to Mortgagee.

**3.2** **Impositions.** Mortgagor will pay, or cause to be paid, before the same become delinquent, all of the following (hereinafter collectively called the **"Impositions"**): all real estate

3

William A. Moulatsiotis          Liber: 4383 Page: 592
Register of Deeds                Page: 4 of 19
Muskegon County Michigan         04/08/2025 09:34:52 AM
5849140   M10

taxes, personal property taxes, assessments, water and sewer rates and charges, and all other governmental levies and charges, of every kind and nature whatsoever, general and special, ordinary and extraordinary, which are assessed, levied, confirmed, imposed or become a lien upon or against the Property or any portion thereof, and all taxes, assessments and charges upon the rents, issues, income or profits of the Property, or which become payable with respect thereto or with respect to the occupancy, use or possession of the Property, whether such taxes, assessments or charges are levied directly or indirectly. Mortgagor shall deliver proof of payment of all such Impositions to Mortgagee upon the request of Mortgagee. Notwithstanding any provision to the contrary in this Section 3.2, any tax or special assessment which is a lien on the Property may be paid in installments, provided that each installment is paid on or prior to the date when the same is due without the imposition of any penalty.

**3.3     Compliance with Laws.** Mortgagor will comply with all federal, state and local laws, regulations and orders to which the Property or the activities conducted on the Property are subject.

**3.4     Condition of Property.** Mortgagor will maintain the Property in good order and condition and make all repairs necessary to that end, will suffer no waste to the Property, and will cause all repairs and maintenance to the Property to be done in a good and workmanlike manner, normal wear and tear excepted.

**3.5     Improvements.** Mortgagor will not remove or materially change any improvements once installed or placed on the Property, or suffer or permit others to do so.

**3.6     Insurance.**

(a)     Mortgagor at its sole cost and expense shall provide and keep in force at all times for the benefit of Mortgagee, in accordance with the Loan Documents, with respect to the Property (with such deductibles as may be satisfactory to Mortgagee, from time to time, in its reasonable discretion): (i) insurance against loss of or damage to the Improvements by fire and other hazards covered by so-called "extended coverage" insurance, with a replacement cost endorsement, and such other casualties and hazards as Mortgagee shall reasonably require from time to time; (ii) earthquake insurance; (iii) flood insurance in the maximum available amount if the Improvements are located in a flood hazard area; (iv) business interruption insurance; (v) boiler and machinery insurance; (vi) comprehensive general public liability insurance against claims for bodily injury, death or property damage in customary and adequate amounts, or, in Mortgagee's discretion, in such amounts as may be reasonably satisfactory or desirable to Mortgagee, from time to time, in its reasonable discretion; (vii) during the course of any construction or repair of the Property, workers' compensation insurance for all employees involved in such construction or repair, (provided, however, that the Mortgagor may self-insure with respect to worker's compensation in accordance with the laws of the State of Michigan), and builder's risk completed value insurance against "all risks of physical loss," covering the total value of work performed and equipment, supplies and materials furnished, and containing the "permission to occupy upon completion of work or occupancy" endorsement; and (viii) such other insurance on the Property (including, without limitation, increases in amounts and modifications of forms of insurance existing on the date hereof), as Mortgagee may reasonably require from time to time. The policies of insurance required by this Section 3.6(a) shall be with such companies, in such forms and amounts, and for such periods, as Mortgagee shall require from time to time, and shall insure the

4

William A. Moulatsiotis                    Liber: 4383 Page: 592
Register of Deeds                          Page: 5 of 19
Muskegon County Michigan                   04/08/2025 09:34:52 AM
5849140    M10

respective interests of Mortgagor and Mortgagee. Such insurance may be provided in umbrella policies which insure any and all real or personal property in which Mortgagor has an interest in addition to the Property, any property encumbered by any other deed of trust or mortgage given by Mortgagor for the benefit of Mortgagee, or any personal property in which a security interest in favor of Mortgagee has been granted under the Loan Documents. The insurance proceeds from all such policies of insurance (other than the proceeds from the comprehensive general public liability policy required under clause (vi) above) shall be payable to Mortgagee pursuant to noncontributing first mortgagee and loss payee endorsements satisfactory in form and substance to Mortgagee. Certificates of the original policies and renewals thereof covering the risks provided by this Mortgage to be insured against, and bearing satisfactory evidence of payment of all premiums thereon, shall be delivered to and held by Mortgagee on demand. Without limiting the generality of the foregoing, Mortgagor shall deliver to Mortgagee all insurance policies and certificates that are requested by Mortgagee. At least thirty (30) days prior to the expiration of each policy required to be provided by Mortgagor, Mortgagor shall deliver certificates of renewal policies to Mortgagee with appropriate evidence of payment of premiums therefore. All insurance policies required by this Mortgage shall (1) include effective waivers by the insurer of all rights of subrogation against any named insured and any other loss payee; and (2) provide that any losses shall be payable to Mortgagee notwithstanding:

(i)     any act, failure to act or negligence of or violation of warranties, declarations or conditions contained in such policy by any named insured or other loss payee,

(ii)     the occupation or use of the Improvements or the Site for purposes more hazardous than permitted by the terms thereof,

(iii)     any foreclosure or other action or proceeding taken by Mortgagee pursuant to any provisions of this Mortgage, or

(iv)     any change in title to or ownership of the Property;

(3) provide that no cancellation, reduction in amount or material change in coverage thereof shall be effective until at least thirty (30) days after receipt by Mortgagee of written notice thereof; and (4) be satisfactory in all other respects to Mortgagee. Mortgagor shall not permit any activity to occur or condition to exist on or with respect to the Property that would wholly or partially invalidate any of the insurance thereon. Mortgagor shall give prompt written notice to Mortgagee of any damage to, destruction of or other loss in respect of the Property, irrespective of whether any such damage, destruction or loss gives rise to an insurance claim. Mortgagor shall not carry additional insurance in respect of the Property unless such insurance is endorsed in favor of Mortgagee as loss payee.

(b)     Mortgagor irrevocably makes, constitutes and appoints Mortgagee (and all officers, employees or agents designated by Mortgagee) as Mortgagor's true and lawful attorney-in-fact and agent coupled with an interest, with full power of substitution, for the purpose of making and adjusting claims under such policies of insurance, endorsing the name of Mortgagor on any check, draft, instrument or other item or payment for the proceeds of such policies of insurance and for making all determinations and decisions with respect to such policies of insurance required above or to pay any premium in whole or in part relating thereto. Mortgagee, without waiving or releasing any obligations or default by Mortgagor hereunder, may (but shall be

5

**William A. Moulatsiotis**      **Liber: 4383 Page: 592**
**Register of Deeds**      **Page: 6 of 19**
**Muskegon County Michigan**      04/08/2025 09:34:52 AM
**5849140   M10**

under no obligation to do so) at any time maintain such action with respect thereto which Mortgagee deems advisable. Notwithstanding the foregoing, prior to the occurrence of an Event of Default, Mortgagor shall have the right to adjust and compromise any such claims, subject to Mortgagee's prior consent thereto, which consent shall not be unreasonably withheld. All sums disbursed by Mortgagee in connection therewith, including attorneys' fees, court costs, expenses and other charges relating thereto, shall be payable, on demand, by Mortgagor to Mortgagee and shall be additional Indebtedness secured by this Mortgage.

(c) All proceeds of the insurance required to be obtained by Mortgagor hereunder, other than those relating to the comprehensive general public liability insurance, shall be held in trust for and paid promptly to Mortgagee, and Mortgagee may deduct from such proceeds any expenses, including, without limitation, legal fees, incurred by Mortgagee in connection with adjusting and obtaining such proceeds (the balance remaining after such deduction being hereinafter referred to as the **"Net Insurance Proceeds"**). Mortgagee may, at its option, either: (1) apply the Net Insurance Proceeds in reduction or satisfaction of all or any part of the Indebtedness, whether then matured or not, in which event Mortgagor shall be relieved of its obligation to maintain and restore the property relating to such proceeds to the extent that Mortgagee so applies such Net Insurance Proceeds; or (2) release the Net Insurance Proceeds to Mortgagor in whole or in part upon conditions satisfactory to Mortgagee.

(d) The application of any insurance proceeds toward the payment or performance of the Indebtedness shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the rest of the Indebtedness in accordance with the provisions of this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing.

(e) Notwithstanding the foregoing, Mortgagee shall make the Net Insurance Proceeds, available to Mortgagor to apply towards payment of the cost of restoration of the Property provided that the release of funds shall be subject to the following conditions: (1) there shall be no outstanding Event of Default hereunder, under the Note or under any other Loan Documents and no event shall have occurred and be continuing which, but for the giving of notice and passage of time, or both, would constitute such an Event of Default; (2) Mortgagee shall approve the plans and specifications for any such restoration in advance of commencement thereof; (3) there shall be sufficient funds upon deposit at all times with Mortgagee to complete the restoration, as certified by an architect approved by Mortgagee; (4) the insurer shall not have asserted any defense against Mortgagor or any tenant pursuant to the insurance policy covering the Improvements; (5) Mortgagor reasonably demonstrates to Mortgagee's satisfaction that Mortgagor has the financial ability to continue to pay the indebtedness evidenced by the Note during restoration; and (6) Mortgagor shall comply with such other conditions as would customarily be required by a prudent construction lender, or are otherwise reasonable.

(f) In the event of a foreclosure under this Mortgage, the purchaser of the Property shall succeed to all of the rights of Mortgagor, including any right to unearned premiums, in and to all policies of insurance which Mortgagor is required to maintain under this Section 3.6 and to all proceeds of such insurance.

(g) Without limiting Mortgagee's rights under Section 3.9 of this Mortgage, if Mortgagor shall fail to keep the Property insured in accordance with this Mortgage and the other

6

William A. Moulatsiotis          Liber: 4383 Page: 592
Register of Deeds                         Page: 7 of 19
Muskegon County Michigan         04/08/2025 09:34:52 AM
5849140   M10

Loan Documents, Mortgagee may, but shall not be obligated to, do so. Mortgagor shall reimburse Mortgagee on demand for amounts incurred or expended therefore, with interest thereon pursuant to Section 3.9 hereof, and all such amounts incurred or expended, and all such interest thereon, shall be additional Indebtedness of Mortgagor secured hereby.

### 3.7   Sale, Transfer or Encumbrance.

(a)   Notwithstanding anything to the contrary under this Section 3.7, Mortgagor and Mortgagee acknowledge that certain Mortgage granted to Mortgagee dated May 13, 2022 and recorded in Muskegon County, Michigan  records on May 18, 2022 in Liber 5300, Page 531 (the **"Prior Mortgage"**).

(b)   Mortgagor shall pay and discharge promptly, at Mortgagor's cost and expense, all liens, encumbrances, and charges upon any part of the Property or any interest therein. If Mortgagor shall fail to discharge any such lien, encumbrance, or charge, then, in addition to any other right or remedy of Mortgagee, Mortgagee may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond or the amount claimed or otherwise giving security for such claim, or in such manner as is or may be prescribed by law.

(c)   Mortgagor will not institute or cause to be instituted any proceedings that could change the permitted use of the Property from the use presently zoned, and shall not grant any easements or licenses with respect to the Property.

(d)   If, without the prior written consent of Mortgagee, a portion of the Property, or any beneficial interest therein, is sold, conveyed, transferred, encumbered, or full possessory rights therein transferred, whether voluntarily, involuntarily, or by operation of law, then the Mortgagee may declare all sums secured by this Mortgage to be immediately due and payable, whether or not the Mortgagee has consented or waived its rights in connection with any previous transaction of the same or a different nature.

### 3.8   Eminent Domain.

(a)   Mortgagor shall give immediate notice to Mortgagee upon Mortgagor's obtaining knowledge of (i) any interest on the part of any person possessing or who has expressed the intention to possess the power of eminent domain to purchase or otherwise acquire the Property or (ii) the commencement of any action or proceeding to take the Property by exercise of the right of condemnation or eminent domain or of any action or proceeding to close or to alter the grade of any street on or adjoining the Site. At its option Mortgagee may participate in any such actions or proceedings in the name of Mortgagee or, whenever necessary, in the name of Mortgagor, and Mortgagor shall deliver to Mortgagee such instruments as Mortgagee shall request to permit such participation. Mortgagor shall not settle any such action or proceeding, whether by voluntary sale, stipulation or otherwise, or agree to accept any award or payment without the prior written consent of Mortgagee, which consent shall not be unreasonably withheld. The total of all amounts awarded or allowed with respect to all right, title and interest in and to the Property or the portion or portions thereof taken or affected by such condemnation or eminent domain proceeding and any interest thereon (herein collectively called the "Award") is hereby assigned to, and shall be paid upon

William A. Moulatsiotis          Liber: 4383 Page: 592
Register of Deeds                Page: 8 of 19
Muskegon County Michigan         04/08/2025 09:34:52 AM
5849140   M10

receipt thereof, to Mortgagee and the amount received shall be retained and applied as provided in Paragraph 3.8(b) below.

(b)     Upon Mortgagee's receipt of any Award, Mortgagee may, at its option, either: (i) retain and apply the Award toward the Indebtedness; or (ii) subject to such escrow provisions as Mortgagee may require, pay the Award over in whole or part to pay or reimburse Mortgagor for the cost of restoring or reconstructing the Property remaining after such taking (the "**Remaining Property**"). If Mortgagee elects to pay the Award, or any part thereof, over to Mortgagor upon the completion of the restoration or reconstruction of the Remaining Property, any portion of the Award not used for the restoration or reconstruction of the Remaining Property shall, at the option of Mortgagee, be applied in reduction of the Indebtedness; provided, however, that to the extent that such portion of the Award shall exceed the amount required to satisfy in full the Indebtedness, Mortgagee shall pay the amount of such excess to Mortgagor or otherwise as required by law. In no event shall Mortgagee be required to release this Mortgage until the Indebtedness is fully paid and performed, nor shall Mortgagee be required to release from the lien of this Mortgage any portion of the Property so taken until Mortgagee receives the Award for the portion so taken.

(c)     The application of the Award toward payment or performance of any of the Indebtedness shall not be deemed a waiver by Mortgagee of its right to receive payment or performance of the balance of the Indebtedness in accordance with the provisions of this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing. Mortgagee shall have the right, but shall be under no obligation, to question or appeal the amount of the Award, and Mortgagee may accept same without prejudice to the rights that Mortgagee may have to question or appeal such amount. In any such condemnation or eminent domain action or proceeding Mortgagee may be represented by attorneys selected by Mortgagee, and all sums paid by Mortgagee in connection with such action or proceeding, including, without limitation, attorneys' fees, court costs, expenses and other charges relating thereto shall, on demand, be immediately due and payable from Mortgagor to Mortgagee and the same shall be added to the Indebtedness and shall be secured by this Mortgage.

(d)     Notwithstanding any taking by condemnation or eminent domain, closing of, or alteration of the grade of, any street or other injury to or decrease in value of the Property by any public or quasi-public authority or corporation, the Indebtedness shall continue to bear interest until the Award shall have been actually received by Mortgagee, and any reduction in the Indebtedness resulting from the application by Mortgagee of the Award shall be deemed to take effect only on the date of such receipt thereof by Mortgagee.

