ORDERED.

**Dated:  May 29, 2026**

_Caryl E. Delano_
Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

| | |
|---|---|
| LEESTMA MANAGEMENT, LLC, | Case No.: 8:26-bk-02696-CED [LEAD] |
| ADELAIDE POINTE QOZB, LLC, | Case No.: 8:26-bk-02698-CED |
| ADELAIDE POINTE BOATERS SERVICES, | Case No.: 8:26-bk-02699-CED |
| LLC ADELAIDE POINTE BUILDING 1, | |
| LLC, | Case No.: 8:26-bk-02700-CED |
| WATERLAND BATTLE CREEK, LLC, | Case No.: 8:26-bk-02701-CED |
| | |
| Debtors. | Chapter 11 |
| _____/ | _Jointly Administered_ |

**SECOND AND THIRD INTERIM ORDER REGARDING DEBTORS'
EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE
PROTECTION[1] AND GRANTING _ORE TENUS_ MOTION FOR STAY
MODIFICATION BY ARGENT INSTITUTION TRUST**

THIS CASE came on for a continued expedited hearing on April 22, 2026; April 23, 2026; May 8, 2026; May 22, 2026; and May 29, 2026 (collectively, the "**Hearing**"), to consider the _Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection_ (Doc. No. 24) (the "**Cash Collateral Motion**") filed

---

[1] On May 1, 2026, the Court entered a Second Interim Order Authorizing Use of Cash Collateral (Doc. No. 97). This Order relates to the Hall Street Property ("Hall Street Cash Collateral Order").

by Leestma Management, LLC ("**LMF**"), Adelaide Pointe QOZB, LLC ("**AP QOZB**"), Adelaide Pointe Boaters Services, LLC ("**AP Boaters**"), Adelaide Pointe Building 1, LLC ("**AP Building**"), and Waterland Battle Creek, LLC ("**Waterland,**" and together with LMF, AP QOZB, AP Boaters, and AP Building, the "**Debtors**"). At the Hearing, the Court also considered an *Ore Tenus Motion* of Counsel for Argent Institution Trust Company as Successor to Huntington National Bank (the "**Bond Trustee**") (as defined in decretal paragraph 15 below), which was not opposed by the Debtors or any party appearing by Counsel at the Hearing.

Pursuant to the Cash Collateral Motion, the Debtors seek the entry of interim and final orders authorizing the immediate use of property that may constitute "cash collateral" under section 363(a) of the Bankruptcy Code ("**Cash Collateral**") in which (i) Independent Bank, a Michigan banking corporation ("**Independent Bank**"), (ii) the U.S. Small Business Administration ("**SBA**"), and (iii) CT Service Corp., as representative ("**CT**") may assert a security lien in interest. Independent Bank, SBA, CT, the Bond Trustee (as defined below) and any other secured creditors of the Debtors who may have or assert an interest in the property that may constitute cash collateral is provided in Section 363(a) of the Bankruptcy Code, are collectively referred to in this order as the "**Cash Collateral Creditors**").

The Court finds that adequate notice of the Cash Collateral Motion was provided to (i) the Cash Collateral Creditors, and (ii) the Office of the United States Trustee. Having reviewed the Cash Collateral Motion and the record, having heard the proffers and arguments of counsel and the presentation and representations of Robert Frezza, the proposed Chief Restructuring Officer ("**CRO**") of immediate and necessary needs for use of Cash Collateral made at the Hearing by the Debtors, the proposed CRO, and John Polderman, the receiver

2

appointed by *Order Appointing Receiver* entered on January 30, 2026, by Circuit Judge Curt A. Benson, of the Kent County Circuit Court, State of Michigan ("**Receiver**"), and otherwise being fully advised in the premises, the Court finds that the interim use of Cash Collateral by the Receiver, as provided herein, is in the best interest of the Receivership Estate, the Debtors' estates and the Debtors' creditors and essential for the preservation and continued operation of the properties owned by the Debtors and certain of the Affiliated Non-Debtor Entities, as referenced in the Cash Collateral Motion. The Court further finds that turnover compliance of property by the Receiver should be temporarily excused until further Order of the Court and therefore the Court extends the provisions of the *Interim Order Regarding Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection* ("**Interim Order**") (Doc. No. 51). Accordingly, for the reasons stated on the record in open court, it is hereby **ORDERED** as follows:

1. **Jurisdiction and Venue.** This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334 and this is a "core" proceeding under 28 U.S.C. § 157. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. **Notice.** Notice of the Hearing on the Motion was adequate and appropriate in the current circumstances of these Chapter 11 cases as contemplated by section 102(a) of the Bankruptcy Code and Bankruptcy Rule 4001(b)(2).

3. **Interim Relief.** The Court hereby continues and extends the provisions of the Interim Order, with the following modifications: The turnover requests of Section 543 of the Bankruptcy Code with respect to property of the Debtors and their respective estates by the Receiver is temporarily excused until further Order of the Court and the Cash Collateral Motion is **GRANTED** on an interim basis as set forth herein. In accordance with Bankruptcy

3

Rule 4001, the Court finds that the authorization of the use of Cash Collateral pursuant to this Order is necessary to avoid immediate and irreparable harm to the Debtors' estates.

