ORDERED.

**Dated:  June 03, 2026**

Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

LEESTMA MANAGEMENT, LLC,                          Case No.: 8:26-bk-02696-CED [LEAD]
ADELAIDE POINTE QOZB, LLC,                         Case No.: 8:26-bk-02698-CED
ADELAIDE POINTE BOATERS SERVICES,                  Case No.: 8:26-bk-02699-CED
LLC ADELAIDE POINTE BUILDING 1, LLC,
WATERLAND BATTLE CREEK, LLC,                        Case No.: 8:26-bk-02700-CED
                                                    Case No.: 8:26-bk-02701-CED

                    Debtors.
_____/          *Jointly Administered*

**THIRD INTERIM ORDER AUTHORIZING LEESTMA MANAGEMENT'S**
**<u>USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION</u>**

THIS CASE came on for hearing on April 22, April 23, and May 8, 2026. (collectively, the "**Hearings**"), before the Court with respect to motions filed by the Debtors[1] and by John Polderman, the receiver appointed by the *Order Appointing Receiver* entered on January 30, 2026, by Circuit Judge Curt A. Benson, of the Kent County Circuit Court, State of Michigan ("**Receiver**").  At the Hearings, the Debtors, the Receiver, Independent Bank, and Lake Michigan Credit Union ("**LMCU**," and collectively with Independent Bank, the "**Creditors**") agreed to further extend the *Second Interim Order Regarding Debtors' Emergency Motion for Entry of*

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Second Interim Cash Collateral Order, as defined herein).

*Interim and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection* (the "**Second Interim Cash Collateral Order**") [Docket No. 97].

This Order having been circulated to all parties with a security interest in the Cash Collateral and the Office of the United States Trustee without objection, the Court finds that adequate notice has been provided. Having reviewed the Cash Collateral Motion and the record, having heard the arguments of counsel and the presentation of immediate and necessary needs for use of Cash Collateral made at the Hearings by the Receiver, and otherwise being fully advised in the premises, the Court finds that the interim use of Cash Collateral by the Receiver, as provided herein, is in the best interest of the Receivership Estate, the Debtors' estates, and the Debtors' creditors, and is essential for the preservation and continued operation of the real property located at 401 Hall Street SW, Grand Rapids, Michigan 49503 (the "**Hall Property**") owned by Leestma Management, LLC. Accordingly, for the reasons stated on the record in open court at the Hearings, it is hereby **ORDERED** as follows:

1.      **Jurisdiction and Venue.** This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334 and this is a "core" proceeding under 28 U.S.C. § 157. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      **Notice.** Notice of the Hearings on the Motion was adequate and appropriate in the current circumstances of these Chapter 11 cases as contemplated by section 102(a) of the Bankruptcy Code and Bankruptcy Rule 4001(b)(2).

3.      **Interim Relief.** The turnover of property by the Receiver, as required by section 543 of the Bankruptcy Code, is temporarily excused with respect to the Hall Property, and the proceeds generated therefrom, until further Order of the Court and the Cash Collateral Motion is **GRANTED** on an interim basis as set forth herein. In accordance with Bankruptcy Rule 4001,

the Court finds that the authorization of the use of Cash Collateral pursuant to this Order is necessary to avoid immediate and irreparable harm to the Debtors' estates.

