UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

| | |
|---|---|
| LEESTMA MANAGEMENT, LLC | Case No.: 8:26-bk-02696-CED [Lead Case] |
| ADELAIDE POINTE QOZB, LLC | Case No.: 8:26-bk-02698-CED |
| ADELAIDE POINTE BOATERS SERVICES, LLC | Case No.: 8:26-bk-02699-CED |
| ADELAIDE POINTE BUILDING 1, LLC | Case No.: 8:26-bk-02700-CED |
| WATERLAND BATTLE CREEK, LLC | Case No.: 8:26-bk-02701-CED |

Debtors.                                    *Jointly Administered*

_____/

## DEBTORS' MOTION TO APPROVE MEDIATED INTERIM SETTLEMENT AGREEMENT TERM SHEET

Leestma Management, LLC, a Florida limited liability company ("**LMF**"), Adelaide Pointe QOZB, LLC, a Michigan limited liability company ("**AP QOZB**"), Adelaide Pointe Boaters Services, LLC, a Michigan limited liability company ("**AP Boaters**"), Adelaide Pointe Building 1, LLC a Michigan limited liability company ("**AP Building**"), and Waterland Battle Creek, LLC a Michigan limited liability company ("**Waterland,**" and together with LMF, AP QOZB, AP Boaters, and AP Building, the "**Debtors**") pursuant to Bankruptcy Rule 9019 file this motion (the "**Motion**") for the entry of an order approving the terms of the Mediated Interim Settlement Agreement Term Sheet (the "**Interim Settlement Agreement**") between the Debtors, Adelaide Pointe Multi-Use, LLC, a Michigan limited liability company ("**Multi-Use**"), Adelaide Pointe Wet Marina, LLC, a Michigan limited liability company ("**Wet Marina**"), Harbor West QOZB,

LLC, a Michigan limited liability company ("**Harbor West**"), Ryan M. Leestma ("**R. Leestma**") and Emily Leestma ("**E. Leestma,**" and together with the Debtors, Multi-Use, Wet Marina, Harbor West and R. Leestma, the "**Leestma Parties**"), on one hand, and Independent Bank, ("**Independent**"), Choice One Bank ("**Choice One**"), 4Front Credit Union ("**4Front**"), Lake Michigan Credit Union ("**LMCU**"), City of Muskegon (the "**City**"), State of Michigan Department of Environment, Great Lakes & Energy ("**EGLE**"), and John Polderman Court Appointed Receiver and Proposed Chief Restructuring Officer ("**Mr. Polderman**," and together with Independent, Choice One, 4Front, LMCU, the City, and EGLE, the "**Creditor Entities**"), on the other hand (referred to herein each as a "**Party**" and collectively as the "**Parties**").

In support of the Motion, the Debtors state as follows:

## Preliminary Statement

The Debtors seek approval of an interim settlement that addresses the immediate disputes among the Parties relating to (a) turnover issues between the Debtors and Mr. Polderman and (b) operational issues related to the Adelaide Pointe Project (the "**Project**") that include (i) issues among the Debtors and the other Leestma Entities and (ii) issues among the Creditor Entities (collectively, the "**Adelaide Pointe Disputes**").

The Parties participated in a Judicial Settlement Conference ("**JSC**") ordered by the Bankruptcy Court before Chief Bankruptcy Judge Jacob A. Brown ("**Chief**

**Judge Brown**") that was held in person on June 10-11, 2026 and additional remote conferences were held on June 16, 2026 and June 22, 2026 with numerous communications prior to June 10, 2026 and afterwards. After engaging in these substantial and lengthy good-faith settlement negotiations, with Chief Judge Brown's assistance, the Parties successfully negotiated the Interim Settlement Agreement.

The Interim Settlement Agreement contemplates, among other things, that during a phase one interim period (the "**IP**") that runs from the current date to December 31, 2026, Mr. Polderman will be appointed as Chief Restructuring Officer (the "**CRO**") in the five pending Chapter 11 cases (the "**Cases**"). Mr. Polderman and the Participating Secured Lenders shall be fully and completely released from any and all claims by the Debtors, R. Leestma and E. Leestma as of the date of the Interim Settlement Agreement.

