UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

| | |
|---|---|
| Leestma Management, LLC | Case No. 8:26-bk-02696-CED [Lead Case] |
| Adelaide Pointe QOZB, LLC | Case No. 8:26-bk-02698-CED |
| Adelaide Pointe Boaters Services, LLC | Case No. 8:26-bk-02699-CED |
| Adelaide Pointe Building 1, LLC | Case No. 8:26-bk-02700-CED |
| Waterland Battle Creek, LLC | Case No. 8:26-bk-02701-CED |
| | Chapter 11 |
| Debtors | |
| _____/ | (Jointly Administered Cases) |

**NOTICE OF FILING PROPOSED ORDER GRANTING**
**MOTION TO APPROVE SETTLEMENT AGREEMENT TERM SHEET**

Independent Bank, by and through its counsel, files the attached Proposed Order

Granting Motion to Approve Settlement Agreement Term Sheet as **Exhibit A**. The attached

Proposed Order has not been approved, at this time, for submission to the Court by all Parties to the

Revised Mediator's Proposed Mediated Interim Settlement Agreement Term Sheet (June 22, 2026).

DATED this 14th day of July, 2026.

BUSH ROSS, P.A.
Post Office Box 3913
Tampa, Florida 33601-3913
(813) 224-9255 (telephone)
(813) 223-9620 (fax)
*Counsel for Independent Bank*

By:    /s/ Jeffrey W. Warren
        Jeffrey W. Warren
        Florida Bar No. 150024
        *jwarren@bushross.com*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been
furnished, via CM/ECF electronic service to the **United States Trustee**, and to those parties
receiving service via CM/ECF in the ordinary course of business, and via U.S. Mail to

8N50381.DOCX

Leestma Management, LLC, 1900 Gulf Drive North, Unit 7, Bradenton, FL 34217 on July 14, 2026.

.

/s/ Jeffrey W. Warren
Jeffrey W. Warren

8N50381.DOCX

# EXHIBIT "A"

**DRAFT Tuesday 14, 2026 a.m.**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Chapter 11

Leestma Management, LLC                     Case  No.  8:26-bk-02696-CED
[Lead Case] Adelaide Pointe QOZB, LLC       Case No. 8:26-bk-02698-CED
Adelaide Pointe Boaters Services, LLC       Case No. 8:26-bk-02699-CED
Adelaide Pointe Building 1, LLC             Case No. 8:26-bk-02700-CED
Waterland Battle Creek, LLC                 Case No. 8:26-bk-02701-CED

　　　　Debtors.
_____/            *Jointly Administered Cases*


### APPROVAL ORDER GRANTING DEBTORS' MOTION TO APPROVE MEDIATED INTERIM SETTLEMENT AGREEMENT TERM SHEET

**THIS PROCEEDING** came on for hearing on July 9, 2026, at 9:30 a.m. (the

"**Hearing**") upon the *Debtors' Motion to Approve Mediated Interim Settlement*

*Agreement Term Sheet* (Doc. No. 217) (the "**Motion**")[1] filed by Leestma

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to them in the Motion.

Management, LLC, a Florida limited liability company ("**LMF**"), Adelaide Pointe QOZB, LLC, a Michigan limited liability company ("**AP QOZB**"), Adelaide Pointe Boaters Services, LLC, a Michigan limited liability company ("**AP Boaters**"), Adelaide Pointe Building 1, LLC a Michigan limited liability company ("**AP Building**"), and Waterland Battle Creek, LLC a Michigan limited liability company ("**Waterland,**" and together with LMF, AP QOZB, AP Boaters, and AP Building, the "**Debtors**") seeking entry of an Order approving the terms of the Mediated Interim Settlement Agreement Term Sheet (the "**Interim Settlement Agreement**") between the Debtors, Adelaide Pointe Multi-Use, LLC, a Michigan limited liability company ("**Multi-Use**"), Adelaide Pointe Wet Marina, LLC, a Michigan limited liability company ("**Wet Marina**"), Harbor West QOZB, LLC, a Michigan limited liability company ("**Harbor West**"), Ryan M. Leestma ("**R. Leestma**") and Emily Leestma ("**E. Leestma,**" and together with the Debtors, Multi-Use, Wet Marina, Harbor West and R. Leestma, the "**Leestma Parties**"), on one hand, and Independent Bank ("**Independent**"), Choice One Bank ("**Choice One**"), 4Front Credit Union ("**4Front**"), Lake Michigan Credit Union ("**LMCU**"), City of Muskegon (the "**City**"), State of Michigan Department of Environment, Great Lakes & Energy ("**EGLE**"), and John Polderman as the Court Appointed Receiver ("**Receiver**") and the Proposed Chief Restructuring Officer ("**Mr. Polderman,**" and together with Independent, Choice One, 4Front, LMCU, the City, and EGLE, the

