UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Leestma Management, LLC | Case No. 8:26-bk-02696-CED [Lead Case] |
| Adelaide Pointe QOZB, LLC | Case No. 8:26-bk-02698-CED |
| Adelaide Pointe Boaters Services, LLC | Case No. 8:26-bk-02699-CED |
| Adelaide Pointe Building 1, LLC | Case No. 8:26-bk-02700-CED |
| Waterland Battle Creek, LLC | Case No. 8:26-bk-02701-CED |
| Debtors. | (Jointly Administered) |

_________________________________/

**DEBTORS' EMERGENCY MOTION TO ENFORCE OR EXTEND THE AUTOMATIC STAY, INCLUDING THE EXTENSION OF THE STAY TO MULTI-USE AND ITS PROPERTY IF NECESSARY, AND FOR CIVIL CONTEMPT SANCTIONS PURSUANT TO SECTIONS 105 AND 362 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, file this motion (the "Motion") to enforce or extend the automatic stay and for sanctions with respect to secured creditor West Shore Bank ("Westshore"), pursuant to Sections 105 and 362 of title 11 of the United States Code (the "Bankruptcy Code") (a) enforcing the automatic stay regarding Westshore's knowing foreclosure of the multi-purpose building owned by Adelaide Pointe Multi-Use, LLC ("Multi-Use") that is an integral component of the Adelaide Project (as defined below), (b) awarding sanctions and other appropriate relief in connection with the willful violation of the automatic stay, and (c) granting related relief, and in support hereof, Debtors state as follows with respect to secured creditor Westshore.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are Sections 105(a) and 362 of the Bankruptcy Code and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3. On April 1, 2026 (the "Petition Date"), the Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code.

4. The Debtors are operating their businesses and managing their property as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code, subject to orders of this Court and orders approving John Polderman as CRO of the Debtors' entities.

5. The debtors together comprise Adelaide Point (the "Project") in which Multi-Use is an affiliated non-debtor entity. Adelaide Pointe QOZB, LLC ("QOZB") owns 99% of Multi-Use and Leestma Management, LLC ("Leestma") owns 1% of Multi-Use. Both owning entities are debtors, with affiliated non-debtor entities ("ANDE").

6. Multi-Use is the owner of a multi-purpose building (the "Multi-Use Building") as part of the Project in which the use of the building benefits the Project. Special events such as weddings are hosted there. Multi-Use also owns property and conducts business where it utilizes an alcohol license to sell alcoholic beverages, all of which is revenue generating and are amenities to the project.

7. Westshore is a secured creditor of the debtors who partially participated in a judicial settlement conference in these Bankruptcy Cases conducted by Chief Judge Brown. Westshore was not one of the secured creditors who joined as parties to the Interim Settlement Agreement. Although Westshore did not approve, it had notice of the automatic stay.

8. Notwithstanding, Westshore published a notice of foreclosure for the Multi-Use Building that serves as an amenity to the Project. The sale is scheduled for September 18, 2026.

## RELIEF REQUESTED

9. Through this Motion, and pursuant to Sections 105 and 362 of the Bankruptcy Code and this Court's inherent powers, the Debtors request this Court (a) enforce the automatic stay regarding Westshore's attempted foreclosure of the Multi-Use Building (b) awarding sanctions in connection with the willful violation of the automatic stay, and (c) grant such further relief to the Debtors as is appropriate. In the alternative, Debtors request that the Court extend the stay to the Multi-Use Building and Multi-Use under section 105(a) of the Bankruptcy Code.

## BASIS FOR RELIEF

### I. Westshore's Foreclosure Action Against the Subsidiary Violates the Automatic Stay

The automatic stay under 11 U.S.C. § 362(a) operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." Section 362(a)(3) extends beyond actions directed solely at the debtor and "reaches farther, encompassing every effort to 'exercise control over property of the estate." In re Aearo Techs. LLC, 642 B.R. 891 (Bankr. S.D. Ind. 2022). All legal or equitable interests of the debtor in property including any "proceeds, product, offspring, rents, or profits of or from property of the estate" constitute estate property. 11 U.S.C. § 541.

QOZB and Leestma Management ownership of Multi-Use and the Multi-Use Building is property of the Debtors estate. The Debtors hold 100% of the Multi-use's ownership interest, giving it complete legal and equitable rights in the subsidiary. Multi-Use and its property, including the Multi-Use Building and alcohol license, generate revenue integral to the Project in which the debtor entities participate, as attached proceeds or profits of estate property. The Debtors submit that the Multi-Use Building and the right to use and operate it and its licenses are revenue generating for the benefit of the Project.

Westshore's foreclosure proceeding exercises control over estate property. The Sixth Circuit has interpreted § 362(a)(3) to automatically stay actions against non-debtors when the creditor seeks to obtain possession of or exercise control over the debtor's property through the action. Harker v. Eastport Holdings, LLC (In re GYPC, Inc.), 634 B.R. 983. Actions prohibited under § 362(a)(3) are not limited to exercising direct control over estate property but include acts that have an "adverse impact" on estate property. Harker v. Eastport Holdings, LLC (In re GYPC, Inc.), 634 B.R. 983.

