## Executive Summary

This report evaluates the technical feasibility of the wetland-establishment obligations imposed on Adelaide Pointe (AP) under EGLE Administrative Consent Agreement ACO-05963 and the underlying inland-lakes permit (WRP036459). The obligations require establishing vegetated emergent and submergent wetland communities on two engineered peninsulas extending into Muskegon Lake at 700 Adelaide Circle, Muskegon MI 49441.

Seventeen independent lines of analysis — spanning long-record buoy data from NDBC 45007 (45 years), water-level data from NOAA Holland 9087031 (90 years), the agency-published MIKE 21 model results from Edgewater Resources (2022), modern linear-wave-theory bed-shear analysis, EurOtop 2018 overtopping engineering check, Monte Carlo plant-establishment simulation with species-specific tolerance compilation, and forensic examination of the agency's own Survey123 instrument — converge on a single technical conclusion – it is not possible.

### Principal Finding

The wetland-establishment obligation under ACO-05963 cannot be met through any planting, soil-amendment, or grading approach that conforms to the order's explicit and implicit constraints. The site's wave climate, bed shear, water-level variability, and ice regime each independently exceed the tolerance envelope of the wetland species the order presupposes. **Year-1 cohort mortality is >99% for every species in the implied Mix A and Mix B lists; five-year establishment probability is below 0.1%.** The agency's own Survey123 instrument, when applied with actual input (and not the hard-coded suppressive conditions within it's code), classifies the AP shoreline as "higher energy" — the same classification triggering the agency's Biotechnical (Higher-Energy) bioengineering specification, which AP's existing rock tip already conforms to. **Additionally, the agency's own catalog of bioengineering precedent (the EGLE Bioengineering Story Map) contains no comparable site; AP is one of one.**

### §ES-1 Seventeen independent lines of analysis

Each is developed in full in the corresponding section.

**Table 1.** Seventeen independent lines of analysis, each developed in detail in the indicated section.

| Line of analysis | Summary finding |
|---|---|
| Wave climate convergence (§3, §5) | Four independent methods — the agency's MIKE 21 spectral model (Edgewater 2022), USACE textbook SMB hindcast at AP fetch and depth, the EGLE Survey123 form's native output, and a Gumbel extreme-value analysis on 45 yr of NDBC 45007 wave data — produce $H_s$ ranging from 1.85 ft (EGLE form) to 3.72 ft (NDBC EVA). The form is the lowest by a wide margin, categorically inconsistent with the agency's own MIKE 21 result. |
| Bed shear at design wave (§8) | At $H_s$=3.0 ft, $T_p$=3.0 s, the form's hard-coded 50-ft depth places the wave in deep water with $\tau_b$≈0.001 Pa. At AP nearshore depth (8 ft), $\tau_b$=2.9 Pa — 18× sand motion threshold. At the wetland-zone depth (3 ft of water at OHWM), $\tau_b$=13 Pa — **82× the threshold of motion.** |



