**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

| | |
|---|---|
| Leestma Management, LLC | Case No. 8:26-bk-02696-CED [Lead Case] |
| Adelaide Pointe QOZB, LLC | Case No. 8:26-bk-02698-CED |
| Adelaide Pointe Boaters Services, LLC | Case No. 8:26-bk-02699-CED |
| Adelaide Pointe Building 1, LLC | Case No. 8:26-bk-02700-CED |
| Waterland Battle Creek, LLC | Case No. 8:26-bk-02701-CED |
| | Chapter 11 |
| Debtors. | *Jointly Administered Cases* |

_________________________________/

**DEBTOR'S OBJECTION TO TEAM FINANCIAL**
**GROUP, INC.'S MOTION FOR RELIEF FROM AUTOMATIC STAY**
(Doc No. 312)

Adelaide Pointe QOZB, LLC (the "Debtor") hereby objects to the *Team Financial Group, Inc.'s Motion for Relief from Automatic Stay Pursuant To 11 USC § 362(d)(1) or in the Alternative, Adequate Protection* (the "Motion") (Doc No. 312) as follows:

## I. BACKGROUND

1. On September 29, 2026, Team Financial, Inc. ("Team Financial") filed their Motion for relief from automatic stay or to obtain adequate protection payments from Debtor attaching as Exhibit A an equipment lease relating to a Wiggins Marina Forklift ("Forklift").[1]
2. Debtor placed a significant downpayment on the Forklift of $311,560 with $220,920.61 outstanding. Debtor then obtained a financing agreement with Team Financial who financed $220,920.61 to XL Lifts per their Invoice and re-imbursed the Debtor in the amount of $311,560 based on the closing statement attached to the Motion as Exhibit B. This "sale-leaseback" transaction indicates a potential Purchase Money Security Interest

[1]On September 8, 2026 Team Financial filed an unopposed motion for relief from stay and adequate protection payments concerning the Forklift and subsequently withdrew the motion after Debtor's Objection, then filed the Motion.

in the Forklift for $220,920.61 with the remaining $311,560 amount being a secured interest loan to Debtor where priority has yet to be determined.

3. The Motion asserts that the Debtor owes $24,570 of pre-petition debt from the lease agreement relating to the Forklift.
4. The lease agreement provides for monthly payments of $7,800 for a term of 96 months which totals $748,000 at the end of the lease term. The Lease provides that the Debtor may purchase the Forklift for $1.00 at the expiration of the term of the lease.
5. The Closing Statement for the lease shows a total amount financed of $532,480.61.[2]
6. In addition to the Motion, Team Financial filed a Proof of Claim ("Claim 8") which provides the total amount owed by the Debtor to be $24,570 and the Proof of Claim states that the value of the Forklift was $500,000. Team Financial also filed an addendum to their Proof of Claim that restates that they have a secured claim of $24,570 against Debtor. The addendum alleges a total claim of $40,170 which lists pre-petition debt, late charges, and post-petition debt.
7. Claim 8 was signed on June 6, 2026, with penalty of perjury by Matt Maczka of Team Financial Group, Inc.
8. Matt Mazcka's declaration executed on September 29, 2026 ("Declaration") states that the estimated fair market value of the Forklift is $425,000 but does not state how that value was determined.[3]
9. Team Financial further alleges in the Motion that it is entitled to adequate protection of its interest in the Forklift because the value of the Forklift is being eroded by continued use by use the Debtor.

[2] The Closing Statement is attached as Exhibit A to the Motion.
[3] The Declaration is attached as Exhibit D to the Motion.

10. Team Financial argues that it is entitled to adequate protection payments of $7,800 per month. This is exact amount of the monthly contractual payments in the pre-petition agreement between Team Financial and the Debtor.

11. Team Financial alleges adequate protection is needed as the value of the Forklift is being eroded by continued use by the Debtors and due to "declining" in value. This alone does not provide a basis for its claim that the value of the Forklift is depreciating either by the use in the passage of time or specify any provable decline as to erosion of the value of the Forklift.

12. The Motion states the Forklift is declining in value based on not receiving adequate protection payments and having no equity cushion thus lacking adequate protection (para. 10 of the Motion). Team Financial makes this assertion notwithstanding the allegations in the Motion set forth in Claim 8 that the amount of the claim is $24,570 (or addendum claiming $40,170) and the value of the Forklift was $500,000.

13. Notwithstanding Team Financial's Proof of Claim and addendum thereto, the Motion asserts a total payment amount remaining of $583,470 (para. 9 of the Motion).

14. The Forklift is essential to the Debtors' business as it is used to move boats stored at the dry marina. If a relief from stay was granted and Team Financial recovers the Forklift, Debtors cannot successfully operate their business. This is especially true as winter is coming and moving the boats to the storage makes the Forklift ever more critical for the operations.

## II. THE AGREEMENT IS NOT A TRUE LEASE

15. Regardless of the title or form of the documents, agreements that may be described as leases are in the "economic reality" disguised as leases can really be a financing transaction

based upon the economic substance of the transaction. In re Grubbs Constr. Co., 319 B.R. 698 (Bankr. M.D. 2005).

16. The Economic Realities test is an analysis to determine the nature of the agreement of the purported lease. The test articulated by Judge Williamson in Grubbs considers whether the only economically sensible course for the lessee is to exercise the option to purchase the property at the end of the lease term, if so, then the agreement is a security agreement. See also In re Royal Food Markets, Inc., 121 B.R. 913 (Bankr. S.D. Fla 1990) and In re AAA Machine Co., 30 B.R. 323 (Bankr. S.D. Fla 1983).

