**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

| | |
|---|---|
| LEESTMA MANAGEMENT, LLC | Case No.: 8:26-bk-02696-CED [Lead Case] |
| ADELAIDE POINTE QOZB, LLC | Case No.: 8:26-bk-02698-CED |
| ADELAIDE POINTE BOATERS SERVICES, LLC | Case No.: 8:26-bk-02699-CED |
| ADELAIDE POINTE BUILDING 1, LLC | Case No.: 8:26-bk-02700-CED |
| WATERLAND BATTLE CREEK, LLC | Case No.: 8:26-bk-02701-CED |

Debtors. *Jointly Administered*

_________________________________/

**INDEPENDENT BANK'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, MOTION TO STAY CONSIDERATION OF (A) DEBTORS' MOTION TO OBTAIN FINANCING [DOC. 319] AND (B) DEBTOR'S MOTION TO DETERMINE CERTAIN SECURED CLAIMS [DOC. 320]**

Independent Bank ("**Independent Bank**"), by and through undersigned counsel, moves to strike, or in the alternative, moves to stay consideration of (a) *Debtors' Motion for Entry of a Final Order (I) Authorizing Certain Debtors to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105(a), 363, 364(c)(1), 364(c)(2), and 364(d); (II) Granting Senior Priming Liens and Super-Priority Administrative Expense Status to the DIP Lender; and (III) Approving the DIP Commitment* (Doc. 319) (the "**DIP Financing Motion**"), and (b) *Debtor's Motion to Determine the Secured Status and Amount of Independent Bank's Claim and Catalyst Construction's Claim Secured by the Building Collateral* (Doc. 320) (the "**Secured Claim Motion,**" and together with the DIP Financing Motion, the "**Debtors' Motions**") and in support of this motion to strike or stay (the "**Motion** ") states as follows:

## BACKGROUND AND OVERVIEW

1. Following the Debtors' initiating these bankruptcy proceedings on April 1, 2026, the Debtors and its principal, Ryan Leestma ("**Mr. Leestma**") were engaged in extensive disputes regarding numerous matters.

2. On May 29, 2026, the Court ordered (a) the Debtors, (b) Mr. Leestma, (c) Independent Bank, (d) the State Court Receiver, John Polderman (the "**Receiver**"), and (d) the Michigan Department of Environment, Great Lakes, and Energy ("**EGLE**") to participate in a Judicial Settlement Conference with the Honorable Jacob A. Brown, as a judicial settlement officer in the case ("**Judge Brown**"). (Doc. 179)

3. Other interested parties were permitted to participate in the Judicial Settlement Conference and the following entities chose to participate: (a) Choice One Bank ("**Choice One**"), (b) 4Front Credit Union ("**4Front**"), (c) Lake Michigan Credit Union ("**LMCU**"), (d) the City of Muskegon (the "**City**"), and (e) certain affiliates of the Debtors, (i) Emily Leestma ("**E. Leestma**"), (ii) Adelaide Pointe Multi-Use, LLC, a Michigan limited liability company ("**AP Multi-Use**"), (iii) Adelaide Pointe Wet Marina, LLC, a Michigan limited liability company ("**AP Wet Marina**"), and (iv) Harbor West QOZB, LLC, a Michigan limited liability company ("**Harbor West**"). All the participants in the Judicial Settlement Conference are referred to as the "**Parties**."

4. Following extensive efforts by Judge Brown and the Parties, a mediated interim settlement agreement was reached that memorialized the settlement of the ongoing disputes for an interim period (the "**Interim Settlement Agreement**"). The Interim Settlement Agreement resolved certain disputes through December 31, 2026 (the "**Interim Period**"),

agreed to the appointment of John Polderman as the Chief Restructuring Officer ("**CRO**") to manage and operate Debtors during the Interim Period with standard terms and conditions for appointment of a chief restructuring officer, agreed to the extension of a protective injunction from claims to benefit Mr. Leestma, and agreed to a stay of all pending litigation in the Bankruptcy Cases and the Michigan State Court Receivership Cases until December 31, 2026. The Debtors, Mr. Leestma, E. Leestma, the CRO, and the participating secured lenders consisting of Independent Bank, 4Front and Choice One (the "**Participating Secured Lenders**") agreed to work in good faith during the Interim Period to develop a Chapter 11 plan and/or close a restructuring/exit transaction agreeable to the Participating Secured Lenders or on very specific terms. The Parties specifically agreed that Mr. Leestma would focus on the work to be done on the Plan or closing transaction and work to assist in stabilizing the project, "but ultimate decisions will be made by the CRO as to all non-bankruptcy plan related matters as it relates to the Debtors only." (Doc. 231 p. 16 @ ¶12)

5. On June 25, 2026, the Debtors filed a *Motion to Approve Mediated Interim Settlement Agreement Term Sheet* (Doc. 217) in which, among other things, the Debtors sought this Court's approval of the Interim Settlement Agreement and entry of an Order resolving certain disputes through the Interim Period, appointing the CRO to manage and operate Debtors during the Interim Period, extending the protective injunction from claims to benefit Mr. Leestma, and staying all pending litigation in the Bankruptcy Cases and the Michigan State Court Receivership Cases until December 31, 2026.

