**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

| | |
|---|---|
| Leestma Management, LLC | Case No. 8:26-bk-02696-CED [Lead Case] |
| Adelaide Pointe QOZB, LLC | Case No. 8:26-bk-02698-CED |
| Adelaide Pointe Boaters Services, LLC | Case No. 8:26-bk-02699-CED |
| Adelaide Pointe Building 1, LLC | Case No. 8:26-bk-02700-CED |
| Waterland Battle Creek, LLC | Case No. 8:26-bk-02701-CED |
| | Chapter 11 |
| Debtors. | *Jointly Administered Cases* |

_________________________________/

**<u>DEBTORS' REPLY TO INTERIM REPORT OF CHIEF RESTRUCTURING OFFICER</u>**
(Doc. No. 322)

Debtors Leestma Management, LLC; Adelaide Pointe QOZB, LLC; Adelaide Pointe Boaters Services, LLC; Adelaide Pointe Building 1, LLC; and Waterland Battle Creek, LLC (collectively, the "Debtors") reply to the *Notice of Filing Interim Report of Chief Restructuring Officer* (Doc No. 322) and state as follows:

1. The Chief Restructuring Officer, John Polderman ("CRO") filed an interim report concerning EGLE and its impact on the feasibility of reorganization in these cases.
2. The report references the Administrative Consent Agreement ACO-05963 ("ACA") signed by Ryan Leestma on April 24, 2025. The ACA specifies a compliance framework for Adelaide Pointe project that prescribes restoration requirements and settlement figures.
3. The ACA was signed after violations alleged by EGLE arising from the Water Resources Division permit for construction at the Adelaide Pointe location.
4. The CRO references, but does not take a position, as to the characterization of the ACA as an executory contract which may be the path forward on addressing EGLE in a manner that is feasible and prudent.

5. Upon consultation with the CRO and the Debtors, the undersigned is unaware of any allegations from EGLE that the violations or the current status of the Adelaide Pointe project ("Project") are causing any environmental, health, or public safety concerns.
6. Per the CRO, to comply with the ACA terms as written would require $1.5 to $4 million in funds which would be detrimental to any efforts to complete the Project or maximize its value for the benefit of all stakeholders, the liquidity of the Debtor estate, and the ability to implement a successful chapter 11 plan.

**ADDRESSING EGLE**

7. Debtors submit that the ACA is an executory contract that may be assumed or rejected pursuant to 11 U.S.C. §365(b)(1). To determine an executory contract, courts apply the Countryman test or the Functional Analysis Test. The Functional Analysis test has been adopted by the Eleventh Circuit Court of Appeals. Under the Functional Analysis test, a contract is executory if the agreement would either benefit or burden the estate. The estate is certainly burdened by the ACA that would prevent the implementation of a chapter 11 plan and will discourage any buyers, investors, or funds.
8. In the assumption context, Section 1123(a)(5)(G) of the Bankruptcy Code allows for a plan to provide adequate means to cure or waive any default under the agreement. Section 1123(b)(2) provides that this plan cure or waiver is subject to Section 365 of the Bankruptcy Code. Pursuant to Section 1123(d) of the Bankruptcy Code, the amount to cure a default is deemed in accordance with the underlying agreement and applicable nonbankruptcy law. While Section 365(b)(1) allows the assumption of a executory contract with a default if there is an adequate assurance or cure of the default from any failure to perform nonmonetary obligations.

9. Michigan law provides multiple options for wetland mitigation. MCL § 324.011d allows for the acquisition of approved credits from a wetland mitigation bank and it further states that a permit applicant is not required to provide compensatory wetland mitigation under other subdivision if the applicant prefers and qualifies to use approved credits from a wetland mitigation bank. Federal C.F.R. § 332.3 similarly covers general compensatory mitigation requirements and echoes Michigan law that mitigation bank credits are the preferred compensatory mitigation. The purpose of this mitigation remedy is to reduce the uncertainty over project success and reduce temporal loses of function compared to forcing mitigation of the site itself.
10. Satisfying mitigation via bank mitigation credits would not only be aligned with the preferences expressed in Michigan law but could cost an approximate $300,000 to cover the 2.2 acres of wetland impact as per the ACA and avoid further environmental impact.
11. Wetland mitigation bank credits to provide the mitigation at $300,000 is a feasible and approachable solution for all parties that would alter the feasibility analysis of the plan that is currently facing a $1.5 to $4 million dollar burden under the ACA. The cure through mitigation, whether through assumption under Section 365(b)(1) or cure under such a plan under section 1123(a)(5)(G) prevents that burden.
12. Debtors believe this is an overlooked option that is provided for in the Bankruptcy Code and would be in compliance with Michigan law, EGLE, and be in good faith.

Dated this 21st of October 2026.

/s/ Sebastian T. Pankiewicz
Sebastian T. Pankiewicz
FL Bar No. 1054094
JENNIS MORSE
606 East Madison Street
Tampa, FL 33602
Telephone: (813) 229-2800
Email: spankiewicz@jennislaw.com
ecf@jennislaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 21, 2026 a true and correct copy was served on all parties via CM/ECF to all parties receiving service by CM/ECF.

/s/ Sebastian T. Pankiewicz
Sebastian T. Pankiewicz