**3.9     Rights of Mortgagee.** If Mortgagor fails to pay when due any Impositions when so required by this Mortgage, or if an Event of Default occurs under this Mortgage, Mortgagee at its option may pay such Impositions. If Mortgagor fails to perform any of its obligations under this Mortgage with respect to the Property, Mortgagee at its option may (but shall not be obligated to) perform any such obligations of Mortgagor. Subject to the rights of tenants under leases, Mortgagee may enter upon the Property for the purpose of performing any such act, or to inspect the Property. All Impositions paid by Mortgagee and all monies expended by Mortgagee in performing any such obligations of Mortgagor (including legal expenses and disbursements), shall bear interest at a floating rate per annum equal to six percent (6%) in excess of the Interest Rate

8

**William A. Moulatsiotis**                    Liber: 4383 Page: 592
**Register of Deeds**                                Page: 9 of 19
**Muskegon County Michigan**            04/08/2025 09:34:52 AM
**5849140   M10**

under the terms of the Note then in effect, and such interest shall be paid by Mortgagor upon demand by Mortgagee and shall be additional Indebtedness secured by this Mortgage.

**3.10   Conflict Among Agreements.** In the event of any conflict between the provisions of this Mortgage and the provisions of the Loan Documents, the provisions of the Note shall prevail.

**3.11   Notifications.** Mortgagor shall notify Mortgagee promptly of the occurrence of any of the following:

(a)   a fire or other casualty causing damage to the Property in excess of $25,000;

(b)   receipt of written notice of condemnation of the Property or any part thereof;

(c)   receipt of written notice from any governmental authority relating to the structure, use or occupancy of the Property;

(d)   receipt of any written notice of alleged default from the holder of any lien or security interest in the Property;

(e)   the commencement of any litigation affecting the Property; or

(f)   any change in the occupancy of the Property, other than occupancy by tenants in the ordinary course of Mortgagor's business.

## ARTICLE 4
## EVENTS OF DEFAULT

Any of the following events shall be an Event of Default:

**4.1   Cross-Default.** An Event of Default occurs under any default of the Loan Documents, or other documents, including without limitation, the Notes, or in any amendments, modifications or restatements to any of the foregoing.

**4.2   Breach of Covenants.** Mortgagor defaults in the performance or observance of any of the following covenants:

(a)   to maintain in force the insurance required by Section 3.6 (Insurance) of this Mortgage;

(b)   to comply with any of the notice requirements set forth in Section 3.6 (Insurance), Section 3.8 (Eminent Domain) or Section 3.11 (Notifications) of this Mortgage; or

(c)   any other covenant or agreement contained in this Mortgage and such default continues for 30 days following written notice from Mortgagee.

9

William A. Moulatsiotis          Liber: 4383 Page: 592
Register of Deeds                       Page: 10 of 19
Muskegon County Michigan         04/08/2025 09:34:52 AM
5849140   M10

**4.3     Representation or Warranty Untrue.** Any representation or warranty of the Mortgagor under this Mortgage, or any other Loan Document is untrue or misleading in any material respect.

**4.4     Foreclosure.** A foreclosure proceeding (whether judicial or otherwise) is instituted with respect to any mortgage or lien of any kind encumbering any portion of the Property.

**4.5     Other Obligations.** Any default occurs under any other obligation of Mortgagor to Mortgagee or otherwise described herein as Indebtedness.

**4.6     Waste.** Mortgagor shall fail to pay taxes and/or assessments assessed against the Property or any installment thereof, or any insurance premiums or policies covering the Property, or any part thereof shall constitute waste (although the meaning of the term "waste" shall not necessarily be limited to such nonpayment), as provided by Act No. 236 of the Public Acts of Michigan of 1961, as amended, and shall entitle Mortgagee to all remedies provided for therein. Mortgagor further agrees to and does hereby consent to the appointment of a receiver under such statute, should Mortgagee elect to seek such relief thereunder.

## ARTICLE 5
## REMEDIES

**5.1     Remedies.** Upon the occurrence, and until the waiver by Mortgagee or permitted cure by Mortgagor, of an Event of Default:

(a)     Mortgagee may declare the entire balance of the Indebtedness to be immediately due and payable, and upon any such declaration, the entire unpaid balance of the Indebtedness shall become and be immediately due and payable, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by Mortgagor.

(b)     Mortgagee may institute a proceeding or proceedings, judicial or otherwise, for the complete or partial foreclosure of this Mortgage under any applicable provision of law.

(c)     Mortgagee may institute a proceeding or proceedings to eject Mortgagor from possession of the Property and to obtain possession of the Property by Mortgagee, with or without instituting a foreclosure proceeding.

(d)     Mortgagee may sell (the power of sale, if permitted and provided by applicable law, being expressly granted by Mortgagor to Mortgagee) the Property, and all estate, right, title, interest, claim and demand of Mortgagor therein, and all rights of redemption thereof, at one or more sales, as an entirety or in parcels, with such elements of real and/or personal property, and at such time and place and upon such terms as Mortgagee may deem expedient, or as may be required by applicable law, and in the event of a sale, by foreclosure or otherwise, of less than all of the Property, this Mortgage shall continue as a lien and security interest on the remaining portion of the Property. Mortgagee is hereby authorized and empowered to sell the Property, or cause the same to be sold and to convey the same to the purchaser in any lawful manner, including but not limited to that provided by Chapter 32 of the Revised Judicature Act of Michigan, entitled "Foreclosure of Mortgage by Advertisement," which permits the Mortgagee to sell the Property without affording the Mortgagor a hearing, or giving it actual personal notice.

10

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849140   M10

Liber: 4383 Page: 592
Page: 11 of 19
04/08/2025 09:34:52 AM

The only notice required under such Chapter 32 is to publish notice in a local newspaper and to post a copy of the notice on the Property.

(e)     WAIVER: BY CONFERRING THIS POWER OF SALE UPON THE MORTGAGEE, THE MORTGAGOR, FOR ITSELF, ITS SUCCESSORS AND ASSIGNS, AFTER AN OPPORTUNITY FOR CONSULTATION WITH ITS LEGAL COUNSEL, HEREBY VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY WAIVES ALL RIGHTS UNDER THE CONSTITUTION AND LAWS OF THE UNITED STATES AND UNDER THE CONSTITUTION AND LAWS OF THE STATE OF MICHIGAN, BOTH TO A HEARING ON THE RIGHT TO EXERCISE AND THE EXERCISE OF THE POWER OF SALE, AND TO NOTICE EXCEPT AS REQUIRED BY THE MICHIGAN STATUTE WHICH PROVIDES FOR FORECLOSURE OF MORTGAGES BY ADVERTISEMENT.

(f)     Mortgagee may institute an action, suit or proceeding in equity for the specific performance of any of the provisions contained in this Mortgage, the Loan Documents and in any amendments, modifications or restatements to any of the foregoing.

(g)     Mortgagee may apply for the appointment of a receiver, custodian, trustee, liquidator or conservator of the Property and the Rents to be vested with the fullest powers permitted under applicable law, as a matter of right and, if permitted under applicable law, without regard to, or the necessity to disprove, the adequacy of the security for the Indebtedness or the solvency of Mortgagor or any other person liable for the payment of the Indebtedness, and Mortgagor and each such person liable for the payment of the Indebtedness consents or shall be deemed to have consented to such appointment. Nonpayment of any taxes, assessments, insurance or any utility rates levied, assessed or imposed on all or any part of the Property shall constitute waste and entitle the Mortgagee to exercise the remedies afforded by Section 2927 of the Michigan Revised Judicature Act of 1961 (MCL 600.2927), as now or hereafter amended, or by any other statute or law now or hereafter in effect.

(h)     Subject to the rights of tenants under leases, Mortgagee may enter upon the Property, and exclude Mortgagor and its agents and servants wholly therefrom, without liability for trespass, damages or otherwise, and take possession of all books, records and accounts relating thereto and all other Property; and having and holding the same Mortgagee may use, operate, manage, preserve, control and otherwise deal therewith and conduct the business thereof, without interference from Mortgagor; and upon each such entry and from time to time thereafter Mortgagee may, at the expense of Mortgagor and the Property, without interference by Mortgagor and as Mortgagee may deem advisable, (i) insure or reinsure the Property, (ii) make all necessary repairs, renewals, replacements, alterations, additions, betterments and improvements thereto and thereon and (iii) in every such case in connection with the foregoing have the right to exercise all rights and powers of Mortgagor with respect to the Property, either in Mortgagor's name or otherwise.

(i)     Mortgagee may, with or without entering upon the Property, collect, receive, sue for and recover in its own name all Rents and cash collateral derived from the Property, and may deduct therefrom all costs, expenses and liabilities of every character incurred by Mortgagee in controlling the same and in using, operating, managing, preserving and controlling the Property, and otherwise in exercising Mortgagee's rights under this Mortgage or the Loan Documents, including, but not limited to, all amounts disbursed to pay Impositions, insurance

11

**William A. Moulatsiotis**  **Liber: 4383 Page: 592**
**Register of Deeds**  **Page: 12 of 19**
**Muskegon County Michigan**  04/08/2025 09:34:52 AM
**5849140   M10**

premiums and other charges in connection with the Property, as well as compensation for the services of Mortgagee and its respective attorneys, agents and employees.

(j)   Mortgagee may release any portion of the Property for such consideration as Mortgagee may require without, as to the remainder of the Property, in any way impairing or affecting the position of Mortgagee with respect to the balance of the Property; and Mortgagee may accept by assignment, pledge or otherwise any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lien holder.

(k)   Mortgagee may take all actions, or pursue any other right or remedy, permitted under the Uniform Commercial Code in effect in the State in which the Property is located , under any other applicable law or in equity.

**5.2   Mortgagee's Cause of Action.** Mortgagee shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Mortgagor under the terms of this Mortgage or the Loan Documents, as the same become due, without regard to whether or not the principal indebtedness or any other sums secured by this Mortgage or the Loan Documents shall be due, and without prejudice to the right of Mortgagee thereafter to institute foreclosure or otherwise dispose of the Property or any part thereof, or any other action, for any default by Mortgagor existing at the time the earlier action was commenced.

**5.3   Costs and Expenses.** There shall be allowed and included as additional Indebtedness secured by the lien of this Mortgage, to the extent permitted by law, all expenditures and expenses of Mortgagee for reasonable attorneys' fees, court costs, appraisers' fees, sheriff's fees, documentary and expert evidence, stenographers' charges, publication costs and such other costs and expenses as Mortgagee may deem reasonably necessary to exercise any remedies or to evidence to bidders at any sale of the Property the true condition of the title to or the value of the Property. All such expenditures and expenses shall bear interest at a floating rate per annum equal to three percent (3%) in excess of the Interest Rate then in effect under the terms of the Note, and such interest shall be paid by Mortgagor upon demand by Mortgagee and shall be additional Indebtedness secured by this Mortgage.

**5.4   Proceeds.** The proceeds received by Mortgagee in any foreclosure sale of the Property shall be distributed and applied in the following order of priority: first, on account of all costs and expenses incident to the foreclosure proceedings, including all such items as are mentioned in Section 5.3; second, to all other items which under the terms hereof constitute Indebtedness or Impositions; and, third, any surplus to Mortgagor, its legal representatives or assigns, or to third persons with rights to the proceeds, as their rights may appear.

**5.5   Receiver.** Without limiting the application of Section 5.1 of this Mortgage, upon, or at any time after, the filing of a suit to foreclose this Mortgage, Mortgagee shall be entitled to have a court appoint a receiver of the Property. Such appointment may be made either before or after sale, with notice to Mortgagor but without notice to any other person, without regard to the solvency of the person or persons, if any, liable for the payment of the Indebtedness and without regard to the then value of the Property, and Mortgagee may be appointed as such receiver. The receiver shall have the power to collect the rents, issues and profits of the Property during the pendency of such foreclosure suit, as well as during any further times when Mortgagee, absent the intervention of such receiver, would be entitled to collect such rents, issues and profits, and all

12

William A. Moulatsiotis          Liber: 4383 Page: 592
Register of Deeds                Page: 13 of 19
Muskegon County Michigan         04/08/2025 09:34:52 AM
5849140    M10

other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of such period. The court from time to time may authorize the receiver to apply net income in the Receiver's hands in payment in whole or in part of the Indebtedness, or in payment of any tax, assessment or other lien that may be or become superior to the lien hereof or superior to a decree foreclosing this Mortgage, provided such application is made prior to foreclosure sale.

**5.6     Rights Cumulative.** The rights of Mortgagee arising under the provisions and covenants contained in each of the Mortgage and the Loan Documents shall be separate, distinct and cumulative, and none of them shall be exclusive of the others. In addition to the rights set forth in this Mortgage or any other Loan Documents, Mortgagee shall have all rights and remedies now or hereafter existing at law or in equity or by statute. Mortgagee may pursue its rights and remedies concurrently or in any sequence, and no act of Mortgagee shall be construed as an election to proceed under any one provision herein or in such other documents to the exclusion of any other provision, anything herein or otherwise to the contrary notwithstanding. Without notice to or consent of Mortgagor and without impairment of the lien and rights created by this Mortgage, the Mortgagee may accept from Mortgagor or from any other person or persons, additional security for the indebtedness secured by this Mortgage. Neither the giving of this Mortgage nor the acceptance of any such additional security shall prevent the Mortgagee from resorting, first, to such additional security, or second, to the security created by this Mortgage, in either case without affecting the lien hereof and the rights conferred hereunder. If Mortgagor fails to comply with this Mortgage, no remedy of law will provide adequate relief to Mortgagee, and Mortgagee shall be entitled to temporary and permanent injunctive relief without the necessity of proving actual damages.

**5.7     No Merger.** If Mortgagee shall at any time hereafter acquire title to any of the Property, then the lien of this Mortgage shall not merge into such title, but shall continue in full force and effect to the same extent as if the Mortgagee had not acquired title to any of the Property. Furthermore, if the estate of the Mortgagor shall be a leasehold, unless the Mortgagee shall otherwise consent, the fee title of the Property shall not merge with such leasehold, notwithstanding the union of said estates either in the ground lessor or in the fee owner, or in a third party, by purchase or otherwise. If, however, the Mortgagee shall be requested to and/or shall consent to such merger or such merger shall nevertheless occur without its consent, then this Mortgage shall attach to and cover and be a lien upon the fee title or any other estate in the Property demised under the ground lease acquired by the fee owner and the same shall be considered as mortgaged to the Mortgagee and the lien hereof spread to cover such estate with the same force and effect as though specifically herein granted.

**5.8     Waivers of Mortgagor.** Mortgagor hereby waives the benefit of any stay, moratorium, valuation or appraisal law or judicial decision, any defects in any proceeding instituted by Mortgagee with respect to this Mortgage or any Loan Documents, and any right of redemption with respect to the Property. Mortgagor waives any right to require marshalling of assets in connection with enforcement of Indebtedness and any right to require the sale of the Property in parcels or in a single parcel to select the order in which parcels are to be sold or to require a minimum bid or "upset" price. Mortgagor waives the right to all notices to which Mortgagor may otherwise be entitled, except those expressly provided for herein.