A.   The Receiver is authorized to use Cash Collateral on an interim basis effective as of the Petition Date and continuing through July 9, 2026 (the "**Expiration Date**") (the Petition Date through the Expiration Date is hereinafter referred to as the "**Interim Period**") in accordance with Budget submitted to the Court at Docket Number 52 for Waterland Battle Creek as supplemented by the presentation of the proposed CRO at the hearing, and pay those ordinary course payables associated with the daily business operations of Adelaide Pointe Boaters Services and Adelaide Pointe QOZB, set forth on Docket Number 126, which the Receiver filed as a proposed budget ("**Receiver Budget**"),[2] which includes, payroll, third party bookkeepers, utilities, fuel, insurance, erosion control, repairs to the equipment, roof and an aggregate amount up to but not to exceed $50,000 for the fire panel/sprinkler system. The parties may agree that additional amounts may be paid by the Receiver if approved by Aubrey Glick or other authorized representatives of the Debtors and approved by Independent Bank and without further order of the Court. Particular expense items may exceed the amount in the Budget by fifteen percent (15%), so long as the aggregate expenses

---

[2] For the purposes of this Order, the Court makes no determination as to whether the Receiver Budget (defined above) or any alternative budget proposed by the Debtors or the proposed CRO shall be the actual governing budget for the purposes of this Order or any final order authorizing use of cash collateral. Provided however, the Receiver was authorized to pay the expenses set forth in the Receiver Budget pursuant to this interim order.

4

actually incurred do not exceed the aggregate amounts reflected in the Budget for the Interim Period by no more than ten percent (10%), provided, however, that no amounts shall be paid to any employee or person that may be an insider as designated in Section 101 of the Bankruptcy Code, absent approval by the Court. Any payment by the Receiver in excess of the budgeted amounts and variances permitted in this Order shall constitute a default under the terms of this Order and, upon default, the Cash Collateral Creditors shall be entitled to seek emergency relief from the Court to prohibit the further use of Cash Collateral. However, expenditures in excess of the line items in the Budget or not on the Budget will not be deemed to be unauthorized use of cash collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure. Expenditures in excess of the line items in the Budget or not on the Budget may, nonetheless, give rise to remedies in favor of the Creditors. This Order shall remain in effect through the Expiration Date pending any other subsequent order of the Court directed specifically to this Order. During the Interim Period, the Receiver is authorized to remain in possession of the Debtors' assets and comply with the terms of Order Appointing Receiver and this Order. From the Petition Date to the date of entry of this Order, the Receiver has also made disbursements from the Cash Collateral which he believed were necessary to preserve and maintain the Receivership

5

Estate or pay entities to which the Receivership Estate was obligated ("**Receivership Payments**"). In compliance with the Interim Order, the Receiver has filed an Accounting (Doc. No. 87) that the Receiver submits was previously submitted to the State Court that appointed the Receiver. In addition, the Receiver may pay the following expenses associated with the AP Building: (1) the utilities which were previously metered in the name of Adelaide Pointe QOZB, LLC; (2) Liability Insurance premiums; (3) Fire/sprinkler inspections and repairs to the extent they are not the responsibility of the homeowners association for the AP Building ("**HOA**"). This is without prejudice to the right of the Receiver or Debtors to seek reimbursement of these expenses from the HOA. Nothing in this Order prevents Independent Bank from consenting to the use of Case Collateral for the payment of ordinary-course expenses of the estates outside the scope of the Budget.

4.      The Debtor and the Receiver have agreed to use their best efforts to agree on a cash collateral budget during the agreed upon Interim Period.

5.      **Pre-Petition Payroll.** In compliance with the Interim Order, the Receiver has paid the pre-petition payroll.

6.      **Receiver Credit Card.** In compliance with the Interim Order, the Receiver has paid the Receiver's credit cards.

7.      **Debtors' and Receiver's Obligations and Reporting.** The Debtors and/or Receiver (if turnover is excused) shall timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of

ACTIVE 724359103v3

this Court. During the Interim Period, the Receiver shall provide the Debtors, Independent Bank, the United States Trustee, the City (as defined below), the Bond Trustee (as defined below), 4Front and any other party-in-interest upon request with bi-weekly reporting consisting of the following reports: (i) a budget variance report and (ii) an accounts receivable aging report. The reports shall cover the preceding two weeks (Saturday through Friday) and are due on the following Friday.

8. **Insurance and Property Taxes.** The Debtors and or the Receiver (if turnover is excused) shall maintain insurance coverage for the property in accordance with the obligations under the loan and security documents with the Creditors. The Debtors shall timely pay all property taxes associated with their properties.