4.      **Cash Collateral Authorization.**  Subject to the terms of this Order, the Receiver is authorized to use Cash Collateral on an interim basis effective as of the Petition Date and continuing through July 9, 2026 (the "**Expiration Date**") (the period from the Petition Date through the Expiration Date, the "**Interim Period**") in accordance with the attached budget hereto as Exhibit "A" (the "**Budget**") in an aggregate amount not to exceed the actual anticipated cash needs of the Receiver during the Interim Period and such additional amounts as may be expressly approved in writing by the Debtors, Independent Bank and LMCU. Particular expense items may exceed the amount in the Budget by fifteen percent (15%), so long as the aggregate expenses actually incurred do not exceed the aggregate amounts reflected in the Budget for the Interim Period by no more than ten percent (10%), provided, however, that no amounts shall be paid to any insiders or affiliate officers absent approval by Independent Bank, LMCU, and an order of the Court. Upon any payment by the Receiver in excess of the budgeted amounts and variances permitted in this Order the Creditors may seek emergency relief from the Court to prohibit the further use of Cash Collateral. However, expenditures in excess of the line items in the Budget, or not on the Budget, capped at $5,000 in the aggregate, will not be deemed to be unauthorized use of cash collateral, unless the recipient cannot establish that the expense would be entitled to administrative expense priority if the recipient had extended credit for the expenditure.  This Order shall remain in effect through the Expiration Date pending any subsequent order of the Court. Notwithstanding the Debtor's objections to the Receiver's Motion to Excuse Turnover [Docket No. 28] and the Receiver's Motion to Excuse Turnover [Docket No. 18], during the Interim Period,

the Receiver is authorized, on an interim basis, to remain in possession of the Hall Property, and the proceeds generated therefrom, and use such proceeds as provided in this Order.

5.     **Debt Service.** To the extent the Budget provides for debt service payments to LMCU, such payments shall not be made without written authorization from the Debtors or a further order of the Court.  Any excess Cash Collateral in the Budget from non-payment of the debt service line item in the Budget shall be held in Debtors' segregated bank account at LMCU for Hall St. proceeds.

6.     **Broker Fees, Repairs, and Maintenance.**  During the Interim Period, upon the Receiver's request, and approval by LMCU, in its sole and unfettered discretion, the Receiver may pay non-budgeted items which relate to broker commissions or repairs and maintenance.

7.     **Segregation of Cash Collateral.**  The Receiver shall keep the Cash Collateral and any proceeds generated from the Hall Property segregated and shall not be authorized to use those proceeds for the benefit of any of the Debtors or any other purposes other than as set forth herein.

8.     **Pre-Petition Payroll.**  To the extent that any amounts in the Budget are for prepetition wages, such amounts do not exceed the amounts provided for as priority in section 507(a)(4) of the Bankruptcy Code.  All applicable banks and other financial institutions are authorized and directed to receive, process, honor, and pay any and all checks representing the payroll for the Debtors.

9.     **Receiver Credit Card.**  The Receiver is authorized to continue to use the receivership credit card to pay the amounts authorized by this Order, and to the extent that such use constitutes a post-petition loan, the Debtors are authorized to incur such debt.

10.     **Debtors' and Receiver's Obligations and Reporting.**  The Debtors shall timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, Federal Rules

of Bankruptcy Procedure, and the orders of this Court.  Commencing on June 1, 2026, and continuing during the Interim Period, the Receiver shall provide the Debtors, the Creditors, the United States Trustee, and any other party-in-interest upon request with bi-weekly reporting consisting of the following reports: (i) a budget variance report and (ii) an accounts receivable aging report.  The reports shall cover the preceding week (Saturday through Friday) and are due on the following Friday.

11.  **Insurance.**  The Receiver shall maintain insurance coverage for the property in accordance with the obligations under the loan and security documents with the Creditors.

12.  **Replacement Lien.**  In addition to any existing rights and interests of the Creditors in Cash Collateral and for the purpose of providing adequate protection of any such interests, the Creditors are hereby granted as of the Petition Date and re-granted thereafter replacement liens on any Cash Collateral acquired by the Receiver after the Petition Date to the same extent, validity and priority as any of their liens or security interests that attached to Cash Collateral as of the Petition Date, without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law.

13.  **Payments Owed to the Debtors.**  Pursuant to section 542 of the Bankruptcy Code, and subject to further orders of this Court, all persons and entities owing monies to the Debtors that may be Cash Collateral are authorized and directed to pay such monies to the Receiver, which sums shall upon collection by the Receiver constitute Cash Collateral to the extent of any valid and perfected security interests therein as of the Petition Date. The Receiver is authorized to use such Cash Collateral on an interim basis in accordance with the terms of this Order.