The CRO will provide interim stabilization management and retain a former City manager to assist in compliance issues with City, EGLE and related governmental entities associated with the Project. During the IP, the Debtors are not excused from obligations to comply with existing agreements with the City and EGLE and shall timely pay all taxes.  However, EGLE and the Michigan Department

Attorney General[1] ("**MDAG**") have agreed that they will take no enforcement action regarding wetland restoration and related matters for 120 days pending formal resolution of the matters in mediation, with a reservation of rights as set forth in the Interim Settlement Agreement.

The JSC will continue during the IP and the Parties have agreed to work in good faith to develop a Chapter 11 plan and/or close a restructuring/exit transaction. The injunction entered on May 19, 2026 (Doc. No. 144) in favor of R. Leestma and E. Leestma (the "**Injunction**") will be extended, and all pending litigation will be stayed until December 31, 2026.

The Debtors respectfully submit that ample basis exists to approve the Interim Settlement Agreement.

### Jurisdiction and Venue

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] While MDAG represents the Michigan Department of Natural Resources (MDNR) in this case in addition to EGLE, MDAG has made this agreement with regard to EGLE.  MDNR is not a party to this Interim Settlement Agreement.

## General Background

2.     On April 1, 2026 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division (the "**Bankruptcy Court**").

3.     Currently, the Bankruptcy Court has scheduled a trial on July 9 and 10, 2026, to resolve the following matters:

A. **The Receiver's Motion to Excuse Turnover** presented by the *State Court Appointed Receiver's Motion to (1) Excuse Receiver from Turnover Provisions; and to Suspend Bankruptcy Case* (Doc. No. 18); *Independent Bank's Concurrence and Joinder in State Court Appointed Receiver's Motion to: (1) Excuse Receiver from Turnover Provisions; and (2) Suspend the Bankruptcy Case* (Doc. No. 21); *Debtors' Opposition to Receiver's Motion to: (1) Excuse Receiver From Turnover Provisions; and (2) Suspend the Bankruptcy Case* (Doc. 28); *Debtors' Opposition to Independent Bank's Joinder in Receiver's Motion to Excuse Turnover and Suspend the Bankruptcy Case* (Doc. No. 33); *Debtors' Supplemental Opposition to Receiver's Motion to Excuse Turnover* (Doc. 71); and *Debtors' Opposition to Independent Bank Corporation's Joinder [Doc.21] in the Receiver's Motion to Excuse Turnover and Suspend the Bankruptcy Case [Doc. 18].* (Doc. No. 74).

and

**(B) Debtor's Motion to Compel Turnover** presented *by Debtors' Motion for Turnover Pursuant to Section 543* (Doc. No. 26); and *Independent Bank's Objection to Debtor' Motion for Turnover Pursuant to Section 543* (Doc. No. 70).

4.    The Bankruptcy Court also has pending contested and disputed matters relating to (a) the use of cash collateral (Doc. No. 24), (b) employment of a chief restructuring officer (Doc. No, 75, (c) enforcement of the automatic stay (Doc. No. 91), (d) employment of an operating manager of the Debtors' marina operations (Doc. No. 92), (e) extending the automatic stay (Doc. No. 94), (f) application to set officer's salary (Doc. No. 167), and (g) an adversary proceeding seeking injunctive relief (Adversary No. 8:26-ap-140-CED). There are also  numerous other matters requiring resolution that are the subject of the Adelaide Pointe Disputes.

5.     On May 29, 2026, the Bankruptcy Court entered an *Order Directing Judicial Settlement Conference and Appointing Judicial Settlement Officer* (Doc. No. 179) appointing the Honorable Jacob A. Brown as a judicial settlement officer in these cases.

**The Proposed Settlement**

6.      A true and correct copy of the Interim Settlement Agreement reached by the Parties is attached hereto as **Exhibit A**.[2] The salient terms of the Interim Settlement Agreement are described below for descriptive purposes only and interested parties should refer to the complete agreement and its terms.

7.      The Interim Settlement Agreement is a compromise, settlement, and release involving the Parties that resolves current issues and is intended to stabilize the Debtors' operations.

8.      Effective June 25, 2026, the Parties entered into the Interim Settlement Agreement, which satisfactorily and fairly resolves, during the IP, the Adelaide Pointe Disputes on the following terms, subject to approval by this Court:

(a)      Mr. Polderman will be appointed as the CRO for the Debtors and remains in place as Receiver on Hall Street and Commerce/Michigan Avenue properties with the existing property manager, Bradley, to also remain in place. There will be no Receiver sale activity of either the Hall Street or the Commerce/Michigan Avenue properties until the earlier of further agreement or expiration of the IP.