2

"**Creditor Entities**"), on the other hand (referred to herein each as a "**Party**" and collectively as the "**Parties**").

In connection with the Motion, the Court has considered the *Judicial Settlement Conference Settlement Report* (the "**Report**") (Doc. No. 216) filed by the Honorable Jacob A. Brown, Chief United States Bankruptcy Judge as the judicial settlement officer ("**Chief Judge Brown**") and the proffer of testimony of Ryan M. Leestma in support of the Motion (the "**Proffer**").

In the Motion, the Debtors seek entry of this Order (the "**Approval Order**") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure granting the Motion and approving the Interim Settlement Agreement with the Creditor Entities. At the Hearing, the Court heard the proffers of the Debtors and various counsel for the Creditor Entities and argument on the Motion. The Court directed the Parties to continue to confer and agree to the provisions of this Approval Order to implement the Interim Settlement Agreement.

Upon consideration of the Motion, the Report, the Proffer, the arguments and proffers at the Hearing, together with the record, and otherwise being fully advised in the premises, the Court finds that (a) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, and (b) this Approval Order should be entered (i) granting the Motion, (ii) approving

3

and directing the Debtors to take all necessary and appropriate steps to consummate the terms of the Interim Settlement Agreement.

Accordingly, the Court makes the following findings of fact and conclusions of law supporting the relief granted herein:

A.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      Section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure authorize the Court to approve the Interim Settlement Agreement. Accordingly, the Court concludes that it has jurisdiction to approve the Interim Settlement Agreement and enter the Approval Order.

C.      The Court finds that the Interim Settlement Agreement is intended to and does resolve certain disputes and controversies between the Debtors and the Creditor Entities. The Court also finds that the Debtors' probability of success in the Adelaide Pointe Disputes, as defined in the Motion, is not obvious or assured considering the complexity of the issues involved, and that the Debtors would bear significant expense and delay in pursuing the Adelaide Pointe Disputes without the assurance of any recovery. The Court also notes that no objections to the Interim Settlement Agreement have been filed by any creditors or parties in interest in these Bankruptcy Cases and that the Parties have constructively and collectively worked

4

on the provisions of this Approval Order. Accordingly, the Court finds and concludes that the Interim Settlement Agreement is fair and reasonable and meets the requirements for approval under *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

D.      The Court finds and concludes that public policy favors approval of the Interim Settlement Agreement, and the related relief requested in the Motion will play an integral role in facilitating the Interim Settlement Agreement because the Creditor Entities and the Debtors are unwilling to settle unless they are assured that they will be protected from certain claims and causes of action related to the Adelaide Pointe Disputes. Moreover, the Court finds and concludes that resolution of the Adelaide Pointe Disputes will clear the way for the Debtors to propose a plan or plans resulting in closing the Debtors' Estates and the Debtors' cases.

E.      Accordingly, the Court finds and concludes that the terms of the Approval Order are fair and equitable in that they are limited to ensuring that the parties to the Interim Settlement Agreement will be assured that they will be protected from certain claims related to the settled disputes or the Bankruptcy Cases.