Even if the automatic stay does not generally extend to a non-debtor subsidiary, unusual circumstances and an identity of interests allow Courts to apply the § 362(a) stay. The automatic stay prevents actions where there is such an identity of interests between the debtor and non-debtor entities that any relief in state court would necessarily affect a bankruptcy settlement. In re Nueman, 128 B.R. 333 (S.D.N.Y 1991)

Foreclosure of any lien on to the Multi-Use Building will strip the Debtors of the value of their ownership interest in the subsidiary and any lien on it, and terminate the subsidiary's ability to operate the special-events business and potentially utilize the alcohol license. Such foreclosure would directly diminish the value of the Debtors ownership stake and eliminate the revenue stream

the Project generates for the estate. Although courts are reluctant to enforce an automatic stay to a non-debtor merely on affected value, when a judgment against a third-party would effectively operate to foreclose on property of the bankruptcy estate, depriving the debtor of an interest in property, that action is barred. In re Bialac, 712 F.2d 426 (9th Cir. 1983).

The foreclosure here terminates the Debtors property rights in the subsidiary and destroys the value the subsidiary's operations contribute to the estate. Accordingly, Westshore's efforts to foreclose are barred by Section 362 and 362(a)(3).

## II. Westshore Willfully Violated the Automatic Stay and Should Pay Actual Damages as Approved by this Court

Section 362(k) provides that that an individual injured by any willful violation of a stay provided by § 362 shall recover actual damages and, in appropriate circumstances, may recover punitive damages. 11 U.S.C. § 362. Relief for damages incurred by a non-individual from a violation of the automatic stay lies with the court's contempt power and Section 105 of the Bankruptcy Code, and such damages have frequently been awarded under those provisions.

A violation of the automatic stay is willful if the party knew the automatic stay was invoked and intended the actions which violated the stay. In re Allied Holdings, Inc., 355 B.R. 372. Under § 362, a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional provides for damages. Brown v. Chesnut (In re Chesnut), 422 F.3d 298. Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay provided under § 362 of the Bankruptcy Code.

When a creditor has actual notice of the bankruptcy case, any intentional act or omission that violates the automatic stay is willful. In re Smith, 636 B.R. 521. A party's subjective, good

faith belief that it had a right to engage in the violating conduct is irrelevant. In re Smith, 636 B.R. 521.

Here, Westshore had actual notice of Debtors bankruptcy filing on the petition date. Despite this knowledge, Westshore commenced through publication a foreclosure action against Multi-Use scheduled for September 18, 2026. The filing was an intentional act. Westshore's position regarding the application of the stay to a non-debtor subsidiary does not excuse the violation.

Under Section 105(a), a bankruptcy court has the authority to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. The Eleventh Circuit has held that Section 105(a) provides an appropriate basis for an award of damages for a willful violation of the automatic stay when the party injured by the violation is not an "individual" within the meaning of § 362(k) "to the extent that such awards are 'necessary and appropriate' to carry out the provisions of the Bankruptcy Code." In re Allied Holdings, Inc., 355 B.R. 372. In the context of this case, any uncertainty of Westshore would not constitute a "fair ground of doubt" under Taggart v. Lorenzen, 587 U.S. 554 (2019).

The Debtors seek an award of actual damages, including attorneys' fees and costs incurred in responding to the foreclosure action, investigating Westshore's conduct, and bringing this motion. Such relief is necessary and appropriate to carry out the provisions of the Code and to preserve the integrity of the automatic stay.

## III. In the Alternative, the Court Should Extend the Stay Protection to Multi-Use and Westshore's Efforts to Foreclose

Although the automatic stay is extremely broad in scope and should apply to almost any type of formal or informal action against the debtor or the property of the estate, if the Court finds

that the automatic stay does not apply to Multi-Use's building, then the Court may extend the stay to prohibit Westshore from proceeding with the foreclosure.

The Bankruptcy court has broad powers under Section 105 to extend the stay as to Multi-Use.

Accordingly, the Court should enforce Section 362(a)(3) stay as to Multi-Use, in the alternative, extend and prohibit Westshore from proceeding with the foreclosure action.

**WHEREFORE**, the Debtors respectfully request the entry of an order (a) enforcing or extending the automatic stay to Westshore's foreclosure action, (b) awarding sanctions in connection with a willful violation of the automatic stay; and (c) granting such other and further relief as the Court deems appropriate.

Dated this 20th day of August, 2026.

*<u>/s/ David S. Jennis</u>*
David S. Jennis
Florida Bar No. 775940
**JENNIS MORSE**
Address: 606 East Madison Street
Tampa, FL 33602
Email: djennis@jennislaw.com
ecf@jennislaw.com
Telephone: (813) 229-2800

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished, via CM/ECF electronic service to **United States Trustee** and to any other parties receiving notice via CM/ECF on this this 20th day of August, 2026.

*<u>/s/ David S. Jennis</u>*
David S. Jennis