Exhibit B

| | |
|---|---|
| Water-level variability (§7) | The 90-yr Holland record shows record-high 583.02 ft IGLD85 (April 2020) and record-low 575.42 ft IGLD85 (Dec 1964) — 7.6 ft range. Any planted bench at fixed OHWM is exposed to dry conditions for years during low-water phases and submerged 1.5+ ft above design elevation during high-water phases. |
| Run-up and slope geometry (§6) | Existing 1:1.5 to 1:3 lakeward face produces Hunt run-up of 4–8 ft above SWL at the design wave. EGLE's mandated 1:10 grade reduces run-up magnitude but extends footprint inland and creates the shallow-water depths at which bed shear is most destructive (§8). |
| Ice regime (§9) | Lake Muskegon develops 6–18 in seasonal ice. Ice thrust, plucking, and scour at the lakeward face annually remove 1–3 in topsoil and uproot vegetation. The mandate provides no ice-tolerance criterion. |
| Full plant tolerance + Monte Carlo establishment (§10) | Eleven representative Mix A and Mix B species evaluated against AP physics. **Year-1 cohort mortality is 100% for every species; five-year establishment probability is below 0.1%.** Species exceedance ratios are 3–6× for waves, 5–14× for bed shear, 4–9× for boat wake, 5–10× for ice. **No species can establish at AP under any plausible parameter combination if they are exposed to site wave energy.** |
| EGLE form's own output under honest input (§13) | The form's wakeboard rule (XLSForm row 23) hardcodes a boat-wave height of 2.1 ft when wakesurfing occurs within 200 ft — the daily AP regime. With AP's shoreline geometry (2-ft contour <50 ft from shore), the multiplier is 1.0. **The form's own output, with honest inputs, classifies AP as "higher energy"** (>2 ft) — the same classification triggering the agency's high-energy bioengineering spec, which AP's rock tip and lakeward peninsula elevations already comply with. |
| AP vs the EGLE Bioengineering Story Map — one of one (§11) | EGLE's catalog of 26 bioengineering precedents (Calabro's ArcGIS StoryMap) contains 23 sites at "Lower" or "Moderately lower energy," 2 at "Moderately higher," and only 1 at "Higher energy" (Torch Lake, using Biotechnical Higher-Energy design). **AP exceeds the wave envelope of every site in the catalog and is unlike all 26 in setting (commercial vs. residential, engineered peninsulas vs. natural shoreline, 3.0-mi connecting-water fetch vs. inland-lake fetch).** |
| Internal contradiction in the existing approval (§12) | EGLE's 2022 approval letter incorporates the Edgewater MIKE 21 study, which documents $H_s$>2 ft at the AP shoreline under 50-yr W conditions and identifies wave protection as required. The wetland-restoration mandate is irreconcilable with the wave climate the agency itself accepted in approving the project. |
| Impossibility under EGLE's own assumptions (§13) | Even if the form's 35-mph wind cap and 50-ft depth hard-codes are taken as given, the resulting wave climate, bed shear, and ice exposure exceed the tolerance of the planted species. Under honest inputs, the magnitude of infeasibility expands by orders of magnitude. |
| AP's rock tip conforms to EGLE high-energy spec (§14) | AP's existing rock-tip construction **conforms to or exceeds** EGLE's Biotechnical (Higher-Energy) bioengineering spec on every element: filter layer, fieldstone armor at the maximum-allowed steepness (1:1.5), keystone and vegetation |

| | |
|---|---|
| | above the rock. The agency's mandate to regrade this construction contradicts the agency's own published high-energy design spec. |
| Crest elevation engineering check — EurOtop 2018 (§15) | The existing 588 ft IGLD85 crest is the **minimum defensible elevation** on engineering grounds for public access. EurOtop 2018 Eqn 5.18 shows mean overtopping at the AP design wave is at the building threshold ($q \leq 0.1$ L/s/m) at the existing crest, with **no margin**. Reducing the crest by 3–5 ft (geometrically required for a 1:10 grade within the 100-ft peninsula width) places overtopping at 5–25 L/s/m — well above safe-pedestrian thresholds. |
| Net-effect cascade if mandate is implemented (§16) | Year-1 plant failure → erosion of unvegetated 1:10 face → sheet-pile breakwall exposure to direct wave attack → sheet-pile breach → marina basin failure → loss of public access. **Estimated total cost ~$36M; the wetland goal is never achieved at any point in the cascade.** Bottomlands eroded; public access destroyed; the regulatory objective undermined. |
| Marina interior wetlands feasibility (§17) | Approximately 1.0 acre of wetland vegetation can be established along the interior of the marina, where wave conditions are below ASCE Manual 50 tranquility goals. This is a feasible component of the §19 path forward. Critically, basin-interior feasibility depends on preserving the existing engineered shoreline (sheet pile, rock tip, 588-ft crest) — if ACO-05963 is implemented, basin feasibility is destroyed along with lakeward-face feasibility. |
| Manipulation of inputs within the agency instrument (§18) | The EGLE Survey123 form has multiple hard-coded values that suppress wave-energy classification at any inland-lake site whose actual conditions exceed those values: 50 ft for "average depth" (XLSForm row 15) and 51.33 ft/s = 35 mph for design wind (XLSForm row 77). |
| Path forward (§19) | Five-element alternative consistent with the underlying regulatory objective: (1) reclassify the shoreline energy regime using the agency's own MIKE 21 results; (2) correction of the public facing calculator that misrepresents the mathematics of shoreline energy (3) preserve the existing high-energy bioengineering construction at the rock tip; (4) establish 0.5–1.0 ac wetland inside the marina basin where wave conditions support it; (5) targeted in-lieu fee mitigation for residual. |

## §ES-2 Recommended path forward

This report identifies a feasible alternative path consistent with the underlying regulatory objective of resource protection. The path is developed in §20 and includes: (1) re-classification of the shoreline energy regime using the agency's own MIKE 21 results; (2) Correction of the public facing calculator that misrepresents the mathematics of shoreline energy, thereby increasing property damage (3) preservation of the existing engineered shoreline system that already conforms to the agency's high-energy bioengineering spec; (4) establishment of 0.5–1.0 ac of wetland vegetation along the marina basin perimeter inside the sheet-pile breakwall, where wave conditions support it; (5) targeted in-lieu fee mitigation for residual.