17. If the fair market value of the property contemplated in the lease agreement is less than the exercise option of lessee purchasing the property, then the option would be the only sensible course and the consideration is ipso facto nominal. In re Berge, 32 B.R. 370, 372-73 (Bankr. W.D. Wis. 1983).

18. As then Chief Judge Alexander L. Paskay stated in Lykes 196 B.R. at 580, "One must view the transaction not only in a pure pragmatic and technical legal point of view but also by taking into account all the economic factors which drove the transaction and which were the prime impetus to the ultimate decision to enter into the transaction and the reasons for structuring the transaction as it was done." Am. Pres. Lines v. Lykes Bros. S.S. Co. (In re Lykes Bros. S.S. Co.), 196 B.R. 574 (Bankr. M.D. Fla. 1996). Judge Williamson reinforced these concepts in his often-cited opinion in Grubbs.

19. Other factors can be considered to make the determination of the nature of the purposed lease. Courts considered the lessee's obligations to insure the equipment, liability to make payments regardless of whether the equipment was defective, bearing the risk of any loss, responsibility for all repairs and maintenance of the equipment, obligation to pay all taxes

associated with the equipment, and other factors. In re Grubbs Constr. Co., 319 B.R. 698 at 720-721. In Grubbs, Judge Williamson found that based on those factors that the lessee had no other choice from an economic perspective other than to purchase the equipment, that the purported lease was not a true lease and instead "disguised" as a security agreement.

20. Team Financial's purposed lease (attached as Exhibit B to their Motion) demonstrates on its face that is a security agreement, not a lease. Among other things, lessee is responsible for taxes, maintenance, is obligated to make payments regardless of damage or loss of the equipment, bears the entire risk of loss or damage, is required to insure the equipment, and most importantly has no choice but to purchase the equipment for $1.00 at the end of the lease term as there is no other economically sensible choice. Unlike many other disguised financing transactions, the lease itself provides that the Lessee holds title at all times to the Forklift per the agreement.

**III. TEAM FINANCIAL IS ADEQUATELY PROTECTED**

21. The characterization of the lease as a disguised financing agreement demonstrates that Team Financial is not entitled to the adequate protection payments. In their Proof of Claim, Team Financial states a claim of $24,570 with a stated equipment value of $500,000.

22. When there is a substantial equity cushion, like in this case, there is no need for adequate protection payments as the equity cushion itself is adequate protection.

23. An equity cushion of approximately $724,230 is more than sufficient equity in the Forklift and provides no basis for any adequate protection payments.

24. The Motion asserts a total outstanding payment of $583,470, which even if this Court found to be applicable in light of their Proof of Claim and addendum thereto, would only allow adequate protection payments reflecting demonstrated diminution of value.

## IV. THE MOTION FAILS TO DEMONSTRATE ANY DIMINUTION OF VALUE

25. While team Financial mentions that the continued use of the Forklift by the Debtors is causing a decline in value, there is no analysis of the diminution of any interest in the Forklift, other than the cursory conclusion that “cause” warrants adequate protection payments in the amount of $7,800 per month.

26. There is no record showing any decline in value or diminution in the value of the Forklift by use or passage of time. If there were any requirement for adequate protection payments due to a diminution of Team Financial’s interest, the payments would be based on provable diminution. The only adequate protection Team Financial could be entitled to would specifically relate to any demonstrable decrease in value by the use of the Forklift by the Debtor. Team Financial could also be entitled to adequate protection in the form of proof of insurance and a right to inspect.

27. Furthermore, Team Financial’s request for the allowance of an administrative expense lacks a basis at this time based on the record Team Financial provided in the Motion. As the purported lease is a disguised financing transaction, the payment provision of Section 365(a)(4) and the assumption and cure provisions of Section 365(d)(4) of the Bankruptcy Code are inapplicable. Any allowance of an administrative expense could only be based, if at all, on Section 507(b) of the Bankruptcy Code which is premature at this stage of the case and particularly not appropriate as relief in any preliminary motion or agreed terms that Team Financial has requested.

28. As a disguised financing transaction, any perfected interest Team Financial has in the Forklift will be treated as a secured claim as provided in 11 U.S.C. §§ 1129(a) or 1129(b).

## V. CONCLUSION

WHEREFORE, the Debtors respectfully requests that the Court (i) deny Team Financial's Motion for relief from automatic stay and for adequate protection, (ii) deny the relief requested therein, (iii) and grant such relief that the Court deems just and proper.

Dated this 13th day of October 2026.

/s/ Sebastian T. Pankiewicz
Sebastian T. Pankiewicz (FBN: 1054094)
David S. Jennis (FBN: 775940)
**JENNIS MORSE**
606 East Madison Street
Tampa, Florida 33602
Telephone: (813) 229-2800
Email: djennis@jennislaw.com
spankiewicz@jennislaw.com
ecf@jennislaw.com

*Counsel for the Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of October 2026, a true and correct copy of the foregoing was filed using the Court's CM/ECF electronic filing system, which will serve a copy on all registered users, and was served by U.S. Mail and/or electronic mail on those parties on the Master Service List who are not registered CM/ECF participants, including all parties affected by this Motion.

/s/ Sebastian T. Pankiewicz
Sebastian T. Pankiewicz