6. On July 20, 2026, this Court entered an *Approval Order Granting Debtors Motion to Approve Mediated Interim Settlement Agreement Term Sheet* ("**Approval Order**") (Doc. 231) in which this Court approved the Interim Settlement Agreement and found that the employment

of the CRO "is in the best interests of the Debtors, their estates, creditors, and parties in interest, is an integral component of the Interim Settlement Agreement, and is necessary to facilitate the successful implementation of the restructuring contemplated therein." (Doc. 231, p. 5 ¶ F).

7. On September 9, 2026, Judge Brown filed a *Final Judicial Settlement Conference Report* (the "**Judge Brown Report**") (Doc. 279). The Judge Brown Report stated, "Unfortunately, at this time, it appears that further efforts in the context of this judicial settlement will not yield benefits towards a consensual plan of reorganization, and the undersigned is declaring an impasse as of the date hereof and terminating the ongoing judicial settlement process." (Doc. 279, ¶ 3).

8. On October 13, 2026, the CRO filed a *Notice of Filing CRO's Interim Report* attaching a copy of the Interim Report of the Chief Restructuring Officer (the "**CRO Report**") (Doc. 322). The CRO Report states, among other things, that at this stage of the case, the CRO has concluded for purposes of the CRO Report, that a feasible chapter 11 plan cannot be proposed. The CRO describes that the Administrative Consent Agreement ACO-05963, between EGLE, Mr. Leestma and the Debtor Adelaide Pointe QOZB LLC made on April 24, 2025 (the "**Agreement**") is causing unresolved regulatory requirements to remedy permit violations which exist at the Adelaide Pointe project.

9. Importantly, the CRO Report references the proposed lending facility in the DIP Financing Motion and confirms the CRO's understanding that the proposed presently committed funding is not sufficient to implement the Agreement's restoration, settlement-payment, monitoring, and corrective-action obligations.

10. The CRO Report concludes that the CRO and the Debtor are presently at an impasse in presenting a viable plan of reorganization because the EGLE requirements lack a sufficiently funded solution and the Debtor is adamantly opposed to implementing the Agreement and unless an implementable regulatory pathway and adequate funding are secured, the CRO cannot support proceeding with a going concern Plan.

11. Although not advocating anything, the CRO suggests that an asset sale, a liquidating Chapter 11 plan, conversion, or dismissal should be considered as appropriate.

12. While official notice of hearings on the Debtors' Motion has not been provided as of the filing of this Motion, the Court has given notice that a preliminary hearing on the Debtors' Motion has been scheduled for October 21, 2026, at 3:00 p.m. (the "**Hearing**").

**<u>THE DEBTOR'S MOTIONS</u>**

13. Notwithstanding the Interim Settlement Agreement, the Approval Order and the issues with the Agreement, on October 7, 2026, without the approval of the CRO, the Debtors filed the DIP Financing Motion seeking a Final Order that authorizes the Debtors to obtain post-petition financing by granting senior priming liens and super-priority administrative expense status to the proposed DIP lender, 364 Capital, LLC. The DIP Financing Motion proposes to put $13,780,000 of new debt in front of Independent Bank's existing pre-petition first priority liens on all of its collateral at Adelaide Pointe that secures more than $29,000,000 in debt owing to Independent Bank.

14. Notwithstanding the Interim Settlement Agreement, the Approval Order, and the issues with the Agreement, on October 7, 2026, without the approval of the CRO, the Debtors also filed their Secured Claim Motion seeking an Order that determines that

Independent Bank's secured claim against Debtor Adelaide Pointe Building 1, LLC, is limited to $12,000,000.

15. Independent Bank timely filed Claim 1 against Debtor Adelaide Pointe Building 1, LLC on June 9, 2026, asserting a secured proof of claim in the amount of $15,512,905.79, plus attorney's fees and costs, expenses, and all post-petition interest ("**Claim 1**").

16. Claim 1 also affirms that the Adelaide Pointe Building 1, LLC obligation to Independent Bank is subject to a cross-collateral agreement and is secured by all assets of all Debtors.

17. The Secured Claim Motion also seeks an Order that determines that the claim of creditor Catalyst Construction is wholly unsecured.