13

**William A. Moulatsiotis**  **Liber: 4383 Page: 592**
**Register of Deeds**  **Page: 14 of 19**
**Muskegon County Michigan**  04/08/2025 09:34:52 AM
**5849140   M10**

THE UNDERSIGNED AND THE MORTGAGEE ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED. EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT, WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS MORTGAGE OR THE INDEBTEDNESS.

## ARTICLE 6
## MISCELLANEOUS

**6.1     Uniform Commercial Code Security Agreement.** This Mortgage is intended to be a security agreement pursuant to the Uniform Commercial Code as adopted in the state where the Property is located for any of the items specified above as part of the Property which may be subject to a security interest pursuant to the applicable version of the Uniform Commercial Code, and Mortgagor hereby grants Mortgagee a security interest in such items. Mortgagor agrees that Mortgagee may file this mortgage instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Mortgage shall be sufficient as a financing statement. In addition, Mortgagor agrees to execute and deliver to Mortgagee upon Mortgagee's request any financing statements that Mortgagee may require to perfect a security interest with respect to said items. Mortgagor shall pay all costs of filing such financing statement and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Mortgagee may require. Without the prior written consent of Mortgagee, Mortgagor shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in such items, including replacements and additions thereto. Upon any Event of Default under this Mortgage, Mortgagee shall have the remedies of a secured party under the Uniform Commercial Code and, at Mortgagee's option, may also invoke the remedies provided in this Mortgage. In exercising any of said remedies, Mortgagee may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Mortgagee's remedies under the Uniform Commercial Code or of the remedies in this Mortgage. Mortgagor further authorizes Mortgagee to File UCC Financing Statements on behalf of Mortgagor and Mortgagee with respect to the property.

**6.2     Waiver.** No delay or omission by Mortgagee to exercise any right shall impair any such right or be a waiver thereof, but any such right may be exercised from time to time and as often as may be deemed expedient. Each waiver must be in writing and executed by Mortgagee to be effective, and a waiver on one occasion shall be limited to that particular occasion.

**6.3     Amendments in Writing.** No change, amendment, or modification hereof, or any part hereof, shall be valid unless in writing and signed by the parties hereto or their respective successors and assigns.

**6.4     Notices.** All notices, demands and requests given or required to be given by either party hereto to the other party shall be in writing and shall be deemed to have been properly given

14

William A. Moulatsiotis                    Liber: 4383 Page: 592
Register of Deeds                              Page: 15 of 19
Muskegon County Michigan              04/08/2025 09:34:52 AM
5849140   M10

if sent by U.S. registered or certified mail, postage prepaid, return receipt requested, or by overnight delivery service, addressed as follows:

> To Mortgagor:    Ryan Leestma
> 1204 West Western Avenue
> Muskegon, Michigan 49441
> Attn: Ryan Leestma
>
> To Mortgagee:    Independent Bank
> Attn: Dan Plumert
> 12368 Riley Street
> Holland, Michigan 49424

or to such other address as Mortgagor or Mortgagee may from time to time designate by written notice.

**6.5     Interpretation.** The titles to the Sections and Paragraphs hereof are for reference only and do not limit in any way the content thereof. Any words herein which are used in one gender shall be read and construed to mean or include the other gender wherever they would so apply. Any words herein which are used in the singular shall be read and construed to mean and to include the plural wherever they would so apply, and vice versa.

**6.6     Covenant Running With the Land.** Any act or agreement to be done or performed by Mortgagor shall be construed as a covenant running with the land and shall be binding upon Mortgagor and its successors and assigns as if they had personally made such agreement.

**6.7     Complete Agreement; Counterparts.** This Mortgage and the Exhibits are the complete agreement of the parties hereto and supersede all previous understandings relating to the subject matter hereof. This Mortgage may be amended only by an instrument in writing which explicitly states that it amends this Mortgage, and is signed by the party against whom enforcement of the amendment is sought. This Mortgage may be executed in several counterparts, each of which shall be regarded as an original and all of which shall constitute but one and the same instrument.

**6.8     Validity.** The provisions of this Mortgage are severable. If any term, covenant or condition of this Mortgage shall be held to be invalid, illegal or unenforceable in any respect, the remainder of this Mortgage shall not be invalidated thereby, and this Mortgage shall be construed without such provision.

**6.9     Governing Law.** This Mortgage for all purposes shall be construed and enforced in accordance with the domestic laws of the State of Michigan.

**6.10    Binding Effect; Assignment.** This Mortgage shall be binding upon and inure to the benefit of the respective legal representatives, successors and assigns of the parties hereto; however, Mortgagor may not assign any of its rights or delegate any of its obligations hereunder. Mortgagee may assign this Mortgage to any other person, firm, or corporation provided all of the provisions hereof shall continue in force and effect and, in the event of such assignment, any advances made by any assignee shall be deemed made in pursuance and not in modification hereof and shall be evidenced and secured by, the Loan Documents and this Mortgage.

15

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849140 M10

Liber: 4383 Page: 592
Page: 16 of 19
04/08/2025 09:34:52 AM

**6.11 Interest.** In no event shall the interest rate and other charges related to the Indebtedness exceed the highest rate permissible under any law which a court of competent jurisdiction shall, in a final determination, deem applicable hereto. In the event that a court determines that Mortgagee has received interest and other charges hereunder in excess of the highest permissible rate applicable hereto, such excess shall be deemed received on account of, and shall automatically be applied to reduce, the principal balance of the Indebtedness, and the provisions hereof shall be deemed amended to provide for the highest permissible rate. If there is no Indebtedness outstanding, Mortgagee shall refund to Mortgagor such excess.

**6.12 Future Advances.** The parties hereto intend and agree that this Mortgage shall secure unpaid balances of any loan advances or future advances, whether obligatory or not, and whether made pursuant to the Loan Documents or not, made by Mortgagee after this Mortgage is delivered to the Register of Deeds for record. Mortgagor further covenants and agrees to repay all such loan advances with interest, and that the covenants contained in this Mortgage shall apply to such loan advances as well.

**6.13 Mortgagee's Status.** Mortgagor hereby acknowledges and agrees that the undertaking of Mortgagee under this Mortgage is limited as follows:

Mortgagee shall not act in any way as the agent for or trustee of Mortgagor. Mortgagee does not intend to act in any way for or on behalf of Mortgagor with respect to disbursement of the proceeds of the indebtedness secured hereby. Mortgagee's intent in imposing the requirements set forth herein and in the Loan Documents is that of a lender protecting the priority of its mortgage and the value of its security. Mortgagee assumes no responsibility for the completion of any Improvements erected or to be erected upon the Property; the payment of bills or any other details in connection with the Property; any plans and specifications in connection with the Property; or Mortgagor's relations with any contractors. This Mortgage is not to be construed by Mortgagor or anyone furnishing labor, materials, or any other work or product for improving the Property as an agreement upon the part of the Mortgagee to assure anyone that such person will be paid for furnishing such labor, materials, or any other work or product; any such person must look entirely to Mortgagor for such payment. Mortgagee assumes no responsibility for the architectural or structural soundness of any improvements on or to be erected upon the Property or for the approval of any plans and specifications in connection therewith or for any improvements as finally completed.

## ARTICLE 7
## DEFEASANCE

**7.1 Defeasance.** If Mortgagor shall pay or cause to be paid, all of the Indebtedness whether now outstanding or hereafter arising, including all extensions and renewals thereof, and all of the other Indebtedness, then Mortgagee shall release this Mortgage upon the request and at the expense of Mortgagor, otherwise this Mortgage shall remain in full force and effect.

16

**William A. Moulatsiotis**
**Register of Deeds**
**Muskegon County Michigan**
**5849140    M10**

**Liber: 4383 Page: 592**
**Page: 17 of 19**
**04/08/2025 09:34:52 AM**

# ARTICLE 8
## SUBORDINATION

**8.1    Subject to Senior Loans.** Notwithstanding any provision herein to the contrary, this Mortgage and the covenants contained herein are subject and subordinate to the lien of and the terms, covenants and conditions contained in the Prior Mortgage. To the extent that any of the covenants or conditions of the Mortgage conflict with any of the covenants or conditions of the Prior Mortgage, the covenants and conditions of the Prior Mortgage shall govern.

*[SIGNATURE PAGE TO FOLLOW]*

17

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849140   M10

Liber: 4383 Page: 592
Page: 18 of 19
04/08/2025 09:34:52 AM

*[Signature Page to Mortgage]*

IN WITNESS WHEREOF, the undersigned party has executed this instrument as of the date first above written.

**MORTGAGOR:**

Ryan Leestma

STATE OF MICHIGAN          )
                                              ) ss.
COUNTY OF __Muskegon__ )

The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Ryan Leestma, individually.

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

Notary Public, _____ County, MI
My Commission Expires: _____
Acting in _____ County, Michigan

DRAFTED BY AND RETURN TO:
DAN M. CHALLA
McSHANE & BOWIE, P.L.C.
99 Monroe Ave NW, Suite 1100
Grand Rapids, MI 49503
(616) 732-5000

18

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849140   M10

Liber: 4383 Page: 592
Page: 19 of 19
04/08/2025 09:34:52 AM

## EXHIBIT A
## LEGAL DESCRIPTION

Lot 2, Fairview Park, Laketon Township, Muskegon County, Michigan, as recorded in Liber 4 of Plats, Page 7. Also that part of Lot 3 of the above described subdivision described as follows: Beginning on the dividing line between Lots 2 and 3, 398 feet South of the North line thereof; thence Easterly parallel with said North line 8 feet; thence Southerly parallel with the above mentioned dividing line 100 feet; thence Westerly 8 feet to said dividing line; thence Northerly to the point of beginning.

Excepting that part of said Lot 2, Fairview Park, described as: Commencing at the Northwest corner of said Lot 2 for point of beginning of the herein described parcel: thence Southerly along the West line of said Lot 2, a distance of 298.47 feet, more or less, to a point being 40.00 feet South of the Southeast corner of Lot 13, Chadwick Village No. 1, as recorded in Liber 20 of Plats, Page 30; thence Easterly parallel with the North right of way line of Westwind Court of said Chadwick Village No. 1, a distance of 41.1 feet, more or less, to the East line of said Lot 2; thence Northerly along said East line 320 feet, more or less, to the Northeast corner of said Lot 2; thence Southwesterly along the North line of said Lot 2 (also being the Southerly right of way line of Glenwood Avenue) 40 feet, more or less, to the point of beginning.

Together with an easement for ingress and egress over the East 1/2 of the following described property:

That part of said Lot 2, Fairview Park, described as: Commencing at the Northwest corner of said Lot 2 for point of beginning of the herein described parcel: thence Southerly along the West line of said Lot 2, a distance of 298.47 feet, more or less, to a point being 40.00 feet South of the Southeast corner of Lot 13, Chadwick Village No. 1, as recorded in Liber 20 of Plats, Page 30; thence Easterly parallel with the North right of way line of Westwind Court of said Chadwick Village No. 1, a distance of 41.1 feet, more or less, to the East line of said Lot 2; thence Northerly along said East line 320 feet, more or less, to the Northeast corner of said Lot 2; thence Southwesterly along the North line of said Lot 2 (also being the Southerly right of way line of Glenwood Avenue) 40 feet, more or less, to the point of beginning.

Also

Together with a permanent easement for ingress/egress and public utilities described as: Commencing at the Southeast corner of Lot 13, Chadwick Village No. 1, as recorded in Liber 20 of Plats, Page 30, Laketon Township, Muskegon County, Michigan; thence South along the West line of said Lot 2, Fairview Park, as recorded in Liber 4 of Plats, Page 7, Laketon Township, Muskegon County, Michigan, (also being the East Right-of-Way line of said Westwind Court) a distance of 40.00 feet for Point of Beginning of this Easement; thence continue South along the West line of said Lot 2 a distance of 30.00 feet; thence East parallel to the North line of said Westwind Court, 30.00 feet; thence North parallel with the West line of said Lot 2 a distance of 30.00 feet; thence West 30.00 feet to point of beginning.

973964_2

# EXHIBIT "8"

Received & Sealed for Record
William A. Moulatsiotis Register of Deeds
Muskegon County Michigan
09/04/2025 02:06 PM Liber: 4395 Page: 778

William A. Moulatsiotis Liber: 4395 Page: 778
Register of Deeds        PAGE: 1 of 2
Muskegon County Michigan  09/04/2025 02:06 PM
D02      5861314

## Quit Claim Deed

**KNOW ALL PERSONS BY THESE PRESENTS THAT:** Ryan M. Leestma, married, whose address is 1599 Westwind Ct., Muskegon, Michigan 49445,

**CONVEYS and Quitclaims to: Ryan M. Leestma and Emily S. Leestma, married to each other, joint tenants with full rights of survivorship,** whose address is 1599 Westwind Ct., Muskegon, Michigan 49445,

the following described real property located in the Township of Laketon, County of Muskegon, State of Michigan:

LOT 2, PLAT OF FAIRVIEW PARK, ACCORDING TO THE RECORDED PLAT THEREOF. AS RECORDED IN LIBER 4 OF PLATS, PAGE 7. ALSO THAT PART OF LOT 3 OF THE ABOVE DESCRIBED SUBDIVISION DESCRIBED AS FOLLOWS: BEGINNING ON THE DIVIDING LINE BETWEEN LOTS 2 AND 3, 398 FEET SOUTH OF THE NORTH LINE THEREOF; THENCE EASTERLY PARALLEL WITH SAID NORTH LINE 8 FEET; THENCE SOUTHERLY PARALLEL WITH THE ABOVE MENTIONED DIVIDING LINE 100 FEET; THENCE WESTERLY 8 FEET TO SAID DIVIDING LINE; THENCE NORTHERLY TO PLACE AND POINT OF BEGINNING.

EXCEPT:
THAT PART OF LOT 2, OF THE PLAT OF FAIRVIEW PARK, BEING PART OF SECTION 13, TOWN 10 NORTH, RANGE 17 WEST, LAKETON TOWNSHIP, MUSKEGON COUNTY, MICHIGAN, AS RECORDED IN LIBER 4 OF PLATS, PAGE 7, MUSKEGON COUNTY RECORDS, DESCRIBED AS: COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 2 FOR POINT OF BEGINNING OF THE HEREIN DESCRIBED PARCEL; THENCE SOUTHERLY ALONG THE WEST LINE OF SAID LOT 2 A DISTANCE OF 298.47 FEET, MORE OR LESS TO A POINT BEING 40.00 FEET SOUTH OF THE SOUTHEAST CORNER OF LOT 13 OF THE PLAT OF CHADWICK VILLAGE NO. 1, AS RECORDED IN LIBER 20 OF PLATS, PAGES 30-33, MUSKEGON COUNTY RECORDS; THENCE EASTERLY, PARALLEL WITH THE NORTH RIGHT-OF-WAY LINE OF WESTWIND COURT OF SAID CHADWICK VILLAGE NO. 1, A DISTANCE OF 41.1 FEET MORE OR LESS TO THE EAST LINE OF SAID LOT 2; THENCE NORTHERLY ALONG SAID EAST LINE 320 FEET MORE OR LESS TO THE NORTHEAST CORNER OF SAID LOT 2; THENCE SOUTHWESTERLY ALONG THE NORTH LINE OF SAID LOT 2 (ALSO BEING THE SOUTHERLY RIGHT-OF-WAY LINE OF GLENWOOD AVENUE) 40 FEET MORE OR LESS TO POINT OF BEGINNING.