9. **Replacement Lien.** In addition to any existing rights and interests of the Cash Collateral Creditors in Cash Collateral , which Cash Collateral includes but is not limited to the rights of Independent Bank in any net proceeds of motor fuel sold by Receiver/AP Debtors, and for the purpose of providing adequate protection of any such interests, the Cash Collateral Creditors are hereby granted as of the Petition Date and re-granted thereafter replacement liens on any Cash Collateral acquired by the Receiver after the Petition Date to the same extent, validity and priority as any of their liens or security interests that attached to Cash Collateral as of the Petition Date, without the need to file or execute any document as may otherwise be required under applicable non bankruptcy law.

10. **Payments Owed to the Debtors.** Pursuant to section 542 of the Bankruptcy Code, all persons and entities owing monies to the Debtors are authorized and directed to pay such monies to the Receiver, which sums shall upon collection by the Receiver constitute Cash Collateral to the extent of any valid and perfected security interests therein as of the

7

Petition Date. The Receiver is authorized to use such Cash Collateral on an interim basis in accordance with the terms of this Order.

11.     **Preservation of Rights.** It is the intent of the Court under this Order to preserve the rights of all parties and to preserve the status quo pending further proceedings. As a result, any right, objection, factual assertion or legal argument not specifically addressed and ruled upon by the Court at the Hearing or in this Order shall remain as it was prior to the entry of this Order. The Court makes no determination at this time as to the extent, priority, or validity of any security interest held by or the obligations owed to the Creditors prior to the Petition Date. This order is without prejudice to (i) any subsequent request by a party in interest for modified adequate protection or restrictions on use of cash collateral; or (ii) any other right or remedy which may be available to the Creditor.

12.     **Continuance of Order.** All other provisions of the Interim Order, except as modified herein, shall continue in full force and effect.

13.     **Enforcement.** The Court shall retain jurisdiction to enforce the terms of this Order.

14.     **Continued Hearing.** The Court will consider the request to use Cash Collateral subsequent to the Expiration Date at a continued hearing to be held **July 9, 2026, at 9:30 a.m.** in Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 North Florida Avenue, Tampa, Florida. All parties may attend the hearing in person or on Zoom. Parties are directed to consult Judge Delano's Procedures Governing Court Appearances, available at https://www.flmb.uscourts.gov/judges/delano/ regarding policies and procedures for attendance at hearings by video or telephone via Zoom. If you are unable to access the Court's

website, please contact the Courtroom Deputy at 813-301-5070 no later than 3:00 p.m., one business day before the date of the hearing.

15. **The Bond Trustee.** The automatic stay imposed by Section 362 of the Bankruptcy Code is hereby modified to the fullest extent necessary to permit the following actions, which are hereby authorized, but not directed: (i) the City of Muskegon, Michigan (the "**City**") and the City of Muskegon Brownfield Redevelopment Authority (the "**Redevelopment Authority**") may distribute and pay to Argent Institutional Trust Company, successor-in-interest to the Huntington National Bank, as trustee (the "**Bond Trustee**"), concerning the $21,185,000.00 Public Finance Authority Infrastructure Improvement Tax Increment Revenue Bonds (Adelaide Point Project, City of Muskegon, Michigan), Series 2023 (the "**Bonds**"), the Brownfield TIF Revenues, as defined in that certain Development and Reimbursement Agreement dated November 23, 2021 (as amended and supplemented, the "**Development and Reimbursement Agreement**") assigned to the Bond Trustee pursuant to the Assignment of Development and Reimbursement Agreement and Brownfield TIF Revenues dated July 12, 2023, whether such Brownfield TIF Revenues are presently existing or hereafter arising; (ii) the Bond Trustee may receive any payments or distributions of Brownfield TIF Revenues made by the City, the Redevelopment Authority, or the Debtors, at any time; (iii) the Bond Trustee may administer and apply the Brownfield TIF Revenues and other funds held or subsequently received by the Bond Trustee under the terms of Indenture of Trust between the Public Finance Authority and the Huntington National Bank as predecessor to the Bond Trustee (the "**Trust Indenture**") in accordance with the terms of the Trust Indenture, and the Debtors consent to the fact that such Brownfield TIF Revenues and funds are not property of the estate; and (iv) for cause as noted by the Court at the

9

Hearing, relief from the automatic stay is effective immediately, and (v) any other action which is authorized by this Interim Order or any Final Order.

16.     **Carve out of LMCU's Cash Collateral and Hall Street Proceeds.** For the avoidance of doubt, this Order shall have no force and effect as to Lake Michigan Credit Union ("**LMCU**") and its cash collateral or the Hall Street Property owned by LMF, or proceeds generated therefrom. The use of LMCU's cash collateral shall be governed by separate orders of the Court and shall not be affected by this order.

17.     **Reservation of Rights.** Nothing contained in this Order shall prejudice the rights of 4Front Credit Union and Choice One Bank. All rights of 4Front Credit Union and Choice Bank are preserved.

*Attorney David S. Jennis is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.*

10