14.  **Preservation of Rights.**  It is the intent of the Court under this Order to preserve the rights of all parties and to preserve the status quo pending further proceedings. As a result, any

right, objection, factual assertion or legal argument not specifically addressed and ruled upon by the Court at the Hearings or in this Order shall remain as it was prior to the entry of this Order. The Court makes no determination at this time as to the extent, priority, or validity of any security interest held by or the obligations owed to the Creditors prior to the Petition Date. To the extent the adequate protection provided herein is found to be insufficient, the Creditors shall be entitled to assert a priority claim for any such deficiency under section 507(b) of the Bankruptcy Code. This Order is without prejudice to (i) any subsequent request by a party in interest for modified adequate protection or restrictions on use of cash collateral; or (ii) any other right or remedy which may be available to the Creditors.

15. **Enforcement.** The Court shall retain jurisdiction to enforce the terms of this Order.

Attorney David Jennis is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this Order.

# EXHIBIT A

22528270v2

6/3/2026 4:25 PM

**Hall St. 2026 OpEx Budget: proposed March 2026 v4**
Period = 01/2026 - 12/2026

| Account | Description | Feb 2026 | Mar 2026 | Apr 2026 | May 2026 | Jun 2026 | Jul 2026 | Aug 2026 | Sep 2026 | Oct 2026 | Nov 2026 | Dec 2026 | Annual Total | Grand Total | Narrative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5100-0000 | **REVENUES** | | | | | | | | | | | | | | |
| 5101-0000 | RENT REVENUES | | | | | | | | | | | | | | |
| 5102-0000 | GROSS POTENTIAL RENTS | 152,686.55 | 152,711.29 | 153,056.04 | 153,285.45 | 153,551.04 | 153,652.25 | 153,915.53 | 152,520.57 | 154,653.10 | 154,937.48 | 154,982.05 | 1,848,105.91 | 1,848,105.91 | Spec renewals for all expiring leases added, unless tenant notified of non-renewal. |
| | | | | | | | | | | | | | | | Revision: removed D2D Ventures, LLC annual payment for 2026. Payment was received and distributed in 2025. |
| 5170-0000 | GARAGE AND PARKING SPACES | 1,280.00 | 1,280.00 | 1,230.00 | 1,230.00 | 1,230.00 | 1,230.00 | 1,230.00 | 1,230.00 | 1,230.00 | 1,230.00 | 1,230.00 | 14,910.00 | 14,910.00 | |
| 5199-9999 | TOTAL RENT REVENUES | 153,966.55 | 153,991.29 | 154,286.04 | 154,515.45 | 154,781.04 | 154,882.25 | 155,145.53 | 153,750.57 | 155,883.10 | 156,167.48 | 156,212.05 | 1,863,015.91 | 1,863,015.91 | |
| 5200-0000 | VACANCY | | | | | | | | | | | | | | |
| 5240-0000 | COMMERCIAL VACANCY | -25,017.57 | -25,017.57 | -25,017.57 | -25,017.57 | -25,017.57 | -25,017.57 | -25,017.57 | -25,017.57 | -27,403.42 | -27,403.42 | -27,403.42 | -307,368.39 | -307,368.39 | Vacancy: 112I, 112J, 225, 285, 308, 331, 458, 461, 484, 489= 20,617 SF |