---

[2] The signature page with the City of Muskegon's agreement by its City Manager will be supplied before a hearing on this Motion and only after the City Commission approves the agreement at a special meeting that has been scheduled.

(b)    The CRO shall (i) engage and retain Frank Peterson to assist in compliance with the City, EGLE, and related governmental entities associated with the Project, including the Debtors' compliance with existing agreements with the City and EGLE and timely payment of all taxes, (ii) use Brickley Delong for the Debtors' accounting, (iii) retain Aubry Glick on staff in her current position and salary who will report to the CRO, (iv) disburse funds held by the Receiver to 4Front and Choice One and turn over revenue and allocate expenses to be paid as provided in the Interim Settlement Agreement.

(c)    The Debtors will withdraw their motion to employ a different CRO.

(d)    EGLE and the MDAG will forego for 120 days enforcement actions regarding wetland restoration and related matters and will not assess additional penalties during this time, but if no formal agreement is reached to extend deadlines, they reserve the right to assess penalties after the expiration of the 120-day period and to assert that penalties have continued to accrue during the period.

(e)    The Debtors, R Leestma and E Leestma shall fully and completely release any and all claims against Mr. Polderman and the Participating Secured Lenders as of the date of the Interim Settlement Agreement.

(f)    Mr. Polderman's fees and costs and the fees and costs of his counsel shall be paid by Independent and added to the claim balance of Independent.

8

(g)     The compensation of the CRO in the Cases will be shared among the Participating Secured Lenders with their respective portions being allowed administrative expenses and allowed to be added to their respective claim balances as provided in the Interim Settlement Agreement.

(h)     The Injunction will be extended to February 1, 2027; all pending litigation in the Bankruptcy Cases and the Michigan State Court Receivership case will be stayed until December 31, 2026; subject to certain exceptions, pending deadlines will be extended until December 31, 2026; and any limitations period tolled for the IP.

(i)     R. Leestma and E. Leestma have obligations and time periods to address issues with Independent regarding a consumer loan on a 2021 Showhauler 24QSL recreational vehicle and the debt service on the loan secured by liens on their Michigan home.

(j)     As to LMCU and the Hall Street property that is collateral for its loan, the original payoff date of November 2027 will remain unchanged, the proceeds from the Hall Street  operations will not be commingled and used solely for Hall Street expenses and debt service, and debt service will recommence based on Mr. Polderman's determination that there are sufficient reserves to support Hall Street's ongoing operations.

(k)     Except as specifically provided in the Interim Settlement Agreement, all Parties shall retain their respective claims, rights, remedies, and defenses.

**Memorandum of Law**

9.     Bankruptcy Rule 9019(a) grants the Court authority to approve post-petition settlements of claims and controversies. Under this authority, bankruptcy courts consider the overall wisdom of compromising and settling disputes arising in bankruptcy cases. *See, e.g.*, *In re Air Safety Developmental, L.C.*, 336 B.R. 843 (S.D. Fla. 2005); *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (citing *Protective Comm. for Indep. Stockholders of TM Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968)). In reviewing a proposed settlement, the Court's ultimate inquiry should be "whether the proposed settlement is fair and equitable." *In re Air Safety Developmental, L.C.*, 336 B.R. at 843 (citing *In re Gallagher*, 283 B.R. 342, 246 (Bankr. M.D. Fla. 2002)). Ultimately, the question is not whether a better settlement might have been achieved, or a better result reached if litigation pursued. Instead, the Court should approve settlements that meet a minimal threshold of reasonableness. *See e.g., In re Bicoastal Corp.*, 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993) ("This Court has broad discretion to approve a settlement or compromise, and it should do so unless the proposed settlement falls below the lowest point in the range of reasonableness.").

10.     The Eleventh Circuit specifically sets forth four criteria to be considered by the Court in determining fairness, reasonableness, and adequacy of a settlement: "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

11.     In the instant case, the terms of the Interim Settlement Agreement are fair and equitable and in the best interests of the Debtors' estates and creditors. The Interim Settlement Agreement, if approved, resolves the Adelaide Pointe Disputes and controversies during the IP and avoids continuation and uncertainty of the costly and protracted litigation of the Adelaide Pointe Disputes, where the probability of success is uncertain.