F.      The Court further finds that the employment of John Polderman as Chief Restructuring Officer is in the best interests of the Debtors, their estates, creditors, and parties in interest, is an integral component of the Interim Settlement Agreement, and is necessary to facilitate the successful implementation of the

restructuring contemplated therein. The Court also approves the CRO's retention of Alberto ("Al") F. Gomez, Jr., and the law firm of Johnson Pope Bokor Ruppel & Burns, LLP as counsel for CRO.

Accordingly, it is **ORDERED**:

1.      The Motion is **GRANTED,** as provided in this Approval Order, on a final basis.

2.      The Interim Settlement Agreement, and all the terms and conditions thereof, are hereby **APPROVED,** as provided in this Approval Order.

3.      The Debtors have the full power and authority to deliver all other documents contemplated in the Interim Settlement Agreement to consummate the transactions contemplated therein, without further Order of the Court.

4.      Pursuant to the Interim Settlement Agreement, Mr. Polderman is hereby appointed to serve as the Chief Restructuring Officer ("**CRO**") for the Debtors between June 23, 2026, and December 31, 2026 (the "**Interim Period**") and is authorized to perform the duties and exercise the authority set forth in this Approval Order to evaluate and implement strategic and tactical options to preserve asset value and maximize recoveries to stakeholders as a fiduciary of the Debtors' estates and will comply with the requirements of the Bankruptcy Code and applicable rules, including 28 U.S.C. § 959(b), and including the following services:

6

A.      Oversee and manage the activities of the Debtors relating to the Adelaide Pointe Project; specifically the CRO shall provide interim stabilization management to all operations of the Adelaide Pointe Project, provide bi-weekly financial reports, seek estimates for all work required to (i) complete the condominium project owned by AP Building, and (ii) comply with City and EGLE current obligations and requirements by August 15, 2026, or a later date accepted and approved by the City and EGLE, and if capital outlay is available, start necessary work on the Adelaide Pointe Project and properties after giving five (5) business days written notice to the Leestma Parties, City, EGLE and other secured lenders. Nothing in this Approval Order nor the appointment of the CRO by this Approval Order excuses the Debtors' obligation to comply with any existing agreements with the City and EGLE, except as modified by Paragraph 22, below, or otherwise affect the City's, EGLE's, or Michigan Department Attorney General's ("**MDAG**") rights, authority, or powers as a governmental unit, and the Debtors remain responsible for and are obligated to timely pay all taxes.

B.      Prepare and analyze cash flow and financial projections related to liquidity needs for the Adelaide Pointe Project, including related budget to actual variance analysis;

C.      Assist with data collection and information gathering related to the Adelaide Pointe Project;

7

D.      Advise and assist the Leestma Parties, and professionals retained by the Debtors upon application and approval of the Court, in developing, negotiating and executing a Chapter 11 strategy and assisting with the Debtors' compliance with the Bankruptcy Code, applicable rules, and the United States Trustee Chapter 11 "Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees;"

E.      Provide information deemed by the CRO to be reasonable and relevant to stakeholders and consult with key constituents;

F.      Continue as signatory and with check writing authority on any bank accounts held or created by the Debtors or the Receiver, including working with and assisting the Debtors on closings of pre-petition accounts and opening of Debtor in Possession bank accounts with approved banking depositories and assisting the Debtors' compliance with the requirements of the United States Trustee regarding banking arrangements. To the extent the CRO seeks to maintain any existing prepetition bank accounts, the CRO shall file an appropriate motion seeking Court authority to maintain any prepetition accounts required by the CRO and the Interim Settlement Agreement.

G.      Assist in preparation of reports to the Court on the status of implementation of restructuring initiatives and render such general business consulting or such other assistance to the Leestma Parties as necessary.

H.      Work with both the Leestma Parties and with Independent, 4Front, and Choice One (collectively, the "**Participating Secured Lenders**") during the Interim Period to develop a Chapter 11 plan (the "**Plan**") that is (i) acceptable to the Participating Secured Lenders or (ii) that (x) begins debt service payments at the contract rate to the Participating Secured Lenders on January 1, 2027, on all loans to the Debtors by the Participating Secured Lenders and (y) satisfies in full all claims of the Participating Secured Lenders within two (2) years of the confirmation date of the Plan.