## ARGUMENT

18. The Interim Settlement Agreement and the Approval Order appointed the CRO, removed the ultimate decision-making authority of Mr. Leestma and the Debtors' officers/manager, and granted the CRO the exclusive and ultimate authority to make final determinations regarding *all* non-bankruptcy plan related matters.

19. Although the Debtors remained "debtors in possession," Mr. Leestma and any officers/managers of the Debtors have been stripped of ultimate management authority of the Debtors during the Interim Period. Motions to borrow money, prime secured lenders and determine status and amounts of secured claims must be brought by the party authorized to act for the Debtors. That party is the CRO. Simply stated, Mr. Leestma and the officers/managers of the Debtors lack the authority to act on matters without the approval of the CRO.

20. The CRO, not Mr. Leestma, has full managerial and operational control of the Debtors during the Interim Period, which means Mr. Leestma does not have the authority to seek the relief sought in the DIP Financing Motion or the Secured Claim Motion without the CRO's approval. The CRO did not approve the filing of the DIP Financing Motion or the Secured Claim Motion.

21. During the Interim Period, Mr. Leestma does not have the authority to take action on behalf of the Debtors – Mr. Leestma knowingly relinquished such authority in the Interim Settlement Agreement. Mr. Leestma's authority is currently limited to "good faith" efforts to develop a Chapter 11 plan and working with the CRO to stabilize the project, "but ultimate decisions will be made by the CRO as to all non-bankruptcy plan related matters as it relates to the Debtors only."

22. Per the Interim Settlement Agreement, in exchange for the stay of litigation, Debtors agreed to file a Chapter 11 Plan by the end of the Interim Period that would either be a) on agreeable terms to the Participating Secured Lenders; or b) pays the Participating Secured Lenders in full within 2 years of a confirmation date and with debt service at the contract rate to all Participating Secured Lenders starting in January 2027.

23. The DIP Financing Motion and Secured Claim Motion accomplish neither of the required alternatives and serve only to increase Independent Bank's costs.

24. Additionally, the Debtors' DIP Financing Motion and Secured Claim Motion violate the terms of the Interim Settlement Agreement and this Court's Approval Order by initiating litigation against Independent Bank during the Interim Period.

25. By seeking an order to reduce the amount of Independent Bank's secured claim and an order approving DIP financing that grants a priming lien to a DIP lender for

$13,780,000 ahead of Independent Bank's pre-petition first priority liens, the Debtors are initiating what will be extensive and protracted litigation during a period when the Parties agreed to stay such litigation.

26. The litigation that would arise from Debtors' DIP Financing Motion and Secured Claim Motion will be significant and will result in substantial additional legal fees and costs to Independent Bank. The reduction of substantial legal fees was a primary factor in Independent Bank's agreement to enter into the Interim Settlement Agreement with Debtors, which also involved Independent Bank foregoing other rights and remedies during the Interim Period.

## **RELIEF SOUGHT**

27. Because the CRO did not approve the filing of the Debtors' Motions, the Court should strike the Debtors' Motions under 11 U.S.C. § 105(a) and the Court's inherent authority to enforce its orders because the filer lacked authority to act for the Debtors and award sanctions for filing the Debtors' Motions for an improper purpose and without factual or legal support.

28. Alternatively, if the Court does not strike the Debtors' Motion, the Court should stay any consideration of the Debtors' Motions pending resolution of the issues raised by the Judge Brown Report and the CRO Report regarding the absence of a path toward a viable plan of reorganization. Independent Bank and the other Parties should not be prejudiced by motions that are wholly unauthorized, frivolous, filed in bad faith, or seek relief the Court cannot and should not grant.

29. Before any consideration of the Debtors' Motions, this Motion should be resolved either at the Hearing, if it is properly noticed, or at a hearing set by the Court.

WHEREFORE, Independent Bank respectfully requests that the Court enter an order (i) striking Debtors' DIP Financing Motion, (ii) striking Debtors' Secured Collateral Motion, (iii) alternatively, staying consideration of the Debtors' Motions, and (iv) granting such other relief deemed just and proper.

Dated: October 15, 2026

*/s/Jeffrey W. Warren*
BUSH ROSS P.A.
Jeffrey W. Warren
Florida Bar No.150024
1801 North Highland Avenue
Tampa, Florida 33602-2656
Phone: (813) 224-9255
Email: jwarren@bushross.com
Counsel for Independent Bank

*/s/Darren J. Burmania*
BODMAN PLC
Darren J. Burmania (P68240)
99 Monroe Ave NW, Suite 300
Grand Rapids, MI 49503
Phone: (616) 205-3313
Email: dburmania@bodmanlaw.com
Counsel for Independent Bank