GRANTORS RESERVE TO THEMSELVES AN EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE EAST 1/2 OF THE PARCEL CONVEYED IN LIBER 3765 AT PAGE 136. THIS EASEMENT IS PERMANENT AND IS FOR THE BENEFIT OF THE REMAINDER OF LOT 2 OWNED BY GRANTORS SOUTH OF THAT PART CONVEYED BY THIS INSTRUMENT. THIS EASEMENT IS FOR THE EXCLUSIVE USE OF GRANTORS AND OTHER OWNERS OF LOT 2 ONLY.

TOGETHER WITH A PERMANENT EASEMENT FOR INGRESS/EGRESS AND PUBLIC UTILITIES DESCRIBED AS: COMMENCING AT THE ABOVE-DESCRIBED SOUTHEAST CORNER OF SAID LOT 13 OF THE PLAT OF CHADWICK VILLAGE NO. 1; THENCE SOUTH ALONG THE WEST LINE OF SAID LOT 2 OF THE PLAT OF FAIRVIEW PARK (ALSO BEING THE EAST RIGHT-OF-WAY LINE OF SAID WESTWIND COURT) A DISTANCE OF 40.00 FEET FOR POINT OF BEGINNING OF THIS EASEMENT; THENCE CONTINUE SOUTH ALONG THE WEST LINE OF SAID LOT 2 A DISTANCE OF 30.00 FEET; THENCE EAST PARALLEL TO THE NORTH LINE OF SAID WESTWIND COURT, 30.00 FEET; THENCE NORTH, PARALLEL WITH THE WEST LINE OF SAID LOT 2, A DISTANCE OF 30.00 FEET; THENCE WEST 30.00 FEET TO POINT OF BEGINNING.

PROPERTY TAX ID# 61-09-310-000-0002-00
COMMONLY KNOWN AS: 1599 Westwind Ct., Muskegon, Michigan 49445

for the full consideration of $1.00

EXEMPT FROM TRANSFER TAX PURSUANT TO MCL207.526 (a) and MCL207.505 (a)

Subject to easements and building and use restrictions of record and further subject to all prior reservations including all prior oil, gas and other minerals and further subject to all local and state statutes, ordinances and laws.

Dated this _3rd Day of September, 20 25_

Signed and Sealed:

Ryan M. Leestma

STATE OF _MI_ ) SS.
COUNTY OF _muskeg_ )

The foregoing instrument was acknowledged before me this _3rd_ day of _September 2025_
by Ryan M. Leestma.

GINGER SHELDON
NOTARY PUBLIC - MICHIGAN
MUSKEGON COUNTY
MY COMMISSION EXPIRES DECEMBER 2026
ACTING IN _Muskegon_ COUNTY

_____, Notary Public
State of Michigan, County of _muskegon_
Acting in the County of _muskego_
My commission expires _12/09/2026_

**Drafted By:.**    Ryan M. Leestma
1599 Westwind Ct., Muskegon, Michigan 49445

**Return To:**    **Grantee**

**Send Tax Bills To:**    **Grantee**

File No.

**Quit Claim Deed - *Statutory Form***

William A. Moulatsiotis Liber: 4395 Page: 778
Register of Deeds         PAGE: 2 of 2
Muskegon County Michigan  09/04/2025 02:06 PM
D02      5861314

# EXHIBIT "9"



**Received & Sealed for Record**
**William A. Moulatsiotis Register of Deeds**
**Muskegon County Michigan**
**04/10/2025 08:38:25 AM  Liber: 4383 Page: 802**

| | |
|---|---|
| William A. Moulatsiotis | Liber: 4383 Page: 802 |
| Register of Deeds | Page: 1 of 24 |
| Muskegon County Michigan | 04/10/2025 08:38:25 AM |
| 5849350   M22 | |

## AGREEMENT REGARDING CROSS COLLATERALIZATION
## AND CROSS DEFAULT

THIS AGREEMENT REGARDING CROSS COLLATERALIZATION AND CROSS DEFAULT (the "**Agreement**") is entered into effective on the 4th day of April, 2025, by and between INDEPENDENT BANK, of 230 West Main Street, PO Box 158, Ionia, Michigan 48846 ("**Bank**"); and LEESTMA MANAGEMENT LLC, a Florida limited liability company, of 1900 Gulf Drive North Unit 7, Bradenton Beach, FL 34217 ("**Leestma Management**"); WATERLAND BATTLE CREEK PROPERTIES, L.L.C., a Michigan limited liability company, of 1204 West Western Avenue, Muskegon, Michigan 49441 ("**Waterland**"); ADELAIDE POINTE QOZB LLC, a Michigan limited liability company, of 1204 West Western Avenue, Muskegon, Michigan 49441 ("**Adelaide QOZB**"); Adelaide Pointe Building 1, LLC, a Michigan limited liability company ("**Adelaide Building 1**") (collectively referred to herein as the "**Borrowers**"); Ryan Leestma, of 1204 W. Western Avenue, Muskegon, Michigan 49441; Edwin J. Vander Ploeg, Jr., Trustee of the Ryan M. Leestma Domestic Asset Protection Trust u/a/d November 30, 2018, of 156 W. Washington Avenue, Zeeland, Michigan 49464; Leestma Management; and Adelaide Building 1 (collectively referred to herein as the "**Guarantors**").

## RECITALS

A.    Adelaide Building 1 is indebted to the Bank under the terms of the following Promissory Note (the "**Adelaide Building 1 Note**"):

| Note | Principal Amount | Date | Maturity |
|---|---|---|---|
| Promissory Note | $17,000,000.00 | 7/12/2023 | 7/5/2025 |

B.    The Adeliade Building 1 Note is secured in part by the following (the "**Adelaide Building 1 Security Documents**"):

1. Construction Loan Agreement dated July 12, 2023.

2. Mortgage dated July 12, 2023, recorded July 13, 2023 in Muskegon County Records in Liber 4334, Page 166.

3. Assignment of Rents dated July 12, 2023, recorded July 13, 2023 in Muskegon County Records in Liber 4334, Page 182.

1

C.    The Adelaide Building 1 Security Documents encumber the real property described on **Exhibit A** attached hereto (the "**Adelaide Building 1 Mortgaged Property**").

D.    Adelaide QOZB is indebted to the Bank under the terms of the following Promissory Notes (the "**Adelaide QOZB Notes**"):

| Note | Principal Amount | Date | Maturity |
|---|---|---|---|
| Promissory Note | $4,000,000.00 | 7/12/2023 | 7/15/2053 |
| Promissory Note | $1,500,000.00 | 8/15/2024 | 7/15/2025 |
| Promissory Note | $500,000 | 12/20/2024 | 12/20/2025 |
| Promissory Note | $3,941,000.00 | 4/4/2025 | 7/15/2053 |

E.    The Adelaide QOZB Notes are secured in part by the following (the "**Adeliade QOZB Security Documents**"):

1.    Loan Agreement dated July 12, 2023.

2.    Mortgage dated July 12, 2023, recorded July 13, 2023 in Muskegon County Records in Liber 4334, Page 60.

3.    Assignment of Rents dated July 12, 2023, recorded July 13, 2023 in Muskegon County Records in Liber 4334, Page 61.

4.    Leasehold Mortgage dated August 15, 2024, recorded August 19, 2024 in Calhoun County Records in Liber 4846, Page 0388.

5.    Mortgage dated August 15, 2024, recorded August 19, 2024 in Muskegon County Records in Liber 4364, Page 344.

6.    Subordinated Mortgage dated August 15, 2024, recorded August 19, 2024 in Kent County Records as Instrument No. 20240819-0045456.

7.    Subordinated Mortgage August 15, 2024, recorded August 27, 2024 in Manatee County Records as Instrument No. 202441090255.

8.    Letter of Credit Reimbursement Agreement dated December 20, 2024.

9.    Mortgage dated March 29, 2022, recorded March 29, 2022 in Muskegon County Records in in Liber 4294, Page 32, as amended from time to time.

10.    Loan Agreement dated of even date herewith.

11.    Mortgage dated of even date herewith, recorded in Liber 4383 Page 465, Muskegon County Records.

**William A. Moulatsiotis**
**Register of Deeds**
**Muskegon County Michigan**
**5849350    M22**

Liber: 4383 Page: 802
Page: 2 of 24
04/10/2025 08:38:25 AM

12. Assignment of dated of even date herewith, recorded in Liber 4383 Page 466, Muskegon County Records Rents.

F. The Adelaide QOZB Security Documents encumber the real property described on **Exhibit B** attached hereto (the "**Adelaide QOZB Mortgaged Property**").

G. Leestma Management and Waterland, as co-borrowers, are indebted to the Bank under the terms of the following Promissory Note (the "**Co-Borrower Notes**"):

| Note | Principal Amount | Date | Maturity |
|---|---|---|---|
| Promissory Note A | $3,350,000.00 | 4/4/2025 | 4/1/2028 |
| Promissory Note B | $700,000.00 | 4/4/2025 | 4/1/2028 |

H. The Co-Borrower Notes are secured in part by the following (the "**Co-Borrower Security Documents**"):

1. Loan Agreement dated as of even date herewith.

2. Subordinated Leasehold Mortgage dated of even date herewith, recorded in Liber 4897 Page 0848, Calhoun County Records.

3. Subordinated Mortgage dated of even date herewith, recorded in Liber 4383 Page 592, Muskegon County Records.

4. Assignment of Rents dated of even date herewith, recorded in Liber 4897 Page 0867 Calhoun County Records.

I. The Co-Borrower Security Documents encumber the real property described on **Exhibit C** attached hereto (the "**Co-Borrower Mortgaged Property**").

J. The obligations of the Borrowers under the terms of the Adelaide Building 1 Note, the Adelaide QOZB Notes, and the Co-Borrower Notes are the subject of multiple Guaranties executed by the Guarantors.

K. The Adelaide Building 1 Note, Adelaide QOZB Notes and the Co-Borrower Notes are collectively referred to herein as the "**Combined Obligations**."

L. The Adelaide Building 1 Security Documents, Adelaide QOZB Security Documents, and the Co-Borrower Security Documents are collectively referred to herein as the "**Security Documents**."

M. The Adelaide Building 1 Mortgaged Property, Adelaide QOZB Mortgaged Property and the Co-Borrower Mortgaged Property are collectively referred to herein as the "**Combined Mortgaged Property**."

3

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 3 of 24
04/10/2025 08:38:25 AM

N.      As a condition to the Bank making the loans evidenced by the Combined Obligations, the Bank has required that the Borrowers enter into this Agreement.

NOW THEREFORE, in consideration of their mutual covenants, the parties hereto agree as follows:

1.      **Cross Default.** The occurrence of an event of default under any of the Combined Obligations or any of the Security Documents shall be considered an event of default under all of the Combined Obligations and all of the Security Documents. Upon an event of default under any of the Combined Obligations or any of the Security Documents, with respect to any one of the Combined Obligations or the Security Documents, the Bank shall have the right in its sole and absolute discretion, to exercise and perfect any and all rights in and under the Security Documents with regard to any or all of the real and personal property described in the Security Documents, in accordance with the terms of the respective Security Documents. No notice, except as may be required by the respective Security Documents shall be required to be given in connection with the Bank's exercise of any and all of its rights after an event of default has occurred.

2.      **Cross Collateralization.** The Borrowers hereby agree that all of the Security Documents and the Combined Mortgaged Property shall secure each and every one of the Combined Obligations.

3.      **Condominium Mortgage Release.** Upon the release of a mortgage on any condominium unit situated on the Adelaide Building 1 Mortgaged Property by Lender, such release shall apply to this Agreement and therefore no longer be encumbered by this Agreement.

4.      **No Merger.** No judgment obtained by the Bank in any one or more enforcement proceedings shall merge any related indebtedness into that judgment and all indebtedness which remains unpaid shall remain a continuing obligation of the Borrowers.

5.      **Application of Proceeds of Collateral.** Proceeds of the enforcement or foreclosure of any Security Document shall be applied to the payment of the Combined Obligations in such order as the Bank may determine in its sole discretion.

6.      **Fraudulent Transfers.** If the Combined Obligations of the Borrowers are otherwise subject to avoidance under any fraudulent transfer law, then the Combined Obligations of the Borrowers shall be limited to the largest amount that would not render the Combined Obligations subject to avoidance as a fraudulent transfer or conveyance under that fraudulent transfer law.

7.      **Waiver of Subrogation, Contribution, Reimbursement, or Indemnity.** Until the Combined Obligations have been paid and performed in full, the Borrowers shall withhold exercise of any right of subrogation, contribution, reimbursement or indemnity (whether contractual, statutory, equitable, under common law or otherwise) and any other rights to enforce any claims or remedies which they now have or may have in the future against any of the real or

4   **William A. Moulatsiotis**
**Register of Deeds**
**Muskegon County Michigan**
**5849350   M22**

**Liber: 4383 Page: 802**
**Page: 4 of 24**
**04/10/2025 08:38:25 AM**

personal property that is the subject of the Security Documents or against any of the other Borrowers or any guarantors of the Combined Obligations.

**8.     Exercise of Remedies.** It is understood that the Bank is not required to exercise any remedies available under any of the Combined Obligations or any of the Security Documents prior to or after exercising its rights and remedies under any of the other Combined Obligations or Security Documents and that the Bank may exercise its remedies collectively or individually, at its sole option. It is specifically covenanted and agreed that the Bank may proceed at the same time or different times to foreclose on any of the Security Documents by appropriate proceedings and that no event or enforcement pursuant to such documents, including without limiting the generality of the foregoing, any pending foreclosure, judgment or decree of foreclosure, foreclosure sale, rents received, possession taken, deficiency judgment or other judgment taken on any of the Security Documents shall in any way, preclude or bar the enforcement of any of the Combined Obligations or any of the other Security Documents. None of the Borrowers or any persons claiming under them shall have or enjoy any rights to marshalling of assets, all such rights being hereby expressly waived as to the Borrowers and all persons claiming under them, including junior lien holders. No release of personal liability of any person and no release of any portion of the security for the Combined Obligations shall have any affect upon any of the other Combined Obligations or Security Documents.

**9.     Notices.** All notices and demands required or permitted under this agreement shall be in writing and shall be served personally or by postage prepaid United States first class, certified (return receipt requested), or registered mail, addressed to the party at the address indicated on page 1 hereof or to such other place as may be designated by notice given in accordance with this section. Notice shall be deemed to have been given on the earlier of (a) the date when received, or (b) two (2) days after mailing if mailed in the State of Michigan.