| 5250-0000 | RENT CONCESSIONS | -2,200.00 | -2,200.00 | -2,200.00 | -2,200.00 | -2,200.00 | -2,200.00 | -2,200.00 | -2,200.00 | -2,200.00 | -2,200.00 | -2,200.00 | -26,400.00 | -26,400.00 | Rent abatement per leases: D2D Events (1E) and Poppy & Posey (2E) |
| 5299-9999 | TOTAL VACANCY | -27,217.57 | -27,217.57 | -27,217.57 | -27,217.57 | -27,217.57 | -27,217.57 | -27,217.57 | -27,217.57 | -29,603.42 | -29,603.42 | -29,603.42 | -333,768.39 | -333,768.39 | |
| 5300-0000 | CAM INCOME | | | | | | | | | | | | | | |
| 5301-0000 | OPERATING EXP REIMB. | 380.08 | 380.08 | 380.08 | 380.07 | 380.08 | 380.08 | 380.08 | 380.08 | 380.08 | 380.08 | 380.07 | 4,560.94 | 4,560.94 | Summit Marketing-only tenant that pays CAM per lease |
| 5399-9999 | TOTAL CAM INCOME | 380.08 | 380.08 | 380.08 | 380.07 | 380.08 | 380.08 | 380.08 | 380.08 | 380.08 | 380.08 | 380.07 | 4,560.94 | 4,560.94 | |
| 5400-0000 | FINANCIAL REVENUE | | | | | | | | | | | | | | |
| 5503-0000 | COORDINATION/PROJECT MGMT FEES | 0.00 | -625.00 | 0.00 | 0.00 | -625.00 | 0.00 | 0.00 | -625.00 | 0.00 | 0.00 | -625.00 | -2,500.00 | -2,500.00 | Lease/renewals: template completion by BCO. Estimate 5 hrs. per quarter |
| 5599-9999 | TOTAL FINANCIAL REVENUE | 0.00 | -625.00 | 0.00 | 0.00 | -625.00 | 0.00 | 0.00 | -625.00 | 0.00 | 0.00 | -625.00 | -2,500.00 | -2,500.00 | |
| 5900-4000 | UTILITY REIMBURSEMENT | 15,416.67 | 15,416.67 | 15,416.67 | 15,416.67 | 15,416.67 | 15,416.67 | 15,416.67 | 15,416.67 | 15,416.67 | 15,416.67 | 15,416.63 | 185,000.00 | 185,000.00 | Moved from Tenant Reimbursement (5920-0000) 2025: utility billback income for gas/electric service-per leases |
| 5990-0000 | MISCELLANEOUS INCOME | 1,390.50 | 1,390.50 | 1,390.50 | 1,390.50 | 1,390.50 | 1,390.50 | 1,390.50 | 1,390.50 | 1,390.50 | 1,390.50 | 1,390.50 | 16,686.00 | 16,686.00 | D2D Ventures, LLC-utility charge per agreement |
| 5999-9999 | **TOTAL REVENUES** | 143,936.23 | 143,335.97 | 144,255.72 | 144,485.12 | 144,125.72 | 144,851.93 | 145,115.21 | 143,095.25 | 143,466.93 | 143,751.31 | 143,170.83 | 1,732,994.46 | 1,732,994.46 | |
| 6000-0000 | **OPERATING EXPENSES** | | | | | | | | | | | | | | |
| 6200-0000 | ADMINISTRATIVE EXPENSES | | | | | | | | | | | | | | |
| 6320-0000 | MANAGEMENT FEE | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 48,000.00 | 48,000.00 | Flat monthly fee; increase to approx. 2.5% of gross revenue |
| 6332-0000 | TELEPHONE AND INTERNET EXPENSE | 272.00 | 272.00 | 272.00 | 272.00 | 272.00 | 272.00 | 272.00 | 272.00 | 272.00 | 272.00 | 272.00 | 3,264.00 | 3,264.00 | Metro Fibernet: $200/mnth; TDS (elevator phone) $72/month |
| 6333-0000 | MISC EXPENSE-ADMIN FEES | 390.00 | 390.00 | 390.00 | 390.00 | 390.00 | 390.00 | 390.00 | 390.00 | 390.00 | 390.00 | 390.00 | 4,680.00 | 4,680.00 | Software fees; included checkscan/ACH fees. Based on LY actuals. |