12.     The issues in the Adelaide Pointe Disputes are both novel and complex. The resolution of the Adelaide Pointe Disputes during the IP will create an opportunity for the Parties to focus on a complete resolution of the rights and claims of the Parties.

13.     Finally, as such, it is the Debtors' considered business judgment that the approval of the Interim Settlement Agreement among the Parties is fair and

11

equitable and in the best interests of the Debtors and other parties in interest in these Chapter 11 cases.

WHEREFORE, the Debtors respectfully request the entry of an order (i) granting the Motion, (ii) approving the Interim Settlement Agreement, and (iii) granting such other relief as the Court deems just and proper.

Dated:        Tampa, Florida
              June 25, 2026

                                        /s/ David S. Jennis
                                        Jennis Law
                                        David S. Jennis, Esq.
                                        Florida Bar No. 775940
                                        606 East Madison Street
                                        Tampa, Florida 33602
                                        Telephone : (813) 229-2800
                                        Email : djennis@jennislaw.com
                                        Counsel for Debtors

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that true and correct copies of the foregoing Motion have been furnished on June 25, 2026, by the Court's CM/ECF system to all creditors and parties in interest receiving noticing through the Court's CM/ECF system.

                                        /s/ David Jennis
                                        ATTORNEY

**EXHIBIT "A"**

8EU362702.DOCX

## Revised Mediator's Proposed Mediated Interim Settlement Agreement Term Sheet (June 22, 2026)

### In re Leestma Management, LLC
### Case No. 8:26-bk-02696-CED, et al

The undersigned parties (the "Parties"), subject to Bankruptcy Court approval, agree to the foregoing terms and conditions:

1.      The Parties agree to a Phase One interim settlement to run from the current date to December 31, 2026 (the "IP") with the terms and conditions set forth herein;

2.      John Polderman will be appointed as Chief Restructuring Officer ("CRO") in the five pending Chapter 11 bankruptcy cases and remain in place as Receiver on the Hall Street and Commerce/Michigan Avenue properties with existing property manager Bradley to remain in place and no Receiver sale activity of either property until earlier of further agreement or expiration of IP;

3.      The CRO shall provide interim stabilization management to all Debtor operations, provide bi-weekly financial reports, seek estimates for all work required to complete condo project, and comply with City of Muskegon and EGLE current obligations and requirements by August 15, 2026, and if capital outlay from existing secured lenders is available, start necessary work on Debtor projects and properties after giving 5 business days notice to the Debtors and other secured lenders. This Paragraph 3 does not excuse the Debtors' obligation to comply with any existing agreements with the City of Muskegon and EGLE.  The Debtors shall timely pay all taxes;

4.      Upon approval on the 9019 Motion, the CRO shall engage and retain Frank Peterson to assist in compliance with City of Muskegon, EGLE, and other potential government entity stakeholder rights, claims, and interests in the Adelaide Pointe project;

5. The Motion to approve Bob Frezza as CRO will be withdrawn in conjunction with the 9019 Motion (defined below);

6.    Compensation of the CRO in the consolidated Bankruptcy Cases will be shared among Independent Bank, Choice One Bank, and 4Front Credit Union (collectively, the "Participating Secured Lenders") with respective portions being allowed administrative expenses and allowed to be added to their respective claim balances as follows: (a) for across project expenses IB will pay 60% and Choice One Bank, and 4Front Credit Union each paying 20%, (b) for condo project, boater service building and warehouse related costs and expenses IB will bear 100%, (c) for wet marina related costs and expenses 4Front Credit Union will bear 100%, and (d) for dry marina related costs and expenses Choice One Bank will bear 100%.  The Participating Secured Lenders shall be allowed to review and challenge the expense allocations;

7.    Aubrey Glick shall remain on staff in current position and at current salary during IP and report to the CRO;

8.    Brickley Delong shall resume Debtors' accounting during IP under direction of the CRO;

9.    $37,500 of funds held by Receiver disbursed to 4Front Credit Union and $37,500 of funds held by Receiver disbursed to Choice One Bank by July 30, 2026, 50% of all revenue collected from wet marina operations during IP turned over to 4Front Credit Union, and 50% of all revenue collected from dry marina operations during IP turned over to Choice One Bank. The remaining 50% of revenue collected from the wet marina operations during IP shall be utilized to pay expenses associated with such operations and the remaining 50% of all dry marina revenue during IP shall be utilized to pay expenses associated with such operations;