5.      The failure of the Debtors to satisfy the conditions of Paragraph 4.H of this Approval Order regarding required payments to any of the Participating Secured Creditors shall constitute cause to terminate the automatic stay under Section 362 of the Bankruptcy Code as to the collateral of such Participating Secured Creditor upon the filing of a declaration of default by such Participating Secured Creditor in these Cases and such Participating Secured Creditor is authorized to take any and all steps necessary to exercise any and all *in rem* rights it may have in the collateral. Provided, the Participating Secured Lender shall not seek or obtain any *in personam* relief against the Debtors. The 14-day stay period under Bankruptcy Rule 4001(a)(4) is waived.

6.      Mr. Polderman's appointment as CRO is conditioned on the following terms, which apply notwithstanding anything in the Motion to the contrary:

9

A.    Mr. Polderman shall not act in any other capacity (for example, and without limitation, as a financial advisor, claims agent/claims administrator, or investor/acquirer) in connection with the above-captioned cases.

B.    In the event the Parties seek to have Mr. Polderman assume positions that are different than the position(s) disclosed in the Motion and approved by this Approval Order, or to materially change the terms of the engagement by either (i) modifying the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the engagement, a motion to modify the retention shall be filed.

C.    Mr. Polderman shall file with the Court, with copies to the United States Trustee ("**U.S. Trustee**"), a report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

D.    No principal, employee or independent contractor of Mr. Polderman and his firm, Stevenson & Bullock, P.L.C. (the "**Stevenson Firm**") or its affiliates shall serve as a director of any of the above-captioned Debtors during the pendency of the above-captioned cases.

E.    Mr. Polderman shall file with the Court and provide notice to the U.S. Trustee reports of compensation earned and expenses incurred monthly

10

("**Compensation Report**"). Such reports shall contain summary charts which describe the services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, (iii) be organized by project category as provided in Paragraph 17 of this Approval Order, and (iv) otherwise comply with the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10/hour increments and the corresponding charge (time multiplied by hourly rate) for each task; where personnel are providing services at a flat rate, the time entries shall be kept in hourly increments. The Compensation Report shall be subject to review by the Court in the event an objection is filed.

F.     The Debtors, or if funds are not available the applicable secured creditor, is authorized and directed, to pay eighty percent (80%) of amounts invoiced by Mr. Polderman and his counsel for fees and expenses incurred if (i) no objections to the Compensation Report are received fourteen (14) days after the filing date or (ii) if an objection is filed, upon the Court's approval of such amounts   or a withdrawal of such objection.

11

G.     The CRO and his associated professionals shall file interim fee applications every one hundred (120) days. All interim compensation and reimbursement of expenses received by the CRO and his associated professionals shall remain subject to final application and approval by the Court.  The CRO understands that he will be required to file a final fee application and request for reimbursement of expenses in accordance with section 330 of the Bankruptcy Code.

H.     Success fees, transaction fees, or other back-end fees, if any, shall be considered by the Court at the conclusion of the cases on a reasonableness standard and are not being pre-approved by entry of this Approval Order. No success fee, transaction fee or back-end fee shall be sought upon conversion of the cases, dismissal of the cases for cause, or appointment of a trustee.

I.     The Debtors are permitted to indemnify those persons serving as executive officers on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws and applicable state law, along with insurance coverage under any Debtors' D&O policy.

J.     There shall be no indemnification of Mr. Polderman or the Stevenson Firm or its affiliates.  However, the Debtors agree and the Court orders that Mr. Polderman and the Stevenson Firm, and its employees, shall have no liability (whether direct or indirect, in contract or tort or otherwise) to the Debtors for or in connection with the engagement of Mr. Polderman or the Stevenson Firm, except to

12

the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily and directly from gross negligence or willful misconduct, and in no event will Mr. Polderman or the Stevenson Firm or its employees have any liability to the Debtors for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).