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 15, 2026, I electronically filed a true and correct copy of the foregoing Independent Bank's Objection To Debtors' Motion to Sell Personal Property Free and Clear of Liens and Other Interests Pursuant to 11 U.S.C. §§363(b) and 363(f) (Doc. No. 291) with the Clerk of the United States Bankruptcy Court for the Middle District of Florida by using the CM/ECF system, and I furnished a copy of the foregoing document(s) to the following parties in the manner of service indicated below:

**Via the CM/ECF system which will send a Notice of Electronic Filing to:**

- **Charles W Azano** chip.azano@gtlaw.com
- **Marc Bakst** mbakst@bodmanlaw.com
- **Jessica Clemente** jessica.clemente@hwhlaw.com, phil.khezri@hwhlaw.com
- **Kathleen DiSanto** kdisanto@bushross.com, bnkecf@bushross.com;bankruptcy.eservice@bushross.com;kdisanto@ecf.courtdrive.com
- **Moe Freedman** freedmanm1@michigan.gov
- **Alberto F Gomez** al@jpfirm.com, al@jpfirm.com;andrenaw@jpfirm.com;katherineb@jpfirm.com
- **Angela N Grewal** angela.grewal@arlaw.com, jessica.bowers@arlaw.com;vicki.owens@arlaw.com;ari.martinez@arlaw.com;philip.navarro@arlaw.com
- **John B Hutton** huttonj@gtlaw.com, MIALitDock@gtlaw.com;miaecfbky@gtlaw.com;Melissa.DeLaTorre@gtlaw.com
- **David S Jennis** djennis@jennislaw.com, ecf@jennislaw.com;aschaefer@jennislaw.com
- **Sherri L Johnson** sjohnson@johnsonlegalfl.com, g24582@notify.cincompass.com
- **Stephen S. LaPlante** laplante@millercanfield.com
- **Rhys P Leonard** rleonard@trenam.com, mmosbach@trenam.com;rleonard@ecf.courtdrive.com;mmosbach@ecf.courtdrive.com;mwoods@trenam.com;mwoods@ecf.courtdrive.com;jpayne@trenam.com
- **David A Lerner** dlerner@plunkettcooney.com, nwinagar@plunkettcooney.com
- **Stephanie C Lieb** slieb@trenam.com, mmosbach@trenam.com;mwoods@trenam.com;slieb@ecf.courtdrive.com;mmosbach@ecf.courtdrive.com;mwoods@ecf.courtdrive.com;jpayne@trenam.com

- **Catrina Humphrey Markwalter** cmarkwalter@clarkhill.com, rahuja@clarkhill.com
- **Megen E. Miller** millerm59@michigan.gov
- **Sebastian Thor Pankiewicz** spankiewicz@jennislaw.com
- **John W Polderman** jpolderman@sbplclaw.com, jlassen@sbplclaw.com
- **Jon Polenberg** jpolenberg@beckerlawyers.com, ydaneshfar@beckerlawyers.com;tfritz@beckerlawyers.com;CourtMail@beckerlawyers.com;daperez@beckerlawyers.com
- **Dana Lee Robbins-Boehner** drobbins@burr.com, mguerra@burr.com;kkearney@burr.com
- **Marc N. Swanson** swansonm@millercanfield.com
- **James Timko** jtimko@deanmead.com, mgodek@deanmead.com
- **United States Trustee - TPA** USTPRegion21.TP.ECF@USDOJ.GOV
- **Jeffrey W. Warren** jwarren@bushross.com, bankruptcy.eservice@bushross.com;jwarren@ecf.courtdrive.com
- **Nathan A Wheatley** nathan.a.wheatley@usdoj.gov
- **Edmund S Whitson** ewhitson@beckerlawyers.com, tfritz@beckerlawyers.com;nportuondo@beckerlawyers.com;courtmail@beckerlawyers.com
- **Darrien Worth** worth@millercanfield.com
- **John R Yant** ryant@carltonfields.com, epritchett@carltonfields.com
- All parties who receive electronic service via the CM/ECF system

**Via U.S. Mail, Postage Prepaid to:**

Leestma Management, LLC, c/o Ryan M. Leestma, Member, 1900 Gulf Drive North, Unit 7, Bradenton Beach, FL 34217

Adelaide Pointe QOZB, LLC, Ryan M. Leestma, Manager, 1204 W. Western Avenue, Muskegon, MI 49441

Adelaide Pointe Boaters Services, LLC, Ryan M. Leestma, Manager, 400 Adelaide Circle, Muskegon, MI 49441

Adelaide Pointe Building 1, LLC, Ryan M. Leestma, Manager, 901 Adelaide Circle, Muskegon, MI 49441

Waterland Battle Creek, LLC, Ryan M. Leestma, Manager, 77 East Michigan Avenue, Battle Creek, MI 49017

Ally Bank c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

*/s/ Jeffrey W. Warren*
Jeffrey W. Warren