**10.     Further Assurances.** Each of the parties shall execute and deliver to the other parties any documents as may be necessary or desirable for the purpose of giving full force and effect to the provisions of this agreement and shall do all other things necessary to this end, all without charge therefor. If any party shall fail to comply with the provisions of this section, this agreement shall constitute an actual grant, assignment and conveyance of property and rights in such manner, and with such force and effect, as shall be necessary to effectuate the terms of this agreement.

**11.     Entire Understanding.** This Agreement replaces any prior Cross Collateralization and Cross Default Agreements executed by any party to this Agreement and contains the entire understanding of the parties on the subject matter of this Agreement, and the parties hereby acknowledge that there have been and are no representations, warranties, covenants, or understandings other than those expressly set forth herein.

**12.     Waiver, Modification or Cancellation.** Any waiver, alteration or modification of any of the provisions of this agreement, or cancellation or replacement of this agreement, shall not be valid unless in writing and executed by the parties with the same formality as this agreement. Any waiver by any party of any provision of this agreement or any right or option under this agreement shall not be controlling, nor shall it prevent or estop such party from

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 5 of 24
04/10/2025 08:38:25 AM

thereafter enforcing such provision, right, or option. The failure of any party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this agreement by another party shall not be construed as a waiver or relinquishment for the future of any such term or provision, and the same shall continue in full force and effect.

13. **Severability.** In the event any of the provisions of this agreement are deemed to be invalid or unenforceable, those provisions shall be deemed severable from the remainder of this agreement and shall not cause the invalidity or unenforceability of the remainder of this agreement. If any provision of this agreement shall be deemed invalid due to its scope or breadth, such provision shall be deemed valid to the extent of the scope or breadth permitted by law.

14. **Captions.** All headings contained in this agreement are intended for convenience only and are not to be deemed or taken as a summary of the provisions to which they pertain or as a construction thereof.

15. **Interpretation.** No provision in this agreement is to be interpreted for or against any party because that party or that party's legal representative drafted the provision.

16. **Parties Bound.** The covenants, agreements, terms, provisions and conditions of this agreement shall bind and benefit the several respective heirs, representatives, successors and assigns of the parties hereto.

17. **Authorization.** Each party to this agreement which is a corporation, limited partnership, general partnership, limited liability company, trust or other entity warrants and represents that it is properly authorized by its board of directors, stockholders, partners, members and/or holders of beneficial interests to enter into this agreement.

18. **Construction.** This agreement shall be governed by and construed according to the laws of the State of Michigan.

19. **Duplicate Originals, Counterparts.** This agreement and any originals of exhibits referred to herein may be executed in any number of duplicate originals or counterparts, each of which (when the original signatures are affixed) shall be an original but all of which shall constitute one and the same instrument. Photocopies, facsimile transmissions, and other reproductions of this executed original (with reproduced signature) shall be deemed to be original counterparts of this Agreement.

*[Signatures pages to follow]*

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350    M22

Liber: 4383 Page: 802
Page: 6 of 24
04/10/2025 08:38:25 AM

*[Bank Signature Page to Agreement Regarding Cross Collateralization and Cross Default]*

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above written.

**BANK:**

INDEPENDENT BANK, a Michigan banking corporation

By: _____
Daniel Plumert
Its: Senior Vice President

STATE OF Michigan )
                     ) ss.
COUNTY OF Muskegon )

The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Daniel Plumert, the Senior Vice President of INDEPENDENT BANK, a Michigan banking corporation, on behalf of the company.

_____
Notary Public, _____ County, ___
My Commission Expires: _____
Acting in _____ County, _____

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 7 of 24
04/10/2025 08:38:25 AM

*[Borrower Adelaide Pointe QOZB LLC Signature Page to Agreement Regarding Cross Collateralization and Cross Default]*

**BORROWER:**

ADELAIDE POINTE QOZB LLC, a
Michigan limited liability company

By: _____
Ryan Leestma
Its: Manager

STATE OF MICHIGAN )
                  ) ss.
COUNTY OF Muskegon )

The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Ryan Leestma, the Manager of ADELAIDE POINTE QOZB LLC, a Michigan limited liability company, on behalf of the company.

_____
Notary Public, _____ County, MI
My Commission Expires: _____
Acting in _____ County, Michigan

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

8  William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 8 of 24
04/10/2025 08:38:25 AM

*[Borrower Leestma Management LLC Signature Page to Agreement Regarding Cross Collateralization and Cross Default]*

**BORROWER:**

LEESTMA MANAGEMENT LLC, a
Florida limited liability company

By:_____
    Ryan Leestma
    Its: Manager


STATE OF Michigan  )
              ) ss.
COUNTY OF Muskegon )

    The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Ryan Leestma, the Manager of LEESTMA MANAGEMENT LLC, a Florida limited liability company, on behalf of the company.

_____
Notary Public, _____ County, MI
My Commission Expires: _____
Acting in _____ County, _____

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 9 of 24
04/10/2025 08:38:25 AM

*[Borrower Waterland Battle Creek Properties, LLC Signature Page to Agreement Regarding Cross Collateralization and Cross Default]*

**BORROWER:**

WATERLAND BATTLE CREEK
PROPERTIES, L.L.C., a Michigan limited
liability company

By: Leestma Management, LLC, a Michigan
limited liability company, Member

By:_____

Ryan Leestma
Its: Manager

STATE OF MICHIGAN      )
                       ) ss.
COUNTY OF Muskegon )

The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Ryan Leestma, the Manager Leestma Management, LLC, a Michigan limited liability company, the Member of WATERLAND BATTLE CREEK PROPERTIES, L.L.C., a Michigan limited liability company, on behalf of the company.

_____

Notary Public, _____ County, MI

My Commission Expires: _____

Acting in _____ County, Michigan

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 10 of 24
04/10/2025 08:38:25 AM

*[Borrower Adelaide Pointe Building 1, LLC Signature Page to Agreement Regarding Cross Collateralization and Cross Default]*

**BORROWER:**

ADELAIDE POINTE BUILDING 1, LLC,
a Michigan limited liability company

By: _____
Ryan Leestma
Its: Manager

STATE OF MICHIGAN    )
                   ) ss.
COUNTY OF Muskegon  )

The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Ryan Leestma, the Manager of ADELAIDE POINTE BUILDING 1, LLC, a Michigan limited liability company, on behalf of the company.

_____
Notary Public, _____ County, MI
My Commission Expires: _____
Acting in _____ County, Michigan

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350    M22

Liber: 4383 Page: 802
Page: 11 of 24
04/10/2025 08:38:25 AM

**Guarantor's Acknowledgement and Consent.** The following guarantors of all or a part of the Combined Obligations hereby acknowledge and consent to the execution and delivery of this Agreement by the Borrowers.

Ryan Leestma

STATE OF MICHIGAN )
) ss.
COUNTY OF Muskegon )

The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Ryan Leestma.

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

Notary Public, _____ County, MI
My Commission Expires: _____
Acting in _____ County, Michigan

---

Edwin J. Vander Ploeg, Jr.
Trustee of the Ryan M. Leestma Domestic Asset Protection Trust u/a/d November 30, 2018

STATE OF MICHIGAN )
) ss.
COUNTY OF Ottawa )

The foregoing instrument was acknowledged before me this 3rd day of April, 2025, by Edwin J. Vander Ploeg, Jr., Trustee of the Ryan M. Leestma Domestic Asset Protection Trust u/a/d November 30, 2018.

Kristen K. Rorda
Notary Public, Ottawa County, MI
My Commission Expires: 10-31-29
Acting in Ottawa County, Michigan

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 12 of 24
04/10/2025 08:38:25 AM

**Guarantor's Acknowledgement and Consent (continued)**

Leestma Management LLC, a Florida limited liability company

By: _____
Ryan Leestma
Its: Manager

STATE OF MICHIGAN    )
                     ) ss.
COUNTY OF Muskegon )

The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Ryan Leestma, Manager of Leestma Management LLC, a Florida limited liability company, on behalf of the company.

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

Notary Public, _____ County, MI
My Commission Expires: _____
Acting in _____ County, Michigan

---

Adelaide Pointe Building 1, LLC, a Michigan limited liability company

By: _____
Ryan Leestma
Its: Manager

STATE OF MICHIGAN    )
                     ) ss.
COUNTY OF Muskegon )

The foregoing instrument was acknowledged before me this 4th day of April, 2025, by Ryan Leestma, Manager of Adelaide Pointe Building 1, LLC, a Michigan limited liability company, on behalf of the company.

**Amy B. Jacobs**
Notary Public, Muskegon County Michigan
Acting in Muskegon County
My commission expires 4/19/2027

Notary Public, _____ County, MI
My Commission Expires: _____
Acting in _____ County, Michigan

13   William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 13 of 24
04/10/2025 08:38:25 AM

Drafted by and return to:
Dan M. Challa
McSHANE & BOWIE, P.L.C.
1100 Campau Square Plaza
99 Monroe Ave., N.W.
P.O. Box 360
Grand Rapids, MI 49501-0360

974040_4

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350 M22

Liber: 4383 Page: 802
Page: 14 of 24
04/10/2025 08:38:25 AM

**EXHIBIT A**
**Adelaide Building 1 Mortgaged Property**

Condominium Parcel:

That part of Block 579 of the Revised Plat of 1903 of the City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, described as: COMMENCING at the Southeast corner of Lot 4 of Block 577; thence North 87°52'58" West 865.74 feet along the North right-of-way line of Western Avenue; thence Westerly 158.32 feet along said North right-of-way line on a 430.58 foot radius curve to the left, the chord of which bears South 81°35'02" West 157.43 feet; thence North 31°10'08" West 733.41 feet; thence North 58°49'52" East 18.35 feet to the PLACE OF BEGINNING; thence Northwesterly 62.93 feet on a 99.00 foot radius curve to the right, the chord of which bears North 25°05'28" West 61.87 feet; thence Northwesterly 49.92 feet on a 194.00 foot radius curve to the left, the chord of which bears North 14°15'11" West 49.78 feet; thence North 10°46'30" East 210.84 feet; thence North 58°29'54" East 114.58 feet; thence South 31°30'06" East 147.26 feet; thence South 58°37'27" West 77.48 feet; thence South 10°46'30" West 86.44 feet; thence South 31°22'33" East 123.02 feet; thence South 58°37'27" West 66.43 feet; thence North 79°13'30" West 102.40 feet to the place of beginning.

Together with an easement for ingress-egress and public utilities located in that part of Blocks 577, 578 & 579 of the Revised Plat of 1903 of the City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, said easement being described as: Beginning on the North right-of-way line of Western Avenue at a point being North 87 degrees 52 minutes 58 seconds West 824.34 feet from the Southeast corner of Lot 4 of said Block 577; thence North 02 degrees 08 minutes 44 seconds East 263.07 feet; thence North 34 degrees 14 minutes 29 seconds East 74.27 feet; thence North 23 degrees 44 minutes 59 seconds East 71.13 feet; thence North 02 degrees 08 minutes 44 seconds East 164.98 feet; thence Northerly 75.89 feet on a 358.00 foot radius curve to the left, the chord of which bears North 03 degrees 55 minutes 38 seconds West 75.75 feet; thence Northeasterly 53.16 feet on a 30.00 foot radius curve to the right, the chord of which bears North 40 degrees 45 minutes 35 seconds East 46.47 feet; thence South 88 degrees 28 minutes 50 seconds East 70.66 feet; thence Northeasterly 137.17 feet on a 141.00 foot radius curve to the left, the chord of which bears North 63 degrees 39 minutes 00 seconds East 131.82 feet; thence Easterly 43.20 feet on a 165.00 foot radius non-tangential curve to the left, the chord of which bears South 81 degrees 06 minutes 34 seconds East 43.07 feet; thence South 88 degrees 36 minutes 35 seconds East 77.91 feet; thence Southeasterly 164.07 feet on a 105.00 foot radius curve to the right, the chord of which bears South 43 degrees 50 minutes 39 seconds East 147.88 feet; thence South 00 degrees 55 minutes 16 seconds West 231.33 feet; thence South 88 degrees 08 minutes 38 seconds East 57.67 feet; thence North 01 degrees 56 minutes 07 seconds East 248.95 feet; thence North 88 degrees 06 minutes 24 seconds West 8.34 feet; thence North 32 degrees 59 minutes 53 seconds West 152.26 feet; thence Northwesterly 11.02 feet on a 180.00 foot radius curve to the left, the chord of which bears North 60 degrees 10 minutes 49 seconds West 11.02 feet; thence Northwesterly 23.47 feet on a 44.00 foot radius curve to the right, the chord of which bears North 46 degrees 39 minutes 17 seconds West 23.19 feet; thence North 31 degrees 22 minutes 33 seconds West 32.33 feet; thence South 58 degrees 41 minutes 48 seconds West 30.10 feet; thence Southwesterly 24.54 feet

**William A. Moulatsiotis**
**Register of Deeds**
**Muskegon County Michigan**
**5849350   M22**

Liber: 4383 Page: 802
Page: 15 of 24
04/10/2025 08:38:25 AM

on a 43.00 foot radius curve to the right, the chord of which bears South 75 degrees 02 minutes 37 seconds West 24.20 feet; thence North 88 degrees 36 minutes 35 seconds West 28.07 feet; thence Northwesterly 112.92 feet on a 113.00 foot radius curve to the right, the chord of which bears North 60 degrees 00 minutes 12 seconds West 108.28 feet; thence North 31 degrees 22 minutes 33 seconds West 304.82 feet; thence Northwesterly 25.59 feet on a 100.00 foot radius curve to the left, the chord of which bears North 38 degrees 42 minutes 28 seconds West 25.52 feet; thence North 73 degrees 07 minutes 40 seconds West 86.39 feet; thence Southwesterly 63.79 feet on a 52.00 foot radius curve to the left, the chord of which bears South 35 degrees 56 minutes 19 seconds West 59.86 feet; thence South 58 degrees 37 minutes 27 seconds West 514.47 feet; thence South 10 degrees 46 minutes 30 seconds West 86.44 feet; thence South 31 degrees 22 minutes 33 seconds East 25.92 feet; thence North 58 degrees 37 minutes 27 seconds East 598.50 feet; thence South 31 degrees 22 minutes 33 seconds East 297.13 feet; thence South 58 degrees 37 minutes 27 seconds West 79.88 feet; thence North 88 degrees 28 minutes 50 seconds West 95.92 feet; thence South 40 degrees 42 minutes 37 seconds West 73.46 feet to Point A, so-called; thence Southerly 123.08 feet on a 292.00 foot radius curve to the right, the chord of which bears South 09 degrees 55 minutes 48 seconds East 122.17 feet; thence South 02 degrees 08 minutes 44 seconds West 161.50 feet; thence Southwesterly 72.07 feet on a 117.00 foot radius curve to the right, the chord of which bears South 19 degrees 47 minutes 30 seconds West 70.93 feet; thence Southerly 143.52 feet on a 233.00 foot radius curve to the left, the chord of which bears South 19 degrees 47 minutes 30 seconds West 141.26 feet; thence South 02 degrees 08 minutes 44 seconds West 194.05 feet to the North right-of-way line of Western Avenue; thence Easterly 23.28 feet along said North right-of-way line on a 430.58 foot radius curve to the right, the chord of which bears South 89 degrees 25 minutes 54 seconds East 23.27 feet; thence South 87 degrees 52 minutes 58 seconds East 41.40 feet along the North right-of-way line of Western Avenue to the place of beginning.