| | | | | | | | | | | | | | | | Bank Fee: using a bank other than BCO recommended bank: $125 per month |
| 6373-0000 | SIGNAGE | 0.00 | 0.00 | 25.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25.00 | 25.00 | Interior sign holders, transparencies |
| 6399-9999 | TOTAL ADMINISTRATIVE EXPENSES | 4,662.00 | 4,662.00 | 4,687.00 | 4,662.00 | 4,662.00 | 4,662.00 | 4,662.00 | 4,662.00 | 4,662.00 | 4,662.00 | 4,662.00 | 55,969.00 | 55,969.00 | |
| 6400-0000 | UTILITIES | | | | | | | | | | | | | | |
| 6450-0000 | ELECTRICITY | 11,800.00 | 11,000.00 | 8,000.00 | 8,500.00 | 9,500.00 | 15,500.00 | 19,500.00 | 16,500.00 | 14,715.00 | 11,000.00 | 11,000.00 | 148,500.00 | 148,500.00 | Based on actual Jan 26 + T12 |
| | | | | | | | | | | | | | | | Revised forecasted expense, result of 2/24/26 meeting. Decrease expense -10,785 |
| 6451-1000 | SEWER AND WATER | 0.00 | 0.00 | 3,005.67 | 0.00 | 0.00 | 3,005.67 | 0.00 | 0.00 | 3,005.67 | 0.00 | 0.00 | 12,022.68 | 12,022.68 | City of GR: Billed quarterly. Included 1.5% increase over LY. |
| 6452-0000 | GAS | 8,000.00 | 5,500.00 | 3,000.00 | 1,000.00 | 500.00 | 500.00 | 500.00 | 500.00 | 600.00 | 2,500.00 | 7,776.00 | 50,000.00 | 50,000.00 | Based on Jan 26 actual (Dec 25 + Jan 26 pd in Jan 26) + T12 |
| | | | | | | | | | | | | | | | Revise expense after 2/24/26 meeting; decrease 8,724 |
| 6499-9999 | TOTAL UTILITIES | 19,800.00 | 16,500.00 | 14,005.67 | 9,500.00 | 10,000.00 | 19,005.67 | 20,000.00 | 17,000.00 | 18,320.67 | 13,500.00 | 18,776.00 | 210,522.68 | 210,522.68 | |
| 6500-0000 | BUILDING MAINTENANCE | | | | | | | | | | | | | | |
| 6525-0000 | TRASH REMOVAL | 1,500.00 | 1,439.00 | 1,455.00 | 1,455.00 | 1,455.00 | 1,455.00 | 1,455.00 | 1,455.00 | 1,455.00 | 1,455.00 | 1,455.00 | 18,800.00 | 18,800.00 | 3year contract with Republic. 8% cap on yearly increases. Contract ends 8/31/26. Total exp. increased: Jan 26 actual + contingency for overages |
| | | | | | | | | | | | | | | | Revised expense after meeting 2/24/26; decrease 1,266 |
| 6533-0000 | FIRE SAFETY MAINT & REPAIR | 0.00 | 0.00 | 0.00 | 10,000.00 | 30,297.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40,297.68 | 40,297.68 | Annual Testing (May): Fire Ext- 368.83, Emergency Exit Light- $1256, Battery load and fire alarm- $3338, Wet and dry sprinkler inspection- $1125; City of GR alarm permit- $15. Fire alarm inspection and battery load test $3,500 |
| 6533-7500 | FIRE SAFETY CONTRACT | 0.00 | 565.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 565.00 | 565.00 | Alarm monitoring: annual fee, Vanguard |
| 6538-0000 | GEN MAINT - TECHNICIAN LABOR | 200.00 | 0.00 | 0.00 | 0.00 | 200.00 | 0.00 | 0.00 | 200.00 | 0.00 | 0.00 | 200.00 | 1,243.00 | 1,243.00 | BCO tech-cover for S Dutcher: Jan 26 actual + contingency |