10.    EGLE suspension of enforcement as follows:  EGLE and MDAG agree that they will take no enforcement action with regard to the wetland restoration and related matters in the Administrative Agreement for 120 days pending formal resolution of the matters currently in mediation.  EGLE and MDAG also agree that they will not assess additional penalties during this time; however, if no formal agreement is reached to extend deadlines in the Administrative Agreement, EGLE and MDAG reserve the right to assess penalties after the expiration of this 120-day period and to assert that penalties have continued to accrue during this 120-day period;

11.     Debtors, Ryan and Emily Leestma, the CRO, and the Participating Secured Lenders agree to work in good faith during IP to develop a Chapter 11 plan and/or close a restructuring/exit transaction.  If the Debtors have not filed a Chapter 11 plan by the end of the IP that is on agreeable terms to the Participating Secured Lenders or pays the Participating Secured Lenders in full within 2 years of a confirmation date and with debt service at the contract rate to all Participating Secured Lenders starting in January 2027, then the automatic stay under 11 U.S.C. s 362 shall be lifted as to the Participating Secured Lenders;

12.     Ryan Leestma will focus efforts on the work to be done under paragraph 11 above and work with the CRO and Frank Peterson to assist in stabilizing the project, but ultimate decisions will be made by the CRO as to all non-bankruptcy plan related matters as it relates to the Debtors only;

13.     The Injunction as set forth in the Bankruptcy Court's May 19, 2026 Order (Docket No. 144) in favor of Emily and Ryan Leestma will be extended to February 1, 2027 and the Parties will stay all pending litigation in the consolidated Bankruptcy Cases and Michigan State Court until December 31, 2026.  Any pending deadline will be extended until after December 31st, subject to Paragraph 10 above, and any limitations period tolled for the period of the IP;

14.     Ryan and Emily Leestma shall either surrender the 2021 Showhauler 24QSL recreational vehicle (the "RV") to Independent Bank on October 1, 2026 or payoff the consumer loan on the RV, which as of June 23, 2026, has a balance of $395,987.50, plus daily per diem of $44.20, along with ongoing late fees assessed on the 26th day of each month in the amount of $29.00, plus additional legal fees and expenses that may apply. Independent Bank will provide the Leestmas an updated payoff and per diem on September 1, 2026. Furthermore, Ryan and Emily Leestma shall start debt service on the HELOC on their Michigan home in the amount of $8,023/month starting on October 1, 2026 and become current by January 31, 2027, failing which Independent Bank shall be entitled to enforce its secured claims in that home.  The Leestmas' failure to make payments as set forth in this Paragraph 14 shall not operate as a breach by any of the five Chapter 11 debtors;

3 | P a g e

15.     The Debtors and Ryan and Emily Leestma shall fully and completely release any and all claims against John Polderman and the Participating Secured Lenders as of the date hereof. The CRO's fees and costs in his capacity as Receiver, along with his counsel's fees and costs, currently estimated at $350,000 for January 2026 through June 22, 2026, shall be paid by Independent Bank by June 30, 2026 and added to its claim balance. The Receiver shall, pursuant to Michigan Court Rule 2.622, file itemized statements for this time period, in the state court receivership matter, and only Independent Bank shall have standing to object to those fees and costs. All fees and costs of the CRO and his counsel and other retained professionals after June 22, 2026 shall be submitted to the Bankruptcy Court for approval;

16.     Except as specifically provided in this agreement, all parties shall retain their respective claims, rights, remedies, and defenses;

17.     As to Lake Michigan Credit Union, (i) the two-year payoff window from confirmation does not apply, and the original payoff date of November 2027 will remain in effect, (ii) Hall St. proceeds will not be commingled and will be used solely for Hall St. expenses and debt service; and (iii) Debt service will be addressed by Polderman and shall recommence to the extent Polderman determines there are sufficient reserves to support Hall St.'s ongoing operations;

18.     The above terms will be incorporated into an expedited motion to approve compromise under Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion") with participating parties agreeing to support approval and scheduled for hearing on July 9, 2026. The proposed Order granting the 9019 Motion shall include standard terms and conditions for appointment of a chief restructuring officer; and

19.     Judge Brown will remain in place as judicial settlement officer during IP as long as parties continue to comply with above terms.