K.     For a period of three (3) years after the conclusion of the engagement, neither Mr. Polderman nor the Stevenson Firm nor any of its affiliates shall make any investment in the Debtors or the Reorganized Debtors.

L.     Mr. Polderman and the Stevenson Firm shall disclose all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to the Debtors, their creditors, or other parties in interest. The obligation to disclose identified in this subparagraph is a continuing obligation.

7.     Upon application and approval by the Court, the CRO, on behalf of the Debtors, shall engage and retain Frank Peterson to assist in compliance by the Leestma Parties with the City, EGLE, and related governmental entities associated with the Adalaide Pointe Project, including the Leestma Parties' compliance with existing agreements with the City and EGLE and timely payment of all taxes.

13

8.     Upon application and approval of the Court, the CRO, on behalf of the Debtors, shall engage Brickley Delong for the Leestma Parties' accounting related to the Adelaide Pointe Project provided that the Debtors are not required to pay Brickley Delong for unpaid prepetition fees, and for accounting for calendar year 2026.

9.     The CRO, on behalf of the Debtors, shall retain Aubrey Glick on the staff of the Leestma Parties in her current position and salary with Aubrey Glick reporting to the CRO.

10.     The CRO, on behalf of the Debtors, for the pre-Interim Period, shall disburse by July 30, 2026, fifty percent (50%) of the funds currently held in the Choice One bank account for the Adelaide Pointe Wet Marina (50% of approximately $96,000.00) by the Receiver to 4Front and fifty percent (50%) of the funds currently held in the Choice One bank account for the Adelaide Pointe Dry Marina (50% of approximately $134,000.00) by the Receiver to Choice One.

11.     The CRO, on behalf of the Debtors, shall turn over fifty percent (50%) of all revenue collected from wet marina operations during the Interim Period to 4Front on the last business day of the following month, and the remaining fifty percent (50%) of all revenue collected from wet marina operations during the Interim Period shall be utilized by the CRO to pay the Debtors' expenses associated with such operation in consultation with 4Front.

14

12. The CRO, on behalf of the Debtors, shall turn over fifty percent (50%) of all revenue collected from dry marina operations during the Interim Period to Choice One on the last business day of the following month, and the remaining fifty percent (50%) of all revenue collected from dry marina operations during the Interim Period shall be utilized by the CRO to pay the Debtors' expenses associated with such operations in consultation with Choice One..

13. The Parties have agreed that Mr. Polderman shall remain in place as Receiver appointed by Kent County Circuit Court Judge Curt A. Benson in Michigan in Case No. 25-20760-CBB (the "**Michigan State Receivership Case**") by *Order Appointing Receiver* entered on January 30, 2026. With respect to (a) the real property commonly known as 401 Hall Street, S.W., Grand Rapids, Michigan (the "**Hall Street Property**"), and (b) the real property commonly known as 77 Michigan Avenue, Battle Creek, Michigan (the "**Commerce/Michigan Avenue Property**"), the Parties have agreed that the Receiver shall continue using the existing property manager, Bradley Company, to manage and provide reporting regarding both properties. There will be no Receiver sale activity of either the Hall Street Property or the Commerce/Michigan Avenue Property until the earlier of further agreement or expiration of the Interim Period.

14. The Parties have agreed that as to LMCU and the Hall Street Property that is collateral for LMCU's loan, (a) the original payoff date of November 2027

15

will remain unchanged, (b) the proceeds from the Hall Street Property operations will not be commingled and will be used solely for Hall Street Property expenses and debt service, and (c) debt service will recommence based on Mr. Polderman's determination that there are sufficient reserves to support the Hall Street Property's ongoing operations.

15. The Receiver's fees and costs, and the fees and costs of the Receiver's counsel, incurred prior to the Interim Period shall be paid by Independent promptly following entry of this Approval Order, and added to the claim balance of Independent against the Debtors. The Receiver, pursuant to Michigan Court Rule 2.622, shall file itemized statements for his services through June 22, 2026, in the Michigan State Receivership Case, and only Independent shall have standing to object to those fees and costs.