ALSO Together with an easement for ingress-egress and public utilities described as: Beginning at above mentioned Point A, so-called; thence South 89 degrees 12 minutes 02 seconds West 32.68 feet; thence South 58 degrees 37 minutes 27 seconds West 287.81 feet; thence Northwesterly 102.90 feet on a 91.00 foot radius non-tangential curve to the right, the chord of which bears North 63 degrees 46 minutes 09 seconds West 97.50 feet; thence North 31 degrees 22 minutes 33 seconds West 168.67 feet; thence North 58 degrees 37 minutes 27 seconds East 87.08 feet; thence South 31 degrees 22 minutes 33 seconds East 185.00 feet; thence North 58 degrees 37 minutes 27 seconds East 285.00 feet; thence North 31 degrees 22 minutes 33 seconds West 185.00 feet; thence North 58 degrees 37 minutes 27 seconds East 66.00 feet; thence South 31 degrees 22 minutes 33 seconds East 245.03 feet; thence South 40 degrees 42 minutes 37 seconds West 73.46 feet to Point A, so called and the place of ending.

EXCEPT the following condominium units, which have been released:

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350    M22

Liber: 4383 Page: 802
Page: 16 of 24
04/10/2025 08:38:25 AM

**EXHIBIT B**
**Adelaide QOZB Mortgaged Property**

Land situated in the City of Muskegon, County of Muskegon, State of Michigan, and described as follows:

Remainder Parcel:

PARCEL 1:
That part of Blocks 577, 578 and 579, Revised Plat of 1903, City of Muskegon, Muskegon County, Michigan, as recorded in Liber 3 of Plats, Page 71, and the 30 foot railroad right of way between said Blocks described as follows: Commence at the Southeast corner of Lot 4 of said Block 577, Revised Plat of 1903, City of Muskegon, Muskegon County, Michigan, as recorded in Liber 3 of Plats, Page 71 for a point of beginning; thence North 01°41'00" West along the Easterly line of said Lot 4 extended, a distance of 158.40 feet to the Southerly line of the Chesapeake and Ohio Railroad right of way; thence North 76°43'00" West along said Southerly railroad right of way line, 103.55 feet; thence Northwesterly along said Southerly railroad right of way line on the arc of a 492.47 foot radius curve to the right, a distance of 110.31 feet (the long chord of said curve bears North 70°18'00" West, 110.07 feet and the central angle of said curve is 12°50'00"); thence North 63°53'00" West along said Southerly railroad right of way line, 67.00 feet to the Westerly line of said Block 574; thence North 02°04'00" West along said Westerly line of Block 574 a distance of 33.00 feet to the Northerly line of said railroad right of way; thence continue North 02°04'00" West along said Westerly line of Block 574, a distance of 367.70 feet; thence North 37°00'00" West, 730.00 feet; thence North 48°00'00" West, 600 feet, more or less, to the shore of Muskegon Lake (to a point hereinafter referred to a Point "A"); recommence at the point of beginning; thence South 88°15'00" West along the Southerly line of Block 577 extended (also being the Northerly line of Western Avenue) 865.80 feet; thence Westerly 158.33 feet along said North right of way line on a 430.61 foot radius curve to the left, the chord of which bears South 77 degrees 43 minutes 00 seconds West, 157.44 feet to the Westerly line of the Northeasterly 200.00 feet of said Block 580 feet; thence North 35 degrees 02 minutes 10 seconds West, 850 feet, more or less, along said Westerly line to the shore of Muskegon Lake to a point herein after called Point "B"; thence Northwesterly, Northeasterly, Southeasterly, Northeasterly, Northwesterly Easterly and Southerly along the shore of Muskegon Lake, 3000 feet, more or less, to said Point "A".

EXCEPT (Railroad): That part of the above described parcel that lies within the Chesapeake and Ohio Railroad right of way as recorded in Liber 702, Page 134.

ALSO EXCEPT (between Lots 4 and 5, Block 577):
A parcel of land lying between, and in part North of, Lots 4 and 5 of Block 577 described as follows: That part of Block 574 of said Revised Plat of 1903, City of Muskegon, Muskegon County, Michigan, as recorded in Liber 3 of Plats, Page 71, described as: Commencing at the Southwest corner of said Lot 4 for a point of beginning; thence Westerly along the Northerly line of Western Avenue, 20.5 feet to the Southeast corner of said Lot 5; thence Northerly along the Easterly line of said Lot 5 to the Southerly line of the Chesapeake and Ohio Railroad right of way; thence Southeasterly along the Southerly line of said railroad right of way to the Northwest corner of Lot 3 of said Block 577; thence South along the West line of said Lot 3 to the Northeast corner of said Lot 4; thence Westerly along the Northerly line of said Lot 4, a distance

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350    M22

Liber: 4383 Page: 802
Page: 17 of 24
04/10/2025 08:38:25 AM

of 40 feet to the Northwest corner of said Lot 4; thence Southerly along the West line of said Lot 4 to the point of beginning.

ALSO EXCEPT (Wet Marina Parcel)

That part of Blocks 578 & 579 of the Revised Plat of 1903 of the City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, all lands lying North of the following line including 2 peninsulas, described as: COMMENCING at the Southeast corner of Lot 4 of Block 577; thence North 87°52'58" West 865.74 feet along the North right-of-way line of Western Avenue; thence Westerly 158.32 feet along said North right-of-way line on a 430.58 foot radius curve to the left, the chord of which bears South 81°35'02" West 157.43 feet; thence North 31°10'08" West 998.44 feet to the PLACE OF BEGINNING of said described line; thence North 59°38'02" East 67.38 feet; thence Northeasterly 59.87 feet on a 101.00 foot radius curve to the right, the chord of which bears North 41°30'57" East 59.00 feet; thence North 58°29'54" East 610.85 feet; thence South 31°22'33" East 18.36 feet; thence North 58°43'34" East 19.69 feet; thence Northeasterly 37.29 feet on a 64.00 foot radius curve to the left, the chord of which bears North 38°50'20" East 36.77 feet; thence North 04°26'14" East 26.75 feet; thence North 16°45'30" East 180 feet more or less to the shore of Muskegon Lake and the point of ending of said described line. All lands described extend to the waters edge of Muskegon Lake.

ALSO EXCEPT (Condominium Parcel):
That part of Block 579 of the Revised Plat of 1903 of the City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, described as: COMMENCING at the Southeast corner of Lot 4 of Block 577; thence North 87°52'58" West 865.74 feet along the North right-of-way line of Western Avenue; thence Westerly 158.32 feet along said North right-of-way line on a 430.58 foot radius curve to the left, the chord of which bears South 81°35'02" West 157.43 feet; thence North 31°10'08" West 733.41 feet; thence North 58°49'52" East 18.35 feet to the PLACE OF BEGINNING; thence Northwesterly 62.93 feet on a 99.00 foot radius curve to the right, the chord of which bears North 25°05'28" West 61.87 feet; thence Northwesterly 49.92 feet on a 194.00 foot radius curve to the left, the chord of which bears North 14°15'11" West 49.78 feet; thence North 10°46'30" East 210.84 feet; thence North 58°29'54" East 114.58 feet; thence South 31°30'06" East 147.26 feet; thence South 58°37'27" West 77.48 feet; thence South 10°46'30" West 86.44 feet; thence South 31°22'33" East 123.02 feet; thence South 58°37'27" West 66.43 feet; thence North 79°13'30" West 102.40 feet to the place of beginning.

ALSO EXCEPT (Boater Service Parcel):
All that part of Block 578 of the Revised Plat of 1903 of the City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, described as: COMMENCING at the Southeast corner of Block 577; thence North 87°52'58" West 260.09 feet along the North right-of-way line of Western Avenue; thence North 01°56'07" East 659.31 feet along the East line of said Block 578 and its Southerly extension thereof; thence North 32°59'53" West 729.95 feet; thence North 43°59'53" West 34.88 feet; thence South 46°00'07" West 21.24 feet to the PLACE OF BEGINNING; thence South 17°04'44" West 136.05 feet; thence South 58°37'27" West 3.59 feet; thence North 73°07'40" West 17.68 feet; thence North 16°52'20" East 101.79 feet; thence North 73°19'17" West 170.13 feet; thence North 16°45'30" East 143.67 feet; thence South 43°04'32" East 42.65 feet; thence South 35°43'31" East 62.32 feet; thence South 48°57'05" East 114.61 feet to the place of beginning.

18 **William A. Moulatsiotis**
**Register of Deeds**
**Muskegon County Michigan**
**5849350   M22**

**Liber: 4383 Page: 802**
**Page: 18 of 24**
04/10/2025 08:38:25 AM

ALSO EXCEPT (Multi-Purpose Parcel):
All that part of Block 578 of the Revised Plat of 1903 of the City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, described as: COMMENCING at the Southeast corner of Block 577; thence North 87°52'58" West 260.09 feet along the North right-of-way line of Western Avenue; thence North 01°56'07" East 659.31 feet along the East line of said Block 578 and its Southerly extension thereof; thence North 32°59'53" West 729.95 feet; thence North 43°59'53" West 34.86 feet; thence South 46°00'07" West 63.51 feet to the PLACE OF BEGINNING; thence South 16°52'20" West 101.79 feet; thence North 73°07'40" West 161.76 feet; thence North 31°22'33" West 39.54 feet; thence North 58°43'34" East 19.69 feet; thence Northeasterly 37.29 feet on a 64.00 foot radius curve to the left, the chord of which bears North 38°50'20" East 36.77 feet; thence North 04°26'14" East 26.75 feet; thence South 73°19'17" East 170.13 feet to the place of beginning.

ALSO EXCEPT (New Bike Path):
A 16 foot wide parcel located in that part of Blocks 578 & 579 of the Revised Plat of 1903 of the City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, said path easement being described as: COMMENCING at the Southeast corner of Lot 4 of Block 577; thence North 87°52'58" West 865.74 feet along the North right-of-way line of Western Avenue; thence Westerly 158.32 feet along said North right-of-way line on a 430.58 foot radius curve to the left, the chord of which bears South 81°35'02" West 157.43 feet; thence North 31°10'08" West 506.57 feet to the PLACE OF BEGINNING of said pathway easement; thence North 31°10'08" West 85.86 feet; thence North 20°25'45" West 36.80 feet; thence Northwesterly 97.86 feet on 223.00 foot radius curve to the left, the chord of which bears North 33°00'03" West 97.08 feet; thence Northwesterly 77.66 feet on a 115.00 foot radius curve to the right, the chord of which bears North 26°13'37" West 76.19 feet; thence Northwesterly 100.63 feet on a 178.00 foot radius curve to the left, the chord of which bears North 23°04'38" West 99.30 feet; thence Northeasterly 172.35 feet on a 101.00 foot radius curve to the right, the chord of which bears North 09°36'46" East 152.19 feet; thence North 58°29'54" East 610.85 feet; thence South 31°22'33" East 57.90 feet; thence South 73°07'40" East 179.45 feet; thence North 58°37'27" East 114.24 feet to the Easterly line of an existing pathway as recorded in Liber 3523, Page 372; thence South 50°31'09" East 70.55 feet along said pathway; thence South 48°13'46" West 16.19 feet; thence North 50°31'09" West 56.71 feet along aforesaid recorded pathway; thence South 58°37'27" West 110.02 feet; thence North 73°07'40" West 192.71 feet; thence North 31°22'33" West 47.97 feet; thence South 58°29'54" West 594.81 feet; thence Southwesterly 145.05 feet on an 85.00 foot radius curve to the left, the chord of which bears South 09°36'46" West 128.08 feet; thence Southeasterly 109.68 feet on a 194.00 foot radius curve to the right, the chord of which bears South 23°04'38" East 108.22 feet; thence Southeasterly 66.85 feet on a 99.00 foot radius curve to the left, the chord of which bears South 26°13'37" East 65.59 feet; thence Southeasterly 104.88 feet on a 239.00 foot radius curve to the right, the chord of which bears South 33°00'03" East 104.04 feet; thence South 20°25'45" East 121.16 feet to the place of beginning.

Together with and subject to an easement for ingress-egress and public utilities located in that part of Blocks 577, 578 & 579 of the Revised Plat of 1903 of the City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, said easement being described as: Beginning on the North right-of-way line of Western Avenue at a point being North 87 degrees 52 minutes 58 seconds West 824.34 feet from the Southeast corner of Lot 4 of said Block 577; thence North 02 degrees 08 minutes 44 seconds East 263.07 feet; thence North