| 6538-5000 | GEN MAINT MATERIALS | 0.00 | 0.00 | 1,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,000.00 | 0.00 | 0.00 | 0.00 | 2,000.00 | 2,000.00 | Contingency for misc. maintenance supplies: including restroom painting refresh. |
| | | | | | | | | | | | | | | | Revise expense after meeting 2/24/26; decrease 3,500 (remove restroom refresh) |
| 6595-0000 | ELEVATOR CONTRACT | 0.00 | 1,116.00 | 0.00 | 0.00 | 1,116.00 | 0.00 | 0.00 | 1,116.00 | 0.00 | 0.00 | 2,576.00 | 6,324.00 | 6,324.00 | Elevator Service contract: 9/1/25-8/31/28. Price remains same for 2026, increase 1/1/27 and capped at 5%. |
| | | | | | | | | | | | | | | | Freight: $141 per quarter ($47 per month). CAT 1: annual (12/18/26) not included in PM contract price $1,460. Passenger: $975 per quarter ($325 per month)- includes CAT 1 (annual 8/5/26), CAT 3 (every 3 yrs 9/3/27) or CAT 5 (every 5 yrs). |
| | | | | | | | | | | | | | | | State of MI license renewal |
| 6596-0000 | PEST CONTROL | 134.00 | 134.00 | 138.00 | 138.00 | 138.00 | 138.00 | 138.00 | 138.00 | 138.00 | 138.00 | 138.00 | 1,644.00 | 1,644.00 | Rose Pest: contract increase in April. |
| 6597-0000 | JANITORIAL SUPPLIES | 1,091.67 | 1,091.67 | 1,091.67 | 1,091.67 | 1,091.67 | 1,091.67 | 1,091.67 | 1,091.67 | 1,091.67 | 1,091.67 | 1,091.63 | 13,100.00 | 13,100.00 | Indusco Supplies: based on LY usage |
| 6597-5000 | JANITORIAL CONTRACT | 4,775.00 | 4,775.00 | 4,775.00 | 4,775.00 | 4,915.00 | 4,915.00 | 4,915.00 | 4,915.00 | 4,915.00 | 4,915.00 | 4,915.00 | 58,280.00 | 58,280.00 | Reliant: contract (daily cleaning: Mon-Fri)-plan 3% inc. over LY |
| | | | | | | | | | | | | | | | WM Uniform: floor mats plan 3% inc. starting June 2026 |
| 6690-0000 | PAYROLL | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 5,600.00 | 67,200.00 | 67,200.00 | Per Jpolderman 3/17/26; on site maintenance labor |
| 6599-9999 | TOTAL BUILDING MAINTENANCE | 13,300.67 | 14,720.67 | 14,059.67 | 23,059.67 | 44,813.35 | 13,199.67 | 13,199.67 | 15,515.67 | 13,199.67 | 13,199.67 | 15,975.63 | 209,453.68 | 209,453.68 | |
| 6700-0000 | REAL ESTATE TAXES AND INSURANCE | | | | | | | | | | | | | | |
| 6710-0000 | REAL ESTATE TAXES | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 137,059.24 | 0.00 | 0.00 | 0.00 | 5,472.69 | 142,531.93 | 142,531.93 | RET + PPT: Based on 2026 TV and 2025 mills; + Drain assessment (added to Winter tax bills) |
| 6720-0000 | LIABILITY INSURANCE | 6,463.07 | 6,463.07 | 6,463.07 | 6,463.07 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 2,000.00 | 46,315.35 | 46,315.35 | Auto-Owners: 6/17/25-6/17/26-Premium lowered to approx. 2k per month result of FLS review . Hall is 83% of total premium; Hakes is 17%. Amounts are Hall only |
| 6799-9999 | TOTAL TAXES AND INSURANCE | 6,463.07 | 6,463.07 | 6,463.07 | 6,463.07 | 2,000.00 | 2,000.00 | 139,059.24 | 2,000.00 | 2,000.00 | 2,000.00 | 7,472.69 | 188,847.28 | 188,847.28 | |