ACCEPTED AND AGREED BY THE UNDERSIGNED PARTIES WITH
SIGNATURES CONTINUING THROUGH PAGE 8 BELOW:


LEESTMA MANAGEMENT, LLC
a Florida limited liability company

By:_____
        Ryan M. Leestma, Manager


ADELAIDE POINTE QOZB, LLC, a
Michigan limited liability company

By:_____
Ryan M. Leestma, Manager


ADELAIDE POINTE BUILDING I,
LLC, a Michigan limited liability
company

By:_____
Ryan M. Leestma, Manager


ADELAIDE POINTE BOATERS
SERVICES, LLC, a Michigan limited
liability company

By:_____
Ryan M. Leestma, Manager


WATERLAND BATTLE CREEK
PROPERTIES, LLC, a Michigan limited
liability company


**5 | Page**

By: _____

Ryan M. Leestma, Manager


ADELAIDE POINTE MULTI-USE,
LLC, a Michigan limited liability
company

By: _____

Ryan M. Leestma, Manager

ADELAIDE POINTE WET MARINA,
LLC, a Michigan limited liability
company

By: _____

Ryan M. Leestma, Manager


HARBOR WEST QOZB, LLC, a
Michigan limited liability company

By _____

Ryan M. Leestma, Manager


RYAN M. LEESTMA, Individually

_____


EMILY. LEESTMA, Individually

_____


INDEPENDENT BANK

_____


6 | P a g e

Denise Geers, Vice President and
Authorized Representative

CHOICE ONE BANK

Scott Jennings, Authorized Representative

4FRONT CREDIT UNION

By: _____
Lori Barton, Vice President and
Authorized Representative

LAKE MICHIGAN CREDIT UNION

By: _____
Its: _____

CITY OF MUSKEGON

By: _____
 Jonathan Seyferth. City Manager

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENT,
GREAT LAKES & ENERGY

By: _____

Denise Geers, Vice President and
Authorized Representative

CHOICE ONE BANK

_____
Scott Jennings, Authorized Representative

4FRONT CREDIT UNION

By: _____, VP
Lori Barton, Vice President and
Authorized Representative

LAKE MICHIGAN CREDIT UNION

By: _____
Its: _____

CITY OF MUSKEGON

By: _____
Jonathan Seyferth. City Manager

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENT,
GREAT LAKES & ENERGY

By: _____
Megen E. Miller

7 | Page

Denise Geers, Vice President and
Authorized Representative

CHOICE ONE BANK

_____

Scott Jennings, Authorized Representative

4FRONT CREDIT UNION

By: _____
Lori Barton, Vice President and
Authorized Representative

LAKE MICHIGAN CREDIT UNION

By: _____James C Schwind_____

Its: _Vice President, Special Assets Officer_

CITY OF MUSKEGON

By: _____
 Jonathan Seyferth. City Manager

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENT,
GREAT LAKES & ENERGY

By: _____

7 | P a g e

Denise Geers, Vice President and
Authorized Representative

CHOICE ONE BANK

_____

Scott Jennings, Authorized Representative

4FRONT CREDIT UNION

By: _____
Lori Barton, Vice President and
Authorized Representative

LAKE MICHIGAN CREDIT UNION

By: _____
Its: _____

CITY OF MUSKEGON

By: _____
Jonathan Seyferth. City Manager

STATE OF MICHIGAN
DEPARTMENT OF ENVIRONMENT,
GREAT LAKES & ENERGY

By: _____
Megen E. Miller

7 | Page

Assistant Attorney General
Michigan Department of Attorney General
Its: ___Attorney for Michigan Department of Environment, Great Lakes, & Energy___

Dated: June 24, 2026

JOHN POLDERMAN, COURT
APPOINTED RECEIVER AND
PROPOSED CHIEF
RESTRUCTURING OFFICER

_____

Its: _____


JOHN POLDERMAN, COURT
APPOINTED RECEIVER AND
PROPOSED CHIEF
RESTRUCTURING OFFICER

_____  6-24-26

**8 | P a g e**