16. Beginning with the Interim Period, the CRO's fees and costs, and the fees and costs of his counsel and other retained professionals, incurred during the Interim Period (collectively, the "**CRO's Fees and Expenses**") shall be submitted upon application to and approval by the Court following the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330. The (a) CRO, (b) his counsel, and (c) other professionals engaged by the CRO for the benefit of the Debtors shall segregate their time and expenses for reporting and allowance purposes by the following categories:

16

(i) services that relate to the entire Adelaide Pointe Project (the "**Shared Project Expenses**"), (ii) services that relate only to the Condominium property, the boaters services building and/or the warehouses (the "**Independent Expenses**"), (iii) services that relate only to the wet marina (the "**4Front Expenses**"), and (iv) services that relate only to the dry marina (the "**Choice One Expenses**").

17.     The Participating Secured Lenders shall share and pay the CRO's Fees and Expenses that are allowed, with Independent paying sixty percent (60%) of the Shared Project Expenses during the Interim Period, and 4Front and Choice One each paying twenty percent (20%) of the Shared Project Expenses during the Interim Period. All amounts paid by the Participating Secured Lenders for the CRO's Fees and Expenses shall be added to the claim balance of the respective Participating Secured Lender. The Participating Secured Lenders shall be allowed to review and challenge the expense allocations.

18.     Independent will pay one hundred percent (100%) of the Independent Expenses, 4Front will pay one hundred percent (100%) of the 4Front Expenses, and Choice One will pay one hundred percent (100%) of the Choice One Expenses during the Interim Period.   All amounts paid by the Participating Secured Lenders for their respective Independent Expenses, 4Front Expenses and Choice One Expenses shall be added to the claim balance of the respective Participating Secured

Lender. The Participating Secured Lenders shall be allowed to review and challenge the expense allocations.

19.     4Front's liability for Shared Expenses and 4Front Expenses shall not in any event exceed fifty percent (50%) of all revenue collected from wet marina operations during the Interim Period as outlined in Paragraph 11 above. Choice One's liability for Shared Expenses and Choice One Expenses shall not in any event exceed fifty percent (50%) of all revenue collected from dry marina operations during the Interim Period as outlined in Paragraph 12 above.

20.     For the avoidance of doubt, the CRO shall not pay, and the Participating Secured Lenders are not responsible for, any expenses relating to the Multi-Use Building, including, but not limited to, employees, contract labor, payroll taxes, maintenance, utilities, insurance, and taxes.

21.     The Debtors hereby withdraw the *Debtors' Application to Employ Chief Restructuring Officer* (Doc. No. 36).

22.     EGLE and MDAG have agreed to forego for 120 days enforcement actions regarding wetland restoration and related matters and will not assess additional penalties during this time (the "**Suspension**"). But, if no formal agreement is reached to extend deadlines, EGLE and MDAG reserve the right to assess penalties after the expiration of the 120-day period and to assert that penalties have continued to accrue during the Suspension.

18

23.    The injunction entered by the *Interim Approval Order Granting in Part Debtors' Emergency Motion for an Approval Order (I) Extending the Automatic Stay under 11 U.S.C. § 362(a) to Ryan M. Leestma, or Alternatively (II) Granting a Preliminary Injunction under 11 U.S.C. §105(a) Enjoining Independent Bank from Pursuing Personal-Liability Actions* (Doc. No. 144) is extended to February 1, 2027 (the "**Injunction Extension**"); all pending litigation in the Bankruptcy Cases and the Michigan State Court Receivership case will be stayed until December 31, 2026 (the "**Litigation Pause**"); any pending court deadline in the Michigan State Receivership Case or the Bankruptcy Cases, with the exception of the Suspension, is extended until December 31, 2026 (the "**Deadline Extension**"); and any limitations period tolled for the Interim Period (the "**Tolling**").