William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350    M22

Liber: 4383 Page: 802
Page: 19 of 24
04/10/2025 08:38:25 AM

34 degrees 14 minutes 29 seconds East 74.27 feet; thence North 23 degrees 44 minutes 59 seconds East 71.13 feet; thence North 02 degrees 08 minutes 44 seconds East 164.98 feet; thence Northerly 75.89 feet on a 358.00 foot radius curve to the left, the chord of which bears North 03 degrees 55 minutes 38 seconds West 75.75 feet; thence Northeasterly 53.16 feet on a 30.00 foot radius curve to the right, the chord of which bears North 40 degrees 45 minutes 35 seconds East 46.47 feet; thence South 88 degrees 28 minutes 50 seconds East 70.66 feet; thence Northeasterly 137.17 feet on a 141.00 foot radius curve to the left, the chord of which bears North 63 degrees 39 minutes 00 seconds East 131.82 feet; thence Easterly 43.20 feet on a 165.00 foot radius non-tangential curve to the left, the chord of which bears South 81 degrees 06 minutes 34 seconds East 43.07 feet; thence South 88 degrees 36 minutes 35 seconds East 77.91 feet; thence Southeasterly 164.07 feet on a 105.00 foot radius curve to the right, the chord of which bears South 43 degrees 50 minutes 39 seconds East 147.88 feet; thence South 00 degrees 55 minutes 16 seconds West 231.33 feet; thence South 88 degrees 08 minutes 38 seconds East 57.67 feet; thence North 01 degrees 56 minutes 07 seconds East 248.95 feet; thence North 88 degrees 06 minutes 24 seconds West 8.34 feet; thence North 32 degrees 59 minutes 53 seconds West 152.26 feet; thence Northwesterly 11.02 feet on a 180.00 foot radius curve to the left, the chord of which bears North 60 degrees 10 minutes 49 seconds West 11.02 feet; thence Northwesterly 23.47 feet on a 44.00 foot radius curve to the right, the chord of which bears North 46 degrees 39 minutes 17 seconds West 23.19 feet; thence North 31 degrees 22 minutes 33 seconds West 32.33 feet; thence South 58 degrees 41 minutes 48 seconds West 30.10 feet; thence Southwesterly 24.54 feet on a 43.00 foot radius curve to the right, the chord of which bears South 75 degrees 02 minutes 37 seconds West 24.20 feet; thence North 88 degrees 36 minutes 35 seconds West 28.07 feet; thence Northwesterly 112.92 feet on a 113.00 foot radius curve to the right, the chord of which bears North 60 degrees 00 minutes 12 seconds West 108.28 feet; thence North 31 degrees 22 minutes 33 seconds West 304.82 feet; thence Northwesterly 25.59 feet on a 100.00 foot radius curve to the left, the chord of which bears North 38 degrees 42 minutes 28 seconds West 25.52 feet; thence North 73 degrees 07 minutes 40 seconds West 86.39 feet; thence Southwesterly 63.79 feet on a 52.00 foot radius curve to the left, the chord of which bears South 35 degrees 56 minutes 19 seconds West 59.86 feet; thence South 58 degrees 37 minutes 27 seconds West 514.47 feet; thence South 10 degrees 46 minutes 30 seconds West 86.44 feet; thence South 31 degrees 22 minutes 33 seconds East 25.92 feet; thence North 58 degrees 37 minutes 27 seconds East 598.50 feet; thence South 31 degrees 22 minutes 33 seconds East 297.13 feet; thence South 58 degrees 37 minutes 27 seconds West 79.88 feet; thence North 88 degrees 28 minutes 50 seconds West 95.92 feet; thence South 40 degrees 42 minutes 37 seconds West 73.46 feet to Point A, so-called; thence Southerly 123.08 feet on a 292.00 foot radius curve to the right, the chord of which bears South 09 degrees 55 minutes 48 seconds East 122.17 feet; thence South 02 degrees 08 minutes 44 seconds West 161.50 feet; thence Southwesterly 72.07 feet on a 117.00 foot radius curve to the right, the chord of which bears South 19 degrees 47 minutes 30 seconds West 70.93 feet; thence Southerly 143.52 feet on a 233.00 foot radius curve to the left, the chord of which bears South 19 degrees 47 minutes 30 seconds West 141.26 feet; thence South 02 degrees 08 minutes 44 seconds West 194.05 feet to the North right-of-way line of Western Avenue; thence Easterly 23.28 feet along said North right-of-way line on a 430.58 foot radius curve to the right, the chord of which bears South 89 degrees 25 minutes 54 seconds East 23.27 feet; thence South 87 degrees 52 minutes 58 seconds East 41.40 feet along the North right-of-way line of Western Avenue to the place of beginning.

ALSO Together with and subject to an easement for ingress-egress and public utilities described as: Beginning at above mentioned Point A, so-called; thence South 89 degrees 12 minutes 02 seconds West 32.68 feet; thence South 58 degrees 37 minutes 27 seconds West 287.81 feet;

20 **William A. Moulatsiotis**
**Register of Deeds**
**Muskegon County Michigan**
**5849350    M22**

**Liber: 4383 Page: 802**
**Page: 20 of 24**
**04/10/2025 08:38:25 AM**

thence Northwesterly 102.90 feet on a 91.00 foot radius non-tangential curve to the right, the chord of which bears North 63 degrees 46 minutes 09 seconds West 97.50 feet; thence North 31 degrees 22 minutes 33 seconds West 168.67 feet; thence North 58 degrees 37 minutes 27 seconds East 87.08 feet; thence South 31 degrees 22 minutes 33 seconds East 185.00 feet; thence North 58 degrees 37 minutes 27 seconds East 285.00 feet; thence North 31 degrees 22 minutes 33 seconds West 185.00 feet; thence North 58 degrees 37 minutes 27 seconds East 66.00 feet; thence South 31 degrees 22 minutes 33 seconds East 245.03 feet; thence South 40 degrees 42 minutes 37 seconds West 73.46 feet to Point A, so called and the place of ending.

PARCEL 2:
That part of Lot 6, Block 470 and that part of Block 579 of the revised plat of 1903, City of Muskegon, Section 25, Town 10 North, Range 17 West, City of Muskegon, Muskegon County, Michigan, all being described as follows: Beginning at the Northwest corner of Lot 6, Block 470; thence North 88 degrees 15 minutes 00 seconds East, 98.69 feet along the North line of said Lot 6; thence South 01 degree 30 minutes 07 seconds East, 98.91 feet along the West line of an existing block building; thence South 88 degrees 15 minutes 00 seconds West, 98.75 feet parallel with the North line of said Lot 6; thence South 01 degree 25 minutes 28 seconds East, 29.83 feet; thence Westerly 173.04 feet on a 647.27 foot radius curve to the left the chord of which bears South 77 degrees 33 minutes 38 seconds West, 172.53 feet; thence North 55 degrees 20 minutes 12 seconds West, 110.63 feet; thence North 34 degrees 51 minutes 12 seconds East, 58.10 feet along the Easterly line of a 30 foot wide railroad right of way; thence Easterly, 190.06 feet along the Southerly line of Western Avenue on a 364.61 foot radius curve to the right the chord of which bears North 73 degrees 19 minutes 01 second East, 187.92 feet; thence North 88 degrees 15 minutes 00 seconds East, 43.01 feet along the Southerly line of Western Avenue to the place of beginning.

Land situated in the City of Grand Rapids, County of Kent, State of Michigan, and described as follows:

Part of Block 8, CAULFIELD'S SUBDIVISION OF CAULFIELD'S SECOND ADDITION, City of Grand Rapids, Kent County, Michigan, according to the plat thereof, as recorded in Liber 9 of Plats, Page 17, described as: Commencing at the Northeast corner of Lot 14 of said Block 8; thence Easterly along the North line of the said Block 8 to a point 13 feet West of the Westerly line of Hilton Avenue (now Century Avenue); thence Southerly parallel to the said Hilton Avenue to the North line of Hall Street; thence Westerly along the said North line of Hall Street to a point 118 feet East of the Easterly line of Sheridan Avenue; thence Northerly parallel to said Sheridan Avenue to the Beginning.

Land situated in Manatee County, Florida, and described as follows:

UNITS 7 AND 9 OF MARBELLA CONDOMINIUM, ACCORDING TO THE DECLARATION OF CONDOMINIUM THEREOF, RECORDED IN OFFICIAL RECORDS BOOK 1642, PAGE 7321, AS THEREAFTER AMENDED, AND AS PER PLAT THEREOF RECORDED IN CONDOMINIUM BOOK 29, PAGE 179, AS THEREAFTER AMENDED, OF THE PUBLIC RECORDS OF MANATEE COUNTY, FLORIDA.

21 **William A. Moulatsiotis**
**Register of Deeds**
**Muskegon County Michigan**
**5849350   M22**

**Liber: 4383 Page: 802**
**Page: 21 of 24**
04/10/2025 08:38:25 AM

Land situated in the City of Battle Creek, County of Calhoun, Michigan, and described as follows:

Beginning at a point on the Northeasterly line of East Michigan Avenue, distant South 34 degrees, 45 minutes East 21.4 feet from the Southernmost corner (also known as the Southeasterly corner) of Lot 7, Range of Blocks 8, of Original Plat of Battle Creek, according to the Plat thereof as recorded in Liber 2, of Plats, Page 42; thence North 55 degrees, 11 minutes, 01 seconds East 132.38 feet to the Southwesterly line of East State Street; thence South 34 degrees, 48 (recorded 40) minutes, 23 seconds East 92.16 feet along said Southwesterly line; thence South 67 degrees, 36 minutes, 42 seconds East 169.41 feet along said Southwesterly line to the Northwesterly line of North Division Street; thence South 22 degrees, 20 minutes West 228.02 feet along said Northwesterly line; thence South 84 degrees, 15 minutes, 06 seconds West 37.71 feet to the Northeasterly line of East Michigan Avenue; thence North 34 degrees, 45 minutes West 339.94 feet to the place of beginning.

22  William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 22 of 24
04/10/2025 08:38:25 AM

**EXHIBIT C**
**Co-Borrower Mortgaged Property**


Legal Description of 77 E. Michigan Avenue, Battle Creek, Michigan:

Beginning at a point on the Northeasterly line of East Michigan Avenue, distant South 34 degrees, 45 minutes East 21.4 feet from the Southernmost corner (also known as the Southeasterly corner) of Lot 7, Range of Blocks 8, of Original Plat of Battle Creek, according to the Plat thereof as recorded in Liber 2, of Plats, Page 42; thence North 55 degrees, 11 minutes, 01 seconds East 132.38 feet to the Southwesterly line of East State Street; thence South 34 degrees, 48 (recorded 40) minutes, 23 seconds East 92.16 feet along said Southwesterly line; thence South 67 degrees, 36 minutes, 42 seconds East 169.41 feet along said Southwesterly line to the Northwesterly line of North Division Street; thence South 22 degrees, 20 minutes West 228.02 feet along said Northwesterly line; thence South 84 degrees, 15 minutes, 06 seconds West 37.71 feet to the Northeasterly line of East Michigan Avenue; thence North 34 degrees, 45 minutes West 339.94 feet to the place of beginning.


Legal Description of 1599 Westwind Ct., Muskegon, MI 49445:


Lot 2, Fairview Park, Laketon Township, Muskegon County, Michigan, as recorded in Liber 4 of Plats, Page 7. Also that part of Lot 3 of the above described subdivision described as follows: Beginning on the dividing line between Lots 2 and 3, 398 feet South of the North line thereof; thence Easterly parallel with said North line 8 feet; thence Southerly parallel with the above mentioned dividing line 100 feet; thence Westerly 8 feet to said dividing line; thence Northerly to the point of beginning.


Excepting that part of said Lot 2, Fairview Park, described as: Commencing at the Northwest corner of said Lot 2 for point of beginning of the herein described parcel: thence Southerly along the West line of said Lot 2, a distance of 298.47 feet, more or less, to a point being 40.00 feet South of the Southeast corner of Lot 13, Chadwick Village No. 1, as recorded in Liber 20 of Plats, Page 30; thence Easterly parallel with the North right of way line of Westwind Court of said Chadwick Village No. 1, a distance of 41.1 feet, more or less, to the East line of said Lot 2; thence Northerly along said East line 320 feet, more or less, to the Northeast corner of said Lot 2; thence Southwesterly along the North line of said Lot 2 (also being the Southerly right of way line of Glenwood Avenue) 40 feet, more or less, to the point of beginning.


Together with an easement for ingress and egress over the East 1/2 of the following described property:


That part of said Lot 2, Fairview Park, described as: Commencing at the Northwest corner of said Lot 2 for point of beginning of the herein described parcel: thence Southerly along the West line of said Lot 2, a distance of 298.47 feet, more or less, to a point being 40.00 feet South of the Southeast corner of Lot 13, Chadwick Village No. 1, as recorded in Liber 20 of Plats, Page 30; thence Easterly parallel with the North right of way line of Westwind Court of said Chadwick Village No. 1, a distance of 41.1 feet, more or less, to the East line of said Lot 2; thence Northerly along said East line 320 feet, more or less, to the Northeast corner of said

23   William A. Moulatsiotis
Register of Deeds
Muskegon County Michigan
5849350   M22

Liber: 4383 Page: 802
Page: 23 of 24
04/10/2025 08:38:25 AM

Lot 2; thence Southwesterly along the North line of said Lot 2 (also being the Southerly right of way line of Glenwood Avenue) 40 feet, more or less, to the point of beginning.

Also

Together with a permanent easement for ingress/egress and public utilities described as: Commencing at the Southeast corner of Lot 13, Chadwick Village No. 1, as recorded in Liber 20 of Plats, Page 30, Laketon Township, Muskegon County, Michigan; thence South along the West line of said Lot 2, Fairview Park, as recorded in Liber 4 of Plats, Page 7, Laketon Township, Muskegon County, Michigan, (also being the East Right-of-Way line of said Westwind Court) a distance of 40.00 feet for Point of Beginning of this Easement; thence continue South along the West line of said Lot 2 a distance of 30.00 feet; thence East parallel to the North line of said Westwind Court, 30.00 feet; thence North parallel with the West line of said Lot 2 a distance of 30.00 feet; thence West 30.00 feet to point of beginning.

24  **William A. Moulatsiotis**
**Register of Deeds**
**Muskegon County Michigan**
**5849350   M22**

**Liber: 4383 Page: 802**
**Page: 24 of 24**
**04/10/2025 08:38:25 AM**

# EXHIBIT "10"

## CONSUMER LOAN AGREEMENT - CLOSED-END

**Independent Bank**
**4200 East Beltline Ave NE**
**Grand Rapids, Michigan 49525**
**(800)662-0102**

| LOAN NUMBER | TRANSACTION DATE | PRINCIPAL AMOUNT | MATURITY DATE | INTEREST RATE |
|---|---|---|---|---|
| 29202617718 | September 30, 2021 | $444,000.00 | October 14, 2041 | 4.240% |

**LOAN PURPOSE:** Other Purchase

## BORROWER INFORMATION

Ryan Leestma
1900 Gulf Dr N
BRADENTON BEACH, FL 34217

**LOAN AGREEMENT.** This Consumer Loan Agreement will be referred to in this document as the "Agreement" or "Note" and includes any extensions, renewals, modifications, and substitutions of this Agreement.

**LENDER.** "Lender," "you" or "your" means Independent Bank whose address is 4200 East Beltline Ave NE, Grand Rapids, Michigan 49525, its successors and assigns.

**BORROWER.** "Borrower," "I," "my" or "me" means each person who signs this Note.

**PROMISE TO PAY.** I promise to pay, according with the terms below, on or before the Maturity Date, the principal amount of Four Hundred Forty-four Thousand and 00/100 Dollars ($444,000.00) and all interest on the outstanding principal balance and any other charges, including service charges. I shall pay such amounts to the order of Lender at its office at the address noted above or at such other place as Lender may designate in writing. I will make all payments in lawful money of the United States of America. I understand that the Lender may, at its option, transfer this Note.

### TRUTH IN LENDING DISCLOSURE

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of my credit as a yearly rate is **4.240%** | The dollar amount the credit will cost me is **$216,448.51** | The amount of credit provided to me or on my behalf is $444,000.00 | The amount I will have paid after I have made all payments as scheduled is $660,448.51 |

**PAYMENT SCHEDULE.** This loan will be paid according to the following schedule: 239 consecutive payments of principal and interest in the amount of $2,751.87 beginning on November 14, 2021 and continuing on the same day of each month thereafter. This will be followed by 1 payment of principal and interest in the amount of $2,751.58 on October 14, 2041. The unpaid principal balance of this Note, together with all accrued interest and charges owing in connection therewith, shall be due and payable on the Maturity Date.

**SECURITY.** A security interest in the following: 2021 24QSL .

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of $29.00.

**PREPAYMENT.** If I pay off early, I will not have to pay a penalty. I will not be entitled to a refund of part of the finance charge.

**PREFERRED RATE FEATURE.** The interest rate on this Note includes a preferred rate reduction. If the preferred rate reduction is terminated, the interest rate on my loan will increase to 4.490%. The increase will take the form of more payments of the same amount. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.
**Description of Event That Would Cause the Preferred Rate Reduction to Terminate.**
Termination of Automatic Payment.
**How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.**
0.25% increase over the interest rate as disclosed above.