6/3/2026 4:25 PM

**Hall St. 2026 OpEx Budget: proposed March 2026 v4**

Period = 01/2026 - 12/2026

| Account | Description | Feb 2026 | Mar 2026 | Apr 2026 | May 2026 | Jun 2026 | Jul 2026 | Aug 2026 | Sep 2026 | Oct 2026 | Nov 2026 | Dec 2026 | Annual Total | Grand Total | Narrative |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6800-9999 | TOTAL OPERATING EXPENSES | 44,225.74 | 42,345.74 | 39,215.41 | 43,684.74 | 61,475.35 | 38,867.34 | 176,920.91 | 39,177.67 | 38,182.34 | 33,361.67 | 46,886.32 | 664,792.64 | 664,792.64 | |
| | | | | | | | | | | | | | | | |
| 6801-9999 | TOTAL NET OPERATING INCOME | 99,710.49 | 100,990.23 | 105,040.31 | 100,800.38 | 82,650.37 | 105,984.59 | -31,805.70 | 103,917.58 | 105,284.59 | 110,389.64 | 96,284.51 | 1,068,201.82 | 1,068,201.82 | |
| 6810-0000 | FINANCIAL EXPENSES | | | | | | | | | | | | | | |
| 6820-1000 | INTEREST EXPENSE-DEBT SERVICE | 39,344.53 | 35,426.94 | 39,084.30 | 37,704.54 | 38,832.59 | 37,459.92 | 38,578.79 | 38,453.71 | 37,091.71 | 38,196.75 | 36,841.99 | 456,481.63 | 456,481.63 | LMCU-loan matures 12/31/27.According to loan schedule received 2022 |
| | | | | | | | | | | | | | | | |
| 6899-9999 | TOTAL FINANCIAL EXPENSES | 39,344.53 | 35,426.94 | 39,084.30 | 37,704.54 | 38,832.59 | 37,459.92 | 38,578.79 | 38,453.71 | 37,091.71 | 38,196.75 | 36,841.99 | 456,481.63 | 456,481.63 | |
| | | | | | | | | | | | | | | | |
| 9090-0000 | TOTAL NET INCOME | 60,365.96 | 65,563.29 | 65,956.01 | 63,095.84 | 43,817.78 | 68,524.67 | -70,384.49 | 65,463.87 | 68,192.88 | 72,192.89 | 59,442.52 | 611,720.19 | 611,720.19 | |
| | | | | | | | | | | | | | | | |
| | ADJUSTMENTS | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | |
| 2030-0000 | LIABILITIES | | | | | | | | | | | | | | |
| 2300-0000 | LONG TERM LIABILITIES | | | | | | | | | | | | | | |
| 2310-1101 | NOTES PAYABLE-PRINCIPAL REDUCTION | -28,877.52 | -32,795.11 | -29,137.75 | -30,517.51 | -29,389.46 | -30,762.13 | -29,643.26 | -29,768.34 | -31,130.34 | -30,025.30 | -31,380.06 | -362,182.97 | -362,182.97 | LMCU-loan matures 12/31/27. According to loan schedule received 2022 |
| | | | | | | | | | | | | | | | |
| 2399-9999 | TOTAL LONG TERM LIABILITIES | -28,877.52 | -32,795.11 | -29,137.75 | -30,517.51 | -29,389.46 | -30,762.13 | -29,643.26 | -29,768.34 | -31,130.34 | -30,025.30 | -31,380.06 | -362,182.97 | -362,182.97 | |
| | | | | | | | | | | | | | | | |
| 2999-9999 | TOTAL LIABILITIES | -28,877.52 | -32,795.11 | -29,137.75 | -30,517.51 | -29,389.46 | -30,762.13 | -29,643.26 | -29,768.34 | -31,130.34 | -30,025.30 | -31,380.06 | -362,182.97 | -362,182.97 | |
| | | | | | | | | | | | | | | | |
| 4999-0000 | TOTAL LIABILITIES CAPITAL | -28,877.52 | -32,795.11 | -29,137.75 | -30,517.51 | -29,389.46 | -30,762.13 | -29,643.26 | -29,768.34 | -31,130.34 | -30,025.30 | -31,380.06 | -362,182.97 | -362,182.97 | |
| | | | | | | | | | | | | | | | |
| | TOTAL ADJUSTMENTS | -28,877.52 | -32,795.11 | -29,137.75 | -30,517.51 | -29,389.46 | -30,762.13 | -29,643.26 | -29,768.34 | -31,130.34 | -30,025.30 | -31,380.06 | -362,182.97 | -362,182.97 | |
| | | | | | | | | | | | | | | | |
| | CASH FLOW | 31,488.44 | 32,768.18 | 36,818.26 | 32,578.33 | 14,428.32 | 37,762.54 | -100,027.75 | 35,695.53 | 37,062.54 | 42,167.59 | 28,062.46 | 249,537.22 | 249,537.22 | |