24.    R. Leestma and E. Leestma, as Parties to the Interim Settlement Agreement, consent to the jurisdiction of the Court, and have agreed that on or before October 1, 2026, to either (a) surrender the 2021 Showhauler 24QSL recreational vehicle (the "**RV**") to Independent or (b) satisfy in full the consumer loan secured by the RV having a balance of $395,987.50 as of June 23, 2026, plus daily per diem of $44.20, along with ongoing late fees assessed on the 26th day of each month in the amount of $29.00, plus additional legal fees and expenses that may apply (the "**RV Resolution**"). Independent shall provide R. Leestma and E. Leestma with an updated payoff and per diem for the RV Resolution on September 1, 2026.

19

25.     R. Leestma and E. Leestma have agreed to start monthly debt service payments to Independent on the HELOC on their Michigan home, more commonly known as 1599 Westwind Court, Muskegon, Michigan 49445 (the "**Michigan Home**"), in the amount of $8,023 per month on October 1, 2026, and to become current on missed payments by January 31, 2027 (the "**Michigan Home Resolution**").

26.     The failure of R. Leestma and E. Leestma to satisfy the conditions of the Interim Settlement Agreement and Paragraph 24 and 25 of this Approval Order regarding required payments to Independent related to the RV Resolution and/or the Michigan Home Resolution shall constitute cause to terminate the Injunction as to the RV and/or  the Michigan Home upon the filing of a declaration of default by Independent in these Cases and Independent is authorized to take any and all steps necessary to exercise any and all rights it may have in the RV and the Michigan Home and against R. Leestma and E. Leestma, in their individual capacity, relating to the RV Resolution and/or the Michigan Home Resolution. Provided, however, that a failure by R. Leestma and E. Leestma to perform either the RV Resolution or the Michigan Home Resolution shall not operate as a breach by the Debtors of their obligations under the Interim Settlement Agreement and this Approval Order.

27.     In consideration of the Suspension, the Injunction Extension, the Litigation Pause, the Deadline Extension, the Tolling, the RV Resolution and the

Michigan Home Resolution, the full and complete release by the Debtors, R. Leestma and E. Leestma of all claims against Mr. Polderman, the Stevenson Firm, and the Participating Secured Lenders as of June 23, 2026 (the "**Related Relief**") has become effective.

28.     *The Related Relief is **APPROVED** in all respects and this Approval Order shall have the effect of (a) forever releasing any and all claims (including derivative claims) as of June 23, 2026, by the Debtors, R. Leestma and E. Leestma against Mr. Polderman, the Stevenson Firm, and the Participating Secured Lenders; and (b) permanently enjoining the Debtors, R. Leestma and E. Leestma, and each of their respective heirs, successors, and assigns from instituting or maintaining any legal or quasi-legal action against Mr. Polderman, the Stevenson Firm or the Participating Secured Lenders in or before any court, administrative agency seeking recovery related to the Adelaide Pointe Disputes as of June 23, 2026, any part thereof, or any interest therein; provided, however, for the avoidance of doubt, the Related Relief shall not include (i)  any claim arising out of or expressly preserved under the Interim Settlement Agreement and this Agreed Order, including any claims that arise from acts that occurred on or after June 23, 2026, and (ii) any claim by a creditor of the Debtors, R. Leestma and E. Leestma that is a direct claim by that creditor against Mr. Polderman, the Stevenson Firm, or the Participating Secured Lenders.*

21

29.     Except as specifically provided in the Interim Settlement Agreement and this Approval Order, all Parties shall retain their respective claims, rights, remedies, and defenses.

30.     Chief Judge Brown shall remain engaged in the ongoing judicial settlement process and provide updated reports as significant progress is made.

31.     In the event of any conflict between the terms and provisions of the Interim Settlement Agreement, and as such terms and provisions are summarized in the Motion, and the actual terms and provisions of this Approval Order, the actual terms and provisions of this Approval Order shall control.

32.     This Court retains exclusive jurisdiction to implement, interpret, or enforce this Approval Order.

Attorney David Jennis is directed to serve a copy of this Approval Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this Approval Order.

22

8N49231.DOCX