**ADDITIONAL CONTRACT TERMS.** *See below for further information about nonpayment, default, the right to accelerate the maturity of the obligation, and prepayment rebates and penalties.*

**ITEMIZATION OF AMOUNT FINANCED.** The Itemization of Amount Financed is presented below as requested by me.

| DESCRIPTION | DOLLAR AMOUNT |
|---|---|
| Amount from Borrower | |

| Cash from borrower | | 11,294.65 |
| Amounts Paid to Others on Borrower's Behalf (itemized below) | | 455,294.65 |
| Performance Motorcoaches RV & Marine | 455,294.65 | |
| Amount Paid on Borrower's Accounts with Creditor | | |
| Prepaid Finance Charges | | 0.00 |
| **Total Amount Financed** | | **$444,000.00** |

**INTEREST.**

    **Interest Rate and Scheduled Payment Changes.** Interest will begin to accrue on September 30, 2021. The interest rate on this Note will be fixed at 4.240 % per annum.

    **Compliance with Law.** Nothing contained herein shall be construed as to require the Borrower to pay interest at a greater rate than the maximum allowed by law.

    **Accrual Method.** Interest on this Note is calculated on an Actual/365 day basis.

**PREFERRED RATE FEATURE.** The interest rate on this Note includes a preferred rate reduction. If the preferred rate reduction is terminated, the interest rate on my loan will increase to 4.490%. The increase will take the form of more payments of the same amount. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.
**Description of Event That Would Cause the Preferred Rate Reduction to Terminate.**
Termination of Automatic Payment.
**How The New Rate Will Be Determined Upon Termination of the Preferred Rate Reduction.**
0.25% increase over the interest rate as disclosed above.

**COLLATERAL/SECURITY AGREEMENT.** To secure the repayment of my loan, I hereby grant to Lender a security interest/lien in or upon the Collateral listed below:

- 2021 24QSL 3HAEETAR2ML336744.

I also give you a security interest or lien in or to the Collateral that secures my other debts to you.

The subject matter of such security interest or lien is called "Collateral" in this Note. I have given no other Collateral for my loan. Except for your security interest or lien, the Collateral is owned free and clear from any security interest, lien, or other adverse claim other than as now disclosed by me to you in writing. I will not allow any other security interest, lien, or adverse claim to attach to the Collateral.

I agree that I will fully cooperate with you in placing and maintaining your security interest or lien in the Collateral. I authorize you to file a conforming Financing Statement or other similar document to perfect your security interest in the Collateral. I agree that I will execute any documents necessary for you to perfect your security interest or lien, and grant you a power of attorney to file or execute any document on my behalf that is necessary to obtain or maintain your security interest in the Collateral.

I will not move the Collateral from the state where it is now located for any extended period without your written consent. I will notify you at once if the Collateral is to be moved from my address shown above or at such other address where I have informed you that the Collateral is located. You may examine and inspect the Collateral at any time.

I will not sell or otherwise transfer ownership of the Collateral. I will not use the Collateral for any unlawful purpose. I will keep the Collateral in good repair.

The Collateral I am giving you a security interest in or a lien on will also secure all future debt that shows me giving you a security interest in "personal property securing other loans with Lender" within the Truth-in-Lending disclosure of any future loan agreement. Such a future disclosure will also reflect any exclusions from its scope, for example, "excluding household goods and my principal dwelling."

I promise to pay any taxes or assessments on the Collateral as they come due. If I fail to pay them, you may pay them at your option to protect your interest and I agree to pay you for your expense. If I fail to pay you, and if permitted by law, you may add the protective advance to the balance owing under this Note. You may increase the amount of my regular payment in order to amortize the added advance(s) by the time my final payment is due or, alternatively, I will end up having a larger final payment.

**LATE PAYMENT CHARGE.** If any required payment is more than 10 days late, then at Lender's option, Lender will assess a late payment charge of $29.00.

**PREPAYMENT PENALTY.** This Note may be prepaid, in full or in part, at any time, without penalty.

**RETURNED CHECK FEE.** Checks or drafts in payment of amounts owing hereunder which are returned to Lender unpaid are subject to a returned check fee of $20.00. At Lender's discretion, and after any notice required by applicable law, Lender may add such fee to the balance owing under this Note.

**PROPERTY INSURANCE.** I will insure the Collateral through a company of my choice subject to your reasonable approval. You will be named as loss payee or, at your request mortgagee, for your protection. This insurance will protect the Collateral against loss by theft, fire and collision, perils within the term "comprehensive" to the extent applicable, and as otherwise required by you. It will also provide "all risks" Hull insurance as to any Collateral which is an aircraft or boat and related accessories when applicable. I will deliver satisfactory evidence of such insurance to you.

**NOTICE: YOU HAVE A SECURITY INTEREST IN THE COLLATERAL. THIS LOAN AGREEMENT REQUIRES THAT I MAINTAIN INSURANCE ON THE COLLATERAL TO PROTECT YOUR INTEREST. IF I FAIL TO PROVIDE EVIDENCE OF THE INSURANCE YOU ARE AUTHORIZED TO PLACE INSURANCE ON THE COLLATERAL IN ORDER TO PROTECT YOUR INTEREST.**

If I fail to insure the Collateral, you may do so at your option to protect your interest, and you may include any other coverage you feel appropriate, and I agree to pay you for any premiums. If I fail to pay you, and if permitted by law, you may add the protective advance to the balance owing under this Note. You may increase the amount of my regular payment in order to amortize the added insurance premiums by the time my final payment is due or, alternatively, I will end up having a larger final payment.

**APPLICATION OF PAYMENTS.** You may apply my payments to amounts owing in whatever order you choose unless a specific order is required by law.

**SETOFF.** To the extent permitted by law, I give you the right to setoff any of my money or property which may be in your possession against any amount owing under this Note. This right of setoff does not extend to any IRA, Keogh accounts or similar tax deferred deposit accounts that I may have with you. You will not be liable for the dishonor of any check when the dishonor occurs because you setoff a debt against my account. I agree to hold you harmless from any claim arising as a result of you exercising your right to setoff.

**OTHER PROMISES.** Reference is made to any related mortgage, trust deed, assignment, security agreement, pledge, or similar document for other promises which I make to you and terms and conditions governing my loan.

**DEFAULT.** I will be in default and you may, to the extent permitted by law, declare the entire unpaid balance of this loan immediately due and payable if:

(a)    I do not keep any promise or perform any obligation under this Note or any other Agreement that I may have with you;
(b)    I give you false or misleading information in order to obtain, or while I owe on, this loan;
(c)    I should die or become involved in any bankruptcy, receivership, insolvency, or custodial proceedings brought by or against me;
(d)    I should have a judgment or tax lien filed against me or any attachment or garnishment should be issued against any of my property or rights, specifically including anyone starting an action or proceeding to seize any funds that I may have on deposit with you; or
(e)    you, in good faith, reasonably believe my ability to repay the indebtedness owed under this loan, any Collateral, or your ability to resort to any Collateral, is diminished.

**REMEDIES.** If I am in default under this Agreement, you may, to the extent permitted by law, without any prior notice or demand, unless required by law, do any one or more of the following:

(a)    Require payment of the entire unpaid balance of this loan;
(b)    Require that I give you the Collateral, if any;
(c)    If I do not give you the Collateral, then to the extent permitted by law, you may enter the premises where the Collateral is located and take possession of it;
(d)    Sell, maintain possession of, or dispose of the Collateral, in any manner permitted by law; or
(e)    Use any and all remedies available to you under the law, or in any instrument securing this Agreement.

You may assert the defense of a superior right of possession as the holder of a security interest to any allegation by me of wrongful taking and conversion. If permitted by law, I waive any right I might otherwise have to a hearing prior to a court issuing any replevin, claim and delivery, detinue or similar order in relation to the Collateral. After appropriate application of the proceeds of any sale, I will be liable to pay any resulting deficiency on my loan to you, to the extent permitted by law. In taking possession of the Collateral, you may come into possession of certain of my personal property. In that event, you may hold such property for whatever period of time you feel is reasonable. If I do not claim my property during such hold period, you may dispose of it without any liability to me.

**ASSIGNABILITY.** You may assign, pledge or transfer this Agreement or any of its rights and remedies without notice, with all or any of the obligations. The assignee shall have the same rights and remedies as if named herein in place of you. I may not assign this Agreement or any benefit accruing hereunder without your express written consent.

**GENERAL WAIVERS.** To the extent permitted by law, I severally waive any required notice of presentment, demand, acceleration, intent to accelerate, protest, and any other notice and defense due to extensions of time or other indulgence by Lender or to any substitution or release of collateral. No failure or delay on the part of Lender, and no course of dealing between Borrower and Lender, shall operate as a waiver of such power or right, nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

**JOINT AND SEVERAL LIABILITY.** If permitted by law, each Borrower executing this Note is jointly and individually obligated to pay all amounts owed according to the terms and conditions of the Agreement.

**SEVERABILITY.** If a court of competent jurisdiction determines any term or provision of this Agreement is invalid or prohibited by applicable law, that term or provision will be ineffective to the extent required. Any term or provision that has been determined to be invalid or prohibited will be severed from the rest of this Agreement without invalidating the remainder of either the affected provision or this Agreement.

**HEADINGS.** The headings preceding text in this Note are for my general convenience in identifying subject matter, but have no limiting impact on the text which follows any particular heading.

**ATTORNEYS' FEES AND OTHER COSTS.** I agree to pay all of Lender's costs and expenses incurred in connection with the enforcement of this Note including, without limitation, actual attorneys' fees , to the extent permitted by law.

**GOVERNING LAW.** I understand and agree that this Note will be governed by the laws of the State of Michigan except to the extent that federal law controls.

© 2004-2020 Compliance Systems, LLC b9c9a287-16bda80f - 2020.56.10.3
Consumer Loan Agreement - Closed-End DL2081                    Page 3 of 4                    www.compliancesystems.com

**ORAL AGREEMENTS DISCLAIMER.** This Note represents the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten oral agreements between the parties.

**ADDITIONAL PROVISIONS.** Notify Us of Inaccurate Information: We Report to Consumer Reporting Agencies. Please notify us if we report any inaccurate information about your account or accounts to a consumer reporting agency. Your written notice describing the specific inaccuracy or inaccuracies should be sent to us at the following address: Independent Bank Loan Servicing Department 230 W Main St Ionia MI 48846.

**By signing this Note on the date shown below, I acknowledge reading, understanding, and agreeing to all its provisions, and receiving a completely filled in copy of this Note.**

2B6C3FEC2E034A8...                              9/30/2021 | 10:53 AM EDT

Ryan Leestma                              Date

# EXHIBIT "11"

Approved, SCAO

Original - Court
1st copy - Defendant
2nd copy - Plaintiff
3rd copy - Return

| STATE OF MICHIGAN<br>14th JUDICIAL DISTRICT<br>JUDICIAL CIRCUIT | ORDER OF POSSESSION<br>PENDING JUDGMENT<br>Claim and Delivery | CASE NO.<br>2026-001280-CK<br>Hon. Kenneth S. Hoopes |
|---|---|---|

**Court address**
990 Terrace St., Muskegon, MI 49442

**Court telephone no.**
(231) 724-6251

| Plaintiff's name(s), address(es), and telephone no(s).<br>Independent Bank, a Michigan banking corporation<br><br>4200 E. Beltline, NE, Grand Rapids, MI 49525 | v | Defendant's name(s), address(es), and telephone no(s).<br>RYAN M. LEESTMA<br><br>1599 Westwind Ct., Muskegon, MI 49445 |
|---|---|---|

Plaintiff's attorney, bar no., address, and telephone no.
Gary P. Schenk; Schenk, Boncher & Rypma    P19970

601 Three Mile Rd., NW, Grand Rapids, MI 49544-1601

(616) 647-8277

1. **THE COURT FINDS** that the defendant has possession of the following described property:

2021 Showhauler 24QSL motor home, VIN: 3HAEETAR2ML336744

**IT IS ORDERED:**

☐ 2. The motion for possession pending final judgment is denied.

3. ☐ a. The defendant shall retain possession of the described property and is restrained from damaging, destroying, concealing, or disposing of the property.

  ☐ b. The defendant shall furnish a penalty bond payable to plaintiff in the amount of $ _____ .

4. ☑ a. The sheriff or court officer shall seize the described property within 21 days and  ☐ retain it.  ☑ deliver it to the plaintiff.
    Defendant shall cooperate with Independent Bank in locating the above-mentioned collateral, and shall immediately **
  ☐ b. The plaintiff shall furnish a penalty bond payable to the sheriff or court officer and the defendant in the sum of $ _____
    and shall diligently prosecute the suit to final judgment, surrender the property to the person judged entitled to possession,
    and pay any money that may be recovered against him/her in the action.
    **surrender the above-mentioned collateral to Independent Bank, its agent/representative and the Sheriff or court officer.

☐ 5. The bond required by this order shall be filed in the court by _____ No seizure shall
    be made before filing the bond.    Date

_____
Date

_____
Judge

HON. KENNETH S. HOOPES  P-53469
14TH CIRCUIT COURT JUDGE

Bar no.

I HEREBY CERTIFY this is a true and correct copy of the original on file with the office of COUNTY CLERK. This Certified Copy is VALID only When SEAL and RED Color is Affixed.
04/16/2026  10:52 AM
Karen D. Buie
MUSKEGON COUNTY CLERK

MC 37 (3/08) **ORDER OF POSSESSION PENDING JUDGMENT, CLAIM AND DELIVERY**   MCL 600.2920, MCR 3.105(E)(4)(c)

RETURN

☐ 1. PERSONAL SERVICE

I certify that I delivered a copy of this order of possession ( ☐ and bond) personally on the defendant(s)

_____
Name(s)

at _____
   Address

and took possession of the following property on _____ .
(Describe property.)                                   Date

| Service fee | Miles traveled | Mileage fee | Other (specify) | Total fee |
|-------------|----------------|-------------|-----------------|-----------|
| $           |                | $           | $               | $         |

☐ 2. DELIVERY OF PROPERTY TO PLAINTIFF

I certify that on _____ at _____ I delivered the following described property
                 Date                          Time

to the plaintiff as ordered by the court. (Describe property.)

☐ 3. RETURN - FAILURE TO SERVE/SEIZE

I certify and return that after diligent search and inquiry

☐ I am unable to find the named defendant(s) and have been unable to serve the order of possession.
☐ I am unable to find the described property and I did not take the described property into my possession.

I declare that the statements above are true to the best of my information, knowledge, and belief.

_____            _____
Date                                 Deputy sheriff/Court officer

                                     _____
                                     Name (type or print)

ACKNOWLEDGMENT BY PLAINTIFF

I acknowledge receiving the following described property on _____
(Describe property.)                                        Date

_____            _____
Date                                 Plaintiff

I HEREBY CERTIFY this to be a true and correct copy of the original on file with the office of COUNTY CLERK. This Certified Copy VALID Only When SEAL and RED SIGNATURE Are Affixed.

Karen D. Buie

MUSKEGON